**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| CHAD B. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:23-cv-1643 |
| v. | ) | |
| | ) | |
| MULTI-COLOR CORPORATION, | ) | The Honorable Lynn Adelman |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF**
**MULTI-COLOR CORPORATION'S MOTION TO DISMISS**

## INTRODUCTION

This case is the second attempt by Plaintiff Chad Williams ("Mr. Williams") to sue Defendant Multi-Color Corporation ("MCC" or the "Company") for alleged wrongs in connection with his employment at MCC between 2008 and 2022. As described below, in the prior case before this same Court, Mr. Williams alleged discrimination by MCC and, after extensive discovery, this Court entered summary judgment in favor of MCC, which the Seventh Circuit recently upheld on appeal. While that appeal was pending, Mr. Williams filed this action raising nearly identical allegations to the prior case.

This new Complaint should be dismissed with prejudice for multiple independent reasons. Most notably: claim preclusion bars the Complaint, because the prior case involved the same parties, same facts, and a final judgment in favor of MCC. Even were that not so, moreover, the Complaint should still be dismissed because the allegations are far too conclusory to state a claim. Finally, to the extent Mr. Williams now alleges a cause of action for retaliation, that claim should be dismissed for failure to exhaust administrative remedies.

## BACKGROUND

Mr. Williams has now brought two nearly identical cases against MCC. As set forth in the Complaint, Mr. Williams' employment with MCC started in 2008. *See* Compl. at 2. After not receiving a promotion, Mr. Williams filed a charge of discrimination in 2018 with the Equal Employment Opportunity Commission ("EEOC"). *See id.*

In June 2019, after receiving a right to sue from the EEOC, Mr. Williams filed his first action against MCC. That complaint alleged discrimination by MCC in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). *See* Ex. 1. After MCC answered the complaint, discovery commenced with a final discovery deadline in March 2023. *See* Ex. 2. In July 2023, this

1

Court issued a decision analyzing at length Mr. Williams' claims and granted summary judgment to MCC. *See* Ex. 3 (Adelman, J.). The Court entered a final judgment in favor of MCC shortly thereafter. *See* Ex. 4. In January 2024, the Seventh Circuit upheld this Court's decision. *See Williams v. Multi-Color Corp., Inc.*, 2024 WL 261312, at *1 (7th Cir. Jan. 24, 2024).

During the course of the prior litigation, Mr. Williams' employment with MCC was terminated—a point that was raised throughout the prior case. Mr. Williams separated from the Company in October 2022, and at that time, he was represented by counsel in the prior litigation and discovery was ongoing. *See* Ex. 3 at 3. Thus, at his deposition in the prior case in March 2023, Mr. Williams emphasized that he was allegedly "wrongfully terminated" by MCC and that this purported wrongful termination supported his damages claim. *See* Ex. 5 at 130:1-3; 176:2-16. In the summary judgment decision, this Court also recognized that Mr. Williams' employment with MCC ceased in 2022, as Mr. Williams had argued in connection with the summary judgment filings that he had been "wrongfully terminated" in October 2022. *See* Exs. 3 at 1, 6. And in the Notice of Appeal, Mr. Williams once more contended that after "years of egregious retaliation, [he] was wrongfully terminated." *See* Ex. 7.

While that appeal was pending, Mr. Williams filed an additional charge of discrimination against MCC with the EEOC. *See* Ex. 8. In the charge, Williams once again asserted that he was wrongfully terminated by the Company. *See id.* When prompted for the alleged reason for the purported mistreatment, Williams checked the box for "Race" but not "Retaliation." *Id.* Mr. Williams filed an amended charge in October 2023 clarifying that he believed MCC's actions violated Title VII. *See* Ex. 9. In the amended charge, Mr. Williams once again made no mention of retaliation. *See id.*

In December 2023, Mr. Williams filed this action. The Complaint alleges nothing new relative to the allegations in the prior litigation. Mr. Williams asserts that he "filed discrimination [sic] in June 2018 after [he] did not receive a promotion [he] truly deserved," and that after "years of egregious acts of retaliation, [he] was wrongfully terminated on October 23, 2022." Compl. at 2.[1]

## **ARGUMENT**

As described below, the Complaint should be dismissed with prejudice for multiple independent reasons. *First*, because the prior case involved the same parties, same facts, and a final judgment in favor of MCC, claim preclusion requires dismissal of the Complaint. *Second*, even if the Complaint were not precluded, the Complaint should still be dismissed because Mr. Williams' allegations are far too conclusory to state a claim. And *third*, to the extent Mr. Williams purports to bring a retaliation claim, that claim should be dismissed for failure to exhaust.[2]

---

[1] The above-referenced exhibits are all subject to judicial notice and may be considered on this motion to dismiss. *See, e.g.*, *Schaetz v. Paper Converting Mach. Co. Inc*, 2017 WL 2275005, at *2 n.1 (E.D. Wis. May 24, 2017) ("A court may take judicial notice of an EEOC charge as a matter of public record when addressing a motion to dismiss without converting the motion to a motion for summary judgment."); *Stevenson v. Gen. Mills Inc*., 2023 WL 2142215, at *2 (E.D. Wis. Feb. 21, 2023), *appeal dismissed*, 2023 WL 5992763 (7th Cir. July 7, 2023) (taking "judicial notice of court filings and other matters of public record" in the course of finding claim precluded); *Roldan v. Town of Cicero*, 2018 WL 1469011, at *3 n.3 (N.D. Ill. Mar. 26, 2018) (taking judicial notice "of the indisputable fact that the testimony was given and says what it says").

[2] MCC brings this Motion pursuant to Rule 12(b)(6) and 12(c). District courts in the Seventh Circuit have granted motions to dismiss on the basis of claim preclusion under both Rule 12(b)(6) and 12(c), though the Seventh Circuit has indicated that Rule 12(c) is ordinarily the proper vehicle. *See Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010). Because "a Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)," the distinction is of "no consequence" here. *See Rose v. Bd. of Election Commissioners for City of Chicago*, 2015 WL 1509812, at *2 (N.D. Ill. Mar. 30, 2015), *aff'd sub nom. Rose v. Bd. of Election Comm'rs for City of Chicago*, 815 F.3d 372 (7th Cir. 2016); *see also Frier v. Hingiss*, 2023 WL 4273515, at *2 (E.D. Wis. June 29, 2023) (considering "the issue of *res judicata* on a Rule 12(b)(6) motion to dismiss"). Mr. Williams' failure to exhaust is properly addressed under Rule 12(b)(6). *See, e.g.*, *Bell v. United States*, 2014 WL 555311, at *2 (E.D. Wis. Feb. 12, 2014).

## I. Claim Preclusion Bars the Complaint.

Because claim preclusion bars the Complaint, this case should be dismissed with prejudice. As the Seventh Circuit has explained, the "doctrine of claim preclusion rests on the pragmatic insight that one fair opportunity to litigate a claim is normally enough." *Daza v. State*, 2 F.4th 681, 683 (7th Cir. 2021). Because Mr. Williams' first case was adjudicated in federal court, federal preclusion rules apply. *Id.* Under those federal rules, claim preclusion bars a second complaint when three elements are satisfied: (1) an "identity of claims," (2) an "identity of parties," and (3) a "prior final judgment on the merits." *Id.*

Because all three elements are satisfied here, the Complaint should be dismissed with prejudice. The latter two elements plainly exist here. Both the prior lawsuit and this one involve the same plaintiff and defendant: Chad Williams and Multi-Color Corporation. *Compare* Compl. at 2 *with* Ex. 3 at 1 & n.1. An identity of the parties thus exists. *See, e.g.*, *Czarniecki v. City of Chicago*, 633 F.3d 545, 549 (7th Cir. 2011). So too has a final judgment on the merits occurred. This Court granted summary judgment to MCC in the prior case, and the Seventh Circuit affirmed the decision on appeal. *See* Ex. 3 at 6 (granting summary judgment); *See* Ex. 4 (issuing final judgment); *Williams*, 2024 WL 261312, at *1 (affirming decision on appeal); *see also, e.g.*, *Czarniecki*, 633 F.3d at 549 ("There is no question that the district court's grant of summary judgment to the City has given rise to a final judgment").

There is also an identity of claims. This element is satisfied where there exists a "common core of operative facts" between the two cases. *See Murray v. Bush*, 2007 WL 9752056, at *3 (E.D. Wis. Nov. 26, 2007). In assessing this question, the fact that the plaintiff's later claims rest on "different legal theories and factual predicates" does not matter. *See Barr v. Board of Trustees of Western Illinois University*, 796 F.3d 837, 840 (7th Cir. 2015). Nor does it matter whether the

4

plaintiff *actually raised* the current claim in the prior case, because "a plaintiff cannot evade preclusion by identifying a slightly different cause of action with one element different from those in the first, second, or third lawsuits"—a prohibition that the Seventh Circuit has consistently enforced "in the employment discrimination context." *See id*. (internal quotation marks and alterations omitted).

Because the current case arises from the same core of operative facts as the prior one, the Complaint should be dismissed. Both cases involve Mr. Williams' assertions that MCC violated Title VII in connection with his employment with the Company between 2008 and 2022. The cases involve the same parties, cover the same time period, and are both brought under Title VII. Under similar circumstances, courts have found claims precluded. *See, e.g.*, *Huon v. Johnson & Bell, Ltd.*, 757 F.3d 556, 559 (7th Cir. 2014) (affirming dismissal on the basis of preclusion because, among other things, both cases focused on the plaintiff's "job conditions" and allegations of the "same sort of discriminatory motives"); *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) (finding claims precluded where the "second suit concerns decisions made in later promotion cycles—in 2010 and 2011—but in every other material respect, the complaint is almost identical to the amended complaint in the first suit"); *Nwoke v. University of Chicago Medical Center*, 2020 WL 3000285, at *2 (N.D. Ill. June 4, 2020), *aff'd*, 2021 WL 3483434 (7th Cir. Aug. 9, 2021) (finding preclusion warranted because "the claims in the two suits still share a set of core operative facts, as they turn on Nwoke's allegations of broad and wide-ranging mistreatment she experienced while employed at UCMC").

Any differences between the two cases do not save the Complaint from dismissal. The current Complaint contains a reference to "retaliation," for instance, whereas the prior complaint did not. *See* Compl. at 2; Ex. 1. But that is a paradigmatic example of a mere different "theory"

5

that poses no obstacle to dismissal. *See, e.g.*, *Sanders v. Illinois Dept. of Healthcare and Family Services*, 592 F. App'x 516, 518 (7th Cir. 2014) (holding that claim of "retaliation" amounted to simply a new "theory" that plaintiff "could have" raised in the prior proceeding and was thus barred from raising in subsequent litigation); *Covington v. Nat'l Univ.*, 2017 WL 4585576, at *3 (N.D. Ill. June 23, 2017), *aff'd*, 726 F. App'x 486 (7th Cir. 2018) (finding claims precluded "even if his Title VI race discrimination and retaliation claims pursue a different angle from his age discrimination and Section 1983 claims"). Here, Mr. Williams also argued "retaliation" in the prior litigation both in his summary judgment brief and the Notice of Appeal. *See* Exs. 7, 10; *Daza*, 2 F.4th at 684 (finding dismissal warranted where party "engaged in th[e] argument," even if not raised in the complaint itself, in the earlier litigation).

The Complaint's reference to Mr. Williams' termination does not change the analysis. As described above, Mr. Williams could have—and did—advance arguments on the basis of his termination in the prior lawsuit. At his deposition, for example, Mr. Williams asserted that he was "wrongfully terminated" by MCC and was seeking damages as a result of the termination. *See* Ex. 5 at 130:1-3; 176:2-16. This Court's decision granting summary judgment to MCC, moreover, acknowledged Mr. Williams' termination from the Company in 2022, as Mr. Williams had argued in connection with the summary judgment filings that he had been "wrongfully terminated" in October 2022. *See* Exs. 3 at 1, 6. And, as noted, Mr. Williams' Notice of Appeal in the prior case contains nearly identical allegations as the current Complaint. The Notice of Appeal states: "After years of egregious acts of retaliation, I was wrongfully terminated in October 2022." *See* Ex. 7. Claim preclusion thus bars Mr. Williams from reasserting those claims here. *See, e.g.*, *Daza*, 2 F.4th at 684-85 (holding that where plaintiff "brought up" the argument in first lawsuit, even where the allegation did not appear in the prior complaint, claim preclusion barred the second lawsuit);

*Kabes v. Sch. Dist. of River Falls*, 387 F. Supp. 2d 955, 967 (W.D. Wis. 2005) (holding that fact that purported "discrimination did not surface until after plaintiffs had filed suit does not exempt them from the doctrine of claim preclusion").

Even had Mr. Williams *not* raised the termination in the prior lawsuit—and he did— dismissal would still be warranted. That is because, as noted above, claim preclusion bars claims that "could have been," but were not, raised in a prior lawsuit. *See Murray*, 2007 WL 9752056, at *3. Mr. Williams plainly could have raised his termination in the prior lawsuit—because he did— so the Complaint should be dismissal for this reason as well. *See, e.g.*, *Nwoke v. Univ. of Chicago Med. Ctr.*, 2021 WL 3483434, at *3 (7th Cir. Aug. 9, 2021) (finding preclusion warranted because plaintiff "certainly could have litigated her [discrimination] claim in the first suit; indeed, she tried to do just that"); *Spencer v. Thomas*, 2002 WL 31375499, at *3 (N.D. Ill. Oct. 21, 2002), *aff'd*, 87 F. App'x 594 (7th Cir. 2004) (finding claim precluded even though "this case focuses on her termination, while the prior case focused on everything but her termination," because "her termination could have been challenged in the previous lawsuit"); *Bethea v. Illinois State Police*, 2002 WL 1592774, at *3 (N.D. Ill. July 19, 2002) (finding dismissal warranted because although "the complaint in *Bethea II* includes allegations of wrongful termination that were absent from the complaint in *Bethea I*, Ms. Bethea could have and should have raised these claims in *Bethea I*").[3]

---

[3] To the extent Mr. Williams contends that he could not have raised his termination in the prior case given an exhaustion requirement, that is incorrect. For starters, and as described above, Williams *did* raise his termination in the prior case. *See supra* p. 6. Exhaustion was likely no bar, because courts have held that alleged retaliation occurring "after, and in response to, the initial EEO filing" may be reasonably related to the initial charge and under those circumstances need not be separately exhausted. *See, e.g.*, *Kind v. Gonzales*, 2006 WL 1519579, at *8 n.8 (N.D. Ill. May 30, 2006); *see also Schwartz v. Bay Industries, Inc.*, 274 F.Supp.2d 1041, 1045-50 (E.D. Wis. 2003) (Adelman, J.) (discussing exhaustion exception). Even if exhaustion were required, moreover, litigants still have a "variety of options" to bring all claims in one case, including "asking that the administrative agency expedite the process, that the district court stay the first case pending the administrative process, or that the defendant agree to split a claim into two or more

Because the Seventh Circuit has "squarely foreclosed" exactly "this kind of claim-splitting in the employment-discrimination context," the Complaint should accordingly be dismissed. *See, e.g.*, *Barr*, 796 F.3d at 840; *Daza*, 2 F.4th at 685 (holding that because claim "existed at the time" of the first lawsuit, claim preclusion bars the claim); *Nwoke*, 2021 WL 3483434, at *3 (finding claim precluded where plaintiff "uncovered the pay-disparity evidence during discovery" in the first lawsuit and thus "could have" brought the claim in the first case); *Scholz*, 18 F.4th at 956 (finding preclusion warranted because plaintiff "had the opportunity to raise all issues relevant" to the issue "at summary judgment" in the prior litigation).[4]

## II. The Allegations Are Too Conclusory to State a Claim.

Even were the claims not precluded—and they are—the Complaint should still be dismissed for failure to state a claim. Under Rule 8, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Warciak v. Subway Restaurants, Inc*., 949 F.3d 354, 356 (7th Cir. 2020). Even for *pro se* litigants, this standard demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Pope v. Racine Corr. Inst*., 2012 WL 4470214, at *1 (E.D. Wis. Sept. 27, 2012). "Something more than boilerplate is necessary because abstract recitations of the elements of a cause of action or conclusory legal statements, do nothing to distinguish the particular case that is before the court from every other hypothetically possible case in that field of law." *Coleman v. Depke*, 2014 WL 6563814, at *2 (N.D. Ill. Nov. 20, 2014) (internal quotation marks omitted). A complaint's allegations therefore must contain "specific facts"

---

suits." *Scholz v. United States*, 18 F.4th 941, 955 (7th Cir. 2021). When a plaintiff fails to take advantage of these options, the Seventh Circuit has consistently found the claims precluded. *See, e.g.*, *Barr*, 796 F.3d at 840 (collecting cases).

[4] MCC has now devoted significant resources, over many years, to defending against Mr. Williams' unfounded lawsuits. MCC reserves all rights in this regard, including seeking attorneys' fees from Mr. Williams. Moreover, as of this writing, Mr. Williams still owes MCC costs in connection with the prior lawsuit.

8

supporting the claims, and where the complaint pleads facts that are "merely conclusory" in nature, the complaint should be dismissed. *See Estevez v. Lohman*, 2021 WL 3568558, at *3 (E.D. Wis. Aug. 12, 2021), *aff'd*, 2022 WL 2383858 (7th Cir. July 1, 2022).

Because Mr. Williams' allegations do not satisfy this standard, the Complaint should be dismissed. In the Complaint, Mr. Williams alleges that he did not receive a promotion that he "truly deserved" and that he then filed a discrimination charge in 2018. *See* Compl. at 2. He alleges that after "years of egregious acts of retaliation," he "was wrongly terminated on October 23, 2022." *Id*. The Complaint contains no more details regarding the alleged unlawful conduct.

These threadbare allegations do not suffice. In the Complaint, for example, Mr. Williams does not identify or describe a single individual, incident, or date in connection with the purported "years of egregious acts of retaliation." *See id*. Nor does Mr. Williams provide any specificity regarding why he "truly deserved" the promotion or why the termination was purportedly "wrongful." The absence of a single allegation on these issues flouts federal pleading standards and warrants dismissal of the Complaint. *See, e.g.*, *Boyland Auto Group III LLC v. Boyland*, 2023 WL 5955764, at *4 (E.D. Wis. Sept. 13, 2023) (holding that mere allegation that defendants committed a "wrongful act will not do"); *Escarzaga v. Board of Trustees of Community College District No. 508*, 2015 WL 6445606, at *3 (N.D. Ill. Oct. 23, 2015) (finding dismissal warranted where plaintiff alleged "no facts to illustrate how, when, why and by whom" the alleged unlawful incident occurred); *Louis v. Stockbridge-Munsee Community*, 2008 WL 4282589, at *4 (E.D. Wis. Sept 16, 2008) ("Although he claims in a conclusory fashion that the wrongful actions of the defendant have subjected him to the deprivation of his rights . . . this is insufficient to state a claim." (internal quotation marks and alterations omitted)).

9

Accordingly, as many courts have found under similar circumstances, the Complaint should be dismissed. *See, e.g.*, *Onyango v. Nick & Howard, LLC*, 607 F. App'x 552, 555 (7th Cir. 2015) (affirming dismissal of *pro se* claim because allegations "are too conclusory to support an inference of discrimination"); *Ferguson v. Nissen Staffing Continuum, Inc*., 2018 WL 1513034, at *4 (E.D. Wis. Mar. 27, 2018) (dismissing *pro se* complaint that did not explain "why he believes" defendants had discriminatory motive); *see also Webb v. AFSCME Council 31*, 2020 WL 919260, at *2 (N.D. Ill. Feb. 26, 2020) (dismissing *pro se* complaint because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Taylor-Reeves v. Marketstaff, Inc.*, 2019 WL 3716919, at *2, 3 (N.D. Ill. Aug. 7, 2019), *aff'd*, 803 F. App'x 29 (7th Cir. 2020)  (dismissing *pro se* complaint given lack of "sufficient factual matter" supporting the claim).

## III.    Mr. Williams Has Not Exhausted Any Retaliation Claim.

To the extent the Complaint alleges a cause of action for retaliation, and to the extent the Court determines that Mr. Williams could not and did not raise the retaliation claim in the prior case, that claim should be dismissed for a third independent reason: Mr. Williams failed to exhaust administrative remedies. Under Title VII, a plaintiff may bring only those claims that were included in the EEOC charge or that are "like or reasonably related to the allegations of the EEOC charge and growing out of such allegations." *See Fry v. Ascension Health Ministry Servs*., 2019 WL 1320320, at *3 (E.D. Wis. Mar. 22, 2019).

Here, to the extent Mr. Williams purports to bring a retaliation claim, he has not exhausted it. As discussed above, Williams filed two charges with the EEOC in connection with this lawsuit—but neither referenced retaliation. Indeed, when prompted in the first charge, Williams specifically indicated that he was *not* bringing a retaliation claim. *See* Ex. 8.

10

Courts have repeatedly dismissed retaliation claims under similar circumstances. *See, e.g.*, *Swearnigen-El v. Cook Cnty. Sheriff's Dept.*, 602 F.3d 852, 864 (7th Cir. 2010) (affirming dismissal on exhaustion grounds where plaintiff "did not check the box for retaliation" on charge); *Fry*, 2019 WL 1320320, at *3 (dismissing claim on exhaustion grounds where plaintiff "did not check the box for retaliation" in the charge and noting that "[n]ormally, retaliation and discrimination charges are not considered 'like or reasonably related' to one another" for exhaustion purposes). The same result is warranted here.[5]

## **CONCLUSION**

For the foregoing reasons, MCC respectfully requests that the Complaint be dismissed with prejudice.[6]


*[Signature Block Follows]*


---

[5] MCC does not interpret the Complaint to challenge the promotion decision as a separate purported adverse action, but to the extent it does, that claim would be untimely for not being brought within 300 days of the alleged incident. *See* Compl. at 2 (pre-2018 promotion decision); Ex. 8 (2023 charge); *Paul v. Chicago Transit Auth.*, 2022 WL 501363, at *1 (7th Cir. Feb. 18, 2022) (finding dismissal warranted because plaintiff did not "file a charge with the Equal Employment Opportunity Commission within 300 days" of the alleged adverse action). Should the case proceed—and it should not—the Company reserves the right to challenge the timeliness of Mr. Williams' Complaint on this and other bases.

[6] MCC notes that on February 6 and well within the applicable deadline, it executed Mr. Williams' requested waiver of service and sent the executed waiver by electronic and regular mail to Mr. Williams. *See* Ex. 11. Because Mr. Williams has not filed the executed waiver, MCC is including the waiver as an exhibit to this brief. *See id*. On March 12, 2024, counsel for MCC also informed the Eastern District of Wisconsin's case administrator of MCC's prior waiver of service. Pursuant to Civil Local Rule 7(j)(3), MCC has also attached here every unreported decision. *See* Ex. 12.

11

Respectfully submitted,

**MULTI-COLOR CORPORATION**

By: */s/ Kelly Smith-Haley*
One of its attorneys

Steven L. Brenneman (IL ARDC # 6190736)
Kelly Haley-Smith (IL ARDC # 6284024)
David S. Levine (IL ARDC # 6324239)
Fox, Swibel, Levin & Carroll, LLP
200 West Madison Street, Suite 3000
Chicago, IL 60606
(312) 224-1206 - Telephone
(312) 224-1202 - Facsimile

Dated:  April 1, 2024

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on April 1, 2024, she caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Eastern District of Wisconsin, using the Court's CM/ECF system, which shall send notification of such filing to all counsel of record, and caused the same to be mailed to Plaintiff via US Mail.

*/s/ Kelly Smith-Haley*
Kelly Smith-Haley

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHAD WILLIAMS
2920 N. 26th St.
Milwaukee, WI 53206

       Plaintiff,

           Case No.: **19-C-0847**

      v.

2019 JUN -6 P 4: 04
STEPHEN C. DRIES
CLERK
U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

FORT DEARBORN CO.
1530 MORSE AVE.
ELK GROVE VILLAGE IL 60007

---

PLAINTIFF'S COMPLAINT FOR DISCRIMINATION UNDER
TITLE VII

---

Now before the Court comes the Plaintiff Chad Williams who states the following:

1. Chad Williams is an adult resident of Milwaukee County and resides at 2920 N. 26th St. Milwaukee WI 53206.

2. Fort Dearborn Co is a domestic business with it's principal office located at 1530 Morse Ave. Elk Grove Village, IL 60007.

3. NCL Graphic Specialties is a division of the Defendant with it's principal office at N29W22960 Marjean Ln Waukesha WI 53186.

4. Mr. Williams is a present employee of the Defendant and has worked as a "Cutting Operator" for Defendant's division of NCL Graphics(hereinafter Defendant) since June of 2008.

1

5. During his time with the Defendant the Mr. Williams never had any significant disciplinary infractions.

6. His reviews as a cutter operator were very positive throughout the duration of his employment.

7. In January of 2018 two team lead positions became open within the Cutting Department and Mr. Williams applied for a position as a team lead.

8. Shortly thereafter Mr. Williams learned that the positions had been given to two other employees named Laura, who had worked for the Defendant for 8 years, and Bill, who worked for the Defendant than 5 years.

9. Compared to both employees Chad had worked for the Defendant for a longer period of time and prior to the promotions Chad was able to run more types of machines than the employees promoted.

10. Mr. Williams is able to run the flat bed machine, primary cutter, dye cutter 1-3(each are different machines and different sizes) and the round corner machines. In addition Mr. Williams is able to run the "auto trim."

11. In contrast Laura and Bill have been able to operate the primary cutter. When they run other machines, other employees have to assist them.

12. Typically a team lead would know how to use every machine. This is an essential function because team leads need to be able to fill any vacant position should an employee call in sick or be absent. In addition team leads are responsible for training new employees, neither Laura nor Bill would be capable of training new employees on the other machines for which they would be responsible.

13. When Mr. Williams approached production manager John Hitesman about these promotions he informed Mr. Williams that he needed the intelligence of the employees promoted. This justification is a pre-textual, neither employee were as qualified as Mr. Williams and one year later neither employee is fully capable of performing all of the functions of team lead.

CLAIM I: DISPARATE TREATMENT BASED ON RACE:

14. Plaintiff incorporates by reference paragraphs 1 through 13.

2

15. Neither Laura nor Bill were as qualified for the position of team lead as Mr. Williams and neither employee had as much seniority.

16. When the Defendant promoted less qualified personnel over Mr. Williams they discriminated against him on the basis of race.

*Wherefore the Plaintiff requests the following relief:*

A. Full back pay and compensatory damages.

B. Damages for emotional distress and punitive damages.

C. Reasonable Attorney's fees.

D. Whatever relief this Court deems just.

*Dated this 6th day of June 2019.*

*Chad Williams*

*Plaintiff*

Chad Williams

3

**EXHIBIT 2**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**CHAD WILLIAMS**
       **Plaintiff,**

    **v.**                              **Case No. 19-C-0847**

**NCL GRAPHIC SPECIALTIES, INC.,**
       **Defendant.**

---

## SCHEDULING ORDER

In accordance with the discussion held during the status conference on November 17, 2022, **IT IS ORDERED** that:

1.      All requests for discovery shall be served by a date sufficiently early so that all discovery in this case can be completed no later than **March 17, 2023**.

2.      a.      Dispositive motions must be served and filed on or before **May 19, 2023**.

            b.      All summary judgment motions and briefing thereon must comply with Civil L. R. 7 and 56(b). Any summary judgment motion filed against a pro se litigant must comply with Civil L. R. 56(a).

The foregoing schedule shall not be modified except upon a showing of good cause and by leave of the court.

**SO ORDERED** at Milwaukee, Wisconsin, this 17th day of November, 2022.

                 /s/Lynn Adelman
                 LYNN ADELMAN
                 District Judge

**EXHIBIT 3**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**CHAD WILLIAMS,**
             **Plaintiff,**

        **v.**                                                  **Case No. 19-C-0847**

**MULTI-COLOR CORPORATION, INC.,[1]**
             **Defendant.**

---

## DECISION AND ORDER

Chad Williams, proceeding pro se, filed this suit against his employer alleging that he was denied a promotion based on his race. Before me now is defendant's motion for summary judgment and plaintiff's renewed motion to appoint counsel.

## I. BACKGROUND

In stating the facts, I rely on defendant's statement of undisputed material facts. (ECF No. 60.) Plaintiff did not file a response to this statement or otherwise point to evidence in the record that contradicts the facts stated by defendant, and therefore I accept defendants' facts as true for purposes of summary judgment. *See* Civ. L.R. 56(b)(4); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (district court may rely on Local Rule 56(b)(4) to deem defendants' facts unopposed).

Defendant is a supplier of "premium label solutions," and its business involves printing and cutting labels that are affixed to various commercial products. (Def. Facts ¶ 3.) Plaintiff is an African-American male who worked for defendant from 2008 to 2022. During this time, plaintiff held the position of Cutter Operator. The duties of that position

---

[1] When plaintiff filed this suit, defendant was known as Fort Dearborn Company. I have updated the caption to reflect defendant's current name.

included setting up and operating cutting machines to cut product to proper length and width while maintaining quality requirements. Plaintiff's supervisor was John Hitesman, who was the operations manager of the Offset Division.

In February 2018, defendant had an opening for a "Team Lead" position in plaintiff's department on the eight-hour shift. The Team Lead performs the same duties as a Cutter Operator but also trains other employees and is responsible for solving problems that arise on the production line. Defendant told its employees to inform their supervisor if they were interested in the position. Plaintiff informed Hitesman that he wanted to be considered for the position.

Between March and April 2018, Hitesman interviewed plaintiff and other employees for the position. On May 7 2018, while plaintiff was working as a Cutter Operator, he was responsible for supervising a temporary employee. Plaintiff and the temporary employee became involved in a dispute that ended in a minor physical altercation. Plaintiff provided defendant with a written statement that described his view of what happened.

On May 29, 2018, Hitesman announced that one of plaintiff's coworkers, Laura Wojack, had been selected for the Team Lead position. Hitesman explained that he selected Wojack over plaintiff because she had: (i) the strongest interpersonal skills; (ii) the best ability to train incoming and existing employees; (iii) the best ability to drive defendant's improvements initiative in areas such as safety; (iv) strong technical skills; (v) a unique ability to organize teams and conduct herself as a stabilizing resource to her team members; (vi) the ability to effectively assess urgent issues that arise in the production areas; (vii) exhibited cooperation and receptiveness to direction in the

2

workplace; (viii) demonstrated initiative by volunteering her assistance to other team members; and (ix) awareness of the production areas as a whole, beyond her own personal duties and workspace. (Hitesman Decl. ¶ 12.)

At around this time, defendant restructured its shifts to address increased production needs. Prior to the restructuring, defendant asked employees to complete "shift preference forms" and identify their preferred shifts. (Def. Facts ¶ 25.) Plaintiff completed this form and indicated that he was interested only in eight-hour shifts, not the twelve-hour shifts that defendant also had available. During this same time frame, a Team Lead position for a twelve-hour shift became available. Plaintiff did not express interest in this position, and Hitesman later selected Bill Duray for it.

On June 6, 2019, plaintiff filed a pro se complaint alleging that defendant's choosing Wojack and Duray rather than him for the Team Lead positions was based on his race, in violation of Title VII of the Civil Rights Act of 1964. On May 23, 2020, attorneys with the law firm of Alan C. Olson & Associates, S.C., filed their appearance on behalf of plaintiff. However, they later withdrew in January 2021. A short time later, Attorney Maxwell C. Livingston filed his appearance on behalf of plaintiff. Livingston was allowed to withdraw on November 10, 2022. Since then, plaintiff has proceeded pro se. On April 21, 2023, plaintiff filed a motion to appoint counsel, which I denied in an order dated May 23, 2023.

Defendant filed its motion for summary judgment on May 18, 2023. Plaintiff has filed brief responses to defendant's motion and has renewed his motion to appoint counsel.

## II. DISCUSSION

3

**A.    Renewed Motion to Appoint Counsel**

Under 28 U.S.C. § 1915(e)(1), a court "may request an attorney to represent any person unable to afford counsel." Because the court does not have authority to pay counsel or compel a lawyer to represent a client pro bono, § 1915(e)(1) is understood as allowing the court to "recruit" pro bono counsel in a civil case. *Pruitt v. Mote*, 503 F.3d 647, 653–54 (7th Cir. 2007).

In an order dated May 23, 2023, I denied plaintiff's prior motion to appoint counsel for two reasons. The first was that plaintiff had not demonstrated that he was indigent. In his renewed motion, plaintiff seems to respond to this part of my order by explaining that he has been unemployed since October 2022. However, even if plaintiff's explanation were sufficient to show that he is indigent, I would still deny counsel for the other reason given in my earlier order. I reproduce that part of the order below:

> Moreover, this is a case alleging racial discrimination in employment in violation of Title VII of the Civil Rights Act of 1964. That statute contains a fee-shifting provision that allows a prevailing plaintiff to recover attorneys' fees. 42 U.S.C. § 2000e-5(k). Given this fee-shifting provision, many lawyers will represent plaintiffs under Title VII without requiring the plaintiff to pay legal fees in advance. This means that if plaintiff's case has merit, he should be able to find counsel whether or not he can afford to pay at this time. Indeed, plaintiff was able to find counsel to represent him—twice. Plaintiff's second lawyer felt so strongly that the case could settle that he asked the court to refer the case to a magistrate for a second and then a third time. Even after this lawyer withdrew, the defendant extended another offer to settle the case, which plaintiff rejected. This history suggests that plaintiff has an unrealistic view of the value of his claim and is unwilling to accept a reasonable settlement.

> For this reason, even if plaintiff could not afford counsel, I would not recruit a lawyer. Many lawyers have reviewed plaintiff's case and decided that it is not worth their labor, even though fee-shifting is available under Title VII and the defendant has expressed a willingness to settle. It would be inappropriate for me to intervene and ask another lawyer to take the

4

case. *Pickett*, 930 F.3d at 871; *see also Watts v. Kidman*, 42 F.4th 755 (7th Cir. 2022) (clarifying that district court may consider merits of plaintiff's claim when deciding whether to recruit counsel). Accordingly, I would deny plaintiff's motion even if he were indigent.

(ECF No. 62 at 3–4.)

## B.    Summary Judgment

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

As previously noted, plaintiff did not respond to defendants' proposed statement of undisputed facts, and therefore those facts are deemed admitted. Based on those facts, no reasonable jury could return a verdict for plaintiff. "The applicable standard at summary judgment is whether the evidence would permit a reasonable factfinder to conclude that racial discrimination caused the adverse employment action—here, the failure to promote." *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020). However, plaintiff has no direct evidence of a discriminatory motive. Moreover, he cannot avoid summary judgment under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Defendant has provided nondiscriminatory reasons for its actions, so even if plaintiff had satisfied his burden to make out a prima facie case, he would still need to present evidence that defendant's reasons were pretextual, meaning a lie. *Barnes*, 946 F.3d at 389–90. But plaintiff points

5

to no evidence of pretext. Defendant states that it hired Wojack rather than plaintiff because, among other reasons, she had superior interpersonal skills and was better suited to training other employees. Plaintiff's altercation with the temporary worker he was supposed to be training, which occurred while he was under consideration for the position, supports defendant's conclusion regarding his training abilities. On this record, the only reasonable conclusion is that defendant's reasons were genuine.

With respect to the twelve-hour lead position, defendant states that it did not hire plaintiff for this position because, among other reasons, plaintiff did not express interest in being considered for it. Plaintiff does not dispute that he was uninterested in working a job that required twelve-hour shifts or otherwise claim that he told defendant that he wanted to be considered for the twelve-hour lead position. Accordingly, a reasonable jury could not find that defendant's reason was pretextual.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's renewed motion to appoint counsel (ECF No. 64) is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (ECF No. 59) is **GRANTED**. The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 19th day of July, 2023.


/s/Lynn Adelman
LYNN ADELMAN
United States District Judge

6

# EXHIBIT 4

# United States District Court

## EASTERN DISTRICT OF WISCONSIN

**JUDGMENT IN A CIVIL CASE**

CHAD WILLIAMS,
      Plaintiff

    v.                                CASE NUMBER: 19-C-0847

MULTI-COLOR CORPORATION, INC.,
      Defendant

☐    **Jury Verdict.**  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

X    **Decision by Court.**  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

    IT IS ORDERED AND ADJUDGED that plaintiff shall take nothing by his complaint and judgment is entered in favor of defendant on the merits.

_____July 19, 2023_____
Date

Gina M. Colletti_____
Clerk

s/ K. Rafalski_____
(By) Deputy Clerk

# EXHIBIT 5

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF WISCONSIN
 2

 3   CHAD B. WILLIAMS,                    )
                                         )
 4                   Plaintiff,          )
                                         )
 5        vs.                            )   No. 19-cv-847
                                         )
 6   NCL GRAPHIC SPECIALTIES, INC. - A   )
     FORT DEARBORN COMPANY,              )
 7                                       )
                     Defendant.          )
 8
```

 9          The videoconference deposition of

10   CHAD B. WILLIAMS, called by the Defendant NCL Graphic

11   Specialties, Inc. for examination in Slinger,

12   Wisconsin, taken pursuant to notice and pursuant to the

13   Federal Rules of Civil Procedure for the United States

14   District Courts pertaining to the taking of

15   depositions, taken before Jennifer Vravis, Registered

16   Professional Reporter and Notary Public, appearing

17   remotely via videoconference, commencing at

18   10:06 a.m. on the 14th day of March, A.D., 2023.

19

20

21

22

23

24

312.236.6936
877.653.6736
Fax 312.236.6686   Case 2:23-cv-01643-LA    Filed 04/01/24    Page 31 of 192    Document 13
www.lexitaslegal.com

LEXITAS

Page 2

```
1    APPEARANCES:
2         CHAD B. WILLIAMS  (via videoconference)
          2920 North 26th Street
3         Milwaukee, Wisconsin 53206
          E-mail:  melorvia@att.net
4
               Appearing Pro Se;
5
          FOX, SWIBEL, LEVIN & CARROLL, LLP
6         MR. LOUIS BRANDON LISS  (via videoconference)
          MS. KELLY SMITH-HALEY  (via videoconference)
7         200 West Madison Street
          Suite 3000
8         Chicago, Illinois 60606
          Phone:  (312) 224-1200
9         E-mail:  bliss@foxswibel.com
               ksmithhaley@fslc.com
10
               On behalf of the Defendant.
11
12
13   ALSO PRESENT:  Ms. Erika Chandler
                    (via videoconference)
14
15
16                  * * * * * *
17
18
19
20
21
22
23
24
```

Page 3

```
1              I N D E X
2    WITNESS                               PAGE
3    CHAD B. WILLIAMS
4         Direct Examination by Mr. Liss  ........  5
5
6           E X H I B I T S
7    DEPOSITION EXHIBIT                    PAGE
8         No. 1  (EEOC file)                16
9         No. 2  (Plaintiff's Complaint For  17
               Discrimination Under Title VII)
10
          No. 3  (Job description - 7 pages)  17
11
          No. 4  (Plaintiff's Responses To   19
12             Defendant's First Set Of
               Discovery Requests To Plaintiff
13             Chad B. Williams)
14        No. 5  (EEO Handbook excerpt and    21
               acknowledgement)
15
          No. 6  (Response to Plaintiff's First  22
16             Request For Production Of
               Documents)
17
          No. 7  (NCL Annual Performance Reviews -  25
18             Chad Williams)
19        No. 8  (NCL Annual Performance Reviews -  29
               Laura Wojak)
20
          No. 9  (Team Member Counseling Records -  33
21             Chad Williams)
22        No. 10 (Team Member Counseling Records - 130
               Laura Wojak)
23
          No. 11 (Shift preferences - 3 pages)  39
24
```

Page 4

```
1              I N D E X
              (continued)
2
3           E X H I B I T S
4    DEPOSITION EXHIBIT                    PAGE
5         No. 12  (NCL Annual Performance Review -  146
               Bill Duray)
6
          No. 13  (May 8, 2018 handwritten      39
7              document - 3 pages)
8         No. 14  (June 7, 2015 memorandum)     144
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 5

```
1         THE COURT REPORTER:  The deposition of Chad
2    Williams is being conducted remotely via LegalView by
3    agreement.  Today's date is March 14th, 2023, and the
4    time is 10:06 a.m.
5         My name is Jennifer Vravis.
6         At the conclusion of today's deposition, I
7    will ask that counsel place their orders on the record.
8         Thank you.
9              (Witness sworn.)
10   WHEREUPON:
11        CHAD B. WILLIAMS,
12   called as a witness herein, having been first duly
13   sworn, was examined and testified as follows:
14             DIRECT EXAMINATION
15   BY MR. LISS:
16        Q.   Hi, Mr. Williams.  My name is Brandon
17   Liss -- Louis Brandon Liss, and I represent the
18   defendant in this matter.
19        Can you please state your name, date of
20   birth, and address for the record.
21        A.   Chad Williams.  1-13-68.
22   2920 North 26th Street, Milwaukee, Wisconsin 53206.
23        Q.   And because we're doing this by Zoom I'd
24   like to just confirm that there is no one else in the
```

312.236.6936
877.653.6736
Fax 312.236.6937
www.lexitaslegal.com

Case 2:23-cv-01643-LA    Filed 04/01/24    Page 32 of 192    Document 13

LEXITAS

*[Pages Intentionally Omitted]*

Page 130

1    Q.    Mr. Williams, can you tell me why you're no
2  longer employed with the company?
3    A.    I was wrongfully terminated.
4    MR. LISS:  Can we just take a quick five-minute
5  break?
6              (A recess is taken.)
7    MR. LISS:  Okay.  Let's go back on record.
8  BY MR. LISS:
9    Q.    Mr. Williams, could you tell me if you know
10 anything about Ms. Wojak's disciplinary record with the
11 company?
12   A.    No, I don't.
13   MR. LISS:  If we could briefly look at Exhibit 10.
14   THE COURT REPORTER:  (Complying.)
15 BY MR. LISS:
16   Q.    Mr. Williams, if you could just read the
17 documents quickly -- well, at your pace, but there's
18 only a few lines here on each page, there's only two
19 pages, and let me know when you're finished.
20              (Brief pause.)
21 BY MR. LISS:
22   Q.    Are you done?
23   A.    Yes.
24   Q.    Okay.  So can we agree that these two pages

Page 131

1  are team member counseling records for Ms. Wojak?
2    A.    I see her name Laura Wojak on the documents.
3    Q.    And do you agree that these documents
4  reflect team member counseling records from March 11th,
5  2013 and February 14, 2011?
6    A.    I don't know.
7    Q.    I'm sorry.  The court reporter is scrolling.
8          Do you see there the date at the top right
9  corner?
10   A.    Yeah.  February 14th, 2011.
11   Q.    And the other one, Multi-Color 2249, do you
12 see March 11th of 2013?
13   A.    March 11th, '13.
14   Q.    Okay.  And you read both of these documents,
15 right?
16   A.    Yes.
17   Q.    Anywhere in there did you see anything about
18 an altercation with another employee?
19   A.    I don't know.
20   Q.    Well, from what you read did you read
21 anything that discussed or described an altercation
22 with another employee?
23   A.    I don't feel comfortable answering questions
24 about Laura Wojak.

Page 132

1    Q.    Well, you've alleged in this case that she
2  was promoted and that that was discriminatory against
3  you on the basis of the fact that she's white and you
4  are black; is that correct?
5    A.    Yes.  Yes.
6    Q.    So we have to ask you questions regarding
7  Ms. Wojak because she is one of the -- she is one of
8  the two comparators that you identified in the case and
9  so we need to ask you about those allegations.
10         So here I'm asking you is there anything in
11 these -- this exhibit that reflects any altercation
12 with another employee.
13   A.    In these documents that you showed -- that's
14 on the screen right now these documents do not state
15 any altercation with someone else.
16   Q.    Okay.
17   A.    In these documents that you're showing me,
18 yes.
19   Q.    And do you have any knowledge of any other
20 counseling record or other disciplinary action taken by
21 the company with regard to Ms. Wojak?
22   A.    I don't know.
23   Q.    And you have no reason to believe that there
24 is any other form of disciplinary record other than

Page 133

1  these two pages in relation to Ms. Wojak's employment
2  with the company; is that correct?
3    A.    I don't know.
4    Q.    Okay.  Mr. Williams, would you agree that if
5  an employee at the company is a team lead already and
6  moves to another team lead position that that would not
7  be a promotion?
8    A.    I don't know.
9    Q.    Well, let me ask you again.  Maybe I can
10 clarify more.
11         If an employee has a team lead title -- Let
12 me back up.
13         Is it accurate to say that the company has
14 more than one team lead position, for example,
15 different departments have team leads?
16   A.    I don't know.
17   Q.    So as you sit here today it's your testimony
18 that you have no idea whether there's more than one
19 team lead at the company?
20   A.    I just --
21   Q.    Well, you allege in your complaint that you
22 were looking for two different team lead positions,
23 right?
24   A.    I don't know how many team lead positions is

*[Pages Intentionally Omitted]*

Page 174

1    Q.   Can you be more specific?
2         What specific issues did you talk about with
3   the doctor -- excuse me -- with the --
4    A.   No, I can't talk to you about what I talk to
5   her about, can I, that's --
6    Q.   I'm sorry?
7    A.   Isn't that client -- professional client --
8   I just let her know everything that's going on in my
9   life.
10   MR. LISS:  Can we go off the record for one
11  minute?
12        Just take a five-minute break.  Thanks.
13             (A recess is taken.)
14  BY MR. LISS:
15   Q.   So I was asking you about your treatment
16  with Ms. Stiff and I asked that you tell me what you
17  talked about with her and you were sounding like you
18  didn't want to answer so I'm going to ask the question
19  again though because you put the emotional stress
20  damages at issue in the case and so in order for us to
21  fairly defend our client's interest we have to have an
22  understanding of what happened and how you have an
23  alleged basis for the damages you're asserting.
24        So I'll ask you again since you put

Page 175

1   emotional stress at issue in the case for damages
2   purposes what have you spoken about with Ms. Stiff.
3    A.   I would think that's patient-client
4   privilege, isn't it, I would say.
5    Q.   Well, you filed a public lawsuit against
6   Multi-Color --
7    A.   Right.
8    Q.   -- and allege damages as a result of that
9   causing you emotional distress so you placed this at
10  issue in the case and so we are asking this information
11  because we are entitled to fairly defend our client.
12  In order to do so we have to take discovery on this and
13  have to ask you the basis for your claim.
14   A.   Right.  I understand that.  I understand
15  that.
16   Q.   So I'll ask you again what did you all talk
17  about in your sessions with Ms. Stiff.
18   A.   We talked about how stressed out I am right
19  now.
20   Q.   And does it pertain to this case and the
21  allegations in this case is that all you've talked
22  about with her?
23   A.   Last time I talked to her we talked about
24  how I'm unemployed right now that's what we talked

Page 176

1   about.
2    Q.   Okay.  So as it pertains to this case and
3   the allegations of emotional distress damages is it
4   accurate to say the only thing you've talked about with
5   Ms. Stiff is the issue of you being stressed and the
6   fact that you're unemployed?
7    A.   We talked about how my life is ruined since
8   they fired me that's what we talked about.
9    Q.   How specifically?
10   A.   We talked about -- We talked about an
11  exercise I can use to stop my anger that's what we
12  talked about.
13   Q.   And so the emotional distress that you're
14  discussing that's a direct result of specifically your
15  termination from employment?
16   A.   That's where it starts, yes.
17   Q.   And am I correct that if Ms. Stiff is a
18  therapist and not a doctor she would not have ever
19  diagnosed you with any medical condition?
20   A.   I don't know.
21   Q.   Has she ever told you that she's diagnosing
22  you with a condition, Mr. Williams?
23        It looks like you're typing.
24        Are you communicating with somebody right

Page 177

1   now?
2    A.   No, I'm not.
3    Q.   Okay.  So I'll just ask the question one
4   more time.
5    A.   Oh.
6    Q.   Is it accurate the to say that to the best
7   of your knowledge and recollection Ms. Stiff has never
8   diagnosed you with any medical condition?
9    A.   I went there to seek treatment and we talked
10  about my mental state at the time.
11   Q.   And am I correct that as a therapist and not
12  a doctor Ms. Stiff has never prescribed you any
13  medication?
14   A.   I'm not on any medication at the moment.
15   Q.   And would I be accurate in stating that
16  based on your answers you've never been on any
17  medication as a result of the psychological treatment
18  in connection with this case?
19   A.   Medications?
20   Q.   You told me that Ms. Lauwasser did not
21  prescribe you any medication, and I'm just asking is it
22  accurate to also say that Ms. Stiff who you said was
23  the only other treating therapist or doctor that also
24  did not prescribe you any medication.

312.236.6936
877.653.6736
Fax 312.236.6968
www.lexitaslegal.com
Case 2:23-cv-01643-LA    Filed 04/01/24    Page 36 of 192    Document 13



# EXHIBIT 6

6-7-23

Chad Williams                                    Case No. 19-CV-847
2920 N. 26th St.
Milwaukee, WI. 53206

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED
2023 JUN -8 P 1: 53
CLERK OF COURT

Honorable Lynn Adelman
United States District Court
Eastern District of Wisconsin
517 E. Wisconsin Ave.
Milwaukee, WI. 53202

Dear Judge Adelman,

In 2019, I was a full time employee. In
October 2022, I was wrongfully terminated
from my job and have been unemployed ever
since. While my case remains in court, I
would prefer and feel more comfortable with
a court appointed attorney who will remove
all my anxieties of consulting with
several attorneys about my case and all
of them refusing to represent me in my
case. Again, can you appoint an attorney to
my case and the entirety of it? Thank you
for your time in this matter and have a
great day.

Sincerely,
Chad Williams
Chad Williams

# EXHIBIT 7

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

Chad Williams

Plaintiff,

NOTICE OF APPEAL

v.

Multi-Color Corp. Inc.

Case No.  19-cv-847

Defendant.

Notice is given that the plaintiff/defendant, _Chad Williams_ , appeals to the

United States Court of Appeals for the Seventh Circuit from the final judgment entered in this action

on _July 19, 2023_

Dated and signed this _27th_ day of _July_ , _2023_.

_Milwaukee_ , Wisconsin.

_Chad Williams_
(Signature)

_2920 N. 26th St._
(Street Address)

_Milwaukee, WI. 93206_
(City, State, Zip)

Chad Williams
2920 N. 26th St.
Milwaukee, WI. 53206

Case No. 19-CV-847

July 27, 2023

Everett Mckinley Dirksen
United States Courthouse
219 S. Dearborn St. Rm. 2722
Chicago, IL. 60604

U.S. DISTRICT COURT
2023 JUL 27 A 10: 30
CLERK OF COURT

Dear Judge Dirksen,

I'm writing to you regarding the recent decision of a summary judgement delivered on July 19, 2023. I'm appealing this decision because I desire a jury trial and reserve all rights to do so. Also, the defendant has not met any requirements that warrant a summary judgement. In June 2008, I started working at this company and in June 2018 I filed a discrimination charge. After years of egregious acts of retaliation, I was wrongfully terminated in October 2022 and been unemployed ever since. I ask that you reconsider this decision and thank you for your time in this matter.

Sincerely,
Chad Williams
Chad Williams

Attached: The Complaint. The Final Judgement

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED

2023 JUL 27 A 10: 30

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

CHAD WILLIAMS,
        **Plaintiff,**

    **v.**                                **Case No. 19-C-0847**

MULTI-COLOR CORPORATION, INC.,[1]
        **Defendant.**

## DECISION AND ORDER

Chad Williams, proceeding pro se, filed this suit against his employer alleging that he was denied a promotion based on his race. Before me now is defendant's motion for summary judgment and plaintiff's renewed motion to appoint counsel.

## I. BACKGROUND

In stating the facts, I rely on defendant's statement of undisputed material facts. (ECF No. 60.) Plaintiff did not file a response to this statement or otherwise point to evidence in the record that contradicts the facts stated by defendant, and therefore I accept defendants' facts as true for purposes of summary judgment. *See* Civ. L.R. 56(b)(4); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (district court may rely on Local Rule 56(b)(4) to deem defendants' facts unopposed).

Defendant is a supplier of "premium label solutions," and its business involves printing and cutting labels that are affixed to various commercial products. (Def. Facts ¶ 3.) Plaintiff is an African-American male who worked for defendant from 2008 to 2022. During this time, plaintiff held the position of Cutter Operator. The duties of that position

---

[1] When plaintiff filed this suit, defendant was known as Fort Dearborn Company. I have updated the caption to reflect defendant's current name.

included setting up and operating cutting machines to cut product to proper length and width while maintaining quality requirements. Plaintiff's supervisor was John Hitesman, who was the operations manager of the Offset Division.

In February 2018, defendant had an opening for a "Team Lead" position in plaintiff's department on the eight-hour shift. The Team Lead performs the same duties as a Cutter Operator but also trains other employees and is responsible for solving problems that arise on the production line. Defendant told its employees to inform their supervisor if they were interested in the position. Plaintiff informed Hitesman that he wanted to be considered for the position.

Between March and April 2018, Hitesman interviewed plaintiff and other employees for the position. On May 7 2018, while plaintiff was working as a Cutter Operator, he was responsible for supervising a temporary employee. Plaintiff and the temporary employee became involved in a dispute that ended in a minor physical altercation. Plaintiff provided defendant with a written statement that described his view of what happened.

On May 29, 2018, Hitesman announced that one of plaintiff's coworkers, Laura Wojack, had been selected for the Team Lead position. Hitesman explained that he selected Wojack over plaintiff because she had: (i) the strongest interpersonal skills; (ii) the best ability to train incoming and existing employees; (iii) the best ability to drive defendant's improvements initiative in areas such as safety; (iv) strong technical skills; (v) a unique ability to organize teams and conduct herself as a stabilizing resource to her team members; (vi) the ability to effectively assess urgent issues that arise in the production areas; (vii) exhibited cooperation and receptiveness to direction in the

2

Case 2:19-cv-00847-LA   Filed 07/19/23   Page 43 of 192   Document 72-13

workplace; (viii) demonstrated initiative by volunteering her assistance to other team members; and (ix) awareness of the production areas as a whole, beyond her own personal duties and workspace. (Hitesman Decl. ¶ 12.)

At around this time, defendant restructured its shifts to address increased production needs. Prior to the restructuring, defendant asked employees to complete "shift preference forms" and identify their preferred shifts. (Def. Facts ¶ 25.) Plaintiff completed this form and indicated that he was interested only in eight-hour shifts, not the twelve-hour shifts that defendant also had available. During this same time frame, a Team Lead position for a twelve-hour shift became available. Plaintiff did not express interest in this position, and Hitesman later selected Bill Duray for it.

On June 6, 2019, plaintiff filed a pro se complaint alleging that defendant's choosing Wojack and Duray rather than him for the Team Lead positions was based on his race, in violation of Title VII of the Civil Rights Act of 1964. On May 23, 2020, attorneys with the law firm of Alan C. Olson & Associates, S.C., filed their appearance on behalf of plaintiff. However, they later withdrew in January 2021. A short time later, Attorney Maxwell C. Livingston filed his appearance on behalf of plaintiff. Livingston was allowed to withdraw on November 10, 2022. Since then, plaintiff has proceeded pro se. On April 21, 2023, plaintiff filed a motion to appoint counsel, which I denied in an order dated May 23, 2023.

Defendant filed its motion for summary judgment on May 18, 2023. Plaintiff has filed brief responses to defendant's motion and has renewed his motion to appoint counsel.

## II. DISCUSSION

3

## A. Renewed Motion to Appoint Counsel

Under 28 U.S.C. § 1915(e)(1), a court "may request an attorney to represent any person unable to afford counsel." Because the court does not have authority to pay counsel or compel a lawyer to represent a client pro bono, § 1915(e)(1) is understood as allowing the court to "recruit" pro bono counsel in a civil case. *Pruitt v. Mote*, 503 F.3d 647, 653–54 (7th Cir. 2007).

In an order dated May 23, 2023, I denied plaintiff's prior motion to appoint counsel for two reasons. The first was that plaintiff had not demonstrated that he was indigent. In his renewed motion, plaintiff seems to respond to this part of my order by explaining that he has been unemployed since October 2022. However, even if plaintiff's explanation were sufficient to show that he is indigent, I would still deny counsel for the other reason given in my earlier order. I reproduce that part of the order below:

> Moreover, this is a case alleging racial discrimination in employment in violation of Title VII of the Civil Rights Act of 1964. That statute contains a fee-shifting provision that allows a prevailing plaintiff to recover attorneys' fees. 42 U.S.C. § 2000e-5(k). Given this fee-shifting provision, many lawyers will represent plaintiffs under Title VII without requiring the plaintiff to pay legal fees in advance. This means that if plaintiff's case has merit, he should be able to find counsel whether or not he can afford to pay at this time. Indeed, plaintiff was able to find counsel to represent him—twice. Plaintiff's second lawyer felt so strongly that the case could settle that he asked the court to refer the case to a magistrate for a second and then a third time. Even after this lawyer withdrew, the defendant extended another offer to settle the case, which plaintiff rejected. This history suggests that plaintiff has an unrealistic view of the value of his claim and is unwilling to accept a reasonable settlement.
>
> For this reason, even if plaintiff could not afford counsel, I would not recruit a lawyer. Many lawyers have reviewed plaintiff's case and decided that it is not worth their labor, even though fee-shifting is available under Title VII and the defendant has expressed a willingness to settle. It would be inappropriate for me to intervene and ask another lawyer to take the

4

case. *Pickett*, 930 F.3d at 871; *see also Watts v. Kidman*, 42 F.4th 755 (7th Cir. 2022) (clarifying that district court may consider merits of plaintiff's claim when deciding whether to recruit counsel). Accordingly, I would deny plaintiff's motion even if he were indigent.

(ECF No. 62 at 3–4.)

## B.  Summary Judgment

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

As previously noted, plaintiff did not respond to defendants' proposed statement of undisputed facts, and therefore those facts are deemed admitted. Based on those facts, no reasonable jury could return a verdict for plaintiff. "The applicable standard at summary judgment is whether the evidence would permit a reasonable factfinder to conclude that racial discrimination caused the adverse employment action—here, the failure to promote." *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020). However, plaintiff has no direct evidence of a discriminatory motive. Moreover, he cannot avoid summary judgment under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Defendant has provided nondiscriminatory reasons for its actions, so even if plaintiff had satisfied his burden to make out a prima facie case, he would still need to present evidence that defendant's reasons were pretextual, meaning a lie. *Barnes*, 946 F.3d at 389–90. But plaintiff points

5

to no evidence of pretext. Defendant states that it hired Wojack rather than plaintiff because, among other reasons, she had superior interpersonal skills and was better suited to training other employees. Plaintiff's altercation with the temporary worker he was supposed to be training, which occurred while he was under consideration for the position, supports defendant's conclusion regarding his training abilities. On this record, the only reasonable conclusion is that defendant's reasons were genuine.

With respect to the twelve-hour lead position, defendant states that it did not hire plaintiff for this position because, among other reasons, plaintiff did not express interest in being considered for it. Plaintiff does not dispute that he was uninterested in working a job that required twelve-hour shifts or otherwise claim that he told defendant that he wanted to be considered for the twelve-hour lead position. Accordingly, a reasonable jury could not find that defendant's reason was pretextual.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's renewed motion to appoint counsel (ECF No. 64) is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (ECF No. 59) is **GRANTED**. The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 19th day of July, 2023.

/s/Lynn Adelman
LYNN ADELMAN
United States District Judge

6

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED
2023 JUL 27 A 10 30
CLERK OF COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHAD WILLIAMS
2920 N. 26th St.
Milwaukee, WI 53206

       Plaintiff,

       v.

FORT DEARBORN CO.
1530 MORSE AVE.
ELK GROVE VILLAGE IL 60007

Case No.: **19-C-0847**

2019 JUN -6 P 4: 04
STEPHEN C. DRIES
CLERK
U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

## PLAINTIFF'S COMPLAINT FOR DISCRIMINATION UNDER TITLE VII

Now before the Court comes the Plaintiff Chad Williams who states the following:

1. Chad Williams is an adult resident of Milwaukee County and resides at 2920 N. 26th St. Milwaukee WI 53206.

2. Fort Dearborn Co is a domestic business with it's principal office located at 1530 Morse Ave. Elk Grove Village, IL 60007.

3. NCL Graphic Specialties is a division of the Defendant with it's principal office at N29W22960 Marjean Ln Waukesha WI 53186.

4. Mr. Williams is a present employee of the Defendant and has worked as a "Cutting Operator" for Defendant's division of NCL Graphics(hereinafter Defendant) since June of 2008.

1

5. During his time with the Defendant the Mr. Williams never had any significant disciplinary infractions.

6. His reviews as a cutter operator were very positive throughout the duration of his employment.

7. In January of 2018 two team lead positions became open within the Cutting Department and Mr. Williams applied for a position as a team lead.

8. Shortly thereafter Mr. Williams learned that the positions had been given to two other employees named Laura, who had worked for the Defendant for 8 years, and Bill, who worked for the Defendant than 5 years.

9. Compared to both employees Chad had worked for the Defendant for a longer period of time and prior to the promotions Chad was able to run more types of machines than the employees promoted.

10. Mr. Williams is able to run the flat bed machine, primary cutter, dye cutter 1-3(each are different machines and different sizes) and the round corner machines. In addition Mr. Williams is able to run the "auto trim."

11. In contrast Laura and Bill have been able to operate the primary cutter. When they run other machines, other employees have to assist them.

12. Typically a team lead would know how to use every machine. This is an essential function because team leads need to be able to fill any vacant position should an employee call in sick or be absent. In addition team leads are responsible for training new employees, neither Laura nor Bill would be capable of training new employees on the other machines for which they would be responsible.

13. When Mr. Williams approached production manager John Hitesman about these promotions he informed Mr. Williams that he needed the intelligence of the employees promoted. This justification is a pre-textual, neither employee were as qualified as Mr. Williams and one year later neither employee is fully capable of performing all of the functions of team lead.

CLAIM I: DISPARATE TREATMENT BASED ON RACE:

14. Plaintiff incorporates by reference paragraphs 1 through 13.

15. Neither Laura nor Bill were as qualified for the position of team lead as Mr. Williams and neither employee had as much seniority.
16. When the Defendant promoted less qualified personnel over Mr. Williams they discriminated against him on the basis of race.

*Wherefore the Plaintiff requests the following relief:*

A. Full back pay and compensatory damages.

B. Damages for emotional distress and punitive damages.

C. Reasonable Attorney's fees.

D. Whatever relief this Court deems just.

*Dated this 6th day of June 2019.*

*Chad Williams*

*Plaintiff*

Chad Williams

# United States District Court

## EASTERN DISTRICT OF WISCONSIN

**JUDGMENT IN A CIVIL CASE**

CHAD WILLIAMS,
Plaintiff

v.

CASE NUMBER: 19-C-0847

MULTI-COLOR CORPORATION, INC.,
Defendant

☐ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

X **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that plaintiff shall take nothing by his complaint and judgment is entered in favor of defendant on the merits.

_____July 19, 2023_____
Date

Gina M. Colletti_____
Clerk

s/ K. Rafalski_____
(By) Deputy Clerk

# EXHIBIT 8



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**CHARGE OF DISCRIMINATION**

EEOC Form 5A (October 2017)

For Official Use Only – Charge Number:
443–2023–02778

| | |
|---|---|
| **Personal Information** | First Name: _Chad_  MI: _B_  Last Name: _Williams_ <br> Address: _2920 N. 26th St._  Apt.: _____ <br> City: _Milwaukee_  County: _Milwaukee_  State: _WI_  Zip Code: _53206_ <br> Phone _(414) 215-1126_ Home ☐ Work ☐ Cell ☑ Email: _melorvie@att.net_ |
| **Who do you think discriminated against you?** | Employer ☑  Union ☐  Employment Agency ☐  Other Organization ☐ <br> Organization Name: _MCC_ <br> Address: _N29 W22960 Marjean Ln._  Suite: _____ <br> City: _Waukesha_  State: _WI_  Zip Code: _53186_  Phone _(262) 832-6100_ |
| **Why you think you were discriminated against?** | Race ☑  Color ☐  Religion ☐  Sex ☐  National Origin ☐  Age ☐ <br> Disability ☐  Genetic Information ☐  Retaliation ☐  Other ☐ (specify) |
| **What happened to you that you think was discriminatory?** | Date of <u>most recent job action</u> you think was discriminatory: _10-23-22_ <br> Also describe briefly <u>each job action</u> you think was discriminatory and when it happened (estimate). <br><br> On October 23, 2022, I was wrongfully terminated from my job. |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures. <br><br> I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination. <br><br> **I declare under penalty of perjury that the above is true and correct.** <br> Signature: _Chad B. Williams_  Date: _8-1-23_ |

# EXHIBIT 9

# AMENDED CHARGE OF DISCRIMINATION

| | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br><br>FEPA | 443-2023-02778 |

| **Wisconsin Equal Rights Division** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name (*indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.*) | Home Phone | Year of Birth |
|---|---|---|
| Mr. Chad B. Williams Sr. | (414) 215-1126 | |

**Street Address**

2920 N. 26TH. ST.

MILWAUKEE, WI 53206

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Multi-Color Corporation | 501+ Employees | |

**Street Address**

N29W22960 Marjean Ln. Waukesha WI.

WAUKESHA, WI 53186

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| Race | 10/23/2022 | 10/23/2022 |

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

I began my employment with Respondent on August 12, 2008, as a Machine Operator. My most recent position was Auto Cutter Operator. On October 11, 2022, I had an incident with my supervisor. I talked with Human Resources and management a few days after the incident and was told an investigation would be conducted. On October 23, 2022, I was discharged for insubordination.

I believe I was discriminated against based on my race (African American), in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| *10·31·23*<br>Date      *Chad B. Williams*<br>Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

# EXHIBIT 10

6-7-23

Chad Williams                              Case No. 19-CV-847
2920 N. 26th St.
Milwaukee, WI 53206

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED
2023 JUN -8 P 1:52
___ OF COURT

Honorable Lynn Adelman
United States District Court
Eastern District of Wisconsin
517 E. Wisconsin Ave.
Milwaukee, WI. 53202

Dear Judge Adelman,

Years and years of egregious acts of
discrimination and retaliation will go
unseen, unnoticed, and unpunished if a
summary judgement is granted in my case.
I have a right to a jury trial in my case
and I reserve all my rights to do so. For
the foregoing reasons and all the others
discussed in my complaint, the defendant's
summary judgement motion should be
denied. Thank you for your time in this
matter and have a great day.


Sincerely,
Chad Williams
Chad Williams

# EXHIBIT 11

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| **Chad Bernard Williams, Sr.** ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No. 23-CV-1643 |
| **Multi-Color Corporation** ) | |
| *Defendant* ) | |

## WAIVER OF THE SERVICE OF SUMMONS

To: _____Chad Bernard Williams, Sr._____
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

     I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

     I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

     I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

     I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

                                     */s/Steven L. Brenneman*

                              *Signature of the attorney or unrepresented party*

Multi-Color Corporation
*Printed name of party waiving service of summons*

                              Steven L. Brenneman
                                 *Printed name*

          200 W. Madison St., Suite 3000, Chicago, IL 60606

                                  *Address*

  sbrenneman@foxswibel.com   ksmithhaley@foxswibel.com

                                *E-mail address*

          312-224-1206  or  312-224-1217

                                *Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

     Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

     "Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

     If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

     If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| **Chad Bernard Williams, Sr.** | ) |
| *Plaintiff* | ) |
| v. | ) |
| **Multi-Color Corporation** | ) |
| *Defendant* | ) |

Civil Action No. 23-CV-1643

## WAIVER OF THE SERVICE OF SUMMONS

To: _____Chad Bernard Williams, Sr._____
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

*/s/Steven L. Brenneman*
_____
*Signature of the attorney or unrepresented party*

Multi-Color Corporation
*Printed name of party waiving service of summons*

Steven L. Brenneman
*Printed name*

200 W. Madison St., Suite 3000, Chicago, IL 60606
*Address*

sbrenneman@foxswibel.com    ksmithhaley@foxswibel.com
*E-mail address*

312-224-1206    or    312-224-1217
*Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| CHAD BERNARD WILLIAMS, SR. | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:23-cv-1643 |
| v. | ) |
| | ) |
| MULTI-COLOR CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on February 6, 2024, she caused the foregoing document to be served upon Plaintiff Chad William's last known address below via email and FedEx, pursuant to Federal Rule of Civil Procedure 5(b)(2)(C):

Chad Williams
2920 N. 26th Street.
Milwaukee, WI 53206
Email: melorvia@att.net

Dated: February 6, 2024

**MULTI-COLOR CORPORATION**

By: /s/ *Steven L. Brenneman*
    One of its attorneys

Steven L. Brenneman (IL ARDC # 6190736)
Kelly Smith-Haley (IL ARDC # 6284024)
Fox Swibel Levin & Carroll LLP
200 W. Madison St., Suite 3000
Chicago, IL 60606
sbrenneman@foxswibel.com
ksmithhaley@foxswibel.com
***Counsel for Multi-Color Corporation***

# EXHIBIT 12

2014 WL 555311
Only the Westlaw citation is currently available.
United States District Court,
E.D. Wisconsin.

Joseph L. BELL, Jr., Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 13–CV–1271.
|
Feb. 12, 2014.

**Attorneys and Law Firms**

Joseph Lee Bell, Jr., Milwaukee, WI, pro se.

Christian R. Larsen, United States Department of Justice, Milwaukee, WI, for Defendant.

**DECISION AND ORDER ON DEFEDANT'S MOTION TO DISMISS**

NANCY JOSEPH, United States Magistrate Judge.

 **\*1** On November 12, 2013, the plaintiff, Joseph L. Bell, Jr. ("Bell"), filed a *pro se* complaint against Dr. Lynn Hermanns ("Hermanns"), an employee of the Clement J. Zablocki V.A. Medical Center ("Medical Center"). The Court amended the caption to substitute the United States of America (the "United States") for Lynn Hermanns as the proper defendant. (Docket # 6.) Presently before the Court is the United States' motion to dismiss Bell's complaint for failure to exhaust his administrative remedies under the Federal Tort Claims Act ("FTCA"). (Docket # 13.) The United States argues the complaint should either be dismissed for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), or for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons articulated below, the defendant's motion is granted and Bell's complaint is dismissed.

**BACKGROUND**

The allegations in Bell's complaint arise from an incident on October 24, 2013. Bell went to the Emergency Department of the Medical Center that morning for an appointment with Hermanns concerning back pain. Bell alleges that Hermanns refused to provide him Oxycodone, which had been prescribed to him in the past. In the afternoon, Bell went back to the Medical Center and was again denied Oxycodone, this time by Dr. David Tonneum who had been given instructions by Hermanns not to prescribe Oxycodone to Bell. As a result of not being prescribed Oxycodone, Bell is seeking money damages for his pain and suffering, mental and emotional anguish, and for the improper denial of his pain medication. This Court granted Bell leave to proceed *in forma pauperis* after screening Bell's complaint.

**DISCUSSION**

The United States is sovereign and immune from being sued without its consent. *See Macklin v. United States, 300 F.3d 814, 820 (7th Cir.2002).* A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and is strictly construed, in terms of its scope, in favor of the sovereign. *Lane v. Pena, 518 U.S. 187, 192 (1996).* Therefore, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit. *United States v. Sherwood, 312 U.S. 584, 586 (1941).*

Congress has waived the Government's sovereign immunity in enacting the FTCA by providing an exclusive remedy for certain torts of federal employees acting within the scope of their employment. 28 U.S.C. §§ 2671 et seq. *See also United States v. Orleans, 425 U.S. 807, 813 (1976).* Specifically, under the FTCA, the United States is responsible for the tortious conduct of its employees "in the same manner and to the same extent as a private individual under like circumstances." *See* 28 U.S.C. § 2674. However, the FTCA requires the exhaustion of administrative remedies prior to suing the federal government in tort. 28 U.S.C. § 2675(a); *see also Frey v. Envtl. Prot. Agency, 270 F.3d 1129, 1135 (7th Cir.2001); Kanar v. United States, 118 F.3d 527, 528 (7th Cir.1997).* Specifically, the exhaustion requirement reads as follows:

 **\*2** An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

1

The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). The exhaustion requirement has been strictly applied, meaning that it is not enough for a plaintiff to file an administrative claim soon after beginning his lawsuit. McNeil v. United States, 508 U.S. 106, 111–12 (1993).

As the government states, whether the exhaustion requirement is jurisdictional in nature is not entirely clear. Although the Seventh Circuit has held that a failure to exhaust administrative remedies deprives the district court of subject matter jurisdiction over the claim, see Garcia v. Meza, 235 F.3d 287, 290 (7th Cir.2000), its more recent discussions seem to indicate that the failure to exhaust is probably not a jurisdictional matter, but rather a precondition to the plaintiff's statutory right to relief, see Frey, 270 F.3d at 1135. The Frey court noted in dicta that it "might be appropriate to revisit the jurisdictional language in decisions such as Garcia," because it was "not so sure" that the holding that failure to exhaust results in a deprivation of subject matter jurisdiction "is technically correct." Id. Since Frey, courts have analyzed a failure to exhaust as a failure to comply with the elements of a federal statute, thereby addressing exhaustion under Fed.R.Civ.P. 12(b)(6) (failure to state a claim), not 12(b)(1) (subject matter jurisdiction). See Kolodiy v. United States, No. 11–CV–239, 2011 WL 3489934 (E.D.Wis. Aug. 9, 2011) (addressing the government's motion to dismiss for failure to exhaust administrative remedies under Fed.R.Civ.P. 12(b)(6)); Feistel v. United States Postal Service, No. 08–CV–75, 2008 WL 2048278 (E.D.Wis. May 12, 2008) (taking judicial notice of exhaustion defects and dismissing plaintiffs' claim under Rule 12(b)(6)); Repa v. Roadway Express, Inc., No. 03–CV–1071, 2005 WL 2275939, *1 n. 1 (E.D.Wis. Sept. 19, 2005) (quoting Frey, 270 F.3d at 1132) ("[W]hen an individual fails to comply with the elements of a federal statute, the individual 'will not prevail, but the court's power to adjudicate the case is clear, and dismissal should be predicated on Federal Rule of Civil Procedure 12(b)(6), not on 12(b)(1).' ").

Thus, I will address the defendant's motion to dismiss Bell's complaint for failure to exhaust administrative remedies under Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The plausibility standard is not akin to the probability standard. Id. A plaintiff's complaint must contain enough "[f]actual allegations ... to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

**\*3** Bell's complaint, and the supplements filed thereto, are silent on exhaustion. (Docket # 1, 10, 11.) Generally, if a court must look outside the pleadings to rule on a 12(b)(6) motion, it is necessary to convert the motion to dismiss into a summary judgment motion under Fed.R.Civ.P. 12(d). However, I may take judicial notice of the fact that a plaintiff has failed to exhaust his administrative remedies. See Feistel, 2008 WL 2048278, at \*1 (taking judicial notice of the plaintiffs' failure to timely exhaust); Palay v. United States, 349 F.3d 418, 425 n. 5 (7th Cir.2003) (stating that "in resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record").

The United States, by way of the declaration of Michael T. Newman, Assistant Regional Counsel at the United States Department of Veterans Affairs, asserts that there is no record of Bell having filed an administrative tort claim against the Department of Veterans Affairs. (Declaration of Michael T. Newman ("Newman Decl.") ¶ 5, Docket # 14–1.) Newman further asserts that he has conducted a search of both the Department of Veterans Affairs' hard files and computer databases pertaining to tort claims filed against the Department of Veterans Affairs for care provided at the Medical Center and has found no record of any claim filed by Bell. (Id. ¶¶ 4–5.) Although Bell's complaint and supplements thereto fail to address whether Bell exhausted his administrative remedies prior to filing this case, his failure to do so is captured within the Department of Veterans Affairs' records. Such records are reliable and, in this case, uncontested. Therefore, I take judicial notice of Bell's failure to exhaust.

Moreover, the FTCA provides that a claimant shall not initiate a court action unless the agency presented with his claim has finally denied it. If an agency fails to make a final disposition of the claim within six months after it is filed, the claim will be deemed finally denied. 28 U.S.C. § 2675(a). Although Bell's response to the defendant's motion regarding exhaustion is difficult to understand, it appears he is arguing that he fully exhausted his claim by presenting his documents to Newman. (Docket # 15 at 1.) Bell does not state when he presented

Newman with his claim, nor does he state when or if the claim was denied by the Department of Veterans Affairs. However, Bell's complaint stems from an incident on October 24, 2013. Therefore, even if Bell did present his claim to the Department of Veterans Affairs immediately after it occurred, dismissal would still be appropriate because he filed this instant action well before the six-month period for deeming a claim "finally denied." *See* 28 U.S.C. § 2675.

Accordingly, Bell's claims will be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion to dismiss (Docket # 13) is hereby **GRANTED** and the plaintiff's complaint is hereby **DISMISSED;**

 **\*4 IT IS FURTHER ORDERED** that this case is **DISMISSED;**

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 555311

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:23-cv-01643-LA   Filed 04/01/24   Page 65 of 192   Document 13

2002 WL 1592774
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Webelene BETHEA, Plaintiff,

v.

ILLINOIS STATE POLICE, Defendant.

No. 01 C 9518.
|
July 19, 2002.

**Synopsis**

Employee sued former employer, the Illinois State Police, alleging unlawful race discrimination and retaliation and wrongful termination. Employer moved to dismiss. The District Court, Ruben Castillo, J., held that res judicata barred employee from bringing lawsuit against former employer.

Motion granted.

West Headnotes (3)

**[1]** **Res Judicata** 👉 Discrimination

Allegations made by employee in her first and second lawsuits against former employer arose out of the same core of operative facts and, thus, were identical, for res judicata purposes, where, in both complaints, employee claimed that former employer subjected her to discriminatory treatment during her tenure as an employee, both complaints alleged that employee was disciplined more harshly than other employees for making mistakes and denied access to peer review program because she spoke out against former employer's allegedly discriminatory employment practices, and although complaint in second lawsuit included wrongful discharge allegations that were absent from first lawsuit, employee could have and should have raised those claims in her first lawsuit.

**[2]** **Res Judicata** 👉 Preliminary, procedural, and collateral matters, determinations concerning

Disposition of employee's first lawsuit against her former employer was a final judgment on the merits, for res judicata purposes, where, in addition to its jurisdictional rulings, the court concluded that employee failed to establish a genuine issue of material fact that former employer violated her constitutional rights and that former employer's reason for her termination was pretext.

**[3]** **Res Judicata** 👉 Lack of jurisdiction

Even if employee's first lawsuit against her former employer were treated as a dismissal for lack of jurisdiction and not as a final judgment on the merits, for res judicata purposes, court would bar employee's second lawsuit against her former employer because employee was aware of certain facts before the dismissal of her first lawsuit, namely, her termination, that would have cured the jurisdictional deficiencies of that lawsuit.

MEMORANDUM OPINION AND ORDER

CASTILLO, J.

*1 Plaintiff Webelene Bethea sues Defendant Illinois State Police ("ISP") for race discrimination and for retaliation based on her opposition to discrimination, pursuant to 42 U.S.C. § 1981 and § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* Currently before the Court is ISP's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. ISP argues that Ms. Bethea should be barred from bringing this lawsuit on the basis of res judicata. For the reasons that follow, ISP's motion to dismiss is granted. (R. 8–1.)

RELEVANT FACTS

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works. 1

I. Ms. Bethea's First Lawsuit

On October 4, 2000, Ms. Bethea filed a § 1983 complaint against ISP and several ISP employees in federal court in the Northern District of Illinois ("Bethea I"). *Bethea v. Illinois State Police et al.,* No. 00 C 6110. At the time the first complaint was filed, ISP employed Ms. Bethea as a chemist. Ms. Bethea alleged that ISP disciplined her more harshly than other employees for making mistakes on the job because of personal animus and because she spoke out against ISP's alleged discriminatory practices. More specifically, Ms. Bethea claimed that ISP denied her access to the Peer Review Program without justification. Ms. Bethea maintained that ISP's actions violated her First and Fourteenth Amendment rights to free speech and to be free from arbitrary and unequal treatment. Ms. Bethea sought a declaration that the defendants' conduct violated her constitutional rights and an injunction prohibiting the defendants from treating her differently from other chemists.

On June 14, 2001, Ms. Bethea filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII of the Civil Rights Act of 1964. She received a Notice of Right to Sue on September 15, 2001, which indicated that she had ninety days to file a civil action against ISP and the individual defendants. At no time did Ms. Bethea seek to amend her first complaint to add claims of discrimination under § 1981 or Title VII. Judge James Holderman, presiding over the suit, set May 1, 2001 as the deadline to amend pleadings.

On August 20, 2001, ISP filed a motion for summary judgment in Bethea I. On October 9, 2001, the district court granted ISP's motion for summary judgment. The minute order stated that the defendants' motion for summary judgment was granted and that the action was dismissed in its entirety with prejudice. (*See* R. 8–1, Mot. To Dismiss, Ex. B.) The memorandum attached to the minute order indicated that the court lacked jurisdiction, and that Ms. Bethea failed to raise any genuine issues of material fact to support her claims. The Bethea I Court concluded that they lacked jurisdiction on two grounds. First, the court dismissed ISP from the suit on the grounds that the state agency was entitled to Eleventh Amendment immunity. Second, the court held that it lacked jurisdiction over all of Ms. Bethea's claims because she failed to allege an actual case or controversy. Finally, the court proceeded to conclude that there were no genuine issues of material fact because there was no evidence of any constitutional violations. In addition, the court found that in light of ISP's legitimate nondiscriminatory reason for

terminating Ms. Bethea, Ms. Bethea failed to establish a genuine issue of material fact that ISP's reason was a pretext for discrimination.

II. Ms. Bethea's Second Lawsuit

**\*2** On December 13, 2001, Ms. Bethea filed the instant lawsuit against ISP ("Bethea II"). In the second complaint—brought under 42 U.S.C. § 1981 and § 1983 and Title VII—Ms. Bethea alleges that while she was employed by ISP she was disciplined more harshly than other employees, denied access to the Peer Review Program, discriminated against on the basis of her race and discriminated against in retaliation for speaking out against ISP. Bethea II also contains allegations of wrongful termination. Currently before this Court is ISP's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

LEGAL STANDARDS

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Autry v. Northwest Premium Servs., 144 F.3d 1037, 1039 (7th Cir.1998).* When considering a motion to dismiss, this Court views all facts, as well as any inferences reasonably drawn from those facts, in the light most favorable to Plaintiff. *Id.* We will grant a motion to dismiss only if Plaintiff can prove no set of facts entitling her to relief. *Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 432 (7th Cir.1993).* With these standards in mind, we now evaluate Defendant's motion to dismiss.

ANALYSIS

I. Res Judicata

Res judicata, or claim preclusion, bars relitigation of issues that were actually decided in a prior lawsuit or that could have been raised in that action. *Brzostowski v. Laidlaw Waste Sys. Inc., 49 F.3d 337, 338 (7th Cir.1995).* Res judicata is appropriate when three elements are met: (1) identity of parties or privies in the two suits; (2) identity of the causes of actions in both suits; and (3) a final judgment on the merits in the earlier action. *Id.* (citations omitted).

ISP claims that all three elements for the application of res judicata are satisfied. Ms. Bethea argues that the second and third elements are not met. Specifically, Ms. Bethea contends that she could not have brought her Title VII claim in the

first lawsuit, and that a final judgment on the merits was not rendered in Bethea I because the court dismissed the suit for lack of jurisdiction. This Court will proceed with consideration of whether the two lawsuits comprise identical causes of actions and whether the judgment in Bethea I constituted a final judgment on the merits.

A. Identity of the Causes of Action

"A claim has identity with a previously litigated matter if it arises out of the same core of operative facts as that earlier action." *Brzostowski,* 49 F.3d at 338–39 (internal quotations omitted). Two claims are identical for the purpose of res judicata if they are based on the same, or nearly the same, factual allegations. *Id.* at 339. All claims arising out of the same core of operative facts must be alleged in the same proceeding, or else these claims will be precluded in the future. *Shaver v. F.W. Woolworth Co.,* 840 F.2d 1361, 1365 (7th Cir.1988). Put another way, a mere change in legal theory does not create a new cause of action. *Alexander v. Chi. Park Dist.,* 773 F.2d 850, 854 (7th Cir.1985). *See also Harper Plastics, Inc. v. Amoco Chems. Corp.,* 657 F.2d 939, 945 (7th Cir.1981).

**\*3** **[1]** In this case, the Court concludes that the allegations made in Bethea I and Bethea II arise out of the same core of operative facts. In both complaints, Ms. Bethea claims that ISP subjected her to discriminatory treatment during her tenure as an employee. Both complaints allege that Ms. Bethea was disciplined more harshly than other employees for making mistakes and denied access to the Peer Review Program because she spoke out against ISP's allegedly discriminatory employment practices.

Although the complaint in Bethea II includes allegations of wrongful termination that were absent from the complaint in Bethea I, Ms. Bethea could have and should have raised these claims in Bethea I. *See Shaver,* 840 F.2d at 1365. As noted by Judge Holderman in Bethea I, Ms. Bethea was terminated on November 9, 2000—long before the May 1, 2001 deadline to amend pleadings in the first lawsuit. While Ms. Bethea is correct to point out that exhaustion of administrative remedies is a pre-condition to bringing a lawsuit under Title VII, exhaustion is complete when a Notice of Right to Sue is issued. *EEOC v. CNA Ins. Cos.,* 96 F.3d 1039, 1042 (7th Cir.1996). Ms. Bethea received notice from the EEOC authorizing suit on September 15, 2001, and Bethea I was dismissed on October 9, 2001. Thus, Ms. Bethea had twenty-four days to amend her complaint to add a Title VII claim but she failed to do so. *See* Fed.R.Civ.P. 15(a) (stating that

amendments by leave of court shall be freely given as justice requires). *See also Daugherity v. Traylor Bros., Inc.,* 970 F.2d 348, 351 (7th Cir.1992). As such, the Court finds that there is identity of the causes of action in Bethea I and Bethea II.[1]

B. Final Judgment on the Merits

A ruling granting a motion for summary judgment is on the merits and, therefore, has full res judicata effect. *See Winslow v. Walters,* 815 F.2d 1114, 1116 (7th Cir.1987). *See also* Restatement (Second) of Judgments § 19 cmt. g (1982). In contrast, a judgment dismissing a suit for lack of jurisdiction is not on the merits, and its res judicata effect is limited to the issues decided, namely the issue of jurisdiction. *Perry v. Sheahan,* 222 F.3d 309, 318 (7th Cir.2000).

**[2]** The Court finds that the disposition of Bethea I was a final judgment on the merits because—in addition to the jurisdictional rulings—Judge Holderman concluded that Ms. Bethea failed to establish a genuine issue of material fact that ISP violated her constitutional rights and that ISP's reason for her termination was pretext. (*See* R. 8–1, Mot. To Dismiss, Ex. B.) Furthermore, it is well established that a motion for summary judgment is on the merits. *See, e.g., Marques v. FRB,* 286 F.3d 1014, 1016 (7th Cir.2002).

**[3]** Even if we treat Bethea I as a dismissal for lack of jurisdiction and not as a final judgment on the merits—as Ms. Bethea urges us to do—the Court would bar the current lawsuit because Ms. Bethea was aware of certain facts before the dismissal of her first lawsuit (*i.e.,* her termination) that would have cured the jurisdictional deficiencies of that lawsuit. *See Magnus Elecs., Inc. v. La Republica Arg.,* 830 F.2d 1396, 1401–02 (7th Cir.1987). As noted by the Seventh Circuit in *Magnus,* "it does not make sense to allow a plaintiff to begin the same suit over and over again in the same court, each time alleging additional facts that the plaintiff was aware of from the beginning of the suit, until it finally satisfies the jurisdictional requirements." *Id.* at 1401. Only facts arising after the *dismissal* of the first lawsuit, or at least the last opportunity to present facts to the court, will defeat preclusion. *Perry v. Sheahan,* 222 F.3d 309, 318 (7th Cir.2000).

**\*4** In this case, Ms. Bethea and her lawyers could have avoided the jurisdictional deficiencies of the first complaint by bringing all of her claims, including the § 1981 and Title VII claims, in a single lawsuit. When Ms. Bethea filed her Title VII charge with the EEOC on June 14, 2001, her first

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works. 3

lawsuit against ISP was still pending. She could have asked the EEOC to accelerate the administrative process or asked the district court in Bethea I to stay proceedings until the exhaustion of the administrative process. *See Herrmann,* 999 F.2d at 225. Instead, Ms. Bethea and her lawyers chose to do nothing to join her § 1981 and Title VII claims with her other cause of action. As noted by the Seventh Circuit, it is inefficient for a plaintiff to file all but the Title VII claim in one action and then bring another suit charging violations of Title VII alone. *Id.* In short, Ms. Bethea cannot file a second lawsuit against ISP and allege a new basis of jurisdiction that was available to her during the first lawsuit. *See Magnus,* 830 F.2d at 1402.

Finally, Ms. Bethea could have appealed the Bethea I dismissal, especially the failure to show pretext ruling that dooms any Title VII claim that Ms. Bethea might have brought. *See* 10A Charles Alan Wright, Arthur K. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2715 (3d ed.2002). Instead, Ms. Bethea and/or her lawyers chose to file duplicative litigation. Therefore, for all of the foregoing reasons, Ms. Bethea's claims are barred under the doctrine of res judicata.

CONCLUSION

Although the Court's decision in this case has grave implications for Ms. Bethea's claims, we urge the parties to reflect on the policy behind the doctrine of res judicata. Res judicata prevents a prevailing party from being dragged into court on the same or related claims and also conserves judicial resources. *See Warren v.. McCall,* 709 F.2d 1183, 1184 (7th Cir.1983). Ms. Bethea had the opportunity in Bethea I to litigate all her claims against ISP, including those arising out of her termination. As such, the doctrine of res judicata applies and Ms. Bethea is barred from bringing a second lawsuit.

Therefore, the Court grants ISP's motion to dismiss. (R. 8–1.) The Clerk of the Court is instructed, pursuant to Federal Rule of Civil Procedure 58, to enter judgment in favor of Defendant ISP and against Plaintiff Webelene Bethea.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 1592774

Footnotes

1    Ms. Bethea also argues that she should be able to bring a second lawsuit because she adhered to the time guidelines required by Title VII. Ms. Bethea's timely filing of her Title VII claim, however, will not prevent the Court from applying res judicata. *See Herrmann v. Cencom Cable Assocs. Inc.,* 999 F.2d 223, 225 (7th Cir.1993).

**End of Document**                                                © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 5955764
Only the Westlaw citation is currently available.
United States District Court, E.D. Wisconsin.

BOYLAND AUTO GROUP III LLC and
Boyland Auto BGMC LLC, Plaintiffs,

v.

Tony BOYLAND, Defendant.

Case No. 23-cv-0566-bhl
|
Signed September 13, 2023

**Synopsis**
**Background:** Used car dealerships brought action in state court against their former general manager, alleging he conspired with another employee to misappropriate their assets, and asserting claims under Wisconsin law for fraudulent misrepresentation and civil conspiracy. After removing case, manager brought motion to dismiss for failure to state a claim.

**Holdings:** The District Court, Brett H. Ludwig, J., held that:

[1] federal rule governing pleading of fraud claims, not corresponding forum state rule, was applicable;

[2] dealerships failed to plead with sufficient particularity their claim for fraudulent misrepresentation; but

[3] dealerships plausibly pled civil conspiracy claim.

Motion granted in part and denied in part.

West Headnotes (18)

**[1]** **Federal Civil Procedure** 🔑 Insufficiency in general

To survive a motion to dismiss for failure to state a claim, a complaint must do more than recite the elements of a cause of action in a conclusory fashion. Fed. R. Civ. P. 12(b)(6).

**[2]** **Federal Courts** 🔑 Pleading

**Removal of Cases** 🔑 Forms and rules of procedure in general

Federal rule governing pleading of fraud claims, not corresponding forum state rule, was applicable to fraud claim in complaint originally filed in state court, but amended after removal and filed in federal court sitting in diversity jurisdiction, for purposes of defendant's motion to dismiss fraud claim, on grounds it was pled with insufficient particularity; rule for pleading fraud was procedural rather than substantive. Wis. Stats § 802.03(2); Fed. R. Civ. P. 9(b).

**[3]** **Federal Civil Procedure** 🔑 Claim for relief in general

Under the liberal notice pleading regime embraced by the federal rules, a civil complaint should not become a dissertation; in fact, saying too much is just as detrimental as saying too little. Fed. R. Civ. P. 8(a).

**[4]** **Federal Civil Procedure** 🔑 Claim for relief in general

At the pleading stage, courts generally accept some measure of fuzziness around the edges of a claim, provided the operative complaint alerts the defendants to the nature of that claim and alleges enough to render it plausible. Fed. R. Civ. P. 8(a), 12(b)(6).

**[5]** **Federal Civil Procedure** 🔑 Fraud, mistake and condition of mind

Because of the serious nature and implications of tarring someone with fraud, the federal rule governing the pleading of fraud requires that fraud be pleaded with greater detail than is typically required for other claims. Fed. R. Civ. P. 9(b).

**[6]** **Federal Civil Procedure** 🔑 Fraud, mistake and condition of mind

Heightened pleading requirement for fraud claims, which requires a plaintiff to state the circumstances of the alleged fraud with particularity, can be likened to the first paragraph of any newspaper story, which should answer the questions who, what, when, where, and how. Fed. R. Civ. P. 9(b).

**[7]** **Federal Civil Procedure** 🔑 Fraud, mistake and condition of mind

Heightened pleading requirement for fraud claims, which requires a plaintiff to state the circumstances of the alleged fraud with particularity, may give way somewhat in situations where a defendant, but not the plaintiff, has access to information essential to the fraud claims; in those instances, the pleading standard is satisfied by a showing that further particulars of the alleged fraud could not have been obtained without discovery. Fed. R. Civ. P. 9(b).

**[8]** **Federal Civil Procedure** 🔑 Fraud, mistake and condition of mind

Approach to pleading fraud under the federal procedural rules, which allows for the relaxation of the heightened pleading requirements for fraud claims when the plaintiff lacks access to the necessary information, attempts to reconcile the rules' twin demands of detail and flexibility without disrespecting either. Fed. R. Civ. P. 9(b).

**[9]** **Federal Courts** 🔑 Substance or procedure; determinativeness

Federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits; but rules as to the sufficiency of pleadings are procedural rather than substantive.

**[10]** **Federal Civil Procedure** 🔑 Fraud, mistake and condition of mind

Used car dealerships failed to plead with sufficient particularity their claim for fraudulent misrepresentation under Wisconsin law against their former general manager, arising out of allegations that manager misappropriated dealership assets for his personal use, even though dealerships' limited access to information might have explained some defects; dealerships' complaint alleged only that manager made a misrepresentation sometime in a certain year and presumably somewhere in Wisconsin, but not what that representation was or to whom it was made, and dealerships' relationship with their manager was not one in which a lack of direct interaction would have unduly limited their access to other details of alleged fraud. Fed. R. Civ. P. 9(b).

**[11]** **Fraud** 🔑 Elements of Actual Fraud

Under Wisconsin law, to succeed in a fraudulent misrepresentation claim, the representation must be of fact and made by the defendant, the representation must be false, and the claimant must have believed the representation was true and relied on it to his or her damage.

**[12]** **Federal Civil Procedure** 🔑 Fraud, mistake and condition of mind

When a plaintiff does not lack access to required facts, the rule mandating that fraud be pled with particularity requires the plaintiff to state the identity of the person who made the alleged misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. Fed. R. Civ. P. 9(b).

**[13]** **Conspiracy** 🔑 Definition and elements of civil conspiracy in general

Under Wisconsin law, civil conspiracy involves a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful.

**[14]** **Conspiracy** 🔑 Definition and elements of civil conspiracy in general

Under Wisconsin law, a civil conspiracy claim has three elements: (1) the formation and operation of a conspiracy, (2) a wrongful act or acts done pursuant to the conspiracy, and (3) damage resulting from the act or acts.

**[15]** **Conspiracy** 🔑 Certainty, definiteness, and particularity in general

Under Wisconsin law, though a plaintiff asserting a claim of civil conspiracy need not plead the detailed, behind-the-scenes aspects of the scheme, to which he likely has no access, the plaintiff must at least allege the conspiracy in more than conclusory fashion; "Dick and Jane conspired to commit a wrongful act" will not do.

**[16]** **Conspiracy** 🔑 Particular Subjects of Conspiracy

Used car dealerships plausibly pled a civil conspiracy claim under Wisconsin law against their former general manager, even though manager argued claim was pled with insufficient detail; complaint stated that manager and employee conspired to misappropriate dealerships' assets, that they sought to do so by assigning themselves bogus bonuses and payroll expenditures and by using dealerships' company credit cards to make exorbitant purchases at certain businesses, and that the unauthorized purchases amounted to no less than $243,989 in one year.

**[17]** **Conspiracy** 🔑 Pleading

Under Wisconsin law, the plaintiff who cannot identify the goal of an alleged conspiracy or any damages resulting therefrom has no case for civil conspiracy.

**[18]** **Conspiracy** 🔑 Certainty, definiteness, and particularity in general

Almost no plaintiff alleging civil conspiracy will know how the conspirators came to their agreement, i.e., over coffee and baklava in a booth at the back of a Greek diner; in determining whether a plaintiff has pled a civil conspiracy under Wisconsin law with sufficient detail to survive a motion to dismiss for failure to state a claim, courts look for facts that show some agreement, explicit or otherwise, between the alleged conspirators on the common end sought and some cooperation toward the attainment of that end.

**Attorneys and Law Firms**

Piermario Bertolotto, Rizzo & Diersen SC, Kenosha, WI, for Plaintiffs.

Shannon D. McDonald, McDonald & Kloth LLC, Menomonee Falls, WI, for Defendant.

**ORDER**

BRETT H. LUDWIG, United States District Judge

**\*1** After a brief career in major league baseball,[1] Dorian "Doe" Boyland opened a number of used car dealerships in six states, including Wisconsin. *See* Emil Flemmon, *Former MLB Player Becomes Top Car Dealership Owner*, Atlanta Voice (Aug. 24, 2019), https://theatlantavoice.com/fomer-mlb-player-becomes-top-car-dealership-owner/. In this case, two of those Wisconsin dealerships—Boyland Auto Group III, LLC d/b/a All-Star Honda and Boyland Auto BGMC, LLC d/b/a All-Star Buick GMC (the Dealerships)—claim that former General Manager Tony Boyland misappropriated their assets. (ECF No. 10 ¶8.) The Dealerships filed this lawsuit in Milwaukee County Circuit Court, alleging claims for conversion, theft, breach of fiduciary duty, fraud, civil conspiracy, and breach of contract. (ECF No. 1-2 ¶¶32-61.) Defendant removed the case to this Court and now seeks to dismiss the fraud and civil conspiracy claims as insufficiently pleaded. (ECF Nos. 1 & 12.) For the following reasons, that motion will be granted but only in part.

**FACTUAL BACKGROUND**[2]

All-Star Honda and All-Star Buick GMC are Wisconsin limited liability companies that own and operate car dealerships in Wisconsin. (ECF No. 10 ¶¶3-4.) In 2021, Defendant Tony Boyland (Boyland) served as General Manager of both dealerships. (*Id.* ¶8.) According to the complaint, as GM, Boyland conspired with another employee, Yamilet De Jesus (who is not a party to this suit), to misappropriate company assets for personal benefit. (*Id.* ¶9.) Accounting for taxes, the Dealerships claim to have suffered a combined $142,144 in losses based on payroll expenditures fraudulently directed to Boyland and De Jesus. (*Id.* ¶¶11-21.) Additionally, Boyland and De Jesus are alleged to have charged unauthorized airfare, hotel, entertainment, and merchandise expenses—totaling at least $243,989—to their company credit cards. (*Id.* ¶¶22-26.) The complaint also contends that Boyland accepted $401,063 that should have been paid directly to the Dealerships and transferred a $55,000 personal debt to the Dealerships' accounts. (*Id.* ¶¶27-28.)

**LEGAL STANDARD**

[1] When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the [non-movant's] favor." *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.' " *Roberts v. City of Chi.*, 817 F.3d at 564 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Roberts*, 817 F.3d at 564-65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "The complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

**ANALYSIS**

**\*2** Boyland seeks to dismiss only the Dealerships' claims for fraud and civil conspiracy. (ECF No. 12.) He argues the relevant allegations are too vague to satisfy federal pleading standards. (ECF No. 13 at 1.) The Court agrees with regard to the Dealership's fraud claims, which fail to comply with Federal Rule of Civil Procedure 9(b)'s requirement that such claims be pleaded with particularity. The civil conspiracy claim, on the other hand, is not subject to Rule 9. While it is sketched only superficially, the allegations are sufficient to survive a motion to dismiss. Boyland's motion will therefore be granted as to the fraud claim but denied as to the Dealerships' civil conspiracy theory.

**I. The Dealership's Fraud Allegations Are Too Vague.**

[2] [3] [4] [5] [6] [7] [8] [9] Under the liberal notice pleading regime embraced by the federal rules, a civil complaint should not become a dissertation. *See* Fed. R. Civ. P. Rule 8(a) (calling for "a short and plain statement of the [plaintiff's] claim"). In fact, saying too much is just as detrimental as saying too little. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) (citing prolixity as a basis for dismissal). As a result, at the pleading stage, courts generally accept some measure of fuzziness around the edges of a claim, provided the operative complaint alerts the defendants to the nature of that claim and alleges enough to render it plausible. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (holding that "a plaintiff must provide notice to defendants of her claims" and plead more than "sketchy or implausible" allegations). Fraud claims are a different matter. Because of the serious nature and implications of tarring someone with fraud, Rule 9 requires that fraud be pleaded with greater detail. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (explaining that heightened fraud pleading standards minimize the danger of extortionary suits); *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) ("Accusations of fraud can do serious damage to the goodwill of a business firm or a professional person."). Hence, to maintain a fraud claim, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748-49 (7th Cir. 2005) (noting that an "unrefuted" allegation of fraud may induce undue pressure to settle).[3] The Seventh Circuit likens this requirement to "the first paragraph of any newspaper story," which should answer the questions "who, what, when, where, and how." *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   4

(quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). But this command may give way somewhat in situations where a defendant, but not the plaintiff, has access to information essential to the fraud claims. *See Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998). In those instances, "Rule 9(b) is satisfied by a showing that further particulars of the alleged fraud could not have been obtained without discovery." *Id.* This approach attempts to reconcile the Federal Rules' "twin demands of detail and flexibility" without disrespecting either. *Pirelli*, 631 F.3d at 442.

**\*3** Boyland argues the Dealerships' Amended Complaint flunks Rule 9(b)'s test. According to him, the pleading cries fraud based on intentional misrepresentation but fails "to identify *who* made the alleged misrepresentation, *when* the alleged misrepresentation was made, *where* the alleged misrepresentation was made, *what* constituted the alleged misrepresentation, *to whom* the misrepresentation was allegedly made, and *what damages* resulted from the alleged misrepresentation." (ECF No. 13 at 3.) The Dealerships, on the other hand, believe they have "set forth with particularity not only the misappropriations and payments made by [Boyland] ..., but also who he [made them] with, Ms. De Jesus, and that [he made them] in his employment capacity and position." (ECF No. 14 at 3-4.)

**[10]** **[11]** Under Wisconsin law, "[t]o succeed in a fraudulent misrepresentation claim, the representation must be of fact and made by the defendant, the representation must be false, and the claimant must have believed the representation was true and relied on it to his or her damage." *Friends of Kenwood v. Green*, 239 Wis.2d 78, 619 N.W.2d 271, 275 (Wis. Ct. App. 2000). To satisfy Rule 9(b), the party alleging fraudulent misrepresentation "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The question here is whether the Dealerships have pleaded enough of the details to establish a Wisconsin fraud claim with particularity. They have not.

The Amended Complaint is exceedingly vague. Its answers to "where?" and "when?" the alleged fraud occurred are sometime in 2021 and (presumably) somewhere in Wisconsin. (ECF No. 10 ¶¶3-5, 8.) It claims that Boyland made a misrepresentation but not "what" that representation was or to "whom" it was made. (*Id.* ¶¶48-59.) And while asymmetrical access to information may explain some of these omissions, the Dealerships do not demonstrate that details as rudimentary as what misrepresentation of fact

Boyland allegedly uttered "could not have been obtained without discovery." *Emery*, 134 F.3d at 1323.

**[12]** This is not a case consistent with the hypothetical the Seventh Circuit floated in *Pirelli v. Walgreen*, under which a court might excuse even the failure to "point to specific misrepresentations made by particular" individuals. 631 F.3d at 446. In that case, the plaintiff alleged that Walgreens pharmacies fraudulently "took prescriptions that called for the less costly form of [certain drugs] and filled them with the more costly form." *Id.* at 438. Walgreens then charged the plaintiff for the "costly forms of [the] drugs that were never prescribed." *Id.* Though it ultimately affirmed dismissal of the fraud claim pursuant to Rule 9(b), the Seventh Circuit registered its disagreement with the district court's suggestion that the Rule required the plaintiff "to point to specific misrepresentations made by particular Walgreens staffers." *Id.* at 446. Instead, the Court called for "flexibility in the face of information asymmetries" and noted that the plaintiff might have satisfied Rule 9(b) simply by demonstrating that Walgreens charged for the more expensive form of the drugs at a much higher rate than any other pharmacy nationwide. *Id.* That made sense in the context of the case—the plaintiff was a third-party payor whose direct interactions with Walgreens' staff were exceedingly limited. *Id.* at 437-38. It would not make sense here, where the plaintiffs are two auto dealerships, and the defendant is their former general manager. Under these circumstances, Rule 9(b) "requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom*, 20 F.3d at 777 (internal quotations omitted). The Dealerships have accomplished only the first of these. That is insufficient. *See Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923-24 (7th Cir. 1992) (affirming dismissal under Rule 9(b) where the operative pleading contained only the general subject matter of an alleged misrepresentation but not the identity of who made the misrepresentation or the time and place at which it was made).

## II. The Dealerships' Civil Conspiracy Claim is Plausibly Pleaded.

**\*4** **[13]** **[14]** **[15]** In Wisconsin, "[c]ivil conspiracy involves 'a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful.' " *N. Highland, Inc. v. Jefferson Mach. & Tool, Inc.*, 377 Wis.2d 496, 898 N.W.2d 741, 747 (2017) (quoting

*City of Milwaukee v. NL Indus., Inc.*, 278 Wis.2d 313, 691 N.W.2d 888, 896 (Wis. Ct. App. 2004)). "A civil conspiracy claim has three elements: (1) the formation and operation of a conspiracy; (2) a wrongful act or acts done pursuant to the conspiracy; and (3) damage resulting from the act or acts." *Id.* (quoting *Onderdonk v. Lamb*, 79 Wis.2d 241, 255 N.W.2d 507, 510 (1977)). And though he need not plead the detailed, behind-the-scenes aspects of the scheme—to which he likely has no access—a plaintiff must at least allege the conspiracy in more than conclusory fashion. *Onderdonk*, 255 N.W.2d at 510, 79 Wis.2d 241. "Dick and Jane conspired to commit a wrongful act" will not do.

 **[16]** **[17]** **[18]** Boyland's position is that the Dealerships' Amended Complaint does not answer any of the following questions, necessary to proceed on a civil conspiracy claim: (1) "[W]hat was the agreement between [Boyland] and Ms. De Jesus?"; (2) "When did they come to this agreement?"; (3) "How did they come to this agreement?"; (4) "Which person was supposed to perform which act to further the conspiracy?"; (5) "What was the goal of the conspiracy?"; (6) "How did the conspiracy work?"; and (7) "Which specific damages resulted directly from the conspiracy?" (ECF No. 13 at 6.) Some of these are foundational. A plaintiff who cannot identify the goal of an alleged conspiracy or any damages resulting therefrom has no case. *See Onderdonk*, 255 N.W.2d at 509 ("The gravamen of a civil action for damages resulting from an alleged conspiracy is [ ] not the conspiracy itself but rather the civil wrong which has been committed pursuant to the conspiracy and which results in damage to the plaintiff."). But Boyland goes too far in demanding third-person omniscience at the pleading stage. Almost no plaintiff alleging civil conspiracy will know how the conspirators came to their agreement; *i.e.*, over coffee and baklava in a booth at the back of a Greek diner. Courts, thus, look for "facts that show some agreement, explicit *or otherwise*, between the alleged conspirators on the common end sought and some cooperation toward the attainment of that end." *Bartley v. Thompson*, 198 Wis.2d 323, 542 N.W.2d 227, 234 (Wis. Ct. App. 1995) (quoting *Augustine v. Anti-Defamation League of*

*B'Nai B'Rith*, 75 Wis.2d 207, 249 N.W.2d 547, 552 (1977)) (emphasis added). Those facts are present here.

The Amended Complaint states that Boyland and De Jesus conspired to misappropriate the Dealerships' assets. (ECF No. 10 ¶9.) To accomplish this, they assigned themselves bogus bonuses and payroll expenditures. (*Id.* ¶¶10-21, 63.) They also used the Dealerships' company credit cards to make exorbitant purchases at Best Buy, Nordstrom, Franksville Veterinarian, Vanessa's Flowers, and other businesses. (*Id.* ¶¶22-25, 62.) The unauthorized purchases amounted to no less than $243,989 in 2021. (*Id.* ¶26.) No doubt, these allegations are not proof, but they do not need to be. They paint enough of a picture of the purported conspiracy "to support the inference of an agreement" between Boyland and De Jesus to misappropriate the Dealerships' funds. *Kroeger v. Brautigam*, No. 2015AP466, 2016 WL 4512687, at *7 (Wis. Ct. App. Aug. 30, 2016).

The Dealerships allege the formation and operation of a conspiracy, wrongful acts done pursuant thereto, and damages. Their Amended Complaint is not so couched in generalities as to render these allegations wholly conclusory. They have, therefore, plausibly pleaded the necessary elements of a civil conspiracy claim.

## CONCLUSION

 **\*5** For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 12), is **GRANTED, in part**, and **DENIED, in part**. The motion is granted with respect to Plaintiffs' claim for "Intentional Misrepresentation (Fraud)," and that claim is **dismissed**. The motion is denied with respect to Plaintiffs' claim for "Conspiracy."

### All Citations

--- F.Supp.3d ----, 2023 WL 5955764

---

Footnotes

1    Doe Boyland's career was brief, but he retains at least one claim to fame. On September 4, 1978, as a rookie infielder, he stepped to the plate for his first major league at bat and, after going down 1-2 in the count, was pulled for a pinch hitter. His replacement proceeded to take strike three looking, thus giving Boyland the distinction of being the only Major Leaguer to suffer a strikeout in his first at bat while already sitting in the dugout. *See* Elena Gustines, *How Do You Mark*

*That in the Score Book?*, N.Y. Times, Apr. 3, 2016, at SP7. The Court thanks a former law clerk from Pittsburgh and his family of Pirates fans for bringing this baseball history to the Court's attention.

2    These facts are derived from the Dealerships' Amended Complaint, (ECF No. 10), the allegations in which are presumed true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

3    The parties dispute whether the Dealerships' Amended Complaint complies with Wis. Stat. § 802.03(2), which borrows Rule 9(b)'s language almost verbatim, requiring that "the circumstances constituting fraud ... be stated with particularity." (ECF Nos. 13 & 14.) Though it may ultimately make no difference—the standards essentially overlap—it is Federal Rule of Civil Procedure 9(b), not Section 802.03(2), that governs this case. As "[a] federal court sitting in diversity jurisdiction," this Court "must apply the *substantive* law of the state in which it sits." *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001) (emphasis added). That means Wisconsin law supplies the definition of fraud. But "rules as to the sufficiency of pleadings are procedural rather than substantive." *Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 707 (N.D. Ill. 1990). Thus, under the circumstances, any conflict between Wisconsin's pleading regime and Federal Rule of Civil Procedure 9(b) resolves in favor of the federal rule. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 410-11, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010); *see also* Fed. R. Civ. P. 81(c)(1) (the Federal Rules "apply to a civil action after it is removed from a state court"); *Cobb v. Aramark Corr. Servs., LLC*, 937 F.3d 1037, 1040 (7th Cir. 2019) (holding that the Federal Rules "do not apply to filings in state court, even if the case is later removed to federal court," but that actions—like filing an amended complaint—taken after removal are subject to the Federal Rules under Rule 81(c)).

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Coleman v. Depke, Not Reported in Fed. Supp. (2014)**

2014 WL 6563814

2014 WL 6563814
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Shannon L. COLEMAN, Plaintiff,

v.

Robert W. DEPKE Juvenile
Justice Center, Defendant.

Case No.: 14 cv 02015
|
Signed November 20, 2014

**Attorneys and Law Firms**

Michael T. Smith, Michael T. Smith & Associates, Roselle,
IL, for Plaintiff.

Adam Garret Eisenstein, Office of the Illinois Attorney
General, Chicago, IL, for Defendant.

**MEMORANDUM OPINION AND ORDER**

Robert M. Dow, Jr., United States District Judge

 **\*1** Plaintiff Shannon Coleman filed this complaint against
the Robert W. Depke Juvenile Justice Center, alleging racial
discrimination in violation of Title VII of the Civil Rights
Act of 1964. Defendants move to dismiss Plaintiff's claim
pursuant to Federal Rule of Civil Procedure 12(b)(6). For the
reasons stated below, the Court grants Defendant's motion to
dismiss [5].

**I. Background**[1]

According to the complaint, Plaintiff is an African American
employed by Defendant for almost twelve years. Compl., Ex.
A. After Plaintiff committed certain "conduct," Defendant
allegedly fired him on the basis of his race, failing to
discipline non-African Americans who committed "similar
conduct." Compl. ¶ at 7. On December 24, 2013, the EEOC
issued a notice of right to sue with respect to Plaintiff's charge.
Plaintiff subsequently filed this complaint.[2]

**II. Legal Standard On Motion To Dismiss**

The purpose of a Rule 12(b)(6) motion to dismiss is not to
decide the merits of the case; a Rule 12(b)(6) motion tests the
sufficiency of the complaint. *Gibson v. City of Chi.,* 910 F.2d
1510, 1520 (7th Cir.1990). As previously noted, reviewing
a motion to dismiss under Rule 12(b)(6), the Court takes
as true all factual allegations in Plaintiff's complaint and
draws all reasonable inferences in his favor. *Killingsworth,*
507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss,
the claim first must comply with Rule 8(a) by providing
"a short and plain statement of the claim showing that the
pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), such that
the defendant is given "fair notice of what the ... claim is and
the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S.
41, 47 (1957)). Second, the factual allegations in the claim
must be sufficient to raise the possibility of relief above the
"speculative level," assuming that all of the allegations in the
complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.,*
496 F.3d 773, 776 (7th Cir.2007) (quoting *Twombly,* 550 U.S.
at 555). "A pleading that offers 'labels and conclusions' or
a 'formulaic recitation of the elements of a cause of action
will not do.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)
(quoting *Twombly,* 550 U.S. at 555). However, "[s]pecific
facts are not necessary; the statement need only give the
defendant fair notice of what the ... claim is and the grounds
upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93
(2007) (citing *Twombly,* 550 U.S. at 555) (ellipsis in original).
The Court reads the complaint and assesses its plausibility as
a whole. See *Atkins v. City of Chi.,* 631 F.3d 823, 832 (7th
Cir.2011); *cf. Scott v. City of Chi.,* 195 F.3d 950, 952 (7th
Cir.1999) ("Whether a complaint provides notice, however, is
determined by looking at the complaint as a whole.").

**III. Analysis**

 **\*2** The Court dismisses the complaint because it fails to
give "fair notice of what the ... claim is and the grounds
upon which it rests." *Twombly,* 550 U.S. at 555. Plaintiff
alleges very few facts. Specifically, he alleges that he
was terminated on the basis of his race following certain
unexplained "conduct" that non-African Americans also
committed without consequence. Compl. at ¶ 7. His response
brief states that "Plaintiff has stated sufficient facts in his
Complaint to notify Defendant, and this Court, of the conduct
he was terminated for," but the complaint provides no such
facts. Resp. at 2. To put Defendant on fair notice of the
grounds of his claim such that it may investigate and defend
against it, Plaintiff must provide additional factual allegations
regarding the "conduct" preceding his termination. Defendant
employed Plaintiff for almost twelve years, a period during

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.     1

**Coleman v. Depke, Not Reported in Fed. Supp. (2014)**

2014 WL 6563814

which Plaintiff undoubtedly engaged in a great deal of conduct. Compl., Ex. A. This lengthy period of employment combined with the absence of any factual allegations regarding the circumstances surrounding his termination leaves Defendant without fair notice. See *Twombly,* 550 U.S. at 555. For all Defendant knows, Plaintiff's "conduct" could refer to one incident that occurred immediately before his termination or repeated activity stretching across years. Plaintiff's complaint suggests that the substance of this "conduct" will be important to his claim, yet he declines to explain what it was. Plaintiff already possesses information and can easily plead it; he need not conduct discovery to learn of his own actions. Accordingly, the Court dismisses the complaint.

Plaintiff argues that a plaintiff need not plead facts corresponding to each element of a prima facie case of discrimination under *McDonnell Douglas,* which creates an evidentiary standard rather than a pleading requirement. Resp. at 4–5 (citing *Swierkiewicz v. Sorema,* 534 U.S. 506 (2002)). Defendants and the Court agree. The problem is not that Plaintiff fails to plead facts corresponding to each *McDonnell Douglas* element. It is that he fails to allege almost any facts at all. In contrast to Plaintiff's bare bones complaint, Swierkiewicz's complaint "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." *Twombly,* 550 U.S. at 570 (quoting *Swierkiewicz,* 534 U.S. at 514). These factual allegations made his allegations plausible under *Twombly,* whereas Plaintiff's allegations are not. *Id.*

Plaintiff also argues that his complaint is plausible under *Swanson v. Citibank, N.A.* 614 F.3d 400, 404 (7th Cir.2010), in which the Seventh Circuit stated,

> [a] plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario * * *

614 F.3d at 404–05. Plaintiff reads this language literally to mean that a plaintiff need not "plead the specific qualifications that made him/her qualified, or that the person who received the promotion over him/her was less qualified, or even had the similar qualifications to him/her * * * [or] that the comparator was similarly situated to him/her or that he/she was performing their current job satisfactorily." Resp.

at 6. Plaintiff argues that his claim is similarly detailed and therefore plausible.

The Court declines to adopt Plaintiff's literal reading of *Swanson* 's dicta. In this passage, the Seventh Circuit explains generally that under *Twombly,* the simpler the case, the fewer the factual allegations necessary to make a claim plausible: "in many straightforward cases, it will not be any more difficult today for a plaintiff to meet that burden than it was before the Court's recent decisions," whereas in a "more complex case involving financial derivatives, or tax fraud that the parties tried hard to conceal, or antitrust violations, will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson,* 614 F.3d at 405. To illustrate how a "straightforward case" pleading few facts could be plausible, the Seventh Circuit offered the hypothetical cited by Plaintiff. The Court does not read the Seventh Circuit's one-sentence summary of an abstract hypothetical to mean that a plaintiff may absolutely state a Title VII claim in one sentence; something more than boilerplate is necessary because "abstract recitations of the elements of a cause of action or conclusory legal statements, do nothing to distinguish the particular case that is before the court from every other hypothetically possible case in that field of law." *Id.* at 405 (internal quotation omitted). More importantly, the Court does not interpret this abstract example of a plausible claim to mean that this particular Plaintiff may state a Title VII claim by alleging only that he was fired after committing "conduct" while others outside his protected class were not. This is particularly true because he undoubtedly engaged in a great deal of "conduct" over his twelve years of employment with Defendant, because he suggests that the particular conduct at issue will be important to his claim, and because he possesses the missing facts about his own conduct.

**\*3** Finally, if *Swanson* bears on this issue at all, its actual holding tips in Defendant's favor. *Swanson* involved Fair Housing Act and fraud claims, and it is "rarely proper to draw analogies between complaints alleging different sorts of claims; the type of facts that must be alleged depend upon the legal contours of the claim." *Concerta, 496 F.3d at 782.* To the extent that the Fair Housing Act claim is analogous to this Title VII claim, however, *Swanson* is still distinguishable in that Swanson's complaint was factually more robust than Plaintiff's. Swanson alleged that the defendants racially discriminated against her when they rejected her application for a home equity loan. In support of her legal allegations, her complaint factually alleged the

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2

Coleman v. Depke, Not Reported in Fed. Supp. (2014)

2014 WL 6563814

nature of the bank's loan program, the identities of the bank representative and manager who Swanson spoke with, the contents of their conversation, the identity of the appraisers, the value of their appraisals, and the bank's explanation for denying her application. *Swanson,* 614 F.3d at 402–03. Plaintiff's allegations do not compare.

Plaintiff also cites *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir.2008), arguing that the allegations in his complaint are similar to those in Tamayo's complaint, which stated a Title VII claim. Again, Tamayo's complaint was factually more detailed. Tamayo alleged that her employer promoted her to the position of Interim Administrator of the Illinois Gaming Board (IGB), promising her a specified salary. Soon after, the governor's office and the Illinois Department of Revenue allegedly attempted to take control of the IGB and institute certain changes. Tamayo detailed how and when these offices interfered with the IGB, the specific people she communicated with, and their warnings telling her to cooperate. She alleged that she received a particular salary, which was lower than what she was promised. She also identified similarly situated males and the values of their salaries. Finally, she alleged that her employer reduced her salary because she was a woman and because she refused to cooperate with the government offices attempting to control the IGB. *Tamayo,* 526 F.3d at 1078–79. Again, the factual detail in Plaintiff's complaint does not compare.

Plaintiff cites *Tamayo* 's statement that "[e]ven after *Bell Atlantic, Concentra* affirmed our previous holdings that, in order to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Tamayo,* 526 F.3d at 1084 (7th Cir.2008). *Tamayo* does affirm a "minimal pleading standard for simple claims of race or sex discrimination," but in explaining this standard, it cites *Concentra* and *Bennett v. Schmidt,* 153 F.3d 516 (7th Cir.1998), neither of which requires the Court to find in Plaintiff's favor.

Concentra's facts are distinguishable from Plaintiff's, and to the extent the case applies, it weighs in favor of Defendant. In Concentra, the EEOC alleged a Title VII retaliation claim. The complaint alleged that an employee reported his supervisor's favoritism toward a lover and was fired in retaliation. *Concentra,* 496 F.3d 773, 775–76 (7th Cir.2007). The district court dismissed the claim, holding that employees are protected against retaliation only when they reasonably believe that the activities they oppose violate Title VII

and finding that it was clear that "favoring a paramour" did not violate Title VII. *Id.* at 776. The EEOC then amended the complaint, generally alleging that the employer retaliated against the employee for reporting conduct that he "objectively and reasonably believed in good faith violated Title VII." *Id.* The Seventh Circuit held that the plaintiff needed to provide more information about the underlying conduct to give the defendant fair notice. It also held that "a plaintiff like the EEOC alleging illegal retaliation on account of protected conduct must provide some specific description of that conduct beyond the mere fact that it is protected," expressing a particular skepticism in the case before it because "a pleading standard designed to protect litigants and their lawyers from needless, counterproductive technicality is less convincingly invoked by a government agency seeking to simply step around a more informative complaint that has been dismissed for failure to state a claim." *Id.* at 781. Concentra is distinguishable in that it involved a retaliation claim rather than a discrimination claim as well as a speciously strategic re-pleading of facts already held insufficient to state a claim.

**\*4** To the extent *Concentra* does apply, however, its rationale weighs in favor of Defendant. The Court required the EEOC to plead more information about the underlying conduct partly because "a complaint should contain information that one *can* provide and that is clearly important"; "[e]ncouraging a plaintiff to plead what few facts can be easily provided and will clearly be helpful serves to expedite resolution by quickly alerting the defendant to basic, critical factual allegations \* \* \*." *Id.* at 780. The Seventh Circuit further noted that "surely [the employee] must remember in some detail what he said to the Human Resources Director and must have relayed that information to the EEOC during its investigation." *Id.* at 781. Similarly, Plaintiff here possesses facts regarding his own conduct, and this conduct is "clearly important" to his claim. *Id.* at 780. These facts are "easily provided and will clearly be helpful" to expeditious resolution of this case. *Id.*

In *Bennett,* the plaintiff alleged that an employer rejected her job applications because of her race. The Court found that the complaint stated a claim, holding that "Defendants received notice that Bennett believed that their refusal to hire her was racial discrimination; that is all the notice a complaint has to convey." *Bennett,* 153 F.3d at 518–19. In contrast to Bennett, who alleged a discriminatory failure to hire, Plaintiff alleges discriminatory termination of a twelve-year employee following "conduct" that others committed

Case 2:23-cv-01643-LA Filed 04/01/24 Page 79 of 192 Document 13

**Coleman v. Depke, Not Reported in Fed. Supp. (2014)**

2014 WL 6563814

without consequence. Plaintiff's complaint potentially causes an "inefficient chase for facts decried in *Bennett*." *Tamayo,* 526 F.3d at 1084 (citing *Bennett,* 153 F.3d at 518). Moreover, *Bennett* 's concern that plaintiffs not be required to "plead evidence" because "[l]itigants are entitled to discovery before being put to their proof" does not apply. *Bennett,* 153 F.3d at 518, 519. Again, Plaintiff possesses information about his own conduct and need not conduct discovery to allege certain facts. By asking him to plead more information, the Court does not deny him the opportunity to prove his claim.

**IV. Conclusion**

For the foregoing reasons, the Court grants Defendants' motion to dismiss [5] without prejudice. Plaintiff is given until December 15, 2014 to file an amended complaint if he believes that he can cure the deficiencies identified above.

**All Citations**

Not Reported in Fed. Supp., 2014 WL 6563814

---

Footnotes

1   For the purposes of Defendant's motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the amended complaint. See *Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 618 (7th Cir.2007).

2   The complaint additionally alleges that Defendant "created a work environment which unreasonably interfered with the terms and conditions of Coleman's employment" in violation of Title VII. Compl. at ¶ 8. Plaintiff's response brief explains that this allegation is not a hostile work environment claim and that Plaintiff only alleges that his termination constituted racial discrimination under Title VII. Resp. at 3, 4.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:23-cv-01643-LA   Filed 04/01/24   Page 80 of 192   Document 13

Covington v. National University, Not Reported in Fed. Supp. (2017)

2017 WL 4585576

2017 WL 4585576
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

John E. COVINGTON Plaintiff(s),

v.

NATIONAL UNIVERSITY,

et al., Defendant(s).

Case No. 16 C 10661
|
Signed 06/23/2017

**Attorneys and Law Firms**

John E. Covington, Bolingbrook, IL, pro se.

Kevin William Doherty, Ryan Andrew Danahey, Doherty & Progar LLC, Chicago, IL, for Defendant(s).

**ORDER**

Virginia M. Kendall, United States District Judge

**\*1** For the below reasons, the Court grants Defendant National University's Motion to Dismiss Plaintiff John E. Covington's Amended Complaint with prejudice. [20]

**STATEMENT**

On November 16, 2016, 53-year-old African-American John E. Covington ("Covington") first filed this suit pro se and filed his First Amended Complaint on February 27, 2017. He brings claims against Defendant National University ("National"), a private institution of higher education through which Covington had been pursuing his graduate degree online. (Dkt. 13, at 3-4.) Covington alleges that National denied him financial aid for his tuition in April 2015 after he withdrew from two of his classes because of his race and in retaliation for this claim in violation of Title VI of the Civil Rights Act (Counts I and II) and because of his age in violation of the Age Discrimination Act of 1975 (Count III) among other state law claims (Counts IV-VII). (*Id.* at 5, 9-13.)

Prior to this suit, on November 19, 2015 Covington had filed another lawsuit against National, among other Defendants—

also for denying him financial aid for his tuition in April 2015. *See Covington v. National University, et al.*, No. 15 C 10452, Dkt. 1, at 2, 4 ("*Covington I*"). Covington sought compensatory and punitive damages and asked the Court to order Defendant to reinstate his financial aid award as it stood in January 2015. *Id.* at 7. Covington alleged discriminatory treatment in violation of 42 U.S.C. § 1983 (Count I) and the Fourteenth Amendment (Count II), in addition to the Age Discrimination Act of 1975 (Count III). Judge John Robert Blakey first dismissed the suit without prejudice on November 25, 2015 for failure to allege state action and for failing to allege that Covington had exhausted his administrative remedies with regards to his Age Discrimination Act claim. *See Covington v. National University et al.*, No 15 C 10452, 2015 WL 7568462, at *1-2 (N.D. Ill. Nov. 25, 2015). Covington filed an Amended Complaint on December 18, 2015, still failing to allege state action and now omitting his Age Act claim. *See Covington I*, Dkt. 8; Dkt. 9. Accordingly, Judge Blakey dismissed Covington's Amended Complaint with prejudice. *See id.*, Dkt. 9. Covington appealed this order, which the Seventh Circuit dismissed on March 2, 2016 for failure to comply with Circuit Rule 3(c). *See id.*, Dkt. 12; Dkt. 18.

National now moves to dismiss Covington's Amended Complaint in this instant case pursuant to Rule 12(b)(6) for claim preclusion under the doctrine of res judicata. (Dkt. 20.) "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Barr v. Board of Trustees of Western Illinois University*, 796 F.3d 837, 839 (7th Cir. 2015) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Res judicata blocks a second lawsuit if the two suits share and identity of the parties and disputes and if the first suit received final judgment on the merits. *Id.* (citing *Herrmann v. Cencom Cable Assocs.*, 999 F.2d 223, 226 (7th Cir. 1993)); *see also Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). To determine the similarity of the disputes, courts do not look merely to whether the plaintiff filed different causes of action. Rather, courts look to whether the dispute arising from the same transaction or "core of operative facts." *Czarniecki v. City of Chicago*, 633 F.3d 545, 548 (7th Cir. 2011) (citations omitted); *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 517-18 (7th Cir. 2010) (citing *Highway J Citizens Group v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006)).

**\*2** The parties do not dispute the similarity of the parties between the 2015 and 2016 suits. (*See* Dkt. 20; Dkt. 23.)

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works. 1

Covington v. National University, Not Reported in Fed. Supp. (2017)

2017 WL 4585576

Instead, Covington notes that Judge Blakey dismissed his Age Act claim without prejudice and that he filed this November 2016 suit after seeking administrative remedies for this and his Title VI claims. (Dkt. 23, at 1.) Covington argues that he could not have brought his current claims during his 2015 lawsuit because he had not yet exhausted his remedies. (*Id.* at 3.) Further, he insists that his current claims did not receive a final judgment on the merits because he did not bring his Title VI claims in the prior action and his Age Act claim was dismissed without prejudice. (*Id.* at 5-6.)

Generally, courts do not consider a dismissal without prejudice final because the plaintiff can still allege facts that support his case. *See Czarniecki*, 633 F.3d at 549 (quoting *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1097 (7th Cir. 2008)). However, dismissal without prejudice still supports a finding of claim preclusion when the plaintiff abandons a claim "after an adverse ruling against [him]." *Id.* (quoting *Muhammad v. Oliver*, 547 F.3d 874, 876 (7th Cir. 2008)). After the district court denied Covington's motion to proceed *in forma pauperis* in relevant part because he failed to allege that he had exhausted his Age Act claim, Covington omitted the claim in his 2015 Amended Complaint. *See Covington I*, Dkt. 5; Dkt. 8; Dkt. 9. Even if he did so because he could not yet show that he had exhausted the requisite administrative remedies, Covington "could have avoided res judicata by ... asking the district court to stay the § 1983 case until he had exhausted his [Age Act] administrative remedies." *See Czarniecki*, 633 F.3d at 550-51; *Barr*, 796 F.3d at 840 ("We've repeatedly explained that a plaintiff in this situation ... can easily ask the district court to stay the first case ..."). By omitting his Age Act count from his 2015 Amended Complaint, the Court finds that Covington abandoned this claim, and res judicata prevents him from bringing it now.

Similarly, when a court enters a final judgment that ends the plaintiff's prior claim, "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction ... out of which the action arose." *Muhammad*, 547 F.3d at 877 (quoting *Restatement (Second) of Judgments* § 24(1) (1982)). "[T]he requirement to exhaust administrative remedies is no excuse for claim-splitting ..." *Barr*, 796 F.3d at 840. A plaintiff cannot evade claim preclusion by identifying a slightly different cause of action in his second or third lawsuits when they are between the same parties and arising from the same events. *Id.* (citing *Czarniecki*, 633 F.3d at 550) (internal quotations omitted). Allowing otherwise would

"impair judicial economy" and "effectively defeat the public policy underlying res judicata." *Muhammad*, 547 F.3d at 877 (internal citation and emphasis omitted). In other words, Covington cannot refile his earlier lawsuit in order to now bring his Title VI claims, even if he waited to bring these counts until he could first show that he had exhausted the relevant administrative remedies.

Covington's current action sues the same party (National University) for the same relief (compensatory and punitive damages and reinstatement of his financial aid) for claims arising from the same events (National's April 2015 decision to withdraw Covington's financial aid after he withdrew from two classes). (*See* Dkt. 13; *Covington I*, Dkt. 8.) Covington does not dispute that the Seventh Circuit's ruling on his Section 1983 claim in his earlier action constitutes a final judgment on that claim. (Dkt. 23, at 1.)

**\*3** This final judgment on Covington's earlier action extinguished all of his rights to remedies against National with respect to "all or any part of the transaction ... out of which the action arose," even if his Title VI race discrimination and retaliation claims pursue a different angle from his age discrimination and Section 1983 claims. *See Barr*, 796 F.3d at 840; *Muhammad*, 547 F.3d at 877 (internal quotation omitted). Covington cannot split his claims with the expectation that he can avoid claim preclusion as long he varies his suit with a new twist. Even if he waited to file his Title VI claims and declined to continue pursuing his Age Act claim in order to first show that he had exhausted their respective administrative remedies, he could have and should have filed these claims with his initial suit in order to keep them together with all claims arising out of the same facts and asked the judge to stay the case until he could demonstrate otherwise. *See Czarniecki*, 633 F.3d at 551. To allow Covington's current claim to proceed would tolerate or even encourage a strategy by plaintiffs to file lawsuit after lawsuit, throwing pasta at the wall until something sticks. The Court declines to indulge such a resource-intensive approach.

For these reasons, the Court grants National's Motion to Dismiss the Amended Complaint and dismisses Covington's suit with prejudice to these and all further related claims against National stemming from these facts. [20]

### All Citations

Not Reported in Fed. Supp., 2017 WL 4585576

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Covington v. National University, Not Reported in Fed. Supp. (2017)**

2017 WL 4585576

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S.
Government Works.

726 Fed.Appx. 486 (Mem)
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S.Ct. of App. 7th Cir. Rule 32.1.
United States Court of Appeals, Seventh Circuit.

John E. COVINGTON, Plaintiff-Appellant,

v.

NATIONAL UNIVERSITY,

Defendant-Appellee.

No. 17-2508
|
Submitted May 29, 2018[*]
|
Decided June 5, 2018

Appeal from the United States District Court for the Northern
District of Illinois, Eastern Division. No. 16 C 10661, Virginia
M. Kendall, *Judge*.

**Attorneys and Law Firms**

John E. Covington, Pro Se

Ryan A. Danahey, Attorney, Kevin W. Doherty, Attorney,
Doherty & Progar, Chicago, IL, for Defendant-Appellee

Before FRANK H. EASTERBROOK, Circuit Judge, DAVID
F. HAMILTON, Circuit Judge, AMY C. BARRETT, Circuit
Judge

**ORDER**

John Covington appeals the dismissal of his federal complaint
under Title VI of the Civil Rights Act of 1964 and the Age
Discrimination Act of 1975. *See* 42 U.S.C. 2000d; 42 U.S.C. §
6102. Because the district court properly concluded that claim
preclusion bars this lawsuit, we affirm.

Covington previously brought a federal suit against National
University, its president, and two employees in the financial
aid department. In November 2015, he filed a complaint
alleging that the defendants revoked his financial aid because
of his age and race, in violation of the Fourteenth Amendment

and the Age Discrimination Act. He also alleged that the
defendants discriminated against him in April 2015 by
fraudulently applying for twelve loans in his name. The
district court dismissed the Fourteenth Amendment claims
without prejudice because National University, a private
institution, and its employees were not state actors subject to
suit under 42 U.S.C. § 1983. The court also dismissed the age-
discrimination claim without prejudice because Covington
had not yet exhausted his administrative remedies as required
by the Age Discrimination Act, *see* 42 U.S.C. § 6104(f); 45
C.F.R. § 90.50(a).

Covington then filed an amended complaint that was nearly
identical to the original except that he omitted the age-
discrimination claim. Because he again had failed to allege
state action, the district judge dismissed this complaint with
prejudice.

A year after filing his first action, Covington filed this
suit against almost the same defendants (he substituted the
university's financial aid director for the assistant director).
Covington again alleged the unlawful revocation of his
financial aid, this time asserting violations of Title VI and
the Age Discrimination Act. He again claimed that the
defendants applied for twelve loans in his name (though
now alleging they did so in August, not April, 2015 and in
retaliation for filing the administrative charge that preceded
his first **\*487** lawsuit). He added state-law claims for
tortious interference with contract, intentional and negligent
infliction of emotional distress, and fraud.

Covington moved to proceed in forma pauperis. In his
financial affidavit, he alleged that he was unemployed and
single, had not received more than $200 in income from
any source, and had no savings or assets. The judge noted
that Covington's financial affidavit raised the question of
how he could afford a single-family residence and life's
basic necessities. Based on this question, the judge ordered
Covington to file a new financial affidavit.

Instead, Covington filed a motion for recusal under 28 U.S.C.
§ 455(a), which requires a judge to recuse herself if her
"impartiality might reasonably be questioned." He argued that
the judge's decision to require an updated affidavit raised
the question of whether she was biased against low-income
individuals. The judge denied Covington's motion and
ultimately dismissed his suit as barred by claim preclusion.
Covington filed an appeal and now apparently abandons his
claims against all defendants except National University.

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.   1

Covington argues that claim preclusion does not apply to this suit alleging "a continuing series of wrongful conduct." Because his earlier suit was filed in federal court, federal claim-preclusion doctrine applies. *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211,* 486 F.3d 279, 283 (7th Cir. 2007). So this suit is barred if there exists (1) a final judgment on the merits in an earlier action, (2) an identity of the cause of action in both the earlier and later suit (signified by a set of common "operative facts"), and (3) identity of parties or their privies in the two suits. *United States ex rel. Lusby v. Rolls-Royce Corp.,* 570 F.3d 849, 851 (7th Cir. 2009).

Covington first argues that there was not a final judgment on his age-discrimination claim in the first case because he omitted it from his amended complaint, but this does not immunize him from the effects of claim preclusion. The age-discrimination claim was based on the same factual allegations as his other claims: National University's withdrawal of a portion of his financial aid. "Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost." *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 593 (7th Cir. 1986). Covington replies that he was unable to bring the age-discrimination claim in his first suit because he had not finished exhausting his administrative remedies. But he could have delayed filing of the first suit, asked the district court to stay it, or requested an expedited administrative process. *See Czarniecki v. City of Chicago,* 633 F.3d 545, 551 (7th Cir. 2011). Instead, he dropped his claim. Because the first suit was the appropriate avenue for raising the age-discrimination claim, the final judgment in that case applies to it.

Next, Covington argues that there is not an identity of claims because the events giving rise to his retaliation claim did not occur until after he filed the first case. But this assertion is inconsistent with the allegations in his complaint. There, Covington says that National University retaliated against him for filing administrative charges by applying for twelve new loans in his name in August 2015–months before he filed his first lawsuit in November 2015. Covington cannot change his story on appeal to avoid claim preclusion. *See Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 555–56 (7th Cir. 2012) (recognizing that plaintiff appealing dismissal of complaint may elaborate on factual allegations but that new facts must be consistent with assertions in district court).

Covington also contends that there is an identity of parties because "the only defendant[ **\*488** ] in this case is National University." But Covington's omission of the individual defendants does not affect our analysis. (And we note that in the district court, he did not in fact omit the individuals as defendants, although he drops them on appeal.) Because National University was a named defendant in the first case, the third and final element for claim preclusion is satisfied. *See Tartt v. Northwest Comm. Hosp.,* 453 F.3d 817, 822 (7th Cir. 2006). And we note that claim preclusion would apply even if Covington had included the individual defendants in this appeal, because their legal interests are identical to those of the university. *See United States v. Egan Marine Corp.,* 843 F.3d 674, 678–79 (7th Cir. 2016).

Covington also appeals the denial of his recusal motion. But the only support for that motion is the judge's order that he file an updated financial affidavit, and this is not a sufficient basis for recusal. *See Liteky v. United States,* 510 U.S. 540, 555–56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (explaining that judicial expressions and rulings will not support recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible").

We have considered Covington's remaining arguments and conclude that none has merit. The judgment is AFFIRMED.

**All Citations**

726 Fed.Appx. 486 (Mem)

## Footnotes

\*  We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* Fed. R. App. P. 34(a)(2)(C).

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 6445606
United States District Court, N.D. Illinois, Eastern Division.

Carmen ESCARZAGA, Plaintiff,

v.

BOARD OF TRUSTEES OF COMMUNITY
COLLEGE DISTRICT NO. 508 d/
b/a City Colleges of Chicago and
Michael Roberts, in his individual
and official capacities, Defendants.

No. 15 C 2568
|
Signed October 23, 2015

**Attorneys and Law Firms**

Jennifer Marie Hill, Selwyn M. Skevin, Anthony J. Peraica,
Anthony J. Peraica & Associates, Ltd., Chicago, IL, for
Plaintiff.

Valerie Depies Harper, Alexandra C. Relias, City Colleges
of Chicago, Office of the General Counsel, Chicago, IL, for
Defendants.

**MEMORANDUM OPINION AND ORDER**

JORGE L. ALONSO, United States District Judge

*1 Plaintiff, Carmen Escarzaga, sues defendants, City
Colleges of Chicago and Michael Roberts, for discrimination,
hostile work environment harassment, and retaliation under
42 U.S.C. §§ 1981 and 1983 and Title VII of the Civil Rights
Act of 1964, 42 U.S.C. § 2000e *et seq.* This case is before the
Court on defendants' motion to dismiss certain of plaintiff's
claims pursuant to Federal Rule of Civil Procedure 12(b)(6).
For the following reasons, the Court grants the motion in part
and denies it in part.

**BACKGROUND**

According to the allegations of the complaint, plaintiff is
a "Hispanic woman of Mexican ancestry" who worked as
an instructor of cosmetology at Harry S. Truman College
("Truman College"), one of the City Colleges of Chicago

(Am.Compl. ¶¶ 6–7, 16.) She was hired in 1993 as an "adult
educator," but in April 2013, her position was changed to
"part-time lecturer." (*Id.* ¶¶ 16–17.) Plaintiff learned of the
change at an April 20, 2013 meeting with defendant Roberts,
the Human Resources Director at Truman College, although
Roberts told plaintiff that her pay would remain the same. (*Id.*
¶ 25.) On April 23, 2013, plaintiff learned that her pay had
in fact been reduced (contrary to what Roberts told her), the
change took effect retroactively on April 8, and she had been
overpaid. (*Id.* ¶¶ 23, 28.) She subsequently received letters
informing her that she had been overpaid not just in April but
for several months prior, beginning in January 2013, and the
amount must be repaid with interest. (*Id.* ¶ 29.) On or about
April 29, 2013, plaintiff was forced to sign an agreement to
repay amounts she was allegedly overpaid, or face discharge.
(*Id.* ¶ 34.)

Roberts and others allegedly harassed and embarrassed
plaintiff by stating that she does not understand English, her
education is lacking, and she incorrectly filled out her time
sheets. (*Id.* ¶¶ 30–32.) Plaintiff does speak and understand
English, although she speaks with a strong accent, but she
was asked on numerous occasions, to her embarrassment, to
confirm that she understood what was discussed with her in
English. (*Id.* ¶¶ 31, 33.)

In August 2013, plaintiff filed a charge of discrimination
that was forwarded to the Equal Employment Opportunity
Commission ("EEOC"), in which she alleged discriminatory
treatment and harassment based on ancestry, national origin,
and disability due to her diabetes. (*Id.,* Ex. A.) Plaintiff
was terminated at some point, but she does not say when
or describe the circumstances,[1] other than to say that she
was 63 years old at the time (*id.* ¶ 40) and to allege that
the termination was "wrongful" (*id.* ¶¶ 1, 53–54, 60). She
received a right to sue letter in January 2015. (*Id.,* Ex. B).

*2 Plaintiff's complaint consists of general factual
allegations followed by claims of civil rights violations in two
counts. Count I, captioned as "Violation of Title VII," claims
discrimination based on "ancestry/national origin, age and
disability." (*Id.* ¶ 43; *see* ¶¶ 42–46.) Count II, captioned "Civil
Rights Violations 42 U.S.C. § 1981 and 42 U.S.C. § 1983
(City Colleges of Chicago and Michael Roberts)," claims
"discrimination against the [p]laintiff in violation of § 1981,
which subjects her to discriminatory discipline and terms and
conditions of employment by terminating her on the basis of
her ancestry/national origin, disability and age" (*id.* ¶ 49) and
violation of her equal protection rights pursuant to § 1983

Case 2:23-cv-01643-LA    Filed 04/01/24    Page 86 of 192    Document 13

(*id.* ¶ 52). The caption of the complaint names as a defendant "Michael Roberts, in his individual and official capacities." In her prayers for relief, plaintiff states that she seeks to be reinstated as an employee with a clean disciplinary record and to be compensated for lost wages and other damages.

### DISCUSSION

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a pleading that states a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (ellipsis omitted). Stated differently, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

Defendants move to dismiss plaintiff's wrongful termination claims under Title VII, her age and disability discrimination claims, and her § 1981 and § 1983 claims against Roberts in both his official and individual capacities.

### I. TITLE VII WRONGFUL TERMINATION

Defendants contend that plaintiff's Title VII wrongful termination claim should be dismissed because the EEOC charge she filed did not encompass that claim. Prior to filing suit, plaintiff filed an EEOC charge against the defendants and received a right to sue letter, but her charge did not allege that she had been terminated at all, wrongfully or otherwise. In her complaint, she alleges that her "employment with the City Colleges of Chicago was terminated" when she was "63 years old" (Am.Compl.¶ 40), but the complaint contains no other facts bearing on the date, cause or other circumstances of her termination.

Before filing a federal lawsuit under Title VII, a plaintiff must file a charge of discrimination before the EEOC, or her suit is barred. *Salas v. Wis. Dep't of Corr.,* 493 F.3d 913, 921 (7th Cir. 2007). "The test for determining whether an EEOC charge encompasses the claims in a complaint [is whether they] are

'like or reasonably related to the allegations of the charge and growing out of such allegations.' " *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994) (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167 (7th Cir. 1976)). Stated slightly differently, the test is satisfied "if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.*

Defendants cite two cases—*Moore v. Vital Products, Inc.,* 641 F.3d 253, 257 (7th Cir. 2011), and *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110–11 (7th Cir. 1992)—in support of their argument that plaintiff's wrongful termination claim, nowhere mentioned or suggested in the EEOC charge, is not reasonably related to her charges of discriminatory treatment or harassment. These cases are on point, and plaintiff cites no cases in response, nor does she attempt to distinguish them other than to say that, unlike in *Moore* and *Rush,* "Escargaza indicated in her EEOC claim that Defendant was threating [sic] to terminate her." (Resp. at 5.) However, the Court fails to see why this should be a distinguishing factor, at least in the absence of any citation to case law supporting the distinction. It is true that plaintiff states in the EEOC charge that Roberts threatened to terminate her if she did not repay amounts she was allegedly overpaid, but the complaint suggests that she was not actually terminated because of the amounts she had allegedly overpaid; rather, a natural reading of the complaint suggests that the matter of the overpayment was resolved by plaintiff's signing a repayment agreement. (Am.Compl.¶ 34.)

**\*3** In fact, plaintiff's complaint contains no facts shedding any light on the immediate circumstances surrounding her termination. Her most specific description of the matter appears in her response brief:

> Plaintiff's EEOC claim discusses (1) plaintiff being overpaid because of Defendants changing her position without notifying her in advance, (2) defendants cutting the plaintiff's pay without notice, (3) defendants changing the time sheets without informing her, and (4) threats of discharge if "overpayment" was not refunded to the school. Defendants' action towards plaintiff and the reduction of her job and continuous harassment alleged in the EEOC claim, resulted in plaintiff's wrongful termination.

(Resp. at 5.) Despite this attempted clarification, plaintiff's statement that defendants' discriminatory treatment and harassment "resulted" in her "wrongful termination" is vague and conclusory. Plaintiff provides no facts to illustrate how, when, why and by whom she was terminated. She never

Case 2:23-cv-01643-LA Filed 04/01/24 Page 87 of 192 Document 13

says, for example, that she was terminated because she failed to make any repayment of the amounts she was allegedly overpaid. The Court is left to speculate as to precisely how her employment with Truman College ended.

To the extent plaintiff is making a discriminatory discharge claim that bears "a factual connection," *Jackson v. FBI,* No. 02 C 3957, 2007 WL 2492069, at *6 (N.D.Ill. Aug. 28, 2007), to the overpayment issue she describes in her EEOC charge and complaint (as if, for example, she was fired for failing to repay the money that she was allegedly overpaid), the Court disagrees with defendants that the claim is beyond the scope of plaintiff's EEOC charge. Such a claim would "reasonably grow out of an EEOC investigation of the allegations in the charge." *Cheek,* 31 F.3d at 500; *cf. Harden v. Bd. of Trs. E. Ill. Univ.,* No. 12–CV–2199, 2013 WL 6248500, at *2 (C.D.Ill.Dec. 2, 2013). To the extent plaintiff is claiming to have been discriminatorily discharged on any other grounds, even if the discharge was motivated by the same discriminatory animus that motivated the earlier disparate treatment and harassment, the Court agrees with defendants that plaintiff is asserting a separate act of discrimination as to which she has failed to exhaust her administrative remedies, under *Moore* and like cases. *See, e.g., Gbur v. City of Harvey,* 835 F.Supp.2d 600, 625–26 (N.D.Ill. 2011) (citing *Moore* ). In either case, plaintiff's claim does not contain sufficient factual matter to meet the plausibility standard of *Twombly* and *Iqbal.* Defendant's motion is granted with respect to this claim, with leave to amend if plaintiff can state a wrongful termination claim that is within the scope of her EEOC charge because it is reasonably related to the overpayment issue she described in her complaint and response brief.

## II. "TITLE VII" AGE AND DISABILITY DISCRIMINATION

Defendants move to dismiss the age and disability discrimination claims that plaintiff purports to bring under Title VII. As defendants point out, Title VII prohibits discrimination based on an "individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2, but not her age or disability. In response, plaintiff admits that Title VII does not apply to discrimination based on age or disability, but she argues that discrimination on those bases is nevertheless prohibited by other federal statutes, the Age Discrimination in Employment Act ("ADEA"), *see* 29 U.S.C. § 623, and the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C. § 12132, and under federal notice pleading standards, plaintiff

argues, it is of no consequence that the claims are incorrectly captioned.

**\*4** Plaintiff is correct. She was not required to cite the correct statutes in her complaint; she was merely required to relate sufficient facts to state a plausible claim for relief under *Twombly* and *Iqbal.* As the Seventh Circuit has explained,

> A complaint under Rule 8 limns the claim; details of both fact and law come later, in other documents. Instead of asking whether the complaint points to the appropriate statute, a court should ask whether [the complaint meets the pleading standard articulated by the Supreme Court].... A drafter who lacks a legal theory is likely to bungle the complaint (and the trial); you need a theory to decide which facts to allege and prove. But the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal.

*Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir. 1992) (internal citations omitted). Plaintiff's failure to cite the correct statutes provides no basis by itself for dismissing her age and disability discrimination claims.

However, as stated above, plaintiff's EEOC charge asserted only claims of national origin, ancestry and disability discrimination; it did not assert any claim of age discrimination, nor did the allegations within it reasonably put defendants or the EEOC on notice of age discrimination. The ADEA, like Title VII, requires exhaustion of administrative remedies before the EEOC before bringing a lawsuit. *See* 29 U.S.C.A. § 626; *Allen v. City of Chi.,* 828 F.Supp. 543, 557 (N.D.Ill. 1993). It is clear that plaintiff has failed to exhaust her administrative remedies for any age discrimination claim because her EEOC charge did not encompass any such claim. *Siciliano v. Chi. Local 458–3M,* 946 F.Supp. 596, 600 (N.D.Ill. 1996) (EEOC charge of sex and disability discrimination did not exhaust age discrimination claim); *Hansboro v. Northwood Nursing Home, Inc.,* 832 F.Supp. 248, 252 (N.D.Ind. 1993) ("Numerous courts have dismissed complaints or granted summary judgment where the complaint alleged a different type of discrimination from the EEOC charge."). Thus, the motion to dismiss is granted as to plaintiff's ADEA claim, but denied as to her ADA claim.

## III. SECTION 1981 AND 1983 CLAIMS

First, defendants move to dismiss any age or disability claims that plaintiff may assert under § 1981, as she appears to do in ¶ 49 of the complaint. Plaintiff makes a half-hearted attempt to argue that § 1981a permits disability claims, but,

Case 2:23-cv-01643-LA Filed 04/01/24 Page 88 of 192 Document 13

Escarzaga v. Board of Trustees of Community College..., Not Reported in Fed....

2015 WL 6445606, 2015 A.D. Cases 349,852

as defendants point out, § 1981a merely "details potential damages for civil rights violations generally" (Reply at 3); it does not provide a separate cause of action for disability discrimination, nor does it support any argument that § 1981 provides a cause of action for disability discrimination. It is axiomatic that § 1981 applies only to race discrimination. *See Vogel v. S. Bend Cmty. Sch. Corp.,* No. 3:11 CV 254, 2013 WL 2156483, at *1 (N.D.Ind. May 17, 2013). Plaintiff's age and disability discrimination claims are not cognizable under § 1981.

Intentional age and disability discrimination claims are cognizable under § 1983, but defendants argue that plaintiff fails to state either a § 1983 claim against Roberts in his official or individual capacity for intentional discrimination based on "ancestry/national origin, age and disability" in violation of her equal protection rights, or a race discrimination claim under § 1981.

### A. Official Capacity

**\*5** Defendant argues that plaintiff fails to state a claim against Roberts in his official capacity because he is not an official with "final policymaking authority with regard to employment policies." (Mot. to Dismiss at 7.)

The same standards govern plaintiff's intentional discrimination claims under § 1981 and § 1983 and her Title VII claims. *Friedel v. City of Madison,* 832 F.2d 965, 971–72 (7th Cir. 1987). An individual sued in his official capacity under § 1983 and § 1981 can be held liable for intentional discrimination if he had "final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37,* 260 F.3d 602, 619 (7th Cir. 2001) (citing *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989)). Whether a local government official has final policymaking authority is a question of state law. *Horwitz,* 260 F.3d at 619.

Plaintiff cites the Illinois Public Community College Act, which empowers the board of trustees of any community college district to "[t]o employ such personnel as may be needed, to ***establish policies governing their employment and dismissal***, and to fix the amount of their compensation." 110 Ill. Comp. Stat. Ann. 805/3–42 (emphasis added); *see* 110 Ill. Comp. Stat. Ann. 805/3–30 ("The board of any community college district has the powers enumerated in Sections 3–31 through 3–43 of this Act."). Michael Roberts was a human resources director at Truman College, not a

member of the board of trustees. As such, defendants argue, he did not have final policymaking authority with respect to employment matters. *See McFadden v. Chicago Pub. Sch.,* No. 11 C 7555, 2012 WL 2459161, at *2–3 (N.D. Ill. June 27, 2012).* Plaintiff makes no serious response to this argument; she cites no legal authority in support of her contention that Roberts was a final policymaker, and the only facts she cites bear only on whether he was personally involved in the actions that are the subject of this lawsuit, not on whether he had final policymaking authority as a matter of state law. The Court must agree with defendants that Roberts was not a final policymaker; therefore, plaintiff's official capacity claim against Roberts is dismissed.

### B. Individual Capacity

Defendants move to dismiss plaintiff's claim against Roberts in his individual capacity because plaintiff only makes general allegations against the "defendants" and does not allege that Roberts personally participated in the alleged improper conduct.

Plaintiff responds that she has alleged that Roberts was directly involved in effectuating plaintiff's alleged discriminatory demotion, and he personally "commented on her understanding of the English language, ability to perform tasks and lack of educational background." (Resp. at 5–6 (citing Am. Compl. ¶¶ 23–24, 30, 32–33).) Defendants insist that the allegations against Roberts are merely "generalized," and it is true that the paragraphs of the complaint under the heading "Count II: Civil Rights Violations 42 U.S.C. § 1981 and 42 U.S.C. § 1983" make only general allegations, but defendants ignore that plaintiff expressly "incorporates and re-alleges" all the preceding paragraphs "as if fully set forth" within Count II. (Am.Compl.¶ 47.) Plaintiff has sufficiently alleged that Roberts personally participated in the improper conduct to state a valid civil rights claim against him in his individual capacity.

**\*6** Defendants also argue that plaintiff's § 1981 and § 1983 claims against Roberts must be dismissed because he has not been served in his individual capacity. Plaintiff has filed a waiver of service as to Roberts that names the party waiving service as "Michael Roberts, official capacity," and is signed by one Valerie Harper at 226 W. Jackson, Chicago, Illinois, the same person who waived service on behalf of the board of trustees of the City Colleges of Chicago. Defendant Roberts has apparently not been personally served in this matter, and he must be personally served if plaintiff intends to sue him in his individual capacity, regardless of whether he has

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   4

actual notice of the lawsuit. *See Holiday v. City of Chi.,* No. 05 C 4514, 2006 WL 2853595, at *4–5 (N.D.Ill. Sept. 29, 2006); *Saniat v. City of Chi.,* No. 96 C 5191, 1998 WL 748399, at *5 (N.D.Ill. Oct. 22, 1998); *see also Del Raine v. Carlson,* 826 F.2d 698, 704 (7th Cir. 1987) (plaintiff must serve *Bivens* defendant personally to sue him in his individual capacity). The § 1981 and § 1983 claims against Roberts in his individual capacity are dismissed.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part defendants' motion to dismiss [15]. Plaintiff's Title VII wrongful termination claim is dismissed without prejudice to refiling if plaintiff can state a claim that is reasonably related to the overpayment issue she described in her EEOC charge. Plaintiff's § 1981 and § 1983 claims against defendant Roberts in his individual capacity are dismissed without prejudice for lack of service. Plaintiff's ADEA age discrimination claim, her § 1983 and § 1981 claims against defendant Roberts in his official capacity, and her § 1981 age and disability discrimination claims are dismissed with prejudice. The motion is denied as to her ADA disability discrimination claim. Status hearing remains set for 1/13/16 at 9:30 a.m.

**SO ORDERED**.

## All Citations

Not Reported in Fed. Supp., 2015 WL 6445606, 2015 A.D. Cases 349,852

---

Footnotes

1    Defendants attach a copy of what is purportedly plaintiff's resignation letter, dated May 5, 2014, to their reply brief. The Court does not assume the truth of any facts contained in this letter or base any inferences on it; at the motion to dismiss stage, the Court can only consider the allegations of the complaint, documents that are attached to plaintiff's complaint or to which the complaint explicitly refers, and documents of which the Court can take judicial notice. *See Facebook, Inc. v. Teachbook.com LLC,* 819 F.Supp.2d 764, 770 (N.D.Ill. 2011).

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Estevez v. Lohman, Not Reported in Fed. Supp. (2021)**

2021 WL 3568558

2021 WL 3568558
Only the Westlaw citation is currently available.
United States District Court, E.D. Wisconsin.

Michael J. ESTEVEZ, Plaintiff,

v.

Scott LOHMAN, et al., Defendants.

Case No. 21-cv-0756-bhl

|

Signed 08/12/2021

**Attorneys and Law Firms**

Michael J. Estevez, Green Bay, WI, Pro Se.

**SCREENING ORDER**

BRETT H. LUDWIG, United States District Judge

**\*1** Plaintiff Michael J. Estevez, who is currently serving a state prison sentence at Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that the defendants violated his civil rights at the Door County Jail. Dkt. No. 1. On July 21, 2021, the Court screened and dismissed the original complaint for failure to state a claim upon which relief could be granted, and it gave Estevez an opportunity to file an amended complaint within 30 days of the date of the order. Dkt. No. 9. Estevez filed an amended complaint on August 9, 2021. *See* Dkt. Nos. 10-1 and 12. This order screens and dismisses the amended complaint.

**Federal Screening Standard**

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a

cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

**Allegations of the Complaint**

At the relevant time, Estevez was an inmate at the Door County Jail. Dkt. No. 10-1 at 1-2. Defendants Scott Lohman and Tammy Sternard were correctional staff at the jail. *Id.*

**\*2** On or around March 19, 2018, Sternard gave Estevez a memo stating that "all outgoing privileged mail must be left opened to be searched for contraband." *Id.* at 3. About two months later, on May 27, 2018, Estevez put out a legal manilla envelope "clearly addressed to [his] attorney with sensitive legal material pertaining to [his] cases." *Id.* Lohman opened the envelope and went through his outgoing privileged legal mail outside of Estevez's presence and without his consent. *Id.* Estevez states that the policy to search privileged legal mail was effective until December 14, 2018. *Id.* For relief, Estevez seeks monetary damages. *Id.* at 4.

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.                    1

Estevez v. Lohman, Not Reported in Fed. Supp. (2021)

2021 WL 3568558

**The Court's Analysis**

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.,* 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009)).

An inmate has a general First Amendment right to send and receive mail but that right does not preclude officials from inspecting mail for contraband. *See Wolff v. McDonnell,* 418 U.S. 539, 575-76 (1974). "Legal mail," such as correspondence between an inmate and his attorney, is entitled to greater protections because of the potential for interfering with an inmate's right of access to the courts. *See Guajardo-Palma v. Martinson,* 622 F.3d 801, 802 (7th Cir. 2010) ("[S]ince the purpose of confidential communication with one's lawyer is to win a case rather than to enrich the marketplace of ideas, it seems more straightforward to base the concern with destroying that confidentiality on the right of access to the courts."). Prison officials may inspect (but not read) certain types of legal mail; and legal mail must be labeled "privileged" or "legal mail" to be afforded protection. *Id.* at 804-05; *see also Jenkins v. Huntley,* 235 F. App'x 374, 376-77 (7th Cir. 2007). Only repeated instances of a prisoner's legal mail being opened by prison officials outside of his presence are actionable. *See Guajardo-Palma,* 622 F.3d at 805.

To state a claim regarding interference with legal mail, a plaintiff must also allege that he lost a legal claim or suffered an injury from the alleged violation. *Ray v. Wyciskalla,* 461 F. App'x 507, 509 (7th Cir. 2012). As the Seventh Circuit has explained, "suppose a letter arrives at the prison that is known to be from a prisoner's lawyer to the prisoner, and a prison guard reads it and makes a copy for his superiors in order to give them insight into their opponent's litigation strategy." *Guajardo-Palma,* 622 F.3d at 802. "This would give the defendants a litigating advantage sufficient... to violate the prisoner's constitutional right to access to the courts." *Id.* "[B]estowing it on one side of a litigation and denying it to the other side can place the denied side at a critical disadvantage." *Id.* Thus, absent allegations that an inmate lost a legal claim or suffered an injury, his assertion that prison staff opened and read legal mail outside of his presence is insufficient to state a § 1983 claim. *Ray,* 461 F. App'x at 509.

The Court will dismiss this case for failure to state a claim upon which relief can be granted. First, Estevez alleges that Sternard implemented a "policy" at the jail to inspect "all outgoing privileged mail for contraband." Dkt. No. 10-1 at 3. But the Seventh Circuit has long held that even privileged legal mail can be searched for contraband. *Wolff,* 418 U.S. at 575-76. There is nothing unconstitutional about Sternard's decision to implement this policy at the Door County Jail in March 2018. Estevez fails to state a claim against Sternard.

**\*3** Second, Estevez alleges that, pursuant to this policy, Lohman conducted a search of his privileged legal mail outside of his presence. Dkt. No. 10-1 at 3. While legal mail should be inspected in an inmate's presence to ensure that staff do not read the correspondence, Estevez only identifies one incident—May 27, 2018—when his legal mail was allegedly inspected outside of his presence. Only repeated instances of a prisoner's legal mail being opened by prison officials outside of his presence are actionable. *See Guajardo-Palma,* 622 F.3d at 805 ("An isolated interference with the confidentiality of such communications is different; its effect on prisoners' access to justice is likely to be nil."). Further, Estevez does not allege that the manilla envelope was labeled "privileged" or "legal mail." Simply addressing an envelope to an attorney is not enough to trigger protections. *See Guajardo-Palma,* 622 F.3d at 804 ("Prison officials cannot be certain, just from the return address on an envelope, that a letter is [for] a lawyer...[i]f prison officials had to check in each case whether a communication was [for] an attorney before opening it for inspection, a near impossible task of administration would be imposed."). Finally, Estevez also does not identify any lost legal claim or injury he suffered from that one isolated incident. Estevez therefore fails to state a claim against Lohman. The Court notes that Wisconsin's three-year statute of limitations applies to causes of action accruing on or after April 5, 2018. *Huber v. Anderson,* 909 F.3d 201, 207 (7th Cir. 2018) (citing 2017 Wis. Act 235 (eff. Apr. 5, 2018) ). As noted above, Estevez only alleges facts involving one incident— from May 27, 2018—thus, this lawsuit filed on June 18, 2021 is also likely barred by Wisconsin's statute of limitations by about three weeks.

The remainder of Estevez's allegations, i.e., that he was "prohibited" from doing a variety of things including making phone calls to certain people, taking to other inmates, and having certain visitors, are merely conclusory and not grounded in specific facts sufficient to provide defendants notice of a plausible claim. *See* Dkt. No. 10-1 at 2-3. Estevez

Case 2:23-cv-01643-LA   Filed 04/01/24   Page 92 of 192   Document 13

Estevez v. Lohman, Not Reported in Fed. Supp. (2021)

2021 WL 3568558

does not identify when these incidents happened, who was involved, or what these individuals said or did that amounted to a "prohibition" on certain phone calls, communications, and visitors. *See id.* The Court has already given Estevez one opportunity to amend the complaint to describe these specific facts. *See* Dkt. No. 9 at 2-3. The Court therefore concludes that an additional opportunity to amend the complaint to *again* identify the same information would be futile. The Court will dismiss this case. *See Boyd v. Bellin*, 835 F. App'x 886, 889 (7th Cir. 2021) (noting that the Court need not provide an opportunity to amend if amendment would be futile).

**Conclusion**

This plaintiff has provided no arguable basis for relief, having failed to make any rational argument in law or fact to support his claims. *See House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992) (quoting *Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988), *aff'd sub nom. Neitzke v. Williams*, 490 U.S. 319 (1989)).

**IT IS THEREFORE ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS FURTHER ORDERED** that copies of this order be emailed to DLSFedOrdersEastCL@doj.state.wi.us.

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a) (1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

**\*4** Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3568558

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Estevez v. Lohman, Not Reported in Fed. Rptr. (2022)

2022 WL 2383858

2022 WL 2383858
Only the Westlaw citation is currently available.
United States Court of Appeals, Seventh Circuit.

Michael J. ESTEVEZ, Plaintiff-Appellant,

v.

Scott LOHMAN, et al., Defendants-Appellees.

No. 21-2928
|
Submitted June 23, 2022[*]
|
Decided July 1, 2022

Appeal from the United States District Court for the Eastern District of Wisconsin. No. 21-cv-0756-bhl, Brett H. Ludwig, *Judge.*

**Attorneys and Law Firms**

Michael J. Estevez, Green Bay, WI, Pro Se.

Before DIANE S. SYKES, Chief Judge, MICHAEL B. BRENNAN, Circuit Judge, MICHAEL Y. SCUDDER, Circuit Judge

**ORDER**

 *1 Michael Estevez appeals the dismissal of his complaint alleging that officials at the Door County Jail in Wisconsin violated his constitutional rights while he was a pretrial detainee. *See* 42 U.S.C. § 1983. The district judge dismissed his complaint for failure to state a claim. We affirm.

Estevez filed a form prisoner-rights complaint alleging violations of his Fourteenth and First Amendment rights in connection with a state-court order that limited his communications and contacts with others while he was in pretrial detention. The judge screened the complaint, 28 U.S.C. § 1915A, and dismissed it with leave to amend. The judge explained that the complaint lacked "a coherent narrative that would allow ... proper notice" under Rule 8 of the Federal Rules of Civil Procedure. In providing

an opportunity to amend, the judge cautioned Estevez that claims that were not common to all defendants would require different lawsuits and judges and district attorneys are generally entitled to absolute immunity.

Estevez amended his complaint to allege that two correctional officers implemented restrictions placed on him in pretrial detention, subjecting him to "severe pain and torture." He alleged that over nine months Sheriff Tammy Sternard implemented a policy that limited his mail privileges, telephone privileges, and contact with visitors and other detainees. Estevez further alleged that on one occasion he sent his attorney a letter, which Sergeant Scott Lohman opened and searched without his consent.

The judge dismissed the amended complaint for failure to state a claim. He explained that even privileged legal mail can be searched for contraband, and there was nothing unconstitutional about Sternard's implementation of a policy at the jail to inspect outgoing privileged mail for contraband. With regard to Lohman's alleged search of Estevez's privileged legal mail outside his presence, the judge concluded that a single instance of mail interference, without any injury, was not actionable. Finally, the judge said that the remainder of Estevez's allegations regarding prohibitions on making calls or having visitors were not grounded in facts sufficient to provide notice to defendants of a plausible claim.

On appeal Estevez argues that the judge erred by failing to consider whether the restrictions, enforced under the state-court order, were punitive. But this argument does not address the basis of the judge's ruling—that Estevez failed to state a claim. Liability under § 1983 requires personal involvement in the alleged constitutional deprivation, *see Colbert v. City of Chicago*, 851 F.3d 649, 657–58 (7th Cir. 2017), and the jail officials did not create the restrictions in the state-court order.

We have considered Estevez's other arguments, and none has merit.

AFFIRMED

**All Citations**

Not Reported in Fed. Rptr., 2022 WL 2383858

Footnotes

**Estevez v. Lohman, Not Reported in Fed. Rptr. (2022)**

2022 WL 2383858

\*     The appellees were not served with process and are not participating in this appeal. We have agreed to decide the case without oral argument because the brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. Fed. R. App. P. 34(a)(2)(C).

---

**End of Document**                                       © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Ferguson v. Nissen Staffing Continuum, Inc., Not Reported in Fed. Supp. (2018)

2018 WL 1513034, 2018 Fair Empl.Prac.Cas. (BNA) 105,373

2018 WL 1513034
United States District Court, E.D. Wisconsin.

Tryone FERGUSON, Sr., Plaintiff,

v.

NISSEN STAFFING CONTINUUM,
INC. and BuySeasons, Inc., Defendants.

Case No. 17–cv–198–pp
|
Signed 03/27/2018

**Attorneys and Law Firms**

Tyrone Ferguson, Sr., Milwaukee, WI, pro se.

Jessica M. Simons, Robert K. Sholl, Reinhart Boerner Van Deuren SC, Craig T. Papka, Jackson Lewis PC, Milwaukee, WI, Tony H. McGrath, Jackson Lewis PC, Madison, WI, for Defendants.

ORDER GRANTING DEFENDANT NISSEN STAFFING CONTINUUM, INC.'S MOTION TO DISMISS (DKT. NO. 14), GRANTING DEFENDANT BUY SEASONS, INC.'S MOTION TO DISMISS (DKT. NO. 20), AND GRANTING THE PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT BY APRIL 27, 2018

PAMELA PEPPER, United States District Judge

**\*1** On February 14, 2017, the plaintiff, who is representing himself, filed a complaint alleging various claims, including race and age discrimination. Dkt. No. 1. Both defendants filed motions to dismiss. Dkt. Nos. 14, 20. Defendant Nissen Staffing Continuum, Inc. moves to dismiss for lack of subject matter jurisdiction as to the forgery claim, and failure to state a claim on all remaining claims. Dkt. No. 14. Defendant BuySeasons, Inc. joins in Nissen's motion to dismiss, but also moves to dismiss because the plaintiff's prayer for relief did not mention BuySeasons, and because BuySeasons alleges that it has not been properly served with a summons and complaint. Dkt. No. 20. The plaintiff has not responded to the motions to dismiss. The court will grant the motions to dismiss, but will give the plaintiff the opportunity to file an amended complaint.

**I. Defendant Nissen Staffing Continuum's Motion to Dismiss (Dkt. No. 14)**

A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. Boucher, et al. v. Finance System of Green Bay, Inc., 880 F.3d 362, 366 (7th Cir. 2018) (quoting Iqbal, 556 U.S. at 678). A plaintiff's failure to respond to an argument raised in a motion to dismiss forfeits any argument on that issue. See Alioto v. Town of Lisbon, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."); Lekas v. Briley, 405 F.3d 602, 614 (7th Cir. 2005).

B. The Complaint

The plaintiff begins his complaint by alleging that Nissen and BuySeasons violated "Title VII of the Civil Rights Act of 1964" and the "Age Discrimination Act of 1975." Dkt. No. 1 at 1. The plaintiff says that on August 16, 2016, he filed two separate charges with the Equal Employment Opportunity Commission ("EEOC"). Id. at 2. He says that in these charges, he alleged that he was discriminated against on the basis of his age (he is almost 56), and that he was fired in violation of the Age Discrimination in Employment Act. Id.

The plaintiff next says that on December 19, 2016, several months after he filed the EEOC charges, he filed a formal written request with the EEOC, asking for "all documents." Id. He alleges that it was then that he discovered that defendant Nissen had forged his signature on a document that stated the applicant understood Nissen's policies and procedures regarding employment. Id. (citing Dkt. No. 1–1 at 1, "Exhibit 1"). The plaintiff alleges that this forgery violated the Forgery and Counterfeiting Act of 1981 ("an Act of the Parliament of the United Kingdom"). Id.

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.    1

Ferguson v. Nissen Staffing Continuum, Inc., Not Reported in Fed. Supp. (2018)

2018 WL 1513034, 2018 Fair Empl.Prac.Cas. (BNA) 105,373

**\*2** The plaintiff then discusses a standup forklift test, and points the court to a series of recordings that he submitted as exhibits to the complaint. Id. In this section of the complaint, the plaintiff says that one of Nissen's recruiters, Luis Rodriguez, was "Latin America," and that although Rodriguez was late several times, Nissen never fired Rodriguez. Id. at 3. The plaintiff says that Nissen also did not fire Rodriguez's son son, who is "between 26 and 29 years old." Id. The plaintiff alleges that his is an African American who, at the time, was 54 years old, and that his work was so outstanding that Nissen and BuySeasons asked him to come "back to work for BuySeasons." Id.

The plaintiff continues over the next two pages by describing conversations he had with Rodriguez (and a few others, but mostly Rodriguez)—it appears to the court that all of these conversations related to the plaintiff trying to get Nissen to place him at BuySeasons. Id. at 3–4.

After returning to his claim that Nissen forged his signature on Exhibit 1, id. at 5, the plaintiff alleges that he is filing suit to "correct unlawful employment practices on the basis of race, sex and age discrimination," id. He also alleges that forgery is a crime under Wisconsin law "punished as a Class H felony." Id. In his prayer for relief, he asks the court to issue an injunction against Nissen, preventing Nissen from taking various actions against him. Id. He also seeks compensation for past and future "pecuniary and non-pecuniary losses resulting from the unlawful and intimidating employment practices." Id.

The plaintiff attached a number of items to the complaint, including the document that allegedly has the plaintiff's signature forged on it, dkt. no. 1–1 at 1; a letter from Lori Gengler at Nissen Staffing Continuum stating that the plaintiff "is no longer working through our agency," id. at 2; and his notices of right to sue letter from the EEOC, id. at 3–4. He also filed with the court an audio disc containing a series of unauthenticated, recorded telephone phone calls; the plaintiff asserts that these calls are from him to Rodriguez, Mr. Gamboe (a supervisor) and Mr. Duke to find out why he was not supposed to report to work. Dkt. No. 1, CD on file. As the court noted above, the plaintiff referenced the conversations on the CD numerous times in the complaint.[1] Id. at 3–4.

C. Plaintiff's Claims

In its screening order, the court allowed the plaintiff to proceed only on his employment discrimination claims against both defendants on the basis of race and age under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., and on the basis of age under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et seq. Dkt. No. 4 at 3. Despite that fact, the defendants have moved to dismiss all of the claims the plaintiff appears to have been trying to raise: (1) race and sex discrimination under Title VII; (2) race and sex discrimination under Title I; (3) age discrimination; (4) fraud or forgery under the Forgery and Counterfeiting Act of 1981; (5) fraud or forgery under Wis. Stat. § 943.38; and (6) defamation.

1. *Plaintiff's Claims for Forgery and Counterfeiting Act of 1981*

The plaintiff asserted that the alleged forgery of his name on Exhibit 1 violated the "Forgery and Counterfeiting Act of 1981;" according to the plaintiff, this is an "Act of the the Parliament of the United Kingdom which makes it illegal to make fake versions of many things, including legal documents, contracts, audio and visual recordings, and money of the United Kingdom and certain protected coins." Dkt. No. 1 at 4. As far as the court can tell, the plaintiff is asserting that the alleged forgery of his name violates a statute from the country of England.

**\*3** Federal district courts have limited jurisdiction. District courts have original jurisdiction over civil case arising under the Constitution, laws or treaties of the United States, under 28 U.S.C. § 1331, and cases in which the amount in controversy exceeds $75,000 and involves citizens of different states (or citizens of a state and subjects of a foreign state), 28 U.S.C. § 1332. The plaintiff's allegation that Nissen violated a statute from England do not arise under the Constitution, the laws or any treaties of the United States. That means the court does not have what is known as "federal question" jurisdiction over that allegation. The plaintiff lives in Milwaukee, Wisconsin, and alleges that Nissen (the defendant who he claims committed the forgery) operates a "staffing corporation" "headquartered in Waukesha, Wisconsin." In other words, the plaintiff has sued a defendant who lives in the same state that he lives in. This means that the court does not have what is known as "diversity jurisdiction" over the plaintiff's forgery claim against Nissen.

Case 2:23-cv-01643-LA    Filed 04/01/24    Page 97 of 192    Document 13

Ferguson v. Nissen Staffing Continuum, Inc., Not Reported in Fed. Supp. (2018)

2018 WL 1513034, 2018 Fair Empl.Prac.Cas. (BNA) 105,373

Because the court does not have jurisdiction over the plaintiff's claim that Nissen forged his name in violation of a statute from the country of England, the court will grant the defendants' motion to dismiss that claim.

## 2. *Plaintiff's Claim of Sex Discrimination in violation of Title VII and Title I*

On the last page of his complaint, the plaintiff said that he had filed his lawsuit to "correct unlawful employment practices" on the basis of sex discrimination under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. Dkt. No. 1 at 5. The plaintiff did not raise a sex discrimination claim in his EEOC complaints; he alleged only discrimination based on race (African American) and age.[2] Before a plaintiff can bring a Title VII sex discrimination claim in federal court, he first must file a charge with the EEOC, "and the EEOC must issue a right-to-sue letter." Conner v. Ill. Dept. of Natural Resources, 413 F.3d 675, 680 (7th Cir. 2005) (citing Hentosh v. Herman M. Finc, Univ. of Health Scis./The Chi. Med. Sch., 167 F.3d 1170, 1173 (7th Cir. 1999)). "Generally, 'a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [his] EEOC charge.'" Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 634 (7th Cir. 2013). Because the plaintiff did not include a sex discrimination allegation in his EEOC complaints, he cannot pursue a sex discrimination claim in this lawsuit.

In addition, none of the allegations in the plaintiff's complaint state facts that would support a sex discrimination claim. He does not allege that the defendants refused to hire him or place him because he is a man. He does not allege that they hired or placed equally qualified women instead of hiring or placing him.

Finally, the plaintiff said that in addition to bring suit under Title VII, he also was suing under Title I of the Civil Rights Act, which is codified at 42 U.S.C. § 1981a. Although Title I broadens the remedies available to a successful Title VII litigant, it does not provide substantive rights independent of Title VII. 42 U.S.C. § 1981a. The court will dismiss the plaintiff's claims under Title I.

## 3. *Plaintiff's Claim of Race Discrimination*

The plaintiff states that he is suing to correct employment practices for race discrimination under Title VII and Title I.

Again, Title I does not provide an independent substantive cause of action, and the court will dismiss the plaintiff's Title I race discrimination claim.

**\*4** With regard to the plaintiff's Title VII race discrimination claim: In the absence of direct evidence (such as a defendant stating that it is firing a person because of his race), a plaintiff alleging a Title VII race discrimination claim must show: (1) that he is a member of a protected class, (2) that he was qualified for the applicable positions; (3) that he was subjected to an adverse employment act, and (4) that there is a link between the fact that he is a member of a protected class and the fact that he suffered an adverse employment act. McGowan v. Deere & Co., 581 F.3d 575, 579 (7th Cir. 2009). In a Title VII case, a plaintiff can generally allege the connection between membership in a protected class and an adverse employment action. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

The plaintiff alleges: (1) that he is African American; (2) that he "was discharged;" (3) that no one can fail a standing forklift test; (4) that his supervisor at BuySeasons (Mr. Gamboe) had no complaints; (5) that Nissen's recruiter, Luis Rodriguez Sr., was Latino; (6) that Rodriguez arrived late for work at BuySeasons numerous times but the defendants never fired him; and (7) that the plaintiff performed outstanding work, which prompted Luis Rodriguez Sr. to ask the plaintiff how he felt about returning to BuySeasons.

Even if the court liberally construes the plaintiff's allegations, the current complaint does not state a claim against either defendant. The plaintiff does not tell the court what specific adverse employment action he suffered. Was he working for Nissen or BuySeasons, and then they fired him? Is he alleging that Nissen refused to place him, or that BuySeasons refused to hire him? The plaintiff does not say which defendant did what to him. He does not explain what makes him believe that he was fired (or not hired or placed) because of his race, other than to point out that Rodriguez (who is of a different race) was late several times to BuySeasons and was not fired.

The documents the plaintiff attached to the complaint don't help the court. He attached the September 23, 2016 letter from Ms. Gengler saying that the plaintiff "[was] no longer working through [Nissen]." Dkt. No. 1–1 at 2. This doesn't prove that the plaintiff was fired, or discriminated against, by Nissen. Exhibit 1, the Nissen policy statement on which the plaintiff alleges someone forged his signature, states that the applicant understands that only Nissen can terminate

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Ferguson v. Nissen Staffing Continuum, Inc., Not Reported in Fed. Supp. (2018)**

2018 WL 1513034, 2018 Fair Empl.Prac.Cas. (BNA) 105,373

the applicant's employment, and that failure to complete an assignment will be interpreted as the applicant's decision to voluntarily quit. Id. at 1. This does not shed light on what action the plaintiff believes the defendants took against him, or why he believes they took these actions based on his race.

The plaintiff talks about Rodriguez being late, but does not explain why that is relevant to his claims. Does he think that he was fired for being late, when someone of a different race was not? He talks about passing the standing forklift test. Does he believe that people of other races failed the test but were placed, while he was not?

The court will allow the plaintiff to amend his complaint, to try to make his Title VII discrimination claim clearer. In the amended complaint, he needs to tell the court what adverse employment action he believes each of the two defendants took against him. He must explain why he believes why the defendants took those actions based on his race, and not for some other reason. The plaintiff should tell the court when the adverse employment actions took place, and where.

Along with this order, the court is sending the plaintiff a copy of the court's Guide to Filing Non–Prisoner Complaints, and a form complaint. If the plaintiff chooses to file an amended complaint, he must use this form. He must write the word "Amended" next to the word "Complaint" at the top of the first page. He must put the case number assigned to this case —17–cv–198—in the space under "Case Number" on the first page. The amended complaint will take the place of the original complaint, so the plaintiff may not incorporate his original complaint into the amended complaint.

### 4. *Plaintiff's Claim of Age Discrimination*

 **\*5** The plaintiff also asserts several times that he believes that the defendants discriminated against him based on his age, in violation of the Age Discrimination in Employment Act. The ADEA protects workers forty years of age and older, and "makes it unlawful for an employer ... 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.' " Skiba v. Ill. Cent. R.R. Co., Case No. 17–2002, 2018 WL 1190856, at \*5 (7th Cir. 2018) (quoting 29 U.S.C. § 623(a)(1) ).

Again, in its current state, the complaint does not state a claim for age discrimination. The plaintiff alleges that he was 54 years old at the time of the complaint. He also alleges that Luis Rodriguez, Jr. is between 27 and 29. Other than that, the plaintiff does not say what adverse employment actions either defendant took against him. He does not say why he believes that they took those actions based on his age. The court will allow the plaintiff to try to make his age discrimination claim clearer in the amended complaint. As with his race discrimination claim, he will need to tell the court what each defendant did, when they did it, where they did it and why he believes they did it based on his age.

The court emphasizes that if the plaintiff chooses to file an amended complaint, he may bring only *two claims* in it: his claims of racial discrimination and age discrimination under Title VII. He may not bring any of the other claims the court dismisses in this order.

### 5. *Plaintiff's Claim under Wis. Stat. § 943.38*

It is not clear to the court whether the plaintiff was trying to assert a claim that whoever forged his name on Exhibit 1 violated Wis. Stat. § 943.38. If the plaintiff was trying to assert that claim, however, the court will dismiss it. Wis. Stat. § 943.38 is a criminal statute. Private citizens cannot sue people under criminal statutes. Only a state prosecutor, as a representative of the State of Wisconsin, may bring criminal charges.

### 6. *Plaintiff's Claim of Common Law Fraud*

The plaintiff mentions "fraud" in some places in the complaint. Again, it is not clear to the court whether the plaintiff is trying to bring a common-law fraud claim, or against whom he is trying to bring it. If he was trying to allege that the defendants committed fraud, the court will dismiss that claim because the plaintiff has not pled his claim with particularity as required by Rule 9(b) of the Federal Rules of Procedure. To plead a fraud claim under Wisconsin law, a plaintiff must identify a false representation, must show that the false representation was made with the intent to defraud and for the purpose of inducing another to act upon it, and must show that the false statement actually induced another to rely and act upon that representation, causing injury or damage. Green Spring Farms v. Kersten, 136 Wis. 2d 304,

Case 2:23-cv-01643-LA    Filed 04/01/24    Page 99 of 192    Document 13

Ferguson v. Nissen Staffing Continuum, Inc., Not Reported in Fed. Supp. (2018)

2018 WL 1513034, 2018 Fair Empl.Prac.Cas. (BNA) 105,373

318 n.5 (1987); see also Ollerman v. O'Rourke Co., 94 Wis.2d 17, 25 (1980).

The plaintiff alleged that Exhibit 1 to the complaint does not bear his signature or his penmanship. This is nowhere near sufficient to allege a fraud claim. He does not allege that the defendants made a false misrepresentation (or say which of them did so), knowing that it was untrue. He does not say what the false representation was. He does not say that they intended to induce anyone to rely on the false claim, or that anyone actually did rely on the false claim. The court will dismiss any claim of fraud.

### 7. *Plaintiff's Claim of Defamation*

**\*6** In his prayer for relief, the plaintiff asks the court to issue an injunction ordering the defendants not to defame his character. The court cannot tell whether the plaintiff was trying to bring a defamation claim, but if he was, the court will dismiss it. In Wisconsin, a defamation claim requires (1) a false statement concerning another (2) communicated by speech, conduct, or in writing to someone other than the person defamed (3) that is unprivileged and is defamatory. See Hart v. Bennet, 267 Wis. 2d 919, 941 (2003). The plaintiff did not allege that anyone made a false statement about him that was defamatory.

### II. Defendant BuySeasons' Motion to Dismiss (Dkt. No. 20)

BuySeasons joined the arguments raised in Nissen's motion to dismiss, and the court will grant the motion for the same reasons it gave in its discussion of Nissen's motion. BuySeasons also asserts, however, that the prayer for relief in the complaint does not ask for any relief against BuySeasons, and because the plaintiff failed to properly serve BuySeasons within ninety days and that no proof of service has been filed with the court. Dkt. No. 20 at 2.

BuySeasons is correct that the plaintiff did not ask for any relief against BuySeasons. His prayer for relief asks the court to enjoin Nissen from engaging in certain actions, and to order Nissen to pay him compensation. Dkt. No. 1 at 5. This is another basis for the court to grant BuySeasons's motion to dismiss.

BuySeasons's allegation that it was not properly served, however, ignores the realities of how this *pro se* plaintiff's case has proceeded, and is frankly somewhat disingenuous.

It is true that typically, a plaintiff has the burden to make a *prima facie* showing that he effected proper service when the defendant has challenged sufficiency of service under Rule 12(b)(5). A plaintiff's *pro se* status doesn't excuse his failure to comply with procedural rules. McMasters v. United States, 260 F.3d 814, 818 (7th Cir. 2001). Rule 4 says that a plaintiff must complete service within ninety days of the filing of the complaint. Fed. R. Civ. P. 4(m). A plaintiff serving a corporation must effectuate that service (1) in a manner prescribed under Wisconsin law or (2) "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and ... by mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1). Under Wis. Stat. § 180.0504, a corporation's registered agent is the agent for service of process or, if the corporation has no registered agent, service may be made by registered or certified mail provided certain criteria is met. Wis. Stat. § 180.0504(1), (2).

In this case, though, the court's screening order required the U.S. Marshal's Service to serve the defendants on the plaintiff's behalf. Dkt. No. 4. Given that order, the plaintiff was entitled to rely on the U.S. Marshal to timely effect service.

The plaintiff filed the complaint on February 14, 2017. Dkt. No. 1. The court issued its screening order on February 24, 2017. Dkt. No. 4. The U.S. Marshal mailed the waiver of service packet to BuySeasons on March 8, 2017, but BuySeasons did not waive service. Dkt. No. 11. On May 25, 2017, ten days after BuySeasons filed its motion, the U.S. Marshal Service filed the executed summons with the court. Dkt. No. 25. The process receipt and return filed by the U.S. Marshal on May 26, 2017 shows that the Marshal effected service on May 25, 2017 by delivering a copy of the summons and complaint to Mary Jo Rowbottom (Customer Service) at BuySeasons, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

**\*7** So—the Marshal effected service one hundred days after the plaintiff filed is complaint, and exactly ninety days after the court issued its screening order. If the defendant had waived service when the Marshal mailed the service packet, the Marshal would not have had to expend time and resources

Ferguson v. Nissen Staffing Continuum, Inc., Not Reported in Fed. Supp. (2018)

2018 WL 1513034, 2018 Fair Empl.Prac.Cas. (BNA) 105,373

to effectuate formal service. Courts have found good cause to extend the time for service under Rule 4(m) when it is the Marshal's Service that fails to serve the defendant in a timely manner. See Graham v. Satkoski, 51 F.3d 710, 712 (7th Cir. 1995). In this case, the Marshal did not fail to timely effectuate service, given that it did so ninety days after the court issued the screening order.

The court also notes that a defendant's failure to sign and return the waiver of service, without showing good cause, requires the court to impose (1) the expenses later incurred in making service and (2) reasonable expenses required to collect those service expenses. Fed. R. Civ. P. 4(d)(2).

While the court will grant BuySeasons's motion to dismiss based on failure to state a claim and failure to seek relief against it, the court will not grant that portion of the motion that seeks dismissal for failure to properly serve BuySeasons.

## III. Conclusion

The court **GRANTS** defendant Nissen Staffing Continuum, Inc.'s motion to dismiss. Dkt. No. 14.

The court **GRANTS** defendant BuySeasons, Inc.'s motion to dismiss, to the extent that it is based on failure to state a claim and failure to seek relief against the defendant. Dkt. No. 20.

The court **ORDERS** that if the plaintiff wishes to proceed on his claims of racial and age discrimination under Title VII, he must file an amended complaint in time for the court to receive it by the end of the day on **Friday, April 27, 2018**. If the court does not receive an amended complaint that complies with this order by the end of the day on Friday, April 27, 2018, the court will dismiss the case for failure to diligently prosecute under Civ. L.R. 41(c) (E.D. Wis.).

## All Citations

Not Reported in Fed. Supp., 2018 WL 1513034, 2018 Fair Empl.Prac.Cas. (BNA) 105,373

## Footnotes

1     For purposes of a Rule 12(b)(6) motion, the pleadings "consist generally of the complaint, any exhibits attached thereto, and supporting briefs." Thompson v. Ill. Dep't of Prof. Regulation, 300 F.3d 750, 753 (7th Cir. 2002).

2     The plaintiff attached the dismissal and notice of rights forms that he received from the U.S. Equal Employment Opportunity Commission. Dkt. No. 1–1 at 3–4. Because he refers to the EEOC claim in his complaint and the claim is central to his complaint, the fact that Nissen attached to its motion the actual EEOC charge of discrimination form that the plaintiff filed against it (dkt. no. 15–1) does not convert the motion to dismiss to one for summary judgment. See Wright v. Associated Ins. Cos. Inc., 29 F.3d 1244, 1248 (7th Cir. 1994).

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 4273515
Only the Westlaw citation is currently available.
United States District Court, E.D. Wisconsin.

Jaylen FRIER, Plaintiff,

v.

Jeffrey HINGISS and
Joseph Rieder, Defendants.

Case No. 23-cv-0290-bhl
|
Signed June 29, 2023

**Attorneys and Law Firms**

B'Ivory LaMarr, The LaMarr Firm PLLC, Houston, TX, for
Plaintiff.

Kyle W. Engelke, Pahoua Thao, Stafford Rosenbaum LLP,
Madison, WI, for Defendants.

**ORDER GRANTING MOTION TO DISMISS**

BRETT H. LUDWIG, United States District Judge

**\*1** The common law doctrine of res judicata or claim
preclusion prohibits a party from relitigating claims
previously adjudicated. It also bars a party from presenting
related claims in piecemeal fashion in multiple lawsuits.
Plaintiff Jaylen Frier's complaint in this case runs head
on into this well-established doctrine. Just days before
he went to trial on similar claims in a lawsuit he filed
in Waukesha County Circuit Court, Frier commenced this
federal action, asserting claims he could have raised in the
state court proceeding. Defendants—Police Chief Jeffrey
Hingiss, former Police Chief Joseph Rieder, and the City of
New Berlin—have moved to dismiss on the grounds that res
judicata prohibits Frier from splitting claims between cases.
Because Defendants are correct and res judicata applies, their
motion to dismiss will be granted.

**FACTUAL BACKGROUND**[1]

This story begins on August 28, 2020, with a text message.
(ECF No. 1 ¶¶19, 22.) What the text said is irrelevant;
the key detail is that City of New Berlin Police Sergeant

Steven J. Dodson was driving while reading it. (*Id.* ¶¶20-22.)
Attention split between the road and his phone, Sergeant
Dodson approached the intersection of Casper and National,
where Jaylen Frier's vehicle was lawfully stopped. (*Id.* ¶20.)
Moments later, Dodson rear-ended Frier, causing property
damage and a traumatic brain injury. (*Id.* ¶¶20, 25-26.)

On April 7, 2021, Frier filed a complaint in Waukesha
County Circuit Court, seeking to hold the City of New Berlin
vicariously liable for Sergeant Dodson's negligent conduct.
(ECF No. 9 at 5.) The case proceeded through discovery, and
trial was set to commence on March 14, 2023. (*Id.* at 6.)
Then, fewer than two weeks before that date, Frier introduced
a further wrinkle when he filed this federal court lawsuit,
alleging that former City of New Berlin Police Chief Joseph
Rieder and current Police Chief Jeffrey Hingiss violated
the Fourteenth Amendment's Due Process Clause when they
failed to sufficiently discipline Sergeant Dodson for two
distracted driving incidents that occurred prior to August 28,
2020. (ECF No. 1 ¶¶29-45.) He also sought to hold the City
of New Berlin, itself, liable under *Monell v. Department of
Social Services*, 436 U.S. 658 (1978) and further accused
the police chiefs of "ratification." (*Id.* ¶¶46-60.) The federal
complaint had the effect of dividing Frier's claims between
courts and cases, but it did not ultimately delay his state-
court trial, which occurred over four days in mid-March and
resulted in a $159,246.35 judgment. (ECF No. 9 at 6.) The
City of New Berlin satisfied that judgment on April 25, 2023.
(*Id.*)

**LEGAL STANDARD**

**\*2** "Technically ..., *res judicata* is an affirmative defense
for the defendant ... and thus cannot [normally] be raised
until a motion for judgment on the pleadings under [Federal
Rule of Civil Procedure] 12(c)." *Forty One News, Inc. v.
Cnty. of Lake*, 491 F.3d 662, 664 (7th Cir. 2007). "In some
circumstances, however, a defense of [res judicata] may be
raised in a motion to dismiss if ... the defense is premised
on public records, and no further information or discovery
is required." *Lechnir v. Wells*, 157 F. Supp. 3d 804, 808
(E.D. Wis. 2016); *see Carr v. Tillery*, 591 F.3d 909, 913
(7th Cir. 2010) (finding no error where judge dismissed on
res judicata grounds under Rule 12(b)(6) because "[h]e had
before him all he needed in order to be able to rule on
the defense"); *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49
F.3d 337 (7th Cir. 1995) (affirming a dismissal under Rule
12(b)(6) on res judicata grounds). Moreover, trial courts may

even raise res judicata sua sponte if doing so would avoid "unnecessary judicial waste." *Arizona v. California*, 530 U.S. 392, 412 (2000) (quoting *United States v. Sioux Nation*, 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting)). Frier has not questioned the procedural validity of the pending motion. Nor has he disclaimed the accuracy of the public record of his state court case. The Court, therefore, concludes that, in these circumstances, it is proper to consider the issue of res judicata on a Rule 12(b)(6) motion to dismiss.

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inference in the plaintiff['s] favor." *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint will survive if it "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

Defendants call Frier's federal complaint an attempt to double dip. He has already recovered from the City of New Berlin for injuries sustained in the car accident that occurred on August 28, 2020. Now he seeks to supplement that recovery based on claims arising from the same underlying set of facts. Frier, for his part, would distinguish Sergeant Dodson's negligent driving that took place on August 28, 2020 from Defendants' alleged failure to appropriately discipline him for negligent driving on prior occasions, which predictably resulted in another preventable accident. He also emphasizes that negligence and constitutional violations of due process are different causes of action that require different proof. But regardless of how Frier reframes his two cases, Wisconsin preclusion law clearly applies and bars his federal suit. Defendants' motion to dismiss will, therefore, be granted.

## I. The Doctrine of Res Judicata Bars Frier's Federal Suit.

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). The state-court judgment in Frier's case was rendered

by a Wisconsin circuit court, so this Court must "look to Wisconsin preclusion law ... to determine whether [Frier's] claims are barred." *Balcerzak v. City of Milwaukee*, 163 F.3d 993, 995 (7th Cir. 1998). "In Wisconsin, the doctrine of claim preclusion [or res judicata] has three elements: '(1) identity between the parties or their privies in the prior and present suits; (2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits.' " *Kruckenberg v. Harvey*, 694 N.W.2d 879, 885 (Wis. 2005) (quoting *Sopha v. Owens-Corning Fiberglas Corp.*, 601 N.W.2d 627, 637 (Wis. 1999)). "If these requirements are fulfilled, res judicata 'bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action.' " *Highway J Citizens Grp. v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006) (quoting *Brzostowski*, 49 F.3d at 338).

## A. There Is an Identity Between the Parties or Their Privies in the Prior and Present Suits.

**\*3** Sorting out the parties to Frier's federal case is its own riddle. The complaint captions only Frier, Hingiss, and Rieder, and the preamble is similarly narrow in scope. (ECF No. 1 at 1) ("Comes now, Jaylen Frier ... complaining of ... Chief Hingiss ... and ... Chief Rieder."). Under the "Parties" heading, however, Frier also names the City of New Berlin and the New Berlin Police Department. (*Id.* ¶¶5-6.) The former is the only proper defendant for Frier's *Monell* claim, so its inclusion makes sense, notwithstanding counsel's curious choice to omit it from the caption. The New Berlin Police Department, though, is sorely out of place. Under Wisconsin law, a police department is a creature of local government and cannot sue or be sued. *See* Wis. Stat. § 62.13; *Jackson v. Bloomfield Police Dep't*, No. 17-C-1515, 2018 WL 5297819, at \*1 (E.D. Wis. Oct. 25, 2018). Under this well-established law, the Police Department is out, but the City is in, meaning the full complement of parties includes Frier, Hingiss, Rieder, and the City of New Berlin.

The next question is whether these parties are identical to or in privity with the parties in Frier's prior state court case. Frier, himself, obviously is. So is the City, which fulfilled the same defendant role in the Waukesha County proceeding. *See Jaylen T. Frier v. City of New Berlin*, Wisconsin Circuit Court Access, https://wcca.wicourts.gov/caseDetail.html? caseNo=2021CV000576&countyNo=67https:// wcca.wicourts.gov/caseDetail.html? caseNo=2021CV000576&countyNo=67 (last visited June 27, 2023). The other two defendants require more analysis.

Neither Hingiss nor Rieder appeared, as an individual defendant, in the state court suit. But under Wisconsin law, irrespective of whether they are now sued in their individual or official capacities, both Hingiss and Rieder are in privity with the City of New Berlin for purposes of preclusion. To the extent Frier sues the police chiefs in their official capacities, he "bumps into the rule that 'a city official sued in his official capacity is generally in privity with the municipality.' " *Balcerzak*, 163 F.3d at 995-96 (quoting *Conner v. Reinhard*, 847 F.2d 384, 394 (7th Cir. 1988)); *see Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006) ("When a plaintiff sues an individual officer in his official capacity, the suit is treated as if the plaintiff has sued the municipality itself."). Frier cannot avoid this result by suing Hingiss and Rieder in their individual capacities. While the *federal* "rule is that an officer sued in his individual capacity is not in privity with the municipal entity of which he is a member," *Lechnir*, 157 F. Supp. 3d at 809 (quoting *Charles Koen & Assocs. v. City of Cairo*, 909 F.2d 992, 999 (7th Cir. 1990)), this Court must apply *Wisconsin* preclusion law to this case, and "[u]nder Wisconsin law, employees who are sued individually for acts they performed as part of their job duties are considered to be in privity with the state." *Lee v. Jess*, No. 18-cv-1959-pp, 2020 WL 2085274, at *4 (E.D. Wis. Apr. 30, 2020); *see Froebel v. Meyer*, 217 F.3d 928, 934 (7th Cir. 2000) ("Under Wisconsin preclusion law, [State employees] are viewed as identical to [the State]" when "complaints against them concern only their actions as employees."); *N. States Power Co. v. Bugher*, 525 N.W.2d 723, 728 (Wis. 1995) (holding that defendants' suit in their individual capacities was in privity with the State because they were sued based upon their performance of job duties). Frier has not sued either police chief for acts done ultra vires. Their alleged shortcomings relate solely to their failure as State employees. Thus, in this case, the official-individual capacity divide is an "attempted distinction without consequence," *Bugher*, 525 N.W.2d at 728, and the chiefs are in privity with the State for purposes of claim preclusion.

Frier's counterargument relies on *Teske v. Wilson Mutual Insurance Company*, 928 N.W.2d 555 (Wis. 2019). In that case, an "equally divided" Wisconsin Supreme Court affirmed a court of appeals decision that held a party not named in a previously settled insurance dispute could maintain a tort claim arising from the same underlying events. *Id.* at 561-62. That holding is not relevant here. It demonstrates only that a private individual not joined in a prior lawsuit is not in privity with other private individuals

who were parties to that suit, under certain circumstances. Frier's case is about privity between a local government and its employees, acting in their official capacity. On that score, *Teske* has nothing to say.

**B. Prior Litigation Resulted in a Final Judgment on the Merits.**

 **\*4** The next question is whether Frier's state-court suit resulted in a final judgment on the merits before a court competent to hear his pending federal claims. *See Kruckenberg*, 694 N.W.2d at 885. The public record indicates that the Waukesha County Circuit Court entered final judgment in Frier's favor on April 24, 2023, and the City of New Berlin satisfied that judgment the following day. *See Jaylen T. Frier v. City of New Berlin*. And the state court had jurisdiction to consider Frier's Section 1983 claims. *See Wilhelm v. Cnty. of Milwaukee*, 325 N.W.2d 843, 847 (7th Cir. 2003) ("[S]tate courts are competent to decide cases brought under § 1983."); *Allen v. McCurry*, 449 U.S. 90, 103-04 (1980) ("[N]othing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state-court judgment or decision when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate federal claims."). Accordingly, the second element of res judicata is satisfied.

**C. There Is an Identity of Causes of Action Between Frier's Two Suits.**

The final, and perhaps least intuitive, element necessary to invoke res judicata is an identity between the causes of action brought in the prior and present lawsuits. *See Kruckenberg*, 694 N.W.2d at 885. On this point, Frier argues (correctly) that the theories of negligence and deprivation of due process pursuant to Section 1983 are not identical. Indeed, courts have routinely rejected attempts to wield Section 1983 to constitutionalize mere negligence. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998); *Payne ex rel. Hicks v. Churchich*, 161 F.3d 1030, 1042 (7th Cir. 1998); *Antonelli v. Sheahan*, 81 F.3d 1422, 1429 (7th Cir. 1996). But when considering the identity of causes of action for claim preclusion purposes, "Wisconsin follows the transactional approach." *Lechnir*, 157 F. Supp. 3d at 809. "Under this approach, 'the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.' " *Froebel*, 217 F.3d at 934 (quoting *Bugher*, 525, N.W.2d at 279). In other words, "Wisconsin courts focus on facts, *not legal*

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    3

*theories* to determine whether an action is precluded." *Id.* (emphasis added). "All claims arising out of one transaction or one factual situation are treated as being a part of a single cause of action, and they must be litigated together." *Wilhelm,* 325 F.3d at 846. "What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Kruckenberg,* 694 N.W.2d at 886 (quoting Restatement (Second) of Judgments § 24(2)). "The goal in the transactional approach is to see a claim in factual terms and to make a claim coterminous with the transaction, ... regardless of the evidence needed to support the theories or rights." *Id.* In sum, Frier cannot defeat res judicata by distinguishing the *legal theories* raised in his prior and present lawsuits.

Frier's other argument, more in keeping with the transactional analysis this Court must conduct, is that the constitutional violations he alleges were in motion years before the squad car that struck him was. (ECF No. 11 at 6.) Thus, while his negligence claim arose solely from conduct that occurred on August 28, 2020, his Section 1983 claims arise from conduct that began in 2016 and culminated in the 2020 car accident. But the accident is the essential ingredient in both lawsuits. Without it, neither the negligence nor Section 1983 claims could exist. As applied, Wisconsin's transactional approach consistently finds identities between claims far more attenuated than these. The Wisconsin Supreme Court's discussion in *Kruckenberg* is instructive. In that case, the Court found an identity of causes of action between a suit

filed in 1982 and a suit filed in 2001, even though the suit filed in 2001 "was prompted when the defendant cut [down] trees," which "obviously neither [party] could have brought a claim for ... in 1982." *Id.* at 886-87. Because "the aggregate operative facts in both the 1982 and 2001 claims [were] the same, namely the defendant's conduct in relation to the location of [a property] boundary line," the claims were held identical for purposes of res judicata. *Id.* at 887. The aggregate operative facts in Frier's lawsuits are similarly related. They also form a convenient trial unit and treating them as such conforms to the general expectation that a plaintiff consolidate associated claims into a single lawsuit. *See Highway J,* 456 F.3d at 741 (stating that res judicata bars all issues that *could have* been raised in a prior action). Frier's two cases, therefore, feature an identity of causes of action.

## CONCLUSION

**\*5** With all the elements of res judicata satisfied, the Court concludes that Frier cannot use this federal lawsuit to litigate issues he could have raised in his prior state-court action.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 8), is **GRANTED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

### All Citations

Slip Copy, 2023 WL 4273515

---

Footnotes

1    These facts are derived from Frier's Complaint, (ECF No. 1), the allegations in which are presumed true, *see Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 554-56 (2007), as well as the public record of *Frier v. City of New Berlin,* No. 2021-CV-000576, available at *Jaylen T. Frier v. City of New Berlin,* Wisconsin Circuit Court Access, https://wcca.wicourts.gov/caseDetail.html?caseNo=2021CV000576&countyNo=67https://wcca.wicourts.gov/caseDetail.html?caseNo=2021CV000576&countyNo=67 (last visited June 29, 2023). *See Lechnir v. Wells,* 157 F. Supp. 3d 804, 808 (E.D. Wis. 2016) (granting dismissal by way of claim preclusion under Fed. R. Civ. P. 12(b)(6) because "the defense [was] premised on public records").

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    4

Fry v. Ascension Health Ministry Services, Not Reported in Fed. Supp. (2019)

2019 WL 1320320

2019 WL 1320320
Only the Westlaw citation is currently available.
United States District Court, E.D. Wisconsin.

William L. FRY, Plaintiff,

v.

ASCENSION HEALTH

MINISTRY SERVICES d/b/

a Columbia St. Mary's, Defendant.

Case No. 18-CV-1573
|
Signed 03/22/2019

**Attorneys and Law Firms**

Nathaniel Cade, Jr, Cade Law Group LLC, Milwaukee, WI, for Plaintiff.

Casey M. Kaiser, Sofija Anderson, Littler Mendelson PC, Milwaukee, WI, for Defendant.

**DECISION AND ORDER ON DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF SECOND AMENDED COMPLAINT**

NANCY JOSEPH, United States Magistrate Judge

 **\*1**  William Fry sues his former employer, Ascension Health Ministry Services, d/b/a Columbia St. Mary's ("Columbia"), for discrimination based on sexual orientation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 (Count One), religious discrimination in violation of Title VII and the First Amendment (Count Two), retaliation for opposing sex and religious discrimination in violation of Title VII and § 1981 (Count Three), age discrimination in violation of the Age Discrimination in Employment Act of 1967 (Count Four), negligent supervision (Count Five), and violation of the Wisconsin Fair Employment Act (Count Six). (Second Am. Compl., Docket # 23.)

Columbia moves to dismiss, with prejudice, Count Two, Count Three, Count Four, Count Six, and any claims alleged under § 1981 and the First Amendment for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Fry has not opposed the motion. For the reasons that follow, Columbia's motion to dismiss is granted.

**BACKGROUND**

Fry is an adult male whose "sexual orientation is homosexual, and his religious affiliation is Christian, but he is not Catholic." (Second Am. Compl. ¶ 9.) Fry is a devout member of the Episcopal church. (*Id.*) Fry alleges that Columbia is a not-for-profit hospital corporation and Ascension is the largest Catholic healthcare system in the world. (*Id.* ¶ 10.) Fry alleges that Columbia is governed by religious rules developed by the Catholic Church and its stated mission is to follow the teachings of the Catholic Church. (*Id.* ¶¶ 11–12.)

Fry, a registered nurse, was employed by Columbia as a Director of Patient Services for Behavioral Health until he was demoted on May 5, 2017 by his direct supervisor, Kathy McEwen. (*Id.* ¶ 13.) Fry was ultimately terminated from employment on May 15, 2017 by McEwen. (*Id.* ¶ 18.) Fry alleges that despite stellar reviews of his job performance, McEwen demoted and ultimately terminated him and he was replaced with a younger individual. (*Id.* ¶ 21.) Fry alleges that during his employment at Columbia, he was subjected to harassment and derogatory comments based on his sexual orientation. (*Id.* ¶ 27.) Fry alleges that he was ultimately terminated from employment due to his sexual orientation. (*Id.* ¶ 34.)

Fry further alleges that he was discriminated against based on his religion because Columbia has a policy of praying before certain meetings, which made Fry uncomfortable because Episcopalians are not comfortable with public displays of prayer outside the church. (*Id.* ¶¶ 22, 41.) Fry alleges that he was terminated from his employment because of his religious affiliation. (*Id.* ¶ 46.) Fry alleges that he complained to Columbia about McEwen's conduct and was retaliated against for opposing sex and religious discrimination in the workplace. (*Id.* ¶¶ 50–51.)

Fry also alleges that he was discriminated against based on his age. (*Id.* ¶ 58.) Fry was fifty-six years old at the time of his demotion and termination. (*Id.* ¶ 19.) Finally, Fry alleges that McEwen and Columbia were negligent (*id.* ¶ 62) and Columbia violated the Wisconsin Fair Employment Act (*id.* ¶¶ 71–74).

**STANDARD OF REVIEW**

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    1

**Fry v. Ascension Health Ministry Services, Not Reported in Fed. Supp. (2019)**

2019 WL 1320320

**\*2** A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In Ashcroft v. Iqbal, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.' " 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (internal citation omitted).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. See McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." Id. (citing Iqbal, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.' " Id. (citing Iqbal, 556 U.S. at 681). As explained in Iqbal, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679.

**ANALYSIS**

Columbia moves to dismiss, with prejudice, Count Two, Count Three, Count Five, Count Six, and any claims alleged under § 1981 and the First Amendment for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Columbia does not seek to dismiss Count One (to the extent it alleges a violation of Title VII) or Count Four. Again, Fry has not opposed Columbia's motion. I will address each cause of action in turn.

*1. Count Two – Religious Discrimination*

In Count Two, Fry alleges that he was discriminated against based on his religion in violation of Title VII and the First Amendment. Columbia argues that Count Two must be dismissed as a matter of law. As to the Title VII claim, Columbia argues that as a religious organization, it is exempt from Title VII's provisions barring discrimination based on religion. (Def.'s Br. at 5, Docket # 25.) As to the First Amendment claim, Columbia argues that Fry fails to allege that Columbia is a state actor. (Id. at 13–14.)

Title VII exempts religious organizations from its provisions barring discrimination on the basis of religion:

> This subchapter shall not apply to ... a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e-1(a). In determining whether an institution or entity is truly a religious organization entitled to assert the exemption, the court must "look at all the facts," and in making this inquiry, "[i]t is appropriate to consider and weigh the religious and secular characteristics of the institution." Saeemodarae v. Mercy Health Servs., 456 F. Supp. 2d 1021, 1036 (N.D. Iowa 2006) (internal quotation and citation omitted). Such facts to consider are: the "religious nature" of the purported "religious organization"; whether it was supported and controlled by a religious corporation; whether and to what extent its purpose was making the interrelated religious/service mission of the pertinent religious denomination a reality; and whether the institution was founded by sectarian entities. Id.

**\*3** Fry does not contend that Columbia is not a religious corporation entitled to assert the exemption found in § 2000e-1(a). In fact, Fry specifically pleads that Columbia is a not-for-profit hospital and that Ascension is the largest Catholic healthcare system in the world; Columbia is governed by religious rules developed by the United States Conference of Catholic Bishops; and Columbia's stated mission is to follow the teachings of the Catholic Church. (Second Am. Compl. ¶¶ 10–12.) To the extent Fry alleges a First Amendment violation within Count Two, Fry does not allege that Columbia is a state actor. See Dunn v. Washington Cty. Hosp., 429 F.3d 689, 692 (7th Cir. 2005) (claims under the First Amendment alleged against non-state actor fail as a matter of law). On the contrary, Fry alleges that Columbia is a not-for-profit hospital corporation. (Second Am. Compl. ¶ 10.)

Fry v. Ascension Health Ministry Services, Not Reported in Fed. Supp. (2019)

2019 WL 1320320

Thus, as to Count Two, Fry has pleaded himself out of court. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.") (internal quotation and citation omitted). Count Two is dismissed.

### 2. Count Three – Retaliation

In Count Three, Fry alleges that he was terminated from his employment in retaliation for opposing sex and religious discrimination in the workplace in violation of Title VII and § 1981. (Second Am. Compl. ¶ 51.) As to Fry's Title VII retaliation claim, Columbia argues the claim must be dismissed because Fry failed to exhaust his administrative remedies. (Docket # 25 at 7.)

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [his] EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). A plaintiff may, however, pursue claims that are like or reasonably related to the allegations of the EEOC charge and growing out of such allegations. *Id.* In his EEOC charge dated December 4, 2017, Fry alleged discrimination based on sex, age, and religion. (Ex. A to Second Am. Compl., Docket # 23-1.) Fry did not check the box for retaliation. (*Id.*) The EEOC confirmed that it investigated Fry's allegations that he was discriminated against on the basis of his sex (male, sexual orientation), religion (non-Catholic), and age (Year of Birth 1961). (Ex. B to Second Am. Compl., Docket # 23-2.)

Normally, retaliation and discrimination charges are not considered "like or reasonably related" to one another. *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 864–65 (7th Cir. 2010). However, an alleged incident of retaliation that occurred *after* a plaintiff has already filed an EEOC charge can serve as the basis for a Title VII claim. *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 481–83 (7th Cir. 1996). This is because "for practical reasons, to avoid futile procedural technicalities and endless loops of charge/retaliation/charge/retaliation, etc., ... a plaintiff who alleges retaliation for having filed a charge with the EEOC need not file a second EEOC charge to sue for that retaliation." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013). Here, Fry does not allege that he was retaliated against for filing his EEOC charge. Rather, he alleges that he was terminated on May 15, 2017 (Second Am. Compl. ¶ 18) in retaliation for opposing sex and religious discrimination in the workplace (*id.* ¶ 51). Fry's EEOC charge is dated December

4, 2017. Thus, Fry does not allege any acts of retaliation occurring after filing the EEOC charge. For this reason, Fry failed to exhaust his administrative remedies as to his Title VII retaliation claim.

Fry also alleges retaliation in violation of § 1981. While § 1981 claims do not require a plaintiff to file a charge of discrimination with the EEOC, *Randolph v. IMBS, Inc.*, 368 F.3d 726, 732 (7th Cir. 2004), § 1981 only prohibits racial discrimination, including discrimination based on ancestry or ethnic characteristics, *see Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Section 1981 provides that "All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." It does not protect discrimination based on religion, *see Saint Francis Coll.*, 481 U.S. at 613, or sex, *see St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1317 (7th Cir. 1984). Thus, Fry's retaliation claim under § 1981 also fails. Count Three is dismissed.

### 3. Count Five – Negligent Supervision

**\*4** In Count Five, Fry alleges that McEwen was negligent in her duties as Fry's supervisor and that Columbia was negligent in its duties of hiring, supervising, and training its employees. (Second Am. Compl. ¶¶ 62–66.) Columbia argues that under Wisconsin law, negligence claims brought by employees or former employees against their employers are barred by the exclusive remedy of the Wisconsin Worker's Compensation Act ("WCA"), Wis. Stat. Ch. 102. (Docket # 25 at 10.) In *Johnson v. Hondo, Inc.*, 125 F.3d 408, 418 (7th Cir. 1997), the court found that the Wisconsin Supreme Court has "repeatedly held" that the WCA precludes injured employees from maintaining negligence actions against their employers and fellow employees. The *Johnson* court found that a count alleging "negligent supervision and retention" fell "squarely within the reach of § 102.03(2) and was properly dismissed." *Id.* Thus, Count Five does not state a claim upon which relief may be granted and is dismissed.

### 4. Count Six – Violation of Wisconsin Fair Employment Act

In Count Six, Fry alleges violation of the Wisconsin Fair Employment Act, Wis. Stat. §§ 111.31, *et seq.* The WFEA provides that "no employer ... may engage in any act of employment discrimination ... against any individual on the basis of age ... [or] disability ...." Wis. Stat. § 111.321. The Wisconsin Department of Workforce Development's Equal

Fry v. Ascension Health Ministry Services, Not Reported in Fed. Supp. (2019)

2019 WL 1320320

Rights Division receives, investigates, and holds hearings on complaints charging discrimination in violation of the WFEA. *Id.* § 111.39. In 2006, the United States District Court for the Eastern District of Wisconsin determined that Wisconsin state courts had been somewhat divided on whether the WFEA creates a private right of action. *Martin v. Nw. Mut. Life Ins. Co.*, No. 05-CV-209, 2006 WL 897751, at *3–4 (E.D. Wis. Mar. 31, 2006) (citing cases). The court ultimately concluded that Wisconsin recognized a private right of action under the WFEA only in limited circumstances—namely, when a plaintiff seeks a remedy that was unavailable during the administrative proceedings. *Id.* at *4. However, as Judge Peterson explains:

[S]ince then, legislative retooling has confirmed that the WFEA does not provide a general private right of action. A 2009 amendment allowed individuals who prevailed on an administrative claim to bring a private suit for compensatory and punitive damages. The legislature repealed the amendment a short time later. Although a private right of action under the WFEA existed in that limited window between 2009 and 2012, the window has since closed. *Velyov*, 2014 WL 5312656, at *3 ("WFEA violations occurring between July 1, 2009 and April 19, 2012 may still be the basis of a private cause of action for punitive and compensatory damages."). This brief interlude effectively codified Martin's take on Wisconsin law: the existence of the amendment itself confirmed that prior to its enactment, individuals did not have a general private right of action under the WFEA. *See, e.g.*, *Jones v. Int'l Ass'n of Bridge Structural Ornamental & Reinforcing Iron Workers*, 864 F. Supp. 2d 760, 767 (E.D. Wis. 2012) ("Prior to the enactment of 2009 Wisconsin Act 20, a plaintiff could not maintain a private cause action under WFEA.... [T]he plaintiff can only maintain a private cause of action under the WFEA if any alleged discrimination occurred on or after July 1, 2009.").

*Sharp v. Stoughton Trailers, LLC*, No. 15-CV-598, 2016 WL 3102241, at *2 (W.D. Wis. June 2, 2016). Fry alleges that he was discriminated against between December 16, 2016 and May 15, 2017. (Ex. A to Second Am. Compl.) Thus, as the WFEA does not afford a plaintiff a general private right of action unless the plaintiff brings a claim for discrimination occurring between July 1, 2009 and April 19, 2012, Fry's complaint does not state a claim under the WFEA. Thus, Fry's WFEA claim is dismissed.

*5. General First Amendment and § 1981 Claims*

**\*5** Although Fry does not allege separate causes of action under the First Amendment or § 1981, these general allegations appear throughout the Second Amended Complaint. (Second Am. Compl. ¶¶ 1, 2, 33, 34, 36, 37, 43, 46, 51, 54.) Most notably, Fry alleges throughout his cause of action for discrimination on the basis of sexual orientation (Count One) that he is alleging a violation of both Title VII and § 1981. As stated above, § 1981 prohibits race discrimination. Nowhere in Fry's Second Amended Complaint does he allege discrimination based on race. Thus, to the extent he alleges any violation of § 1981, those causes of action are dismissed. Also, Fry does not allege Columbia is a state actor. Thus, to the extent Fry alleges any violation of the First Amendment, those causes of action are also dismissed.

**CONCLUSION**

Fry alleges several causes of action that have no basis in law. For example, he alleges violations of § 1981, despite not alleging race discrimination; he alleges violations of the First Amendment, despite not alleging Columbia is a state actor; he alleges retaliation, without exhausting his administrative remedies; he alleges violations of the WFEA, despite no private cause of action existing; and he alleges negligent supervision, despite case law stating the WCA is the exclusive remedy. Columbia moves to dismiss these causes of action with prejudice. This is the third iteration of Fry's complaint. Fry is represented by counsel. And there is nothing Fry can do to properly plead these causes of action. Therefore, any further amendment would be futile. For these reasons, Columbia's motion to dismiss is granted. Count Two, Count Three, Count Five, Count Six, and any claims alleged under § 1981 and the First Amendment are dismissed with prejudice for failure to state a claim upon which relief can be granted.

Fry may proceed on Count One (pursuant to Title VII) and Count Four (ADEA discrimination).

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's motion for partial dismissal of the second amended complaint (Docket # 24) is **GRANTED**. The following counts are dismissed, with prejudice, from Fry's Second Amended Complaint: Count Two; Count Three; Count Five; Count Six; any claims alleged under § 1981; and any claims alleged under the First Amendment.

**Fry v. Ascension Health Ministry Services, Not Reported in Fed. Supp. (2019)**

2019 WL 1320320

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1320320

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S.
Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   5

2006 WL 1519579
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Susan KIND, Plaintiff,

v.

Alberto R. GONZALES, Attorney
General of the United States, Defendant.

No. 05 C 0793.
|
May 30, 2006.

**Attorneys and Law Firms**

Stephen G. Seliger, Attorney at Law, Chicago, IL, for
Plaintiff.

Patrick Walter Johnson, AUSA, former AUSA, United States
Attorney's Office, Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

FILIP, J.

**\*1** Plaintiff, Susan Kind ("Plaintiff" or "Kind"), is suing
Alberto Gonzalez, Attorney General of the United States
("Defendant"), for violation of Title VII of the Civil Rights
Act of 1964, 42 U.S.C. § 2000e *et seq.,* as amended by the
Civil Rights Act of 1991 ("Title VII"). (Complaint, D.E.1.)[1]
Before the Court is Plaintiff's Motion for Leave to File
an Amended Complaint. (D.E.34.) Defendant opposes the
motion on the grounds that: (1) the amendment would be
futile; (2) Plaintiff has unjustifiably delayed in moving to
amend; and (3) Defendant would be unduly prejudiced if the
amendment were allowed. (D.E.39.) For the reasons stated
below, the Court grants Plaintiff's motion in part and denies
it in part. Specifically, the Court denies Plaintiff's motion
for leave to file the Amended Complaint to the extent that
it attempts to state a claim relating to Plaintiff's experiences
"during new agent training" and/or prior to her termination as
a special agent. The Court grants Plaintiff's motion for leave
to file the Amended Complaint to the extent it avers a claim
for retaliatory discharge.

RELEVANT FACTS

In June 2002, Plaintiff was hired as an FBI special agent
subject to a two-year probationary period. (D.E. 1 at 2; D.E. 9
at 2.) Prior to this time, she was employed as an investigative
specialist in the Chicago Division of the FBI, a position she
still holds. (D.E. 1 at 2-3; D.E. 9 at 2.) Ms. Kind began FBI
special agent training in Quantico, Virginia, in October 2000.
(D.E. 1 at 2; D.E. 9 at 2.) Before graduation, on or about
February 1, 2001, the FBI removed Plaintiff from special
agent training[2] (D.E. 44 at 3; *Id.,* Ex. A at 2), and on March
13, 2001, she resumed her previous work in Chicago. (D.E.
44, Ex. A at 5.) Nearly three months later, in June 2001,
the FBI informed Plaintiff that she had been dismissed as a
special agent, and she formally returned to the position of
investigative specialist. (D.E. 1 at 2; D.E. 9 at 3.)[3]

In response to having been dismissed from the special
agent position, on August 14, 2001, Plaintiff contacted an
Equal Employment Opportunity counselor regarding her
experiences as a special agent. (D.E. 36, Ex. C at unnumbered
page 1; D.E. 39, Ex. 3 at 2-3.) In November 2001, she filed
a "Complaint of Discrimination" with the Department of
Justice (the "EEO Charge") against the FBI in relation to
those experiences. (D.E. 36, Ex. C; D .E. 39, Ex. B.) She
was later informed, in a letter from the FBI's Office of Equal
Employment Opportunity Affairs ("OEEOA") to her counsel,
dated March 8, 2002, that the OEEOA had accepted one
issue contained in her EEO Charge for investigation, namely
"whether [Kind] was discriminated against based on her sex
(Female) when: on June 28, 2001, she received notification
that she had been removed as a Special Agent from the FBI's
New Agents' Training Program." (D .E. 39, Ex. A at 2.) Kind
was informed in the same letter that incidents she described
in her EEO Charge relating to her experiences as a special
agent on November 8, 2000, February 1, 2001, and February
20, 2001 were not accepted for investigation because she
did not "timely contact an EEO counselor" regarding these
issues. (*Id.* at 2-3.) Ms. Kind was informed, via this same
letter to her counsel, that she had 15 days to inform Equal
Employment Opportunity ("EEO") Officer Joyce M. Atkins if
she disagreed with the decision not to accept these allegations
dating from November 2001 through February 2002. (*Id.*
at 3.) Defendant alleges, and Kind does not deny, that she
never responded to this letter, nor disputed or expressed any
objection to its untimeliness determination. (D.E. 39 at 2; *Id.,*
Ex. B; D.E. 44.)[4]

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.

1

**\*2** On February 5, 2005, Plaintiff initiated the present action alleging claims related to her dismissal as a special agent, particularly that she was "dismissed as a Special Agent on account of her sex in violation of Title VII" and that "the FBI has engaged in a pattern of discrimination against new female Special Agents" in applying certain "Suitability Guidelines" for special agents. (D.E. 1 at 2.) In light of these allegations, Plaintiff sought a finding "that [D]efendant violated Title VII in connection with its decision to dismiss [P]laintiff as a special agent," among other requests for relief. (D.E. 1 at 2-3.)

Some eight months after the discovery period commenced, Plaintiff sought leave of court via the instant motion to file an Amended Complaint. The proposed Amended Complaint alleges first that Defendant violated Title VII in connection with incidents that occurred during Plaintiff's time at Quantico between October 2000 and March 2001. Particularly, Plaintiff seeks leave to allege that she was subject to "discriminatory treatment and sexual harassment during new agent training, in violation of 42 U.S.C. § 2000e, *et seq.*" (D.E. 39, Ex. A at 3 (certain internal capitalization omitted).) Second, Plaintiff seeks leave to amend her complaint as it relates to her dismissal as a special agent so as to add an allegation that "[D]efendant refused to allow Plaintiff to complete new agent training and converted her to a lower position in the FBI on the basis of her sex and *in retaliation for her complaining of such discrimination,* in violation of 42 U.S.C. § 2000e." (*Id.* at 4 (emphasis added).)

## LEGAL STANDARDS

Given the posture of this case, the Plaintiff may amend her Complaint "only by leave of court or by written consent" of Defendant. *See* Fed.R.Civ.P. 15(a). Defendant has not consented to Plaintiff's filing of the proposed amended complaint, and, in fact, opposes the proposed amendment. (D.E.39.)

Under Rule 15(a), leave to amend shall be "freely given when justice so requires." Fed.R.Civ.P. 15(a). However, "leave is inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Villa v. City of Chicago,* 924 F.2d 629, 632 (7th Cir.1991) (citing *Foman v. Davis,* 371 U.S. 178, 183, 83 S.Ct. 227, 9 L.Ed.2d

222 (1962)). In deciding whether to allow the amendment of pleadings, the district court is to exercise its informed discretion. *See, e.g., Johnson v. Methodist Med'l Ctr. of Illinois,* 10 F.3d 1300, 1303 (7th Cir.1993) (citation omitted); *Perrian v. O'Grady,* 958 F.2d 192, 194 (7th Cir.1992) (citation omitted).

## ANALYSIS

In its opposition to Kind's motion for leave to amend, Defendant argues that denial is appropriate because: (1) the proposed amendment is futile; (2) Plaintiff has unjustifiably delayed in asserting proposed new claims; and (3) the proposed amendment would unduly prejudice Defendant. (D.E. 39 at 1.) The Court agrees that Plaintiff's proposed amendment relating to her treatment during special agent training is untimely and thus futile. Independently, such an amendment (*i.e.,* an amendment seeking to advance a hostile environment/harassment claim concerning the multi-month training period) would cause undue prejudice, particularly given the belated nature of the proposed amendment. By way of contrast, Plaintiff's proposed claim relating to her allegedly retaliatory discharge is not obviously futile. In addition, allowance of the retaliatory discharge claim at this juncture would not unduly prejudice Defendant, given the limited scope of additional discovery needed to fairly assess that particular claim.

### I. Scope of Motion

**\*3** As an initial matter, the Court must deal with the Parties' disagreement as to whether Plaintiff moves to add one new claim or two. In her motion for leave to amend and memorandum in support thereof, Plaintiff described only one new claim for "retaliation" that she sought to add.[5] (D.E. 34; D.E. 36.) Defendant argues that because Plaintiff's proposed Amended Complaint also contains a new "hostile environment" claim, the Court should deny Plaintiff's motion "because nowhere in her motion does she seek leave to include this new claim in the proposed amended complaint." (D.E. 39 at 5.) Plaintiff replies that she has not asserted a "new" claim relating to a "hostile environment," but has merely refined her claim for discrimination on the basis of sex. (D.E. 44 at 1-2.) Although the Court shares Defendant's frustration that Plaintiff made numerous changes to her Complaint in the proposed Amended Complaint without alerting the Court to these inclusions, thus requiring the Court to compare the Complaint with the proposed

Amended Complaint line-by-line itself, the Court will not deny Plaintiff's motion on this basis alone. Therefore, the Court will consider the motion on the merits as it relates to (1) Plaintiff's proposed new claim relating to her treatment during special agent training (newly proposed Count I) and (2) her allegedly retaliatory discharge (the revised portions of newly proposed Count II).

## II. Leave to Amend In the Form of the Addition of Proposed Count I Is Denied

### A. The Proposed Amendment Is Rejected As Futile As It Was Not Timely Raised In Administrative Proceedings As Required By Federal Law

1. Background Facts and General Standards Concerning Futility Under Fed.R.Civ.P. 15

Plaintiff proposes to add a new claim, proposed Count I, concerning an alleged hostile environment or sexual harassment during her special agent training. Defendant contends that Plaintiff's motion to add a "hostile environment" claim should be denied as futile because Plaintiff failed to timely bring this claim to the attention of an EEO counselor as the law requires. (D.E. 39 at 6.) Defendant attaches a March 8, 2002 letter to Kind's counsel from the OEEOA stating as much. (D.E. 39, Ex. A at 2 (declining to investigate claims relating to Kind's special agent training period "since your client did not timely contact an EEO counselor.").) Similarly, Defendant contends that Plaintiff's EEO Charge did not include her proposed "retaliation" claim, and therefore her motion to add the claim at this time should be denied based on her failure to administratively exhaust this claim. (D.E. 39 at 6-7.) In response, Plaintiff contends that the EEO did not find her "sexual harassment" claim relating to her special agent training to not have been timely presented, but "simply declined to investigation [sic] three specific instances based on timeliness issues." (D.E. 44 at 3.) In addition, Plaintiff alleges that her "retaliation" claim concerning her termination is "within the scope" of her EEO Charge and is therefore properly brought here. (D.E. 44 at 5.) The Court finds Plaintiff's latter contention concerning her retaliation/termination claim to be well-taken; her former contention-regarding presentation of any putative harassment claim concerning her unsuccessful special agent training-is not persuasive, as she did not timely present such a claim for administrative investigation and review as required by law.

**\*4** Generally, leave to amend is properly denied when the pleading, as amended, would be subject to dismissal.

*See Wilson v. American Trans. Air Inc.,* 874 F.2d 386, 392 (7th Cir.1989). Granting leave to amend in such a situation would be a "futile gesture," and denial of leave to amend is therefore proper. *Id.* (internal quotation marks and citation omitted); *accord, e.g., Moore v. State of Indiana,* 999 F.2d 1125, 1129-30 (7th Cir.1993) (affirming denial of leave to amend complaint because such amendment would be futile, in that proposed new claims would be properly dismissed as time-barred under Fed.R.Civ.P. 12(b) (6)). As Defendant notes, "[i]t is well-established that a Title VII plaintiff must file a timely charge with the proper administrative agency as a prerequisite to maintaining an action in federal court. This charge must encompass the acts complained of in the subsequent complaint." *Harvey v. Board of Trustees of Univ. of Illinois,* Nos. 89 C 4956, 89 C 4596, 1989 WL 152536, *2 (N.D.Ill.Dec.8, 1989) (granting motion to dismiss discrimination claims based on failure to exhaust administrative remedies) (citing *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)) (citing Title VII, § 706(b), (e) & (f), 29 U.S.C. § 2000e-5(b), (e) & (f)); *accord, e.g., Sitar v. Indiana Dept. of Transp.,* 344 F.3d 720, 726 (7th Cir.2003).

The issue of timeliness in this matter is governed by 29 C.F.R. § 1614.105(a)(1), which requires a federal employee who believes he or she has been discriminated against to consult an agency EEO counselor within forty-five days of the allegedly discriminatory action. *See, e.g.,* 29 C.F.R. 1614.105(a)(1);[6] *Moore v. West,* No. IP 00-0263-C-T/F, 2002 WL 449794, *3 (S.D. Ind. Jan 25, 2002).* This time period acts like a statute of limitations-*see, e .g., Rennie v. Garrett,* 896 F.2d 1057, 1062 (7th Cir.1990)-and is a prerequisite to a Title VII suit based on such claims. *See, e.g., Gibson v. West,* 201 F.3d 990, 993-94 (7th Cir.2000).* Actions that are clearly time-barred may be properly disposed of on a motion to dismiss. *See, e.g., Kauthar SDN BHD v. Sternberg,* 149 F.3d 659, 670-671 & n. 14 (7th Cir.1998) (affirming dismissal of various claims, on *de novo* review, as time-barred under Fed.R.Civ.P. 12(b)(6), and collecting extensive analogous circuit court precedent); *Moore,* 999 F.2d at 1129-30 (affirming denial of leave to amend complaint because such amendment would be futile, in that proposed new claims would be properly dismissed as time-barred under Fed.R.Civ.P. 12(b)(6)).

2. Proposed Count I, for "Discriminatory Treatment And Sexual Harassment During New Agent Training," Is Not the Subject of Proper Amendment Because of Futility Defects

As clearly indicated in its title, proposed Count I alleges that Kind was discriminated against *during* new agent training. Kind herself has alleged that she began special agent training in October 2000 (D.E. 1 at 2; D.E. 36, Ex. A at 2) and was removed from that training on or around February 1, 2001. (D.E. 36 at 2; *Id.,* Ex. A at 2.) By Kind's own admission, therefore, any actions that might support her proposed claim for "discriminatory treatment and sexual harassment during new [special] agent training" ceased when she was removed from that training on February 1, 2001-the latest time when one could fairly find that her obligation to file a charge concerning harassment in training commenced. Again, reading things most generously to Ms. Kind, her period to properly file an administrative charge concerning alleged harassment during training ended forty-five days later, on March 18, 2001.[7] It is undisputed that Kind first contacted an EEO counselor to complain about the discrimination and mistreatment she alleges to have suffered as a special agent trainee on August 14, 2001-or months after the forty-five day period in which she was required to do so had terminated. (D.E. 36, Ex. C; D.E. 39, Ex. 3 at 2-3.) This untimeliness is the very reason that the OEEOA refused to accept for investigation the issues in Kind's EEO Charge of discrimination relating to conduct alleged to have occurred during her training period on November 8, 2000, February 1, 2001 and February 20, 2001. (D.E. 39, Ex. A at 2.)

**\*5** Plaintiff argues that the "EEO *did not* deny plaintiff the right to pursue claims of sexual harassment," but "simply declined to investigation [sic] three specific instances based on timeliness issues." (D.E. 44 at 3) (emphasis in original.) However, and with all respect, this assertion does not save her motion to amend as to Count I. Since the proposed "sexual harassment"/"hostile environment" claim is subject to the same timeliness issues as those issues rejected by OEEOA, Kind argues a distinction without a difference. Moreover, to the extent that Kind did not timely present a more sweeping sexual harassment claim to the OEEOA, such that the hostile workplace/sexual harassment claim concerning training has *never* been administratively presented at all, that shortcoming does not cure the untimeliness problem, but instead exacerbates it. Ms. Kind's failure to timely report her allegations of discrimination and sexual harassment concerning her special agent training to an EEO counselor renders the claim improper in this forum, and renders the proposed amendment improper as well. *See, e .g., Moore,* 999 F.2d at 1129-30; *see also Hentosh v. Herman M. Finsch Univ. of Health Sciences,* 167 F.3d 1170, 1175-1176 (7th Cir.1999)

(upholding dismissal of Title VII claims as time barred when they were not timely brought to the attention of the EEOC).

The Court recognizes that there are limited instances in which failure to contact an EEO counselor within forty-five days of the alleged offending conduct might not render the allegation untimely and thus futile. *See id.,* 167 F.3d at 1174 (stating that failure to contact an EEO counselor within 45 days may not render a federal employee's Title VII claims futile, as such claims are potentially subject to "waiver, estoppel, and equitable tolling under appropriate circumstances") (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). Here, however, Kind has not alleged or even hinted that she was prevented from making contact with an EEO counselor within forty-five days of the alleged mistreatment/harassment. Neither does she allege or even hint at any other reason that equitable estoppel, waiver, or tolling might apply, despite taking an extended opportunity to argue why her proposed amendment is not futile. Kind failed to bring her allegations of discriminatory conduct during her special agent training to the attention of the EEOC within forty-five days of the alleged occurrence of this conduct, no exception to the forty-five day rule has even been suggested, and therefore Ms. Kind's attempt to add these allegations to her Amended Complaint now is untimely. *See, e.g., Moore,* 999 F.2d at 1129-30; *Hawkins v. Groot Indust .,* 210 F.R.D. 226, 231 (N.D.Ill.2002) (Gottschall, J.) (denying motion to amend and add Title VII claims where claims were not timely brought to the EEOC's attention). The amendment would be futile and it is respectfully denied.

### 3. The Amendment in the Form of Proposed Count I Is Independently Denied Because of Undue Prejudice It Would Cause

**\*6** The proposed harassment/hostile workplace claim is also denied as untimely and as presenting a situation where it would subject the government to undue prejudice and burden if the amendment were allowed. These problems independently warrant rejection of the proposed amendment as to Count I.

A review of the initial Complaint in this case makes clear that no sexual harassment or hostile workplace claim was raised concerning Ms. Kind's special agent training period. In this regard, the Complaint does not once mention or contain the words "harassment" or "hostile workplace." Instead, the Complaint specifically alleged that "Plaintiff was dismissed as a Special Agent on account of sex, in violation of Title VII." (D.E. 1, ¶ 8 .) The Complaint also alleges a disparate

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    4

impact claim concerning the FBI's special agent suitability guidelines, but that contention has since been abandoned. Suffice to say that a fair reading of the Complaint makes clear that the proposed Count I in the Amended Complaint, which alleges "sexual harassment" and "discriminatory treatment ... during new agent training" (D.E. 36, Ex. A at 3 (certain capitalization omitted)) would seek to add a materially new claim to the case. *See generally, e.g., Sitar,* 344 F.3d at 726 ("Normally, retaliation, sex discrimination, and sexual harassment charges are not 'like or reasonably related' to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another."). Under the circumstances, such an addition would impose an undue burden on the government and comes after an unreasonable length of time in the discovery period.

Precedent makes clear that mere delay in proposing an amendment, standing alone, is not a sufficient basis to deny that amendment. *See, e.g., Perrian,* 958 F.2d at 194. Nonetheless, "the longer the delay, the greater the presumption against granting leave to amend." *Id.* (collecting cases; internal quotation marks omitted). Here, Plaintiff waited almost a year after the filing of the complaint, and for over eight months after discovery commenced (*see* D.E. 7, 34), to attempt to add a proposed harassment/hostile workplace claim concerning literally months of special agent training. She obviously was aware of her experiences during special agent training, and those experiences were available for discussion with her counsel. It is settled law that a sexual harassment claim (particularly concerning an extended period of time, and concerning exposure to and alleged experiences with a wide variety of people, including many who were not decisionmakers concerning Plaintiff's eventual termination) is presumptively distinct from a discriminatory firing claim. *See Sitar,* 344 F.3d at 726. A fair examination of such a claim would require discovery concerning the totality of Ms. Kind's experiences during special agent training, as a hostile workplace claim can be (and often is) grounded on allegations of the cumulative effect of alleged mistreatment over an extended period of time. *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' ... occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.") (collecting cases; internal citations omitted).

**\*7** As a result, allowing the proposed mid-stream introduction of this claim, the facts of which were always readily available to Plaintiff and her counsel, would impose undue and unfair prejudice to the government. The government would need to take additional discovery- to predictably include extended redepositions or interviews of the witnesses additionally relevant to the unlawful termination claim, and also depositions or interviews of additional individuals who had nothing to do with the termination decision but were part of the broader special agent training experience. (*See, e.g.,* D.E. 39 at 11.) Precedent teaches that this sort of additional and material discovery burden warrants denial of a request to amend. *See, e.g., Continental Bank v. Meyer,* 10 F.3d 1293, 1298 (7th Cir.1993) ("If the amendment were allowed, the bank would have been put to additional discovery, and thus prejudiced."). Under the circumstances, the Court finds that Plaintiff's proposed amendment (in the form of the proposed new count I) would create undue prejudice and therefore independently fails.

### III. Leave to Amend In the Form of the Addition of a Retaliatory Discharge Claim Is Allowed

A. The Proposed Amendment Is Not Obviously Futile
Plaintiff seeks leave to add an allegation that "Defendant refused to allow plaintiff to complete new agent training and converted her to a lower position in the FBI on the basis of her sex *and in retaliation for her complaining of such discrimination."* (D.E. 36, Ex. A at 4 (emphasis added).) Defendant argues that Plaintiff's motion to add this retaliatory discharge claim is similarly futile because Kind failed to "administratively exhaust" this claim by including it in her EEO Charge. (D.E. 39 at 6.) Plaintiff responds that because the proposed retaliatory discharge claim is "within the scope" of the claims in her EEO Charge, it is not futile. (D.E. 44 at 5.) The Court agrees with Plaintiff.

"Filing an EEOC charge, of course, is a prerequisite to suit under Title VII, in order for the EEOC to have a chance to settle disputes before lawsuits are undertaken." *Chambers v. American Trans Air, Inc.,* 17 F.3d 998, 1003 (7th Cir.1994) (affirming summary judgment against claims not raised in EEOC charge; citation omitted). However, a plaintiff may pursue a claim not explicitly included in an EEOC complaint if her allegations "fall within the scope of the charges contained in the EEOC complaint." *Cheek v. Peabody Coal Co.,* 97 F.3d 200, 202 (7th Cir.1996) (citation omitted). This rule affords the EEO office and the employer an opportunity to attempt to resolve the issue before

litigation would potentially eventuate. *See, e.g., Sitar,* 344 F.3d at 726. In determining whether a claim falls within the scope of an EEO charge, courts look to whether the current allegations are "like or reasonably related to" those contained in the EEO charge. *Id.* (internal quotation marks and citation omitted). If the current allegations are "like or reasonably related" to the EEO Charge, the court then asks whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it. *Id.* Accordingly, as Plaintiff notes, her failure to check the box labeled "reprisal" in her EEO Charge does not necessarily plead her retaliatory discharge claim out of court. *Kristufek v. Hussmann Foodservice Co.,* 985 F.2d 364, 368 (7th Cir.1993).

**\*8** As noted above, "[n]ormally, retaliation, sex discrimination, and sexual harassment charges are not 'like or reasonably related' to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another." *Sitar,* 344 F.3d at 726 (citing, *inter alia, Cheek v. W. and S. Life Ins. Co.,* 31 F.3d 497, 501 (7th Cir.1994) (additional citations omitted)). Precedent further teaches that the claims may be "so linked, however, where they are 'so related and intertwined in time, people, and substance," ' that they are fairly deemed encompassed in the filed charge. *Id.* (quoting *Kristufek,* 985 F.2d at 368). The Court finds this to be such a circumstance within the meaning of the precedent.

The issue the OEEOA accepted from Ms. Kind's EEO Charge is quite linked to her proposed retaliatory discharge claim in time, people and substance. Ms. Kind did allege some retaliatory conduct in her EEO Charge, stating that after she reported certain misconduct to superiors, she "was further the victim of retaliation." (D.E. 44, Ex. A at 12.) Her EEO Charge also states that she engaged in protected conduct prior to her termination, in that she spoke to certain instructors about what she viewed as discriminatory treatment. (*Id.* at 11) ("01/30/01 ... I expressed my concern with my treatment and harassment").[8] The charge asserts that shortly thereafter she was removed from training and was subsequently terminated as a special agent only months later. (D.E.44, Ex. A.)

Although the OEEOA declined to investigate most allegedly discriminatory incidents contained in Kind's EEO Charge due to timeliness issues, it did accept her claim that she was discharged for discriminatory reasons.[9] (D.E. 39, Ex. A at 2.) The accepted discriminatory discharge claim involved almost exactly the same "time, people, and substance" as the retaliatory discharge claim Kind now seeks to assert. The "Investigative Summary" prepared in connection with

the OEEOA investigation of Kind's discriminatory discharge claim details the statements of twenty individuals with potential knowledge of the reasons for Kind's dismissal as a special agent. (D.E.39, Ex. C.) In substance, both Kind's claim of discriminatory discharge and proposed claim of retaliatory discharge both relate to the subjective intent of these individuals in deciding to support or oppose Kind's dismissal. The decision to terminate Kind as a special agent was made at the same time whether the reason was discrimination, retaliation, or neither of the two-such as, for example, her alleged deficient performance during and in relation to training. Similarly, the termination decision was made by the same people, whatever their reason(s) for the decision. As a result, the amendment is not futile.

This conclusion is in line with the Seventh Circuit's teaching on whether claims of discrimination and retaliation are "like or reasonably related." *See Kristufek,* 985 F.2d at 368. In *Kristufek,* two plaintiffs filed suit against their former employer for age discrimination and one plaintiff also alleged retaliatory discharge, although this claim was not contained in his EEO complaint. *Id.* at 365. The Seventh Circuit nonetheless concluded that the EEEO charges adequately alerted the employer to facts supporting the retaliation claim. *Id.* at 368. In this regard, *Kristufek* noted that "even [ ] a perfunctory investigation of the charges [should] have revealed the retaliation aspect as part of the whole." *Id.* Here, Kind's EEO Charge gave notice that she reported what she believed to be discriminatory treatment to her superiors, that she believed that she suffered retaliation for that reporting, and that she was fired shortly thereafter. (D.E.36, Ex. B). Although this may have been incomplete notice of her retaliatory discharge claim, it also "should have been enough." *Kristufek,* 985 F.2d at 369.

**\*9** The best evidence that Kind's newly asserted retaliatory discharge claim is "like or reasonably related to" the discriminatory firing claim in her EEO Charge is that at least some contentions in support of the retaliatory discharge claim *actually did* develop from the EEO investigation of Kind's discriminatory discharge claim. The "Investigative Summary" of Kind's "Complaint of Employment Discrimination" notes that, in conjunction with the EEO investigation, Michelle Pluta ("Pluta"), one of Kind's instructors, stated that Kind had told her of certain alleged sexist attitudes. (D.E. 39, Ex. C at 20.) Pluta then informed Kind's staff counselor, Stanley E. Letcher, of Kind's allegations. (*Id.*) The Investigative Summary states that "Pluta believes that there is a good possibility Kind

would have graduated [*i.e.*, not been terminated from the special agent program] if she (Pluta) had not reported the information...." (*Id.* at 21.)

Because Kind's retaliatory discharge claim is "related and intertwined in time, people and substance" with the discriminatory discharge claim contained in her EEO Charge and accepted for investigation, and because the investigation of that charge led to allegations of possible retaliation, the Court finds that Kind's proposed retaliatory discharge claim is so within the scope of her EEO Charge that its filing would not be futile here. *Kristufek,* 985 F.2d at 368-369.

### B. The Retaliatory Discharge Claim Would Not Cause Undue Prejudice

Defendant claims that Plaintiff has unduly delayed in moving for leave to add a retaliatory discharge claim and therefore her motion to do so should be denied. (D.E. 39 at 1.) Although the Court has previously discussed the undue delay and prejudice that would accompany the addition of a more sweeping hostile workplace/harassment-during-the-totality-of-training claim, the level of prejudice is materially different concerning the addition of a retaliatory discharge claim. In explaining her reason for waiting until ten months after she filed her Complaint to move to amend it, Plaintiff asserts that her attorney only recently learned that her termination may have been an act of retaliation. (D.E. 34 ¶ 5.) Plaintiff claims that during discovery, her counsel learned the identity of the people "who made the decision to terminate her" and that these "were the ones to whom she brought her complaints of harassment and discrimination." (*Id.*)

In an attempt to discredit Kind's explanation for her delay in filing a motion to amend, Defendant argues that Kind "knew of these claims long before filing her complaint" and that she "always believed she was removed because of retaliation." (D.E. 39 at 9; *Id.* at n. 3.) In this regard, Defendant may well be correct; however, precedent teaches that "delay by itself is normally an insufficient reason to deny a motion for leave to amend." *Dubicz v. Commonwealth Edison Co.,* 377 F.3d 787, 793 (7th Cir.2004) (citation omitted). Instead, precedent teaches that while delay tends to create a presumption of prejudice-*see, e.g., Perrian,* 958 F.2d at 194 (collecting cases)-which is a principal touchstone in assessing the propriety of amendment, the key issue typically is the degree of prejudice an amendment would cause and whether such prejudice is undue. *See, e.g., Chavez v. Illinois State Police,* 251 F.3d 612, 633 (7th Cir.2001) (internal citation and quotation marks omitted)); *Douglas*

*Press Inc. v. Tabco, Inc.,* No. 00 C 7338, 2004 WL 1144054, *2 (N.D.Ill. May 17, 2004) (granting motion to amend where proposed allegations where "closely related" to prior claims and party claiming undue prejudice could move the court for additional time to perform discovery). Here, an assessment of whether Plaintiff's firing was in retaliation for her prior complaints of discriminatory treatment likely will not entail substantial new discovery-the defense witnesses presumably deny any such allegation, and the key new issue will be determining whether they even were apprised of such prior complaints. In addition, the key witnesses for Plaintiff likely will be her, Ms. Pluta, and others to whom Ms. Pluta may have spoken. Although it is a close question as to whether such additional discovery burdens would justify allowance or rejection of the proposed new retaliatory discharge claim-in truth, the question is likely one on which a trial court could reasonably exercise its discretion in either direction, *see, e.g., Continental Bank,* 10 F.3d at 1298-the Court will exercise its discretion in Plaintiff's favor. The Court believes such a course is appropriate because of the relatively limited scope of the additional factual dispute(s) introduced by the retaliatory discharge allegation (given that the reasons for the discharge are already at issue) and the fact that the Court will ameliorate any prejudice to the government by allowing it appropriate time, as reasonably necessary, to conduct any additional discovery required by virtue of the amendment. *Accord DeLuca v. Winer Indus., Inc.,* 857 F.Supp. 606, 608 (N.D.Ill.1994); *see also Katsiavelos v. Fed. Reserve Bank of Chicago,* No. 93 C 7724, 1994 WL 721192, *1 (N.D.Ill.Dec.28, 1994) (holding that addition of claim for retaliatory discharge to claim of discriminatory discharge satisfied Fed.R.Civ.P. 15(c)(2), because the claim or defense arose out of the conduct, transaction, or occurrence set forth in the original pleading, and thus the amended claim related back to the original pleading) (citation omitted).

CONCLUSION

**\*10** Because Plaintiff failed to timely bring her putative claim of harassment and/or discriminatory treatment during special agent training to the attention of an EEO counselor, her motion to amend as it relates to that claim (proposed Count I) is denied as futile. (D.E.34.) The motion to add such a claim (proposed Count I) is also independently denied because of the undue prejudice such a claim would cause to the government. Plaintiff's motion for leave to file a claim for retaliatory discharge (proposed Count II) from her position as a special agent is granted. (*Id.*) If the government believes it

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    7

needs an extension of discovery to address the new allegation, it should seasonably move for reasonable additional time.

So Ordered.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 1519579

**Footnotes**

1    "D.E." refers to the docket entry of the cited document, followed by the appropriate page or paragraph number.

2    Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Leave to File an Amended Complaint states that she was removed from new agent training on "February 1, 2000" (D.E. 44 at 3), although Exhibit A thereto alleges that this event occurred on "01/31/01." (*Id.,* Ex. A at 1) (the first actual page of Exhibit A to D.E. 44 is not numbered).) Given that Plaintiff did not start special agent training until October 2000, the Court assumes that the "February 1, 2000" date is a typographical error and should have read "February 1, 2001."

3    Plaintiff contends that the FBI informed her of this fact on June 21, 2001 at a meeting. (D.E. 1 at 2.) Defendant contends that the letter informing Plaintiff of her dismissal was dated June 22, 2001. (D.E. 9 at 3.) The letter Plaintiff's counsel received in response to her EEO Charge indicates that she was notified of her termination as a special agent on June 28, 2001. (D.E. 39, Ex. A at 2.)

4    Neither Plaintiff nor Defendant provided the Court with the EEO "right to sue letter." As Defendant has not moved to dismiss Plaintiff's Complaint on such basis or otherwise objected, the Court assumes that such a letter exists.

5    In reality, proposed Count II, which states that "Defendant refused to allow [P]laintiff to complete new agent training and converted her to a lower position in the FBI on the basis of her sex and in retaliation for her complaining of such discrimination in violation of Title VII ..." (D.E. 36, Ex. A at 4), is a revised version of the claim contained in Kind's Complaint for discriminatory discharge. (D.E. 1 ¶ 8) ("Plaintiff was dismissed as a Special Agent on account of her sex"). Therefore, as the Court views it, Kind is now seeking leave to add a retaliatory discharge claim.

6    The regulation states in pertinent part:

>    Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.

>    (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

>    29 C.F.R. § 1614.105(a)(1).

7    Even were Kind to contend that this allegedly "discriminatory treatment and sexual harassment" continued until she returned to her former position in Chicago on March 13, 2001, she still failed to contact an EEO counselor by April 27, 2001, or forty-five days after the improper conduct allegedly occurred.

8    Defendant rightly recognizes the Seventh Circuit's teaching that retaliation claims are within the scope of an EEO charge "when the retaliation arose after, and in response to, the initial EEO filing and was reasonably related to that filing, obviating the need for a second EEO charge." (D.E. 39 at 7 (citing *Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir.1989)). This teaching is inapposite here, however, as both Parties admit that the alleged retaliation occurred prior to Ms. Kind's filing her EEO Charge in the wake of her termination as a Special Agent.

9    For clarity's sake, the Court holds that to the extent that Kind is seeking to assert a claim based on the allegedly retaliatory treatment she experienced prior to her discharge in June 2001 (*e.g .,* her assertion that "[a]fter complaining to her supervisors about the treatment she had received during training, plaintiff was subjected to further harassment and discrimination for her complaints" (D.E. 36, Ex. A at 2.)), she is barred from doing so based on her lack of timeliness

in bringing these claims to an EEO counselor as required by federal law. That amendment also would cause undue prejudice, as noted above.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4282589
Only the Westlaw citation is currently available.
United States District Court,
E.D. Wisconsin.

Elton LOUIS, Plaintiff,

v.

STOCKBRIDGE-MUNSEE
COMMUNITY, Defendant.

No. 08-C-558.
|
Sept. 16, 2008.

**Attorneys and Law Firms**

Ryan D. Lister, Ryan D. Lister Inc, Wausau, WI, for Plaintiff.

Howard J. Bichler, Stockbridge-Munsee Law Office, Bowler, WI, for Defendant.

**DECISION AND ORDER**

WILLIAM C. GRIESBACH, District Judge.

 *1  Plaintiff Elton Louis filed this action on June 30, 2008, pursuant to 42 U.S.C. § 1983 and the Wisconsin Fair Employment Act ("WFEA"), Wis. Stats. § 111.01 *et seq.,* claiming that Defendant Stockbridge-Munsee Mohican Community (the "Tribe"), a federally recognized Indian tribe, deprived him of property without due process of law and his right to employment in violation of the United States and Wisconsin Constitutions, and the WFEA. The Tribe has now filed a motion to dismiss on the ground that its tribal sovereign immunity prevents Louis from maintaining such a lawsuit. In addition, the Tribe claims that the Court lacks subject matter jurisdiction over the dispute, and that in any event, Louis has failed to state a cognizable claim under either 42 U.S.C. § 1983 or the WFEA. For the reasons stated herein, the Tribe's motion to dismiss will be granted.

**MOTION TO DISMISS STANDARD**

The purpose of a motion to dismiss is to test the sufficiency of the complaint to state a claim upon which relief may be granted, not to decide the merits of the case. *Gibson v. City of*

*Chi.,* 910 F .2d 1510, 1520 (7th Cir.1990); *See* Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations and draw all inferences in the light most favorable to the nonmoving party. *Gutierrez v. Peters,* 111 F.3d 1364, 1368-69 (7th Cir.1997); *Mosley v. Klincar,* 947 F.2d 1338, 1339 (7th Cir.1991).

When extrinsic evidence outside the pleadings is submitted with a motion to dismiss under Rule 12(b)(6), the court generally must either convert the motion into one for summary judgment under Fed.R.Civ.P. 56, or exclude the documents attached to the motion to dismiss and continue under Rule 12(b)(6). *Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir.1998). Here, Louis has submitted an affidavit in which he asserts that he applied for and received unemployment benefits from the State of Wisconsin as a result of his employment by the Tribe and the termination of that employment. (Louis Aff., August 15, 2008, ¶ 8.) Because I conclude that this additional information is irrelevant to the issues raised by the motion to dismiss, I decline to convert the motion into one for summary judgment.

**BACKGROUND AND ALLEGATIONS OF THE COMPLAINT**

The Stockbridge-Munsee Mohican Community is a federally-recognized Indian Tribe organized under the Indian Reorganization Act of 1934 ("IRA"), 48 Stat. 984 (1934), codified at 25 U.S.C. § 461 *et seq.* (Br. Supp. Mot. Dismiss 1.) It occupies a reservation in Shawano County, Wisconsin. (*Id.*) The Tribe owns and operates a Health and Wellness Center ("the Center"), located on tribal reservation trust land, (*Id.* 6) through which it provides a broad range of health care services to both tribal members and non-Indians. (Compl.¶ 402.) Louis was employed as a Mental Health Worker at the Center from August 1998 to June 2, 2000, when his employment was terminated by the Tribe. (*Id.* ¶¶ 405-06.)

 *2  Louis filed a petition for reinstatement on June 27, 2000, before the Stockbridge-Munsee Tribal Court, claiming that his termination was in violation of Section 53.3 of the Stockbridge-Munsee Tribal Law Employee Rights Ordinance and Section 7 of the Information Handbook for Employees of the Mohican Nation. (*Id.* ¶¶ 407, 415.) The tribal court ruled in his favor, ordering reinstatement of Louis' position and benefits, as well as back pay for one year from the date of the termination. (*Id.,* Ex. A.) The Tribe appealed, the tribal

court of appeals remanded the case for further explanation, and the trial court made the same award in a second decision and order on December 1, 2006. (*Id.,* Ex. B, Ex. C.) Again, the Tribe appealed. The appellate court stayed the judgment against the Tribe, and then, on January 16, 2008, reversed the trial court. (*Id.,* Ex. K)[1] Louis now claims that the January 16, 2008 decision of the tribal appellate court and the Tribe's actions with regard to his employment have denied him due process of law and subjected him to "the deprivation of his rights, privileges and immunities" under the WFEA, federal law, and the United States and Wisconsin Constitutions. (*Id.,* ¶¶ 429, 501-503.)

**ANALYSIS**

The Tribe contends that this Court lacks jurisdiction over the matter because it is immune from Louis' suit under the doctrine of sovereign immunity, and because the Court lacks subject-matter jurisdiction. (Br.Supp.3-4.) In support of its claim that subject-matter jurisdiction is lacking, the Tribe asserts that it is not a citizen of any state for purposes of diversity jurisdiction, and that "federal question jurisdiction collapses with the plaintiff's *Section 1983* claim," (*Id.* at 4) since Louis has failed to state a cognizable claim under *42 U.S.C. § 1983.* (*Id.* at 5.) However, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists ... when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Burda v. M. Ecker Co.,* 954 F.2d 434, 438 (7th Cir.1992). The Court does not lack subject matter jurisdiction over a case merely because the federal claim a plaintiff has pleaded ultimately fails. Here, Louis alleges on the face of his complaint the violation of a federal statute. Thus, he has met the requirement of federal-question jurisdiction.

Nonetheless, the Court lacks jurisdiction over this case under the doctrine of tribal sovereign immunity. As a necessary corollary to their sovereignty and self-governance, Indian tribes are immune from suit in both state and federal court unless "Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.,* 523 U.S. 751, 754 (1998); *Three Affiliated Tribes ofFort Berthold Reservation v. Wold,* 476 U.S. 877, 890 (1986). This immunity "is a matter of federal law and is not subject to diminution by the States." *Id.* at 757. It is not confined to reservations or to the noncommercial activities of tribes, but rather, it "extends

beyond what is needed to safeguard tribal self-governance" to a tribe's enterprises in our nation's commerce. *Id.* at 759.[2]

**\*3** Louis does not contend that the Tribe has in some manner waived its immunity in this instance or that it has been abrogated by Congress in this context. Rather, he claims that the "[i]mpairment of tribal sovereignty is negligible in this case," presumably because the Tribe's operation of the Center is, at least in part, of a commercial nature. (Br.Opp'n 7.) He asserts that the Center is certified by the State of Wisconsin to provide the services it offers, and "obtains payments from companies, Medicare and Medicaid for services it provide[s] to tribal members and members of the general public." (*Id.*)

Thus, Louis claims, this case is analogous to *San Manuel Indian Bingo and Casino v. NLRB,* 475 F.3d 1306 (D.C.Cir.2007), in which the United States Court of Appeals for the District of Columbia Circuit held that tribal immunity did not prevent the application of the National Labor Relations Act to union organizing efforts at a casino a tribe operated on its reservation. The court noted that the "impairment of tribal sovereignty [was] negligible in th[at] context, as the Tribe's activity was primarily commercial." *Id.* at 1315. Louis also cites the Supreme Court's decision in *Organized Village of Kake v. Egan,* 369 U.S. 60 (1962), in which the Court upheld the application of an Alaskan anti-trap-fishing conservation statute to Indians in non-reservation waters, noting that "even on reservations state laws may be applied to Indians unless such application would interfere with reservation self-government or impair a right granted or reserved by federal law ." *Id.* at 75-76.

But "whether an Indian tribe is subject to a statute and whether the tribe may be sued for violating the statute are two entirely different questions." *Florida Paraplegic, Ass'n, Inc. v. Miccosukee Tribe of Indians of Florida,* 166 F.3d 1126,1130 (11th Cir.1999); *see also Kiowa,* 523 U.S. at 755 ("There is a difference between the right to demand compliance with state laws and the means available to enforce them."). The analysis of both *San Manuel* and *Organized Village of Kake* concerned the applicability of a federal or state statute to an Indian tribe, and is thus inapplicable here where the issue presented is whether a private party may maintain a suit against the Tribe pursuant to *42 U .S.C. § 1983* and the WFEA. There is no indication that the Tribe has waived its immunity from suit or of congressional abrogation. Louis claims that the Center accepted payment from federal and/or state entities, was conferred certain certification by the State of Wisconsin, and employed persons eligible for state

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.    2

unemployment benefits. (Br. Opp'n 7.) But these facts, even if true, do nothing to diminish the Tribe's immunity from suit. I therefore conclude that the doctrine of sovereign immunity governs this case and mandates dismissal.

Even if it did not, Louis' claims would still fail. Although Louis frames his allegations as constitutional violations actionable under 42 U.S.C. § 1983, the statute provides remedy only for violations by persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." "A § 1983 action is unavailable 'for persons alleging deprivation of constitutional rights under color of tribal law.'" *Burrell v. Armijo,* 456 F.3d 1159, 1174 (10th Cir.2006) (quoting *R.J. Williams Co. v. Ft. Belknap Hous. Auth.,* 719 F.2d 979, 982 (9th Cir.1983)). Here, Louis' claims at most allege that the Tribe took unfavorable action against him under color of tribal law, which is insufficient to support a cognizable claim under § 1983.

 **\*4** Louis also claims that the Tribe's actions violated the WFEA. The parties dispute whether the Tribe is even subject to the WFEA. The Tribe contends it is not, (Br.Supp.5-6) but Louis argues that "given the nature of the clinic, its certification by the State of Wisconsin and being subject to unemployment laws," the WFEA does apply, citing Public Law 280, 18 U.S.C. § 1162, as amended, 28 U.S.C. § 1360. (Br. Opp'n 7-8.) Through Public Law 280, "Congress gave express authority to Wisconsin and certain other states to exercise criminal jurisdiction over offenses committed by or against Indians in Indian country and civil jurisdiction over causes of action arising in Indian country between Indians or in which Indians are parties." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Zeuske,* 145 F.Supp.2d 969, 975 (W.D.Wis.2000). Yet Public Law 280 did not grant general civil regulatory authority to the states. *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 207-08 (1987). It appears that the courts have not addressed whether actions against a tribe pursuant to the WFEA fall within the jurisdiction granted to the state by Public Law 280. I need not decide the issue here, however, because, as the Tribe argues, even if the WFEA applies to the Tribe, Louis has failed to state a cognizable claim under the statute.

The WFEA provides, in relevant part,

> no employer, labor organization, employment agency, licensing agency, or other person may engage in any act of employment discrimination ... against any individual on the basis of age, race, creed, color, disability, marital status, sex, national origin, ancestry, arrest record, conviction record, military service, or use or nonuse of lawful products off the employer's premises during nonworking hours.

Wis. Stat. § 111.321. Louis alleges that his employment was terminated without just cause, and without provision of counseling and corrective actions he believes were required by tribal ordinance, and contrary to the Information Handbook for Employees of the Mohican Nation. (Compl.¶ 407.) He makes no allegation, however, that he was discriminated against on the basis of any protected class or category under the WFEA.

Although he claims in a conclusory fashion that "[t]he wrongful actions of the defendant have subjected [him] to the deprivation of his rights, privileges and immunities under" the WFEA, this is insufficient to state a claim. A plaintiff's complaint need not allege sufficient facts to establish a prima facie case, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515 (2002) (cited with approval in *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1969 (2007)), but it must provide the defendant with fair notice of the plaintiff's claims and sufficient facts to provide notice of the grounds upon which such claims rest. *Bell Atl.,* 127 S.Ct. at 1959; Fed.R.Civ.P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief.").

## CONCLUSION

 **\*5** In sum, the Court lacks jurisdiction over this matter because the Tribe has not waived its sovereign immunity from suit. In addition, Louis has failed to state a claim under either § 1983 or the WFEA. Accordingly, the Tribe's motion is **GRANTED,** and this case is **DISMISSED.**

## All Citations

Not Reported in F.Supp.2d, 2008 WL 4282589

Footnotes

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works. 3

1    Louis filed a motion to reconsider with the tribal court of appeals, alleging that his right to due process was violated by the January 16, 2008 decision. (*Id.* ¶ 430, Ex. L.) At the time Louis filed his complaint, the appellate court had not yet ruled on his motion to reconsider. (*Id.* ¶ 433.) The present status of the motion is unclear, but irrelevant to the present analysis.

2    Even though the *Kiowa* Court expressed doubt as to the wisdom of applying the doctrine of tribal sovereign immunity to a tribe's widespread commercial activity in modern society, it expressly declined to judicially abrogate or limit such immunity. 523 U.S. at 758-60.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Nwoke v. University of Chicago Medical Center, Not Reported in Fed. Supp. (2020)

2020 WL 3000285

2020 WL 3000285
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Chinyere U. NWOKE, Plaintiff,

v.

The UNIVERSITY OF CHICAGO
MEDICAL CENTER, Defendant.

19 C 358
|
Signed 06/04/2020

**Attorneys and Law Firms**

Chinyere U. Nwoke, Bolingbrook, IL, pro se.

James Vincent Garvey, Elizabeth N. Hall, Madeline Victoria Tzall, Vedder Price P.C., Chicago, IL, for Defendant.

**Memorandum Opinion and Order**

Gary Feinerman, United States District Judge

**\*1** This is Chinyere Nwoke's second suit against her former employer, The University of Chicago Medical Center ("UCMC"). Doc. 28. Last year, the court stayed this suit pending resolution of the first suit, *Nwoke v. The University of Chicago Medical Center*, 16 C 9153 (N.D. Ill.) ("*Nwoke I*") (Alonso, J.). Docs. 43-44. The *Nwoke I* court recently entered judgment in UCMC's favor. Because the *Nwoke I* judgment bars Nwoke's claims here under the claim preclusion doctrine, this suit is dismissed with prejudice.

**Background**

Nwoke filed *Nwoke I* in September 2016, alleging that UCMC violated Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq. Nwoke I*, ECF No. 1. The *Nwoke I* court recently granted summary judgment to UCMC on those claims. *Nwoke I*, ECF Nos. 434-435 (reported at 2020 WL 1233829 (N.D. Ill. Mar. 13, 2020)).

During the pendency of *Nwoke I*, Nwoke moved for leave to amend her complaint to make new factual allegations and to add a Title VII hostile work environment claim, a Title VII race- and retaliation-based harassment claim, and an intentional infliction of emotional distress ("IIED") claim. *Nwoke I*, ECF No. 54; *id.*, ECF No. 55 at pp. 4-42. The *Nwoke I* court denied that motion on grounds of undue delay, unfair prejudice, and futility. *Id.*, ECF No. 79, ECF No. 201 at 6-10. Nwoke later moved again for leave to amend her complaint, this time to add a pay discrimination claim and allegations about a supervisor's mimicry of her accent. *Id.*, ECF No. 129; *id.*, ECF No. 147 at pp. 9, 11, 16-17, ¶¶ 20, 31, 60-63, 70-71. The *Nwoke I* court denied that motion on grounds of undue delay, unfair prejudice, and bad faith. *Id.*, ECF No. 152; *id.*, ECF No. 164 at 6-10.

In this case, Nwoke brings claims under 42 U.S.C. § 1981, the Equal Pay Act, 29 U.S.C. § 206(d), the Lilly Ledbetter Fair Pay Act of 2009, and the Illinois IIED tort. Doc. 28. As with her first suit, Nwoke alleges that she was subjected to unlawful and discriminatory treatment while employed with UCMC. Her complaint includes many of the specific allegations and claims that were the subject of the unsuccessful motions for leave to amend in *Nwoke I*. Compare *Nwoke I*, ECF No. 55 at p. 5, ¶ 23 (alleging a racially discriminatory incident on November 7, 2011), p. 33, ¶ 182 (alleging that she did not receive a raise), p. 41, ¶¶ 210-211 (hostile work environment claim), p. 42, ¶¶ 217-219 (IIED claim); *id.*, ECF No. 129; *id.*, ECF No. 147 at pp. 9, 11, ¶¶ 20, 31 (alleging that a supervisor mimicked her accent), pp. 16-17, ¶¶ 60-63, 70-71 (pay discrimination claim); *and id.*, ECF No. 141 at 4 (describing allegations that UCMC employees sought legal advice about her and physically chased her), *with* Doc. 28 at ¶ 11 (alleging the same November 7, 2011 incident), ¶¶ 17-18 (alleging that UCMC executives sought legal advice about her), ¶ 19 (alleging that UCMC executives "took turns to physically pursue Nwoke on hospital hallways"), ¶ 20 (alleging that "Nwoke's supervisor ... mimicked Nwoke's accent"), ¶ 28 (alleging that she was denied promotions), ¶¶ 32-34 (hostile work environment claim), ¶¶ 30, 35-36 (pay discrimination claim), ¶¶ 37-40 (IIED claim).

**Discussion**

**\*2** UCMC argues that the *Nwoke I* judgment precludes the claims she brings here. Because UCMC's argument implicates the preclusive effect of a federal judgment in a federal question case, the federal law of claim preclusion applies. *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("For judgments

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works. 1

Nwoke v. University of Chicago Medical Center, Not Reported in Fed. Supp. (2020)

2020 WL 3000285

in federal-question cases ... federal courts participate in developing uniform federal rules of res judicata ....") (internal quotation marks and alteration omitted). The claim preclusion doctrine provides that "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Id.* at 892 (internal quotation marks omitted). Claims that "were, or could have been, decided in a prior suit" are precluded, "so long as there is (1) an identity of the parties or their privies; (2) an identity of the cause of action; and (3) a final judgment on the merits." *United States ex rel. Conner v. Mahajan*, 877 F.3d 264, 271 (7th Cir. 2017) (alteration and internal quotation marks omitted). All three requisites of claim preclusion are present here.

*Identity of Parties.* The parties are the same in both cases: Nwoke and UCMC.

*Identity of Causes of Action.* Whether there is an identity of causes of action between two suits depends on "whether the claims arise out of the same set of operative facts or the same transaction." *Kilburn-Winnie v. Town of Fortville*, 891 F.3d 330, 333 (7th Cir. 2018) (quoting *Bernstein v. Bankert*, 733 F.3d 190, 226 (7th Cir. 2013)). For this requirement to be satisfied, the claims in the two suits must be "based on the same, or nearly the same, factual allegations arising from the same transaction or occurrence." *Bernstein*, 733 F.3d at 226 (internal quotation marks omitted). UCMC argues that there is a shared identity of the causes of action because both suits turn on the mistreatment Nwoke allegedly suffered during her employment with UCMC. Doc. 79 at 8; Doc. 81 at 3. Nwoke cursorily asserts that the relief sought and causes of action differ between the two suits, but she fails to explain her position or cite supporting case law. Doc. 78 at 1-3.

As this court noted when staying this case, Doc. 44, and as detailed in the Background section, while the legal theories Nwoke pursues here differ from those she pursued or attempted to pursue in *Nwoke I*, the underlying factual allegations are largely identical. As noted, the crux of both suits is the discriminatory treatment that Nwoke allegedly endured while employed at UCMC. It follows that there is an identity of the causes of action in both cases. *See Barr v. Bd. of Trs. of W. Ill. Univ.*, 796 F.3d 837, 840 (7th Cir. 2015) ("Yes, the second case is a little different from the first in that it complains about age discrimination and presents a different theory of retaliation. Yes, [the plaintiff] needed to get her right-to-sue letter before she could bring claims in the second suit. But both suits arise out of the same main

event: the [employer]'s decision not to retain [the plaintiff] on its faculty."); *Czarniecki v. City of Chicago*, 633 F.3d 545, 550 (7th Cir. 2011) ("Because both of [the plaintiff's] federal claims and [her] new state-law claims are based on the same set of factual allegations as [her] § 1983 claim, res judicata bars [the plaintiff's] Title VII claim and [her] state-law claims.").

Granted, some of Nwoke's factual allegations in this case appear not to have been presented in the operative complaint or any of the proposed amended complaints in *Nwoke I*. Doc. 28 at ¶¶ 15-16 (alleging that Nwoke's coworker prevented her from putting her approved hours on the schedule); ¶¶ 21-22 (alleging that UCMC's Executive Director wrote in emails that she may "kill or fire" Nwoke and that she had a long fuse with Nwoke and had reached her limit), ¶ 24 (alleging that Nwoke "feared that her coworker added poison to [her] food" on January 17, 2016), ¶ 29 (alleging that UCMC denied Nwoke's request to be transferred out of a Senior Executive and Chief Nursing Officer's department). But the claims in the two suits still share a set of core operative facts, as they turn on Nwoke's allegations of broad and wide-ranging mistreatment she experienced while employed at UCMC. *Nwoke I*, ECF No. 141 at 3 ("A 13-hour deposition is not enough for Plaintiff to narrate everything that was done to [her] ...."). Thus, despite Nwoke's pleading certain factual allegations here that she did not plead or attempt to plead in *Nwoke I*, the identity of causes of action component of claim preclusion is still satisfied. *See Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.2d 223, 226 (7th Cir. 1993) ("If the plaintiff here had an employment contract which protected her from being fired without cause, and she claimed that she was fired in violation both of the contract and of Title VII, these two claims would be the same claim for purposes of res judicata because, although they would not have the identical elements, the central factual issue would be the same in the trial of each of them."); *see also Huon v. Johnson & Bell, Ltd.*, 757 F.3d 556, 559 (7th Cir. 2014) (holding that there was an identity of claims under Illinois claim preclusion law because the claims in the two suits arose from connected transactions, even though the second suit "add[ed] allegations relating to salary and promotions that were not mentioned" in the first suit, as the "allegations ar[o]se out of the same facts underlying the [first] suit—[the plaintiff's] job conditions ... and ... discharge"). This conclusion is bolstered by the fact that Nwoke referenced many of those factual allegations in opposing an earlier summary judgment motion in *Nwoke I*. *See Nwoke I*, ECF No. 206 at ¶¶ 1, 42 (referencing the "kill or fire" email), ¶ 51 (referencing the "long fuse" email);

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2

Nwoke v. University of Chicago Medical Center, Not Reported in Fed. Supp. (2020)

2020 WL 3000285

¶ 79 (stating that her coworker prevented her from putting her approved hours on the schedule); *id.*, ECF No. 207 at ¶ 18 (referencing the "kill or fire" email), ¶ 20 (referencing the "long fuse" email), ¶ 44 (referencing her request to be transferred out of the department). In any event, Nwoke surely could have asserted those other allegations in *Nwoke I*, so claim preclusion applies regardless of whether she in fact did so. *See Nayak v. Farley*, 763 F. App'x 570, 572 (7th Cir. 2019) ("[T]he [claim preclusion] doctrine bars not only claims actually decided in the prior suit, but also all other claims that could have been brought."); *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011) ("The doctrine of res judicata bars not only those issues actually decided in the prior suit, but all other issues which could have been brought.") (alteration and internal quotation marks omitted); *Highway J Citizens Grp. v. U.S. Dep't of Transp.*, 456 F.3d 734, 743 (7th Cir. 2006) ("[R]es judicata bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action.") (internal quotation marks omitted).

**\*3** *Final Judgment on the Merits.* Under federal law, a judgment is "final" for claim preclusion purposes when "the district court has finished with the case." *Czarniecki*, 633 F.3d at 549 (internal quotation marks omitted). The *Nwoke I* judgment certainly is final as to the claims resolved on summary judgment. *See ibid.* ("There is no question that the district court's grant of summary judgment ... has given rise to a final judgment ...."). The *Nwoke I* judgment also is final as to the claims for which Nwoke sought and was denied leave to amend. *See Arrigo v. Link*, 836 F.3d 787, 799 (7th Cir. 2016) ("To allow the second lawsuit to continue would render

meaningless ... the district court's denial of [the] motion for leave to amend to add the same claims [in the first lawsuit]. ... [I]t is widely accepted that appeal is the plaintiff's only recourse when a motion to amend is denied as untimely.") (internal quotation marks omitted); *see also Hatch v. Trail King Indus., Inc.*, 699 F.3d 38, 45-46 (1st Cir. 2012) ("It is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading.") (internal quotation marks omitted); *Prof'l Mgmt. Assocs., Inc. v. KPMG LLP*, 345 F.3d 1030, 1032 (8th Cir. 2003) (similar); *N. Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84, 88 (2d Cir. 2000) ("Where the plaintiff is seeking to add additional claims against the same defendant and leave to amend is denied, claim preclusion is appropriate.").

Because all three requirements of claim preclusion are satisfied, the *Nwoke I* judgment precludes Nwoke's claims here.

### Conclusion

This suit is dismissed with prejudice. *See Bernstein*, 733 F.3d at 224 ("[A] dismissal on res judicata grounds ... is a dismissal with prejudice.") (emphasis omitted). Judgment will be entered in UCMC's favor.

### All Citations

Not Reported in Fed. Supp., 2020 WL 3000285

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Nwoke v. University of Chicago Medical Center, Not Reported in Fed. Rptr. (2021)

2021 WL 3483434, 2021 Fair Empl.Prac.Cas. (BNA) 298,448

2021 WL 3483434
United States Court of Appeals, Seventh Circuit.

Chinyere U. NWOKE, Plaintiff-Appellant,

v.

UNIVERSITY OF CHICAGO MEDICAL
CENTER, Defendant-Appellee.
Chinyere U. Nwoke, Plaintiff-Appellant,

v.

University of Chicago Medical
Center, Defendant-Appellee.

No. 20-2242, No. 20-3413
|
Submitted June 18, 2021[*]
|
Decided August 9, 2021
|
Rehearing Denied August 26, 2021

Appeal from the United States District Court for the Northern
District of Illinois, Eastern Division. No. 19 C 358, No. 16 C
9153, Gary Feinerman, *Judge*, Jorge L. Alonso, *Judge*.

**Attorneys and Law Firms**

Chinyere U. Nwoke, Bolingbrook, IL, Pro Se.

James Vincent Garvey, Attorney, Elizabeth N. Hall, Attorney,
Vedder Price P.C., Chicago, IL, for Defendant-Appellee.

Before DIANE S. SYKES, Chief Judge, DAVID F.
HAMILTON, Circuit Judge, AMY J. ST. EVE, Circuit Judge

**ORDER**

**\*1** Chinyere Nwoke, a black woman, twice sued the
University of Chicago Medical Center, her former employer,
alleging claims of racial discrimination, retaliation, and
unequal pay. She lost both suits. The first ended in summary
judgment for the Medical Center and an award of roughly
$18,000 in costs. The second ended in dismissal on preclusion
grounds. In these appeals, which we consolidate for decision,
Nwoke challenges the award of costs in the first suit and the
dismissal of the second. We affirm both judgments with one
minor modification to the costs award.

In her first lawsuit, Nwoke alleged that during her tenure as
a hospital administrator at the Medical Center, her colleagues
and supervisors treated her more harshly than similarly
situated white administrators. She added that when she
complained about the discrimination, the Medical Center
retaliated against her.

The case was assigned to Judge Alonso, and Nwoke twice
moved to amend her complaint. About a year into the
case, she sought leave to add new allegations of racial
discrimination and claims for, among other things, a hostile
work environment and intentional infliction of emotional
distress. Judge Alonso denied the motion based on undue
delay and prejudice to the Medical Center. Nwoke tried again
a year later—after the close of discovery—this time seeking
to add an unequal-pay claim based on information obtained
during discovery. This motion met the same fate. Judge
Alonso denied it for undue delay, explaining that Nwoke had
learned about the pay disparity more than six months earlier
and offered no excuse for waiting until after discovery closed
to seek leave to amend her complaint. She does not challenge
either of these rulings.

Nwoke filed numerous motions for sanctions against the
Medical Center based on wild allegations of litigation
misconduct and discovery delay. She said, for example, that
the Medical Center's counsel planted viruses on her computer,
falsely accused her of lying on her résumé, and "typed
noisily" and "made faces" during her deposition. Judge
Alonso denied these motions because Nwoke's accusations of
misconduct were unfounded and irrelevant, and because she,
not the Medical Center, caused most of the discovery delays.

The Medical Center prevailed on summary judgment and
then filed a bill of costs for approximately $58,000. *See*
28 U.S.C. § 1920; Fed. R. Civ. P. 54(d). Judge Alonso
awarded costs of $18,393.69. The reasons for the reduction
are irrelevant here except for a decrease in total witness costs
from the requested $7,300 to $440—$40 a day for 11 days
of depositions. Nwoke objected that the Medical Center was
not entitled to *any* costs because of its litigation misconduct,
but Judge Alonso disagreed for the same reasons he denied
her sanctions motions. Nwoke also objected to awarding costs
for transcripts that were not used in court proceedings or
the motion for summary judgment. The judge rejected this
objection too, noting that transcript costs may be awarded
if they were reasonably necessary when incurred regardless
of whether the transcripts were used in a motion or court

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works. 1

Nwoke v. University of Chicago Medical Center, Not Reported in Fed. Rptr. (2021)

2021 WL 3483434, 2021 Fair Empl.Prac.Cas. (BNA) 298,448

proceeding. Nwoke challenges only the award of costs, not the summary-judgment ruling.

**\*2** While the first case was pending, Nwoke filed a second suit against the Medical Center. The complaint reprised many of the factual allegations and legal theories that she had tried to add to the first case in her failed motions to amend: specifically, claims for hostile work environment, infliction of emotional distress, and unequal pay. The second case was assigned to Judge Feinerman. He dismissed it on preclusion grounds after Judge Alonso entered judgment in the first case. Nwoke challenges that decision.

Nwoke faces a steep climb in challenging the award of costs. "Rule 54(d) creates a presumption that the prevailing party will recover costs," and we review the award for abuse of discretion. *Crosby v. City of Chicago*, 949 F.3d 358, 363–64 (7th Cir. 2020) (quotation marks omitted). With one slight exception, the award was well within the judge's discretion.

Nwoke opens with two frivolous arguments. First, she asserts that the award was improper because there was no final judgment in favor of the Medical Center. That's wrong. Judge Alonso granted the Medical Center's summary-judgment motion and entered final judgment in its favor, making it presumptively entitled to costs. Fed. R. Civ. P. 54(d). Nwoke also contends that the Medical Center's litigation misconduct barred it from receiving costs. *See Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003) (noting such behavior may justify denial of costs). But she makes the same sometimes-fantastical accusations that Judge Alonso rejected and gives us no reason to second-guess the judge's decision.

Nwoke next argues that Judge Alonso should have rejected $13,000 in transcript costs because the Medical Center did not use those transcripts in its summary-judgment motion and did not specify the length of each transcript in its bill of costs. The former contention is meritless since the depositions were reasonably necessary at the time. *See Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 455 (7th Cir. 1998) ("The proper inquiry is whether the deposition was reasonably necessary to the case at the time it was taken, not whether it was used in a motion or in court." (quotation marks omitted)). And the latter contention is flatly belied by the record; the Medical Center's schedule of costs included page counts.[1]

Nwoke raises one sound, albeit minor, objection to the costs award. Judge Alonso granted $440 in witness fees—$40 per witness per day for 11 days. Although the rate is correct, *see*

28 U.S.C. § 1821(b), the number of days is not. The Medical Center deposed nine witnesses, each on a separate day. This totals $360, not $440.

That brings us to Nwoke's second case. We review the dismissal de novo. *Arrigo v. Link*, 836 F.3d 787, 798 (7th Cir. 2016). "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Claim preclusion "blocks a second lawsuit if there is (1) an identity of the parties in the two suits; (2) a final judgment on the merits in the first; and (3) an identity of the causes of action." *Barr v. Bd. of Trs. of W. Ill. Univ.*, 796 F.3d 837, 840 (7th Cir. 2015). Nwoke concedes, as she must, that the two suits have identical parties, but she contests whether the second and third elements are satisfied.

**\*3** Nwoke insists that there was no final judgment on the merits of her unequal-pay claim since she was denied leave to add that claim to her first lawsuit. But the preclusive effect of a judgment extends to claims that could have been raised as well as those actually litigated. *Bell v. Taylor*, 827 F.3d 699, 707 (7th Cir. 2016). Nwoke certainly could have litigated her unequal-pay claim in the first suit; indeed, she tried to do just that. Nwoke does not challenge Judge Alonso's denial of leave to amend her complaint, and she "cannot use a second lawsuit against [the Medical Center] to take another bite at the apple." *Id.* (We note for completeness that Judge Alonso did not deny leave to amend on the ground that the claims Nwoke sought to add would be better managed as part of another case. In that situation, claim preclusion would not apply.)

Nwoke relatedly contends that there is no identity of the causes of action because her unequal-pay claim is based on a different set of facts than the discrimination and retaliation claims at the core of her first suit. That's the kind of claim splitting res judicata is meant to prevent. *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011). As Judge Feinerman recognized, Nwoke's unequal-pay claim stems from the same "main event" as her other claims: the discrimination she claims to have suffered at the Medical Center. *Barr*, 796 F.3d at 840. After all, Nwoke uncovered the pay-disparity evidence during discovery on her discrimination claims, and the evidence of each claim could have been used to support the other. *See Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) ("Whether there is an identity of the cause of action depends on whether the claims comprise the same core of operative facts that

**Nwoke v. University of Chicago Medical Center, Not Reported in Fed. Rptr. (2021)**

2021 WL 3483434, 2021 Fair Empl.Prac.Cas. (BNA) 298,448

give rise to a remedy." (quotation marks omitted)). Nwoke cannot avoid claim preclusion by "identify[ing] a slightly different cause of action with one element different from those in the first, second, or third lawsuits between the same parties arising from the same events." *Czarniecki v. City of Chicago, 633 F.3d 545, 550 (7th Cir. 2011).*

We therefore MODIFY the cost award in appeal No. 20-3413 to provide for $360 for witness costs instead of $440

and AFFIRM the judgment as modified. We AFFIRM the judgment in appeal No. 20-2242.

**All Citations**

Not Reported in Fed. Rptr., 2021 WL 3483434, 2021 Fair Empl.Prac.Cas. (BNA) 298,448

---

Footnotes

\*      We consolidate these related appeals and decide them without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. Fed. R. App. P. 34(a)(2)(C).

1      Nwoke also criticizes Judge Alonso's assessment that the remainder of costs were reasonable, but she neither asserts that those costs exceed the scope of 28 U.S.C. § 1920 nor challenges how they were calculated. We will not disturb the award on such a thin argument.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.                    3

607 Fed.Appx. 552
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S.Ct. of App. 7th Cir. Rule 32.1.
United States Court of Appeals, Seventh Circuit.

Eric C. ONYANGO, Plaintiff–Appellant,

v.

NICK & HOWARD, LLC,
et al., Defendants–Appellees.

No. 14–2979
|
Submitted Dec. 02, 2014.[*]
|
Decided April 9, 2015.

**Synopsis**
**Background:** Black patron brought action against nightclub
owner and its attorney under § 1981 alleging racial
discrimination and retaliation. The United States District
Court for the Northern District of Illinois, Sharon Johnson
Coleman, J., 2014 WL 3810800, dismissed the action. Patron
appealed.

**Holdings:** The Court of Appeals held that:

[1] patron failed to state a claim of discrimination;

[2] patron failed to state a claim of retaliation; and

[3] statements by attorneys were privileged and could not
support claim of intentional infliction of emotional distress.

Affirmed.

West Headnotes (5)

[1]     **Civil Rights** ⚖ **Inns and restaurants; bars and
taverns**

Ejected black nightclub patron failed to plead
that nightclub owner removed him from the
club because it knew of, or adopted, another
patron's racial animus towards him, as required to
establish a claim of race discrimination under §
1981, absent allegations that the other patron was
an agent for the nightclub or that nightclub owner
endorsed the other patron's conduct by forcing
ejected patron to leave or by refusing him entry.
42 U.S.C.A. § 1981.

1 Case that cites this headnote

[2]     **Civil Rights** ⚖ **Particular Causes of Action**

Allegations by black nightclub patron that black
customers waited longer in line than whites,
bouncers lied to some black customers about
wait times, and bouncers unevenly enforced
dress codes were insufficient to plead that
nightclub's admission policies discouraged him
from entering club, as required to state claim
of race discrimination under § 1981; allegations
were too conclusory to support an inference of
discrimination. 42 U.S.C.A. § 1981.

3 Cases that cite this headnote

[3]     **Civil Rights** ⚖ **Inns and restaurants; bars and
taverns**

Allegations by black nightclub patron that
nightclub owner retaliated against him for filing
a discrimination complaint with their attorney by
responding to allegations of sexual misconduct
from another patron and disallowing him entry
into the nightclub, were insufficient to establish a
causal connection as required to support a claim
of retaliation under § 1981; even assuming §
1981's retaliation provision was applicable to
contexts outside of employment, seven months
between his complaint and the nightclub's refusal
to allow him entry was too long a time to make
a connection in order to support an inference of
retaliation. 42 U.S.C.A. § 1981.

[4]     **Damages** ⚖ **Privilege or immunity; exercise
of legal rights**

Case 2:23-cv-01643-LA   Filed 04/01/24   Page 130 of 192   Document 13

Statements made by nightclub's attorney and his own lawyer in attorney disciplinary action, that a black patron had sexually assaulted women in the nightclub, were privileged because they arose in anticipation of judicial and quasijudicial proceedings, and therefore could not support black patron's claims for intentional infliction of emotional distress; nightclub's attorney made statements to potential witness as part of preliminary investigation, and his attorney made statements in response to patron's complaint with the Illinois Attorney Registration and Disciplinary Commission alleging that nightclub attorney asked a witness to falsely accuse patron of sexual misconduct.

[5]   **Federal Courts** 👉 Effect of dismissal or other elimination of federal claims

Retention of jurisdiction to decide a supplemental state-law claim after dismissal of claims over which court had original jurisdiction is appropriate when resolution of a state-law claim is clear.

**\*553**  Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 13 C 6256, Sharon Johnson Coleman, Judge.

**Attorneys and Law Firms**

Eric C. Onyango, Chicago, IL, pro se.

David M. Holmes, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Joseph R. Ziccardi, Gabriella Moretti, Ziccardi Law Offices, Chicago, IL, for Defendants–Appellees.

Before DANIEL A. MANION, Circuit Judge, MICHAEL S. KANNE, Circuit Judge, DAVID F. HAMILTON, Circuit Judge.

**ORDER**

Eric Onyango, who is black, sued a night club owner and two others, alleging violations of 42 U.S.C § 1981 and state law. The district court dismissed with prejudice the § 1981 claims

and two of the claims for intentional infliction of emotional distress. The court then declined to exercise supplemental jurisdiction over the remaining state-law claims. Onyango appeals, and because Onyango states no plausible § 1981 or emotional-distress claims, we affirm the judgment.

Onyango complains about two sets of events at The Underground night club in Chicago. He names as defendants Nick & Howard (the company that owns the club), the club's lawyer (Douglas Wexler), and Wexler's own lawyer, Samuel Manella. According to his complaint, the first set of events began when Onyango and a friend were at the club in December 2012. Carlos Rosales, a frequent club patron, made racist remarks to Onyango and told him to "get out." Onyango left the club, and a few weeks later he complained to the club about Rosales and threatened litigation. When he returned to the club sometime later, bouncers enforced policies that discouraged him from entering: He saw that black customers waited in line longer than white customers, bouncers lied about wait times, and they "selectively enforce[ed] nonarticulable dress codes while making exceptions **\*554** for rappers and drug dealers." Onyango labels this race discrimination.

The second set of events involves accusations of sexual misconduct. Onyango alleges that while he and a friend were waiting to enter The Underground in August 2013, the club patron Rosales approached him and, for racially hostile reasons, loudly and falsely called him a "sexual assailant." Rosales then spoke to the bouncer, who denied Onyango entry into the club. Onyango complained to Nick & Howard about this new incident and reprised his threat to sue. He later spoke about the incident with Wexler, the club's lawyer, who began to investigate. Wexler first contacted Rosales, who asserted that Onyango had once been asked to leave the club for groping a woman, and said a woman named Marcella Acosta would be able to confirm that Onyango was aggressive. Wexler contacted Acosta, told her that Onyango had sexually assaulted women, and asked her to lie and confirm that Onyango had inappropriately touched her and other women. Upon learning about this conversation, Onyango reported Wexler to the FBI and Illinois Attorney Registration and Disciplinary Commission to complain about Wexler's lies. Wexler hired Manella, who represented him in the ARDC proceedings.

In this suit, Onyango raises claims of race discrimination and retaliation under 42 U.S.C. § 1981. He contends that the club committed race discrimination (1) when Rosales told him to

"get out" in December 2013, (2) when it denied him entry in August 2013 based on Rosales's racially motivated accusation of sexual misconduct and, more generally (3) by enforcing its club-admission policies. Onyango next asserts that, seven months after he complained in January 2013 about Rosales's racist remarks, the club and Wexler retaliated against him by responding to the allegations of sexual misconduct. Finally, he accuses the defendants of intentional inflicting emotional distress, defamation, and other state-law violations.

The district court dismissed the case. First, it denied Onyango's motion to enjoin the defendants from defaming him, a ruling that this court upheld on interlocutory appeal. *Onyango v. Nick & Howard, et al.,* 559 Fed.Appx. 571 (7th Cir.2014). A few months later the district court granted the defendants' motions to dismiss. It first addressed the § 1981 discrimination claim. The court explained that Nick & Howard could not be liable for Rosales's racially motivated conduct and Onyango's allegations about the club-admission policies were too vague to state a race claim. Second, the judge dismissed his § 1981 retaliation claims because Onyango did not specifically allege that his complaint to the club about Rosales in January 2013 was the reason that, seven months later, Rosales called him a "sexual assailant" and the club investigated him for sexual misconduct; in addition, the investigation was not sufficiently adverse to deter complaints about discrimination. Next, the judge granted both Wexler and Manella's motions to dismiss the claims for intentional infliction of emotional distress based on litigation privilege. The judge declined to exercise supplemental jurisdiction over the remaining state-law claims. Onyango moved for reconsideration under Federal Rule of Civil Procedure 59(e), and the district court denied his motion.

 [1]    On appeal Onyango first asserts that the district court erred by dismissing his § 1981 claims against Nick & Howard. We begin with his argument that, because Rosales wanted him removed from the club for racially hostile reasons, Nick & Howard is liable for race discrimination. To state a race-discrimination claim under **\*555** § 1981 Onyango needs to allege that the club refused to contract with him because of his race. *See Black Agents & Brokers Agency, Inc. v. Near N. Ins. Brokerage, Inc.,* 409 F.3d 833, 837 (7th Cir.2005); *Bagley v. Ameritech Corp.,* 220 F.3d 518, 521–22 (7th Cir.2000). And because Onyango wants to base Nick & Howard's liability on Rosales's animus, he needs to allege a basis for holding the club liable for Rosales's conduct. To do that he must allege that Rosales was an agent of the club and that Nick & Howard knew about and endorsed his conduct by forcing

him to leave or refusing him entry. *See Daniels v. Dillard's, Inc.,* 373 F.3d 885, 888 n. 4 (8th Cir.2004); *Berger v. Iron Workers Reinforced Rodmen Local 201,* 843 F.2d 1395, 1430 (D.C.Cir.1988). But Onyango never specifically alleged that the club removed him because it knew that Rosales opposed Onyango's entry for racial reasons and adopted his animus.

Onyango replies that agency and knowledge are not needed to hold Nick & Howard liable for Rosales's conduct. He argues that in *Dunn v. Washington County Hospital,* 429 F.3d 689, 691 (7th Cir.2005), we supposedly held a business is "directly" liable for a contractor's discriminatory conduct. But in that case a nurse at a hospital stated a claim for a hostile work environment because she alleged that the hospital knew of but did not stop ongoing sexual harassment by a doctor who worked at the hospital. *Id.* Here Onyango does not allege that Nick & Howard knew about the racial motivation for Rosales's accusation of sexual misconduct. *See Daniels,* 373 F.3d at 888 n. 4; *Berger,* 843 F.2d at 1430. Accordingly this theory of race discrimination under § 1981 fails. (Onyango argues for the first time in his reply brief that Nick & Howard is liable on a negligence theory, but he has waived that argument because it comes too late. *See Feldman v. C.I.R.,* 779 F.3d 448, 460 n. 10 (7th Cir.2015).)

 [2]    We also agree with the district court that Nick & Howard is not liable for race discrimination based on its own admission "policies" because Onyango's allegations about those policies are too conclusory to support an inference of discrimination. He asserts that he was discouraged from entering the club because black customers have waited longer in line than whites, bouncers have lied to some black customers about wait times, and the bouncers have unevenly enforced dress codes. He concludes that any difference in treatment must be the result of a club policy of racial exclusion. But a conclusion like Onyango's that is based on "facts that are 'merely consistent with' a defendant's liability" is legally insufficient. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

 [3]    We turn next to Onyango's § 1981 retaliation claims against Nick & Howard and Wexler. To state a claim for retaliation under § 1981 Onyango must allege that he engaged in protected activity, suffered a materially adverse action, and that there is a causal connection between the two. *See Smith v. Bray,* 681 F.3d 888, 896 (7th Cir.2012). We have so far applied § 1981's retaliation provision only in the

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.    3

employment context. *See Carter v. Chi. State Univ.,* 778 F.3d 651, 657–58 (7th Cir.2015). But even if we assume that the provision applies outside of that context, the claim fails because causation is missing. Onyango alleges that seven months after he complained to Nick & Howard about Rosales's conduct in December 2012, the club denied him entry and its lawyer investigated Rosales's charge of sexual assault. But Onyango does not plausibly **\*556** allege that the complaint and the investigation were causally connected. Indeed it is implausible to infer that Rosales, who was not a club employee, even knew about the Onyango's complaint from seven months earlier. And the seven-month interval is, without more, too long to support an inference of retaliation. *Porter v. City of Chicago,* 700 F.3d 944, 958 (7th Cir.2012); *Wallscetti v. Fox,* 258 F.3d 662, 669 (7th Cir.2001); *Tyler v. Univ. of Ark. Bd. of Trs.,* 628 F.3d 980, 986 (8th Cir.2011).

[4]  [5]  We are left with the state-law claims. Onyango argues that the district court erred by exercising supplemental jurisdiction over his claims against the two lawyers for intentional infliction of emotional distress. He contends that the dismissal of the claims against the lawyers will preclude his emotional-distress claim against Nick & Howard (which was dismissed without prejudice), and therefore the court should not have decided those claims. Retention of jurisdiction to decide a supplemental state-law claim is appropriate when resolution of a state-law claim is clear. *See In re Repository Techs., Inc.,* 601 F.3d 710, 725 (7th Cir.2010); *Wright v. Associated Ins. Cos., Inc.,* 29 F.3d 1244, 1251–52 (7th Cir.1994). The prospect that the ruling in favor of the lawyers will preclude the claim against Nick & Howard might have required that the district court *retain* the emotional-distress claim against Nick & Howard, rather than dismiss it without prejudice. *See In re Repository Techs.,* 601 F.3d at 725; *Miller Aviation v. Milwaukee County Bd. of Supervisors,* 273 F.3d 722, 731 (7th Cir.2001). So if anything Onyango got a break. But Nick & Howard has not cross-appealed the decision to relinquish that claim, so we leave alone the decision to dismiss that claim without prejudice. *See Greenlaw v. United States,* 554 U.S. 237, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008).

On the merits, the district court correctly dismissed Onyango's claims for intentional infliction of emotional distress against the lawyers Wexler and Manella. Onyango disputes the district court's conclusion that their statements were privileged, but they were privileged because they arose in anticipation of judicial or quasijudicial proceedings. *See Atkinson v. Affronti,* 369 Ill.App.3d 828, 308 Ill.Dec. 186, 861 N.E.2d 251, 255 (2006). In particular, Wexler's private conversation with Acosta, a potential witness, as part of a preliminary investigation is privileged. *See id.,* 308 Ill.Dec. 186, 861 N.E.2d at 255. And Manella wrote a private letter to the ARDC in response to its pending investigation, so his communication likewise was privileged. *See Lykowski v. Bergman,* 299 Ill.App.3d 157, 233 Ill.Dec. 356, 700 N.E.2d 1064, 1070–71 (1998); *Parrillo, Weiss, & Moss v. Cashion,* 181 Ill.App.3d 920, 130 Ill.Dec. 522, 537 N.E.2d 851, 856 (1989). In any case, the actions of Wexler and Manella did not go "beyond all possible bounds of decency." *Duffy v. Orlan Brook Condo. Owners' Ass'n,* 2012 IL App (1st) 113577, 367 Ill.Dec. 341, 981 N.E.2d 1069, 1079 (2012). Thus these claims easily fail.

Finally, Onyango argues that the district court abused its discretion by denying his motion under Rule 59(e). He asserts that the judge erred by relying on our original order affirming the denial of his injunction rather than the amended version we issued shortly thereafter. But the differences in the amended version are negligible and did not change any legal analyses or conclusions. Onyango also says he discovered new cases, but these were available to him at the time he filed his motion to dismiss. *See In re Res. Tech. Corp.,* 624 F.3d 376, 388 (7th Cir.2010) (Rule 59 requires showing that moving party discovered new information that could not have been discovered by exercising due diligence before **\*557** judgment.) In any case, we have considered all of his arguments.

Accordingly, we AFFIRM the judgment of the district court.

**All Citations**

607 Fed.Appx. 552

Footnotes

\*      This appeal is successive to case no. 13–3825 and is being decided under Operating Procedure 6(b) by the same panel. After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* Fed. R.App. P. 34(a)(2)(C).

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.      4

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S.
Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    5

Paul v. Chicago Transit Authority, Not Reported in Fed. Rptr. (2022)

2022 WL 501363

2022 WL 501363
Only the Westlaw citation is currently available.
United States Court of Appeals, Seventh Circuit.

Christopher S. PAUL, Plaintiff-Appellant,

v.

CHICAGO TRANSIT
AUTHORITY, Defendant-Appellee.

No. 21-1698
|
Submitted February 18, 2022[*]
|
Decided February 18, 2022

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 14-cv-03259, John F. Kness, *Judge.*

**Attorneys and Law Firms**

Christopher S. Paul, Chicago, IL, Pro Se.

Kevin R. Gallardo, Chicago Transit Authority Law Department, Chicago, IL, for Defendant-Appellee.

Before FRANK H. EASTERBROOK, Circuit Judge, MICHAEL B. BRENNAN, Circuit Judge, AMY J. ST. EVE, Circuit Judge

**ORDER**

*1 Christopher Paul, a former bus driver with bipolar disorder, sued the Chicago Transit Authority for allegedly failing to accommodate his disability and, after repeated absences, firing him in retaliation for requesting accommodations. *See* 42 U.S.C. §§ 12112(a), (b)(5)(A), 12203(a). The district court dismissed his accommodation claim as untimely and entered summary judgment on his other claims. In a ruling spanning 35 pages, the court meticulously explained why Paul's accommodation claim was untimely and why the record contains no evidence from which a trier of fact could rationally infer that Paul's accommodation requests caused his firing.

Paul had the assistance of recruited counsel in the district court, but on appeal he is proceeding pro se, and he filed an appellate brief that does not address the district court's reasoning. Instead, he has merely copied verbatim his allegations from his second amended complaint; in fact, he did so multiple times under different headings. We liberally construe pro se filings, but we must be able to discern some argument in an appellate brief, even one from a pro se litigant, and simply repeating the contents of the complaint is not an argument. *See* Fed. R. App. P. 28(a)(8) (A); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). Paul's submission contains just one paragraph with a possible argument, and it refers only to the failure-to-accommodate claim. But even that lone paragraph does not discuss the district court's detailed reasoning that this claim was untimely. "[A]n appellate brief that does not even *try* to engage the reasons the appellant lost has no prospect of success." *Klein v. O'Brien*, 884 F.3d 754, 757 (7th Cir. 2018) (emphasis in original). We could dismiss Paul's appeal on that basis alone. *See Cole v. Comm'r of Internal Revenue*, 637 F.3d 767, 772–73 (7th Cir. 2011).

For the sake of completeness, we have independently examined the record on the accommodation claim—the only subject of that one paragraph—and conclude that the district court correctly ruled that it was untimely. To be timely, Paul needed to file a charge with the Equal Employment Opportunity Commission within 300 days of receiving notice of the denial of his accommodation request. *See* 42 U.S.C. § 2000e-5(e)(1); *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001). Paul was notified of that denial, at the latest, on September 28, 2012, but he waited until August 6, 2013, to file his charge. That was 12 days beyond the 300-day limit.

AFFIRMED

**All Citations**

Not Reported in Fed. Rptr., 2022 WL 501363

**Footnotes**

\* After examining the submissions and record, we have concluded that the case is appropriate for disposition without oral argument. Fed. R. App. P. 34(a)(2).

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works. 1

**Paul v. Chicago Transit Authority, Not Reported in Fed. Rptr. (2022)**

2022 WL 501363

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4470214
Only the Westlaw citation is currently available.
United States District Court,
E.D. Wisconsin.

Tyree A. POPE, Plaintiff,

v.

RACINE CORRECTIONAL

INSTITUTION, Defendant.

No. 12–CV–331.
|
Sept. 27, 2012.

**Attorneys and Law Firms**

Tyree A. Pope, Prairie Du Chien, WI, pro se.

**ORDER**

LYNN ADELMAN, District Judge.

**\*1** Plaintiff, who is confined at the Prairie du Chien Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983, regarding an incident that occurred while he was confined at the Racine Correctional Institution. Before me is plaintiff's petition to proceed in forma pauperis.

Pursuant to 28 U.S.C. § 1915(b)(1), plaintiff is required to pay the statutory filing fee of $350 for this action. If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed in forma pauperis. To proceed with an action in forma pauperis, the prisoner must complete a petition and affidavit to proceed in forma pauperis and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from plaintiff at the time the action is filed an initial partial filing fee of 20% of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.

In this case, plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. Plaintiff has been assessed an initial partial filing fee of $17 and he has paid

that fee. Thus, plaintiff's motion for leave to proceed in forma pauperis will be granted. The $333 remainder of the filing fee will be collected as set forth below.

The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir.1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109–10 (7th Cir.2003) (citations omitted).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). In order "[t]o state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law." Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir.2009). The court is obliged to give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The complaint "does not need detailed factual allegations," but it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Accordingly, in reviewing a complaint, courts reject those allegations that are mere conclusions, and determine whether the facts alleged "plausibly give rise to an entitlement to relief" by "permit[ting] the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.

**\*2** Plaintiff alleges that on December 2, 2009, a nurse at Racine Correctional Institution perforated his left eardrum, and as a result his ear bled continually for six days until he was transported to the hospital on December 8, 2009. When plaintiff arrived at the hospital, he was told that an infection

had set in because he was not treated right away. Plaintiff was hospitalized until December 13, 2009, and went back for a checkup on December 28, 2009. At that checkup, plaintiff was told that he still had an infection, and that there was a possibility of permanent hearing impairment because of the damage done to his eardrum. As relief, plaintiff seeks compensatory, monetary, and punitive damages.

The Racine Correctional Institution is not a proper defendant. See *Powell v. Cook County Jail,* 814 F.Supp. 757, 758 (N.D.Ill.1993) ("Cook County Jail is not a 'person'—it is not a legal entity to begin with."), and *Smith v. Gomez,* 550 F.3d 613, 618 (7th Cir.2008) ("the State of Wisconsin is also not a proper defendant for a § 1983 action"). However, the plaintiff will be given an opportunity to file an amended complaint against proper defendants. See *Smith v. Knox County Jail,* 666 F.3d 1037, 1040 (7th Cir.2012) ("[I]n listing the Knox County Jail as the sole defendant, Smith named a non-suable entity. But a pro se plaintiff who makes a pleading gaffe in a complaint deserves an opportunity to offer a curative amendment before the complaint is dismissed with prejudice.").

If plaintiff wants to proceed, he must file an amended complaint on or before October 29, 2012, that names proper defendants and briefly describes how each individual defendant's actions or inactions violated the plaintiff's federal rights. See *Brooks v. Ross,* 578 F.3d 574, 580–581 (7th Cir.2009) (stating that a § 1983 complaint must "adequately connect specific defendants to illegal acts" and "provid[e] some specific facts to ground those legal claims"). If plaintiff names a defendant but fails to describe how that individual violated his rights, that defendant will be dismissed. Failure to file an amended complaint within this time period will result in dismissal of this action.

Plaintiff is advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint will replace the prior complaint and must be complete in itself, without any reference to the original complaint. See *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84,* 133 F.3d 1054, 1056–57 (7th Cir.1998). If an amended complaint is received by the deadline, it will be screened pursuant to 28 U.S.C. § 1915A.

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Doc. 4) is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant Racine Correctional Institution is **DISMISSED.**

**IT IS FURTHER ORDERED** that on or before **October 29, 2012,** plaintiff shall file an amended complaint that is complete in itself and names proper defendants as discussed herein.

**\*3 IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff's prisoner trust account the $333 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707–7857.

**IT IS FURTHER ORDERED** that plaintiff shall submit all correspondence and legal material to:

Honorable Lynn Adelman

ffice of the Clerk

United States District Court

Eastern District of Wisconsin

362 United States Courthouse

517 E. Wisconsin Avenue

Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4470214

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    3

Roldan v. Town of Cicero, Not Reported in Fed. Supp. (2018)

2018 WL 1469011

2018 WL 1469011
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Luis ROLDAN, Plaintiff,

v.

TOWN OF CICERO, et al., Defendants.

Case No. 17-cv-3707
|
Signed 03/26/2018

**Attorneys and Law Firms**

Sang Won Shim, Hyo Jung Kim, Law Office of Samuel Shim, Rolling Meadows, IL, for Plaintiff.

K. Austin Zimmer, Cynthia Sara Grandfield, Del Galdo Law Group, LLC, Berwyn, IL, Bryan Chinwuba, Anthony E. Zecchin, James E. Hanlon, Jr., Justin William Hanson, Nicholas E. Cummings, Scott A. Golden, Cook County State's Attorney's Office, Chicago, IL, for Defendants.


**MEMORANDUM OPINION AND ORDER**

Robert M. Dow, Jr., United States District Judge

 *1  Before the Court are the motion to dismiss [25] filed by Assistant State's Attorney Paul Joyce and the County of Cook (together, the "Cook County Defendants") and the motion to dismiss [28] filed by the Town of Cicero, Detective Jason Stroud, Detective John Savage, Detective Eduardo Zamora, Detective Alfred Auriemma, and Detective Attilio Fiordirosa (together, the "Town Defendants"). For the reasons set forth below, Defendants' motions to dismiss [25; 28] are granted. To the extent Plaintiff's claims are dismissed without prejudice, Plaintiff is given until April 27, 2018 to file an amended complaint, if Plaintiff believes he can cure the deficiencies identified below. The case is set for status on May 2, 2018 at 9:00 a.m.


**I. Background**[1]
On March 6, 2011, Plaintiff Luis Roldan was arrested by officers of the Cicero Police Department and was later charged with three counts of criminal sexual assault of J.T. [1, at ¶ 16.] On the night of March 6, 2011, Plaintiff arrived at the home of his friend's aunt, where his friend Abraham Ramos and other individuals—including J.T.—had been drinking vodka. *Id.* at ¶¶ 20-22. Plaintiff brought some orange juice, which the group used to make mixed drinks. *Id.* at ¶ 22. After the group played some drinking games, *id.*, Plaintiff, Ramos, J.T., and one of J.T.'s friends went to Walgreens to get some more orange juice. *Id.* at ¶ 23. Plaintiff and J.T. kissed inside of the Walgreens. *Id.* at ¶ 24. J.T. then got into an argument with Ramos outside of the Walgreens. *Id.* Plaintiff alleges that after this fight, J.T. asked him to have sex with her, and they had sex in his car. *Id.* at ¶ 25. J.T.'s friends testified that she seemed fine when they subsequently returned to the home of Ramos's aunt. *Id.* at ¶ 26. J.T. even made a video with one of her friends to post on Facebook. *Id.* at ¶ 26. The video indicated that J.T. was able to respond to her friend's questions and to walk without difficulty. *Id.* J.T. later had sex with Ramos in a bathroom. *Id.* at ¶ 28. Ramos testified that the sex was consensual. *Id.* After J.T. left the bathroom, she went to lie down in a bed in the home. *Id.* at ¶ 29. Her parents found her a few minutes later—apparently unconscious and wearing boy's pants—after they were contacted by parents of one of J.T.'s friends.[2]

Plaintiff and Ramos were charged with three counts of criminal sexual assault, on the theory that J.T. was so intoxicated as to render her unable to willingly consent. J.T. testified that it was her first time drinking. *People v. Ramos, 2016 WL 634864, at *1 (Ill. App. Ct. Feb. 16, 2016).*[3] J.T. also testified that she did not remember anything after she fought with Ramos outside of the Walgreens. *Id.* at ¶ 31.

 *2  On January 7, 2013, after a bench trial, Plaintiff and Ramos were both found guilty of criminal sexual assault. *Id.* at ¶ 32. The Illinois Appellate Court reversed both Plaintiff's and Ramos's convictions, finding that the state presented insufficient evidence to prove their guilt beyond a reasonable doubt. *Id.* at ¶¶ 33-31.

On May 17, 2017, Plaintiff brought suit against Defendants under § 1983. Plaintiff alleges, upon information and belief, that J.T. had requested Assistant State's Attorney Paul Joyce and/or another assistant state's attorney for assistance in obtaining a U-Visa, which provides temporary legal status and work eligibility in the United States for a period of four years. *Id.* at ¶ 39. Plaintiff further alleges that Defendant Joyce, Detective Jason Stroud, Detective John Savage, Detective Eduardo Zamora, Detective Alfred Auriemma, and Detective Attilio Fiordirosa all knew about this request but failed to disclose it to the judge or the defense attorneys. *Id.* at ¶¶ 39-42.

Roldan v. Town of Cicero, Not Reported in Fed. Supp. (2018)

2018 WL 1469011

Plaintiff purports to bring (1) a § 1983 claim for deprivation of his right to a fair trial and for wrongful conviction, (2) a Fourth and Fourteenth Amendment claim for malicious prosecution, (3) a *Monell* Claim against the Town of Cicero, (4) a *Monell* Claim against Cook County, and (5) state law claims. Before the Court are the motions to dismiss filed by the Cook County Defendants [25] and the Town Defendants [28].

## II. Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " *Id.* (quoting *McCauley*, 671 F.3d at 616).

## III. Analysis

**\*3** As a preliminary matter, there appears to be some confusion among the parties as to what claims are raised by Plaintiff. Plaintiff brings claims titled "Deprivation of Right to Fair Trial and for Wrongful Conviction" (Count I), and "Fourth and Fourteenth Amendment Claim for Malicious Prosecution" (Count II). Defendant Joyce argues that Count I of the complaint should be dismissed for failure to state a claim, asserting that there is no cause of action for "wrongful conviction." All the individual Defendants argue that Count II of the complaint should be dismissed, as the Seventh Circuit presently does not recognize a federal claim for malicious prosecution.

With respect to Count I, Plaintiff responds that he sufficiently has alleged a wrongful conviction claim because the complaint alleges that Defendants failed to disclose material as required by *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), violating Plaintiff's right to a fair trial. *Rabe v. United Airlines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011). Thus, regardless of how Count I is titled, Plaintiff alleges facts indicating that he seeks to bring a due process claim based on Defendants' alleged failure to disclose information as required by *Brady* and *Giglio*.

With respect to Count II, Plaintiff argues that because of the Supreme Court's decision in *Manuel v. City of Joliet, Illinois et al.*, 137 S.Ct. 911 (2017), federal claims for malicious prosecution are now viable in the Seventh Circuit. Before *Manuel*, Seventh Circuit precedent held that pretrial detention following the start of the legal process could not give rise to a Fourth Amendment claim. *Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001). Although such claims could be brought under the Fourteenth Amendment's Due Process Clause, a plaintiff bringing such a due process claim would have to show that state law failed to provide an adequate remedy. *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010). The availability of a state-law claim for malicious prosecution foreclosed such a finding. *Id.* In *Manuel*, the Supreme Court held that "pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of the legal process in a criminal case." 137 S.Ct. at 918. However, the Supreme Court did not hold that there is a federal claim for malicious prosecution. Rather, the Supreme Court remanded the case to the Seventh Circuit to determine the elements of, or rules applicable to, a Fourth Amendment claim challenging pretrial detention after the start of the legal process. *Id.* at 922. Contrary to Plaintiff's position, the Seventh Circuit has concluded that "nothing in *Manuel* changed the general rule that the federal constitution does not codify state tort law." *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018). In any event, the fact that Plaintiff has used the

Roldan v. Town of Cicero, Not Reported in Fed. Supp. (2018)

2018 WL 1469011

terminology "malicious prosecution" is of no moment. What matters is whether Plaintiff has identified the constitutional right at issue. Based on the allegations in the complaint, it appears Plaintiff is seeking to bring a Fourth Amendment claim challenging his arrest and continued detention.

In addition to the claims raised in Counts I and II against the individual Defendants, Plaintiff also brings *Monell* claims (Counts III and IV) and state-law claims (Counts V and VI) against the Town of Cicero and Cook County. The Court addresses the arguments raised for dismissing each of these claims in turn.

## A. Constitutional Claims

### 1. Due Process Claim (Count I)

The Fourteenth Amendment's Due Process Clause is the relevant constitutional source for Plaintiff's claim that Defendants violated his right to a fair trial by failing to disclose the fact that J.T. requested the assistance of Defendant Joyce or another ASA in completing her application for a U-Visa. [1, at ¶ 39.] *Brady* requires that the prosecution disclose exculpatory evidence if it is both favorable and material to the defense. 373 U.S. at 87. *Giglio* expanded the *Brady* rule to include impeachment evidence. 405 U.S. at 155. The Supreme Court "explained in *Giglio* that when the government has entered into an agreement or understanding with a key witness regarding his prosecution, the credibility of the witness is at issue and failure to disclose details of the deal may deny the accused due process." *Collier v. Davis*, 301 F.3d 843, 848 (7th Cir. 2002) (citing *Giglio*, 405 U.S. at 155). To establish a *Brady* violation, Plaintiff must allege facts sufficient to establish that (1) there was an agreement or an understanding, (2) the prosecution suppressed the evidence, (3) the evidence was favorable (*i.e.* exculpatory or impeaching), and (4) the evidence was material to his defense. *Id.* The Town Defendants argue that Plaintiff fails to allege facts sufficient to establish the first prong of his *Brady* claim—the existence of an agreement or an understanding.

 *4 A witness's "general and hopeful expectation of leniency is not enough to create an agreement or an understanding." *Id.* at 849 (citing *United States v. Baskes*, 649 F.2d 471, 477 (7th Cir. 1980)). Here, Plaintiff does not allege that any party ever agreed to assist J.T. in obtaining a U-Visa. Even if J.T. had a unilateral expectance that she would receive assistance—a

fact not even alleged by Plaintiff—this would not be enough to establish the agreement or understanding prong of *Brady*. Thus, Plaintiff fails to state a claim under *Brady* and *Giglio*.

Although Defendant Joyce did not raise this argument, where one defendant successfully challenges a claim on a ground common to several defendants, the Court has inherent authority to dispose of the claim with respect to other defendants if the plaintiff had an adequate opportunity to respond. *Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807 (7th Cir. 2000) ("[W]e have stated that where one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant judgment to the non-moving defendants, if the plaintiff had an adequate opportunity to argue in opposition." (citing *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986))). The Court exercises that authority here and dismisses Plaintiff's *Brady/Giglio* claim (Count I) against all Defendants without prejudice.[4]

Portions of Plaintiff's complaint and Plaintiff's response to Defendants' motions to dismiss indicate that he also is seeking to bring a due process claim alleging that Defendants violated his constitutional rights by fabricating evidence against him, resulting in his wrongful conviction.[5] For example, Plaintiff accuses Defendants of "coercing, constructing, altering, manipulating and fabricating evidence [that] formed the basis for [his] charging, prosecution and conviction." [1, at ¶ 37.] Plaintiff further alleges that Defendants wrote false reports, gave false testimony, and gave "a false and incomplete version of events to prosecutors." *Id.* In their motion to dismiss, the Town Defendants argue that these conclusory allegations are insufficient to establish any misconduct. Plaintiff responds that his allegation that Defendants failed to disclose the fact that J.T. requested assistance with a U-Visa application establishes that the Town Defendants gave a false and incomplete version of events to prosecutors. [31, at 4.] This allegation is insufficient to establish that Defendants ***fabricated*** any evidence. Even when a plaintiff alleges that an officer coerced a witness to give an incriminating statement, that is not enough to establish that the officer fabricated evidence thereby violating the convicted person's due process rights. *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017). "Because coerced testimony may in fact be true, the due-process right to a fair trial isn't implicated absent a violation of the *Brady* duty to disclose facts about the coercive tactics used to obtain it." *Id.* Plaintiff does not allege that Defendants coerced J.T. in any manner. Nor does Plaintiff allege other facts establishing that Defendants fabricated

Roldan v. Town of Cicero, Not Reported in Fed. Supp. (2018)

2018 WL 1469011

evidence. Thus, Plaintiff fails to state a due process claim on that basis.

### 2. *Fourth Amendment and Fourteenth Amendment Claim (Count II)*

**\*5** The Fourth Amendment is the relevant constitutional source for Plaintiff's claim that he was arrested and prosecuted without probable cause. The Fourth Amendment, which is applicable to the States through the Fourteenth Amendment, see *Bailey v. United States*, 568 U.S. 186, 192 (2013), "prohibits government officials from detaining a person in the absence of probable cause," *Manuel v. City of Joliet*, 137 S. Ct. 911, 918 (2017). "[P]robable cause for an arrest exists 'if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime.' " *United States v. Sands*, 815 F.3d 1057, 1062 (7th Cir. 2015) (quoting *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013)). Furthermore, "*Manuel* teaches that pretrial detention unsupported by any probable cause—for example, where, as in *Manuel*, the only basis for the plaintiff's detention was fabricated evidence—violates the Fourth Amendment." *Chachere v. City of Chicago*, 2018 WL 1087643, at \*7 (N.D. Ill. Feb. 28, 2018). Plaintiff bears the burden of establishing that Defendants lacked probable cause. *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009) ("In this circuit the allocation of the burden of persuasion in a § 1983 case claiming a Fourth Amendment violation is clear: a plaintiff claiming that he was arrested without probable cause carries the burden of establishing the absence of probable cause." (citations omitted)).

Here, Plaintiff alleges:

> Defendants, despite knowing that probable cause did not exist to arrest and prosecute plaintiff for the alleged assault on J.T., acted individually and in concert to cause [Plaintiff] to be arrested and prosecuted for that crime, thereby violating plaintiff's right pursuant to the Fourth and Fourteenth Amendments of the United States Constitution to be free of unreasonable searches and seizures and to due process.

[1, at ¶ 45.] Such conclusory allegations are insufficient to state a Fourth Amendment claim against Defendants.[6] See *Daniels v. Southfort*, 6 F.3d 482, 484-85 (7th Cir. 1993) (holding that plaintiff's allegation that defendants "searched

and arrested the plaintiff without probable cause and without any justification, for the purpose [of] harassing the plaintiff and inflicting summary punishment upon the plaintiff" were too vague to state a claim); *Sherrod v. Travis*, 2013 WL 593955, at \*4 (N.D. Ill. Feb. 15, 2013) (conclusory allegations that defendants arrested plaintiff being fully aware that there was no probable cause, reported false allegations of criminal conduct, and distorted the contents of a phone conversation were insufficient to state a Fourth Amendment claim).

Although it is true that the fact-finder must determine whether probable cause exists if there is "room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1013-14 (7th Cir. 2006) (citing *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)), Plaintiff nonetheless bears the initial burden of alleging facts sufficient to show that Defendants lacked probable cause. Although the complaint includes allegations regarding the facts adduced by the prosecution at trial, Plaintiff does not allege what facts were known to Defendants at the time of his arrest or at other relevant times. Plaintiff cannot establish a Fourth Amendment claim by merely asserting that he was arrested and detained without probable cause. *Neita v. Travis*, 2015 WL 394117, at \*3 (N.D. Ill. Jan. 29, 2015) (dismissing Fourth Amendment claim where Plaintiff "omitted any factual allegations about the facts and circumstances known to defendants at the time of" plaintiff's arrest).

**\*6** To the extent Plaintiff seeks to establish a lack of probable cause based on the state court's finding that the state presented insufficient evidence to prove Plaintiff guilty beyond a reasonable doubt, such an argument is foreclosed by Seventh Circuit precedent. *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002) ("An officer's belief in the existence of probable cause 'need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false.' ") (quoting *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000)). Thus, Plaintiff fails to allege sufficient facts to establish his Fourth Amendment claim. Count II of the complaint therefore is dismissed with leave to replead.

The Court notes the possibility that Plaintiff's false arrest claim may be barred by the statute of limitations. In *Wallace v. Kato*, the Supreme Court noted that the statute of limitations for § 1983 false arrest claims in Illinois is two years, 549 U.S. 384, 387 (2007), and held that the statute of limitations begins to run when legal process is initiated against the arrested

Roldan v. Town of Cicero, Not Reported in Fed. Supp. (2018)

2018 WL 1469011

person. *Id.* at 390. The complaint alleges that Plaintiff was charged on March 6, 2011. [1, at ¶ 16.] Thus, to the extent that Plaintiff is bringing a false arrest claim, such a claim may be barred by the statute of limitations, unless there is some ground for tolling the limitation period. However, because the Court is dismissing Count II without prejudice to replead, the Court declines to address the statute of limitations issue at this time without the benefit of an a potential amended complaint followed by full briefing on the issue.

### B. *Monell* Claim Against Town of Cicero (Count III)

In order to bring a § 1983 claim against a municipality pursuant to *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978), a plaintiff must allege facts establishing that his constitutional rights were violated. *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014). Because Plaintiff's underlying constitutional claims (Counts I and II) fail, Plaintiff's *Monell* claim against the Town also fails. Accordingly, Count III is dismissed without prejudice.

### C. *Monell* Claim Against Cook County (Count IV)

Defendant Cook County moves to dismiss Count IV of the complaint, a *Monell* claim against Defendant County, on the basis that an Illinois county cannot be held liable under § 1983 for actions of State's Attorneys, as they are independently elected state, not county, officials. Plaintiff concedes that his claim against Cook County should be dismissed. [31, at 13.].

Plaintiff seeks leave to amend the complaint to add the Cook County State's Attorney's Office and Anita Alvarez, the former Cook County State's Attorney, in her official capacity, as defendants in this case. *Id.* Plaintiff then indicates that Cook County should not be dismissed from this action because Cook County will be a necessary party once the Cook County State's Attorney's Office and Anita Alvarez are joined. See *Askew v. Sheriff of Cook County, Illinois*, 568 F.3d 632, 636 (7th Cir. 2009) (holding that Cook County was a necessary party to a lawsuit against the Sheriff of Cook County).

Defendant Cook County responds that the Court should not allow Plaintiff to amend its complaint to add claims against the Cook County State's Attorney's Office or Anita Alvarez in her official capacity, arguing that any such claims would be barred by the Eleventh Amendment. "The Eleventh Amendment prohibits courts from deciding suits brought by private litigants against states or their agencies." *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994). In *Garcia*, the Seventh Circuit noted that the Illinois Supreme

Court has held that state's attorneys are state officials. *Id.* (citing *Ingemunson v. Hedges*, 549 N.E.2d 1269, 1272 (Ill. 1990)). Furthermore, "[a] suit against an official in her official capacity is equivalent to a suit against the agency she represents." *Offor v. Ill. Dep't of Human Servs.*, 2013 WL 170000, at *3 (N.D. Ill. Jan. 16, 2013). Thus, Plaintiff's request to amend the complaint to add a *Monell* claim against the Cook County State's Attorney's Office and Anita Alvarez in her official capacity is denied, as such an amendment would be futile. Count IV is dismissed with prejudice.

### D. Prosecutorial Immunity

**\*7** Plaintiff alleges that Defendant Joyce deprived him of the right to a fair trial and wrongfully convicted him of sexual assault by withholding exculpatory evidence, namely that J.T. asked Defendant Joyce or another ASA for help obtaining a U-Visa, in violation of *Brady* and *Giglio*. [1, at ¶¶ 36-43.] "Prosecutors are absolutely immune from liability for damages under § 1983 for conduct that is functionally prosecutorial; this immunity is understood to broadly cover all conduct associated with the judicial phase of the criminal process." *Bianchi v. McQueen*, 818 F.3d 309, 316 (7th Cir. 2016) (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 341-43 (2009); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)). "Where a litigant presents a due process claim—*Brady*, *Giglio*, or otherwise— the question of immunity turns on the capacity or function that the prosecutor was performing at the time of the alleged wrongful conduct." *Whitlock v. Brueggemann*, 682 F.3d 567, 579-80 (7th Cir. 2012). Thus, "a showing that a prosecutor investigated and fabricated evidence against a target would automatically defeat absolute prosecutorial immunity, even if that target was later brought to trial." *Lewis v. Mills*, 677 F.3d 324, 331 (7th Cir. 2012).

Plaintiff argues that "[t]he germane allegations against [Defendant] Joyce stem from the complaining witness in the underlying criminal case asking [Defendant] Joyce and other law enforcement officials for their assistance in applying for and obtaining a U-Visa in return for assisting them in prosecuting the plaintiff." [31, at 6.]. According to Plaintiff, "Defendant Joyce rendering assistance to the complaining witness in that regard had nothing to do with the prosecutor's function in prosecuting in a criminal case." [31, at 6.]. However, Plaintiff does not actually allege that Defendant Joyce ever provided J.T. with assistance in applying for or obtaining a U-Visa. In fact, Plaintiff recognizes that J.T. may have requested assistance from a different ASA. Plaintiff alleges that J.T. had requested Defendant Joyce "***and/or***

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Roldan v. Town of Cicero, Not Reported in Fed. Supp. (2018)

2018 WL 1469011

*another assistant state's attorney* for their assistance in obtaining a U-Visa." [1, at ¶ 39 (emphasis added).]

Even if Plaintiff had alleged that Defendant Joyce provided J.T. with assistance in applying for or obtaining a U-Visa, Plaintiff does not contend that this conduct itself violated his constitutional rights. Rather, Plaintiff contends it was Defendant Joyce's failure to disclose this conduct that violated his constitutional rights. Because "*Brady* and *Giglio* obligations are functionally prosecutorial," *Whitlock v. Brueggemann*, 682 F.3d 567, 579 (7th Cir. 2012), prosecutors are absolutely immune from *Brady* and *Giglio* claims that they suppressed evidence. *Harris v. City of Chicago*, 2015 WL 1331101, at *6 (N.D. Ill. Mar. 19, 2015) ("Defendant ASAs would also be immune to any *Brady* claims that they suppressed exculpatory evidence.").

When courts have concluded that a prosecutor may not invoke prosecutorial immunity with respect to a *Brady* or *Giglio* violation, it is when the prosecutor earlier played a role in fabricating evidence against the defendant. See, *e.g.*, *Saunders v. City of Chicago*, 2013 WL 6009933, at *9 (N.D. Ill. Nov. 13, 2013), on reconsideration in part, 2014 WL 3535723 (N.D. Ill. July 11, 2014) (denying motion to dismiss on prosecutorial immunity grounds where defendants alleged "that the ASAs acted in concert with [d]efendant [o]fficers in their investigation and interrogation of the [p]laintiffs, in coercing and fabricating [p]laintiffs' confessions, and in coercing and fabricating incriminatory statements from other witnesses"). As discussed above, although Plaintiff alleges that Defendants fabricated evidence, Plaintiff does not allege any facts establishing this conclusory allegation. This case therefore is unlike cases where the alleged misconduct occurred while the prosecutor was acting in an investigative capacity before he had probable cause for arrest. Cf. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74 (1993) ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.' ") (quoting *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973)); *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) ("A prosecutor cannot retroactively immunize himself from conduct by perfecting his wrong-doing through introducing the fabricated evidence at trial and arguing that the tort was not completed until a time at which he had acquired absolute immunity.").

**\*8** Plaintiff readily admits that Defendant Joyce is "employed by the Cook County State's Attorney's Office as an Assistant State's Attorney" and that Defendant Joyce acted as a prosecutor in Plaintiff's criminal case. [1, at ¶¶ 10, 18.] Because the alleged *Brady/Giglio* violation relates to conduct that is functionally prosecutorial, Plaintiff's claims against Defendant Joyce are barred by absolute prosecutorial immunity. Thus, Plaintiff's Claims against Defendant Joyce (Counts I and II) are dismissed.

### E. State Law Claims

Because the Court is dismissing Plaintiff's federal claims, the Court also dismisses Plaintiff's state law claims without prejudice. "The usual practice in this circuit is for district courts to 'dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.' " *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)); see also *Al's Service Center v. BP Products North America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims, which the plaintiff can then prosecute in state court.") (citations omitted); *Curry v. Advocate Bethany Hosp.*, 204 Fed.Appx. 553, 558 (7th Cir. 2006) ("The district court properly dismissed the pendant state-law tort claims without prejudice because the federal claims were dismissed at screening.") (citing 28 U.S.C. § 1367(c); *East–Miller v. Lake County Highway Dep't*, 421 F.3d 558, 564–65 (7th Cir. 2005)).

### F. Request to Strike

Finally, in the alternative to dismissing Plaintiff's claims, the Town Defendants request that the Court strike Plaintiff's prayer for punitive damages and Plaintiff's references to a conspiracy. Plaintiff failed to respond to these arguments, but they appear to have merit. "As a general rule, local public entities are immune from punitive damage awards in civil rights actions." *Kolar v. Sangamon Cty. of State of Ill.*, 756 F.2d 564, 567 (7th Cir. 1985) (citations omitted). Furthermore, in order to establish a conspiracy, a plaintiff must "plead the parties, general purpose, and approximate dates of the conspiracy to give the defendant notice of the claim." *Sellers v. Daniels*, 242 Fed.Appx. 363, 364 (7th Cir. 2007) (citation omitted). Because the Court is dismissing Plaintiff's claims, however, the Court need not rule on the Town Defendant's request to strike.

Roldan v. Town of Cicero, Not Reported in Fed. Supp. (2018)

2018 WL 1469011

**IV. Conclusion**

For the reasons explained above, Defendants' motions to dismiss [25; 28] are granted. To the extent Plaintiff's claims are not dismissed with prejudice, Plaintiff is given until April 27, 2018 to file an amended complaint, if Plaintiff believes he can cure the deficiencies identified above. The case is set for status on May 2, 2018 at 9:00 a.m.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1469011

**Footnotes**

1    For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

2    The complaint does not contain any allegations regarding why J.T.'s parents showed up at the house of Ramos's aunt. This fact comes from the state-court decision overturning Plaintiff's conviction. See *People v. Ramos*, 2016 WL 634864, at *1 (Ill. App. Ct. Feb. 16, 2016). This fact is not relevant to the Court's analysis and only is provided as background.

3    The Court can take judicial notice of the fact that testimony was given, as described in the state court decision reversing Plaintiff's conviction. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012) (holding that district court properly took judicial notice of the fact that documents existed, said what they said, and had legal consequences, but did not rely on the documents as proof of disputed facts in any other sense); see also *Fed. Deposit Ins., Corp. v. FBOP Corp.*, 252 F. Supp. 3d 664, 706 (N.D. Ill. 2017) ("The Court may only take judicial notice of the indisputable fact that the testimony was given and says what it says." (citing *Indep. Tr. Corp.*, 665 F.3d at 943)).

4    Defendant Joyce argues that Plaintiff fails to allege sufficient facts to establish a *Brady/Giglio* violation against him because Plaintiff does not allege that Defendant Joyce was the ASA from whom J.T. requested assistance. However, Plaintiff alleges that Defendant Joyce knew of the request. [1, at ¶ 41.] Plaintiff argues that it is the failure to disclose that request—regardless of whether it was made to Defendant Joyce or another ASA—that violated *Brady* and *Giglio*. Thus, the fact that the request may have been made to another ASA does not defeat Plaintiff's *Brady/Giglio* claim.

5    Related to the contention that Defendants fabricated evidence against Plaintiff is the contention that the detective Defendants arrested Plaintiff without probable cause. [1, at ¶ 38.] The Town Defendants argued that Plaintiff's allegations regarding a lack of probable cause were too conclusory to survive a motion to dismiss. Plaintiff only responded to this argument as it relates to his Fourth Amendment claim. As discussed below, with respect to Plaintiff's Fourth Amendment claim, Plaintiff fails to allege facts sufficient to establish that the defendant Detectives arrested him without probable cause.

6    Plaintiff alleges that Defendants fabricated evidence as part of his claim that he was deprived his due process right to a fair trial. [1, at ¶ 37.] To the extent Plaintiff seeks to challenge his arrest and pretrial detention on that basis, pursuant to *Manuel*, such a claim would be viable under the Fourth Amendment. However, because Plaintiff has not alleged facts establishing that Defendants fabricated evidence, as discussed with respect to Count I, the Court need not consider this argument as part of Plaintiff's Fourth Amendment claim at this time.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Rose v. Board of Election Commissioners for City of Chicago, Not Reported in Fed....

2015 WL 1509812

2015 WL 1509812
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Vincent ROSE, Plaintiff,

v.

BOARD OF ELECTION
COMMISSIONERS FOR the CITY
OF CHICAGO, et al., Defendants.

Case No. 15–cv–382
|
Signed March 30, 2015

**Attorneys and Law Firms**

Ilia Usharovich, Ilia Usharovich, Attorney at Law, Wheeling, IL, for Plaintiff.

James Michael Scanlon, James M. Scanlon & Associates, Thomas A. Ioppolo, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

AMY J. ST. EVE, District Court Judge:

**\*1** Plaintiff Vincent Rose ("Rose" or "Plaintiff") has filed a motion for a preliminary injunction [7]. Defendants State of Illinois and the Board of Election Commissioners for the City of Chicago, including individual Defendants Langdon D. Neal, Richard A. Cowen, and Marisel A. Hernandez (the "Board of Elections"), have each filed motions to dismiss Plaintiff's Amended Complaint [13], [17]. For the following reasons, the Court denies Plaintiff's motion, and grants Defendants' motions with prejudice.

**BACKGROUND**

Plaintiff filed this action against the Board of Elections and the State of Illinois. The facts are largely undisputed. Plaintiff filed petitions for nomination as a candidate for Alderman in the Seventh Ward of the City of Chicago. (R. 5, Am. Compl., at 6.) After two objectors, Michael Anderson and William Taylor, filed objections to Plaintiff's nomination petitions, the Board of Elections conducted two records examinations and hearings, one for each respective objection. *Id*. Following

the hearing on the Taylor objection, the Board of Elections ruled that Plaintiff could not be placed on the ballot because he only submitted 414 valid signatures, short of the required 473.[1] (R. 17–5, Board of Election Findings, at 4.)[2] In the later Anderson decision, the hearing officer found that the ruling on the Taylor objection controlled the outcome of the Anderson objection. (R. 14–2, Ex. D, Cook County Opinion, at 1.)

Rose then filed petitions for judicial review in the Circuit Court of Cook County challenging the rulings by the Board of Elections, which were consolidated into one case (the "Cook County Action.") (R. 14–2, Ex. D, Cook County Opinion, at 1.) Rose's initial petition in the Cook County Action challenged the four percent (4%) signature requirement for nominations of aldermanic candidates on First Amendment, equal protection, and due process grounds. (*Id*. at 3.) Rose later filed an "Amended Memorandum of Law in Support of Plaintiff's Position" (the "Amended Memo") which raised new legal theories not in his original petition, including claims under the Voting Rights Act, 52 U.S.C. §§ 10301 and 10101, and several other claims under the United States and Illinois Constitutions. (R. 14–2, Ex. C., Am.Memo.) In an opinion dated February 3, 2015, the Hon. Maureen Ward Kirby of the Circuit Court of Cook County ("Cook County Circuit Court") denied Plaintiff's petitions for judicial review (the "Cook County Opinion") and rejected the additional arguments in his Amended Memo. (R. 14–2, Ex. D, Cook County Opinion.) Rose did not appeal that decision, and Defendants argue that the thirty days he had to do so under Illinois Supreme Court Rule 303(a)(1) have since passed.

**\*2** Rose filed this action on January 15, 2015, and filed his Amended Complaint on February 25, 2015. On March 8, 2015, he filed the current motion for preliminary injunction. Defendants filed the pending motions to dismiss on March 17, 2015. They move to dismiss Rose's Amended Complaint under Rule 12(b)(6) on the basis that the doctrine of claim preclusion bars Rose's claims because the Cook County Circuit Court already denied them in a final judgment on the merits.[3] Rose responded to Defendants' motions on March 24, 2015.[4] Meanwhile, the Seventh Ward held its election for Alderman on February 24, 2015 (the "February 2015 Election"). (R. 17–1, Board of Elections Memo, at 6.) Rose was not listed on the ballot. Because no candidate received a majority of the votes, the Seventh Ward will conduct a runoff election on April 7, 2015 (the "April 2015 Election"). *Id.* The April 2015 Election ballot for Seventh Ward Alderman will only list the names of the two candidates for Alderman in the Seventh Ward who received the highest vote totals in

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.

1

Rose v. Board of Election Commissioners for City of Chicago, Not Reported in Fed....

2015 WL 1509812

the February 2015 Election. *Id.* The candidate who receives the highest vote total in the April 2015 Election will then be elected Alderman. *Id.* Because Rose's name was not on the February 2015 Election ballot, among other relief, he requests that the Court stay the April 2015 Election until his name can be placed on the ballot.

## LEGAL STANDARD

### I. Preliminary Injunction

"A preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved." *Ind. Civil Liberties Union v. O'Bannon,* 259 F.3d 766, 770 (7th Cir.2001). "A preliminary injunction is a very serious remedy," and it is "never to be indulged in except in a case clearly demanding it." *Barbecue Marx, Inc. v. 551 Ogden, Inc.,* 235 F.3d 1041, 1044 (7th Cir.2000) (internal quotation omitted). To succeed on a motion for a preliminary injunction, a party must show that (1) he has some likelihood of success on the merits; and (2) he has no adequate remedy at law and will suffer irreparable harm if the court does not grant the preliminary injunction. *See Ezell v. City of Chicago,* 651 F.3d 684, 694 (7th Cir.2011) (citations omitted). With respect to the first factor, "the threshold for establishing likelihood of success is low." *Michigan v. U.S. Army Corps of Eng'rs,* 667 F.3d 765, 782 (7th Cir.2011).

If the moving party demonstrates the above factors, "the district court weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Ezell,* 651 F.3d at 694 (citing *Christian Legal Soc'y v. Walker,* 453 F.3d 853, 859 (7th Cir.2006)). "In this balancing of harms conducted by the district court, the court weighs these factors against one another 'in a sliding scale analysis.' " *Stuller, Inc. v. Steak N Shake Enters., Inc.,* 695 F.3d 676, 678 (7th Cir.2012) (quoting *Christian Legal Soc'y,* 453 F.3d at 859). "The sliding scale approach is not mathematical in nature, rather it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* (quoting *Ty, Inc. v. Jones Grp., Inc.,* 237 F.3d 891, 895–96 (7th Cir.2001)).

## II. Motions to Dismiss for Claim Preclusion

Since claim preclusion is an affirmative defense, "the proper procedure is to raise the defense and then move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure." *Walczak v. Chicago Bd. of Educ.,* 739 F.3d 1013, 1016 n.2 (7th Cir.2014); *Carr v. Tillery,* 591 F.3d 909, 913 (7th Cir.2010). Although Defendants bring their motions under Rule 12(b)(6), Plaintiff does not object on that ground, and "the error is of no consequence" because the Court has all that it "need[s] in order to be able to rule on the defense." *Carr,* 591, F.3d at 913. Further, "[a] Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Lodholtz v. York Risk Servs. Grp., Inc.,* 778 F.3d 635, 639 (7th Cir.2015).

**\*3** "A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir.2012). Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct.1955). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true," *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665–66 (7th Cir.2013), and draw "reasonable inferences in favor of the plaintiffs." *Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC,* 741 F.3d 819, 823 (7th Cir.2014).

## ANALYSIS

### I. Merits of Defendants' Motions to Dismiss

The Court first examines the merits of Defendants' motions to dismiss. For the reasons explained below, the Court grants Defendants' motions. Accordingly, the Court also finds that Rose has no likelihood of success on the merits of his preliminary injunction motion.

As discussed above, Rose asserted nearly identical claims in the Cook County Action, in which he sought judicial review of two decisions of the Board of Elections, and challenged the Illinois state statutory framework for submitting nominating petitions for alderman on statutory and constitutional grounds. The Cook County Circuit Court rejected Rose's

Rose v. Board of Election Commissioners for City of Chicago, Not Reported in Fed....

2015 WL 1509812

arguments, denied Rose's petitions for judicial review, and affirmed the decisions of the Board of Elections. (R. 14–2, Ex. D, Cook County Opinion.) Thus, the Court analyzes Defendants' argument that the doctrine of claim preclusion bars Rose's claims in this action.[5]

The Court applies the preclusion law of Illinois because that is the state that rendered the underlying judgment. *See Arlin–Golf, LLC v. Vill. of Arlington Heights,* 631 F.3d 818, 821 (7th Cir.2011). "Illinois claim-preclusion law has three basic requirements: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of parties or their privies." *Dookeran v. Cnty. of Cook, Ill.,* 719 F.3d 570, 575 (7th Cir.2013). With respect to the second element, whether there is an identity of the causes of action, Illinois has adopted the 'transactional' analysis, which looks to see if the claims 'arise from a single group of operative facts, regardless of whether they assert different theories of relief.' " *Id.* (quoting *Arlin–Golf, LLC,* 631 F.3d at 821). "The transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." *Id.*

"As a corollary to the transactional rule, Illinois adopted the doctrine of merger and bar which precludes the sequential pursuit not only of claims actually litigated, but of those that could have been litigated." *Garcia v. Vill. of Mount Prospect,* 360 F.3d 630, 639 (7th Cir.2004). "This principle, however, is bounded by the Due Process Clause of the Fourteenth Amendment, which overrides the otherwise preclusive effect of a prior judgment if the [plaintiff] did not have a full and fair opportunity to litigate his claim in the prior action." *Dookeran,* 719 F.3d at 576 (quotation omitted).

### A. Cook County Action
**\*4** The Court first compares Rose's action here to the Cook County Action, then addresses Rose's myriad arguments for why claim preclusion should not apply to bar this suit. In this case, Rose alleges the following six claims against Defendants: 1) violation of the Voting Rights Act (52 U.S.C. § 10301); 2) violation of the Voting Rights Act (52 U.S.C. § 10101); 3) violation of Rose's right to free speech and freedom of association; 4) violation of equal protection; 5) violation of due process; and 6) violation of Rose's civil rights under section 1983. In the Cook County Action, which Rose brought against each of the Defendants here,[6] Rose made the first five of these arguments. (R. 14–2, Ex. C, Am.Memo.)

The Cook County Opinion directly addressed the first four of them, and rejected them in a final judgment on the merits.[7] (R. 14–2, Cook County Opinion.) Rose did not appeal that decision, and he does not contest Defendants' argument that the time to do so under Illinois Supreme Court Rule 303(a) (1) has expired. Accordingly, the doctrine of claim preclusion bars these claims. As explained below, the doctrine of claim preclusion also bars Rose's fifth claim for due process, and the sixth claim for a violation of 42 U.S.C. § 1983, which Rose did not assert in the Cook County Action but asserts here.

In the first claim in his Amended Complaint in this case, Rose asserts "that the political processes leading to nomination or election in the State or political subdivision of alderman are not equally open to participation by minority class of citizens protected by 52 U.S.C.A. § 10301." (R. 5, Am. Compl., at 9.) He made this same argument in the Cook County Action in his Amended Memo, asserting in "Legal Issue 1" that "the political processes leading to nomination or election in the State or Political subdivision of alderman are not equally open to participation by minority class of citizens protected by 52 U.S.C.A. § 10301." (R. 14–2, Ex. C, Am. Memo, at 4.)

In his second claim, Rose alleges that the political processes he references in the first claim result in "the denial to such minority voters and candidates of equal access to the ballots and equal power of votes." (R. 5, Am. Compl., at 11.) Again, he made this same argument in the Cook County Action in his Amended Memo, asserting in "Legal Issue 2" that these political processes result in "the denial to such minority voters and candidates of equal access to the ballots and equal power of votes." (R. 14–2, Ex. C, Am. Memo, at 8.)

The Cook County Opinion rejected both of these claims, reasoning as follows:

> Plaintiff has no standing to bring a claim under Section 10301 of the federal voting rights act because his purported injury stems from a failure to qualify for the ballot, not a prohibition on his ability to vote. These federal laws relate to voting standards and casting ballots, they do not relate to candidates seeking access to the ballot. Section 10101 relates to voting standards and casting ballots, not candidates seeking access to the ballot. These sections of the voting rights act afford plaintiff no basis for relief.

(R. 14–2, Ex. D, Cook County Opinion, at 5) (citation omitted).

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

3

Rose v. Board of Election Commissioners for City of Chicago, Not Reported in Fed....

2015 WL 1509812

In his third claim, Rose alleges that the Illinois statute imposing the signature requirement for aldermanic nominations, 65 ILCS § 20/21–28, violates his First Amendment rights. Specifically, he argues that the enforcement of this statute "is the vehicle for denying access to the ballot and violating the Plaintiff's rights to run and an equal vote," and that under the balancing test articulated in *Anderson v. Celebrezze,* 460 U.S. 780 (1983), the character and magnitude of the injury to Plaintiff's First Amendment rights is not justified by a narrowly tailored, compelling state interest. (R. 5, Am. Compl., at 12–13.) Plaintiff made the same argument in his Amended Memo, asserting in "Count 3" that the enforcement of § 20/21–28 "is the vehicle for denying access to the ballot and violating the Plaintiff's rights to run and an equal vote," and that under the balancing test articulated in *Anderson v. Celebrezze,* "the character and magnitude of the asserted injury" to Plaintiff's First Amendment rights is "not justified by a compelling interest" that is narrowly tailored. (R. 14–2, Ex. C, Am. Memo, at 9–10.)

**\*5** The Cook County Circuit Court also rejected that argument, stating as follows:

> When evaluating whether a state law infringes a First Amendment right, courts apply the balancing test derived from Anderson v. Celebrezze, 460 U.S. 780 (1983) ... Under this test, courts weigh the "character and magnitude" of the burden imposed by the State's rule against the interests the State contends justify the burden. "When a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's regulatory interests are generally sufficient to justify the restrictions." Burdick, 504 U.S. at 434 (internal citations and quotes omitted). Illinois courts have applied the same framework in judging the constitutionality of ballot access restrictions ...

> The signature requirement for aldermanic elections is clearly within the bounds of law. A similar attack on the statutory signature requirements for the city wide candidates running for Mayor of Chicago was raised in Stone v. Board of Election Commissioners, 750 F.3d 678 (7th Cir.2014). In that case, the Seventh Circuit found the 12,500 signature requirement for city wide office was constitutional as it served the "important, interrelated goals of preventing voter confusion, blocking frivolous candidates from the ballot, and otherwise protecting the integrity of elections." Id at 685. Moreover, a uniform

standard is applied to every ward in the City of Chicago and the court believes this four percent signature requirement is a reasonable, nondiscriminatory restriction that is necessary for the City of Chicago to effectively administer a municipal election.

(R. 14–2, Ex. D, Cook County Opinion, at 4.)

In his fourth claim in the Amended Complaint, Rose alleges an equal protection violation, arguing "that there is no rationale [sic], compelling, or other proper basis for the different treatment of the class of aldermanic candidates and voters in that allowing some candidates to access the ballot or voters their choice of candidate with only 1.9% of the signatures and providing for 50 different variable amounts of signature is not rationale [sic], is discriminatory, unnecessary, and violative of equal protection." (R. 5, Am. Compl., at 20.) Rose made the same argument in "Count Four" of his Amended Memo, which the Circuit Court rejected, stating that:

> Rose also argues that as applied Section 21–28(a) creates fifty different standards for the minimum signature requirement such that there is a violation of Candidate's right to equal protection. However, the statute states that after redistricting every ward will have to comply with the same minimum signature requirement standard. Because of the redistricting the geographic boundaries of every ward in the city have changed so it makes no sense to use votes cast in old boundaries which do not correlate to new ward boundaries. Thus, the standard to be used is consistent, the vote totals for the larger unit of government which has not changed, the City, and the vote total for mayor, divided by 50. This uniform formula provides an equal number for all 50 wards (473) and there is no equal protection violation.

**\*6** (R. 14–2, Ex. D, Cook County Opinion, at 4.) Accordingly, with respect to Rose's first four claims in this action, there was a final judgment on the merits rendered in the Cook County Action, there is an identity of the causes of action between Rose's claims here and his claims in the Cook County Action, and there is an identity of parties between the two cases. *See Dookeran,* 719 F.3d at 575. As such, the doctrine of claim preclusion prevents Rose from asserting those claims again here.

With respect to his fifth claim in the Amended Complaint, Rose alleges a due process violation because he "was not provided a hearing in a meaningful time and manner. Specifically, Plaintiff's records examinations were conducted prior to City of Chicago's new voter registration records being updated. Accordingly, the results of such examination

Rose v. Board of Election Commissioners for City of Chicago, Not Reported in Fed....

2015 WL 1509812

were not accurate and such hearing was not meaningful because the records used to compare the signatures were not available thereby invalidating numerous signatures from Plaintiff's nomination papers." (R. 5, Am. Compl., at 21.) Plaintiff made the exact same argument in "Legal Issue 6" of his Amended Memo in the Cook County Action. (R. 14–2, Am. Memo, at 13–14.) The Circuit Court explicitly rejected that argument as well, stating:

> Consistent with his scattershot approach, plaintiff next argues in his amended memorandum (but not in his petitions) that his procedural due process rights were violated because "he was not provided a hearing in a meaningful time and manner" and that due to a delay in updating the City of Chicago's voter registration records, the results of the record examination were not accurate and thus signatures which should not have been invalidated were removed from his nominating papers ... Plaintiff waived this argument by failing to raise it in his petitions. Moreover, without citation to the record, the court has no idea what he is referencing.

(R. 14–2, Ex. D, Cook County Opinion, at 5.) Although the Cook County Circuit Court was not able to address the merits of this argument because it was not properly developed, there is no indication that the court was not willing to consider it, or that Rose did not have the opportunity to litigate it. As Illinois bars "the sequential pursuit not only of claims actually litigated, but of those that could have been litigated," claim preclusion applies to Rose's fifth count as well. *Garcia v. Vill. of Mount Prospect,* 360 F.3d. at 639.

In his sixth and final count, Rose alleges a violation under section 1983, but states only that "Plaintiff cites to and incorporates within this count all counts, statements, and exhibits, to support his claim for the Defendant's violation of Plaintiff's Civil Rights." (R. 5, Am. Compl., at 22.) Although Rose did not allege a section 1983 claim in the Cook County Action, claim preclusion still prevents Rose from asserting it here. As discussed above, claim preclusion under Illinois law applies to bar not only "claims actually litigated," but also "those that could have been litigated," if they "arise from a single group of operative facts" and the plaintiff had "a full and fair opportunity to litigate his claim in the prior action." *Dookeran,* 719 F.3d at 575–76 (quotation omitted). Rose's section 1983 claim arises from the same operative facts as his other five claims. Indeed, in support of this claim he relies solely on the allegations in the other counts. Rose also had a full and fair opportunity to litigate this claim in the Cook County Action. State courts as well as federal courts have jurisdiction over § 1983 cases. *Howlett by and Through*

*Howlett v. Rose,* 496 U.S. 356, 358, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). Further, the Seventh Circuit has held that claim preclusion applies to bar a § 1983 claim in a federal action where the plaintiff failed to assert that claim in an earlier Illinois state court action seeking review of an administrative decision that arose out of the "same group of operative facts." *Garcia,* 360 F.3d at 637, 644. That is the case here. Thus, claim preclusion applies to Rose's sixth and final count as well.

**B. Rose's Arguments**

**\*7** Plaintiff responds with a myriad of arguments that claim preclusion should not apply to bar his lawsuit. The Court addresses them in turn, grouping them by category.[8]

**1. Final Judgment on the Merits Rendered by a Court of Competent Jurisdiction**

Rose makes several arguments that the Cook County Action did not result in a "final judgment on the merits rendered by a court of competent jurisdiction." *Dookeran,* 719 F.3d at 575. First, he argues that the Cook County Opinion was not a final judgment on the merits because that court dismissed many of the claims as not being properly preserved or otherwise without making a finding on the merits. This assertion is simply not true. As discussed above, the Cook County Circuit Court specifically addressed the merits of four of his five arguments.[9] With respect to Rose's due process argument, the court attempted to address the merits, but was unable to do so because Rose had not developed the factual basis of that argument. As noted, the relevant test under Illinois law is not whether Rose actually litigated his claim to a decision on the merits, but whether he had the opportunity to do so. *See Garcia,* 360 F.3d at 639.

Rose next argues that the Cook County Circuit Court did not have jurisdiction to review his voting rights claims. This argument is a non-starter because Rose himself chose to bring his voting rights claims before the Cook County Circuit Court, which the court addressed and rejected. Further, state courts generally have jurisdiction to decide whether a state statute violates the federal Voting Rights Act. *See Hathorn v. Lavorn,* 457 U.S. 255, 266–68, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982). The case cited by Rose in support, *Allen v. State Board of Elections,* 393 U.S. 544, 563, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969), stands for the entirely different proposition that the Voting Rights Act requires a state to seek federal

Rose v. Board of Election Commissioners for City of Chicago, Not Reported in Fed....

2015 WL 1509812

approval before it makes certain changes to its election laws. That principle has no application to the facts here.

## 2. Identity of Claims

Rose next asserts that there is no identity of claims because "one cause of action was for review of an electoral board decision where no other claims can be made or joined as a matter of law and the cause of action here is for Violation of Federal Voting Rights." (R. 23, Pl.'s Reply, at 17.) Rose appears to be arguing that there is no identity of claims between this lawsuit and the records examinations before the Board of Elections. The relevant test, however, is whether there is an identity of claims between the action here and the Cook County Action, not whether there is an identity of claims between this action and the proceedings before the Board of Elections. *See Hayes v. City of Chicago,* 670 F.3d 810, 815 (7th Cir.2012) (holding that the operative "first judgment" for the claim preclusion analysis was the state court review of the plaintiff's administrative proceeding). Thus, this argument is also not persuasive.

## 3. Identity of the Parties

**\*8** Next, Rose argues that the identity of the parties requirement is not met because although Defendants here were named as defendants in the Cook County Action, they were not "true adversaries." (R. 23, Pl.'s Reply, at 12.) Rose asserts that under Illinois law, the Board of Elections was only required to file the record of the administrative proceeding and was not an actual litigant, and the State of Illinois was not a party to the initial proceedings before the Board of Elections. This argument fails for several reasons. With respect to the State of Illinois, the operative test is not whether it was a party to the proceedings before the Board of Elections, but whether it was a party to the Cook County Action–which it was. With respect to the Board of Elections, another court in the Northern District has rejected this same argument that because a city electoral board is a "nominal" defendant in a state court administrative appeal it cannot be considered the "same party" for claim preclusion purposes in a later federal action. *See Girot v. Municipal Officers Electoral Bd. of City of Braidwood,* No. 05–CV–419, 2006 WL 59393, at *3–4 (N.D.Ill.2006) (Pallmeyer, J.) The Court agrees that the "same parties" requirement is met where the Board of Elections is named as a defendant in both a state court review of a Board

of Elections decision and a subsequent federal case. Rose submits no authority to the contrary.

## 4. Full and Fair Opportunity to Litigate

Additionally, Rose argues that he did not have the "full and fair opportunity to litigate" his claims because he was unable to raise many of them in his original hearing before the Board of Elections. This argument suffers from the same flaw as his "identity of claims" argument discussed above. The relevant test is not whether he was able to litigate his claims before the Board of Elections, but instead whether he had the "full and fair opportunity to litigate" his claims in the Cook County Action. As noted, Plaintiff had the opportunity to raise each of the claims that he asserts here in the Cook County Action, which rejected each of the claims that he raised.

## 5. Additional Arguments

Finally, Rose makes several additional arguments for why the Court should not apply claim preclusion to bar his action. First, he argues that it would not be fair for the Court to apply claim preclusion because he was not able to appeal the judgment in the Cook County Action before the February 2015 Election, and any appeal after that date would have been moot. There are several problems with this argument. For one, Rose had from February 3, 2015 until the date of the election, February 24, 2015, to appeal the judgment of the Cook County Circuit Court, and he chose not to do so. Second, if Rose's appeal of the Cook County Action would have been moot following the February 2015 Election, Rose ignores that his action here should also be moot. Instead, Rose argues that the Court should place him on the April 2015 Election ballot, even though his name was not on the original February 2015 Election ballot. Rose fails to explain why he did not pursue that argument on appeal in Illinois state court.

Rose next argues that "peculiar circumstances" exist which should weigh against the Court applying claim preclusion. Rose argues that in the Cook County Action both objectors contended that the court should deny his petition for failure to exhaust his administrative remedies because he never brought his case to the Board of Elections' attention through a Rule 20 motion.[10] As discussed above, however, the Cook County Circuit Court addressed the merits of Rose's claims, and did not decide the case on the basis that Rose failed to exhaust his administrative remedies. Rose also argues that the

consolidation of his judicial review petitions was "peculiar and not orthodox" because it did not follow a general order of the Cook County Circuit Court. Even assuming, *arguendo,* that Rose has a valid argument, Rose fails to explain how the manner in which the court consolidated his petitions caused him prejudice. Further, the case Rose cites in support of his "peculiar circumstances" argument, *Toro v. Gainer,* 370 F.Supp.2d 736, 738–741 (N.D.Ill.2005), addressed the preclusive effect of an earlier court's pretrial ruling against the defendant, in a case where the defendant was ultimately acquitted. No such facts exist here.

**\*9** Finally, Rose argues that the Court should not apply claim preclusion because there has been a change in the "applicable legal context." Rose fails to develop this argument, other than to state that "[t]his proceeding is challenging a new election, the validity of the prior election, the law under the prior election, and the amendment of the law enacted on January 12, 2015 which has future application and was not enacted during the original proceedings." (R. 23, Pl.'s Reply, at 16.) In fact, Rose is asserting claims that he already made in the Cook County Action. Although the February 2015 Election has taken place in the meantime, it does not alter the fundamental nature of Rose's claims. Additionally, Rose's argument that there has been a change in the law appears to be based on an amendment to the Illinois statute, 65 ILCS 20/21–28, that alters the signature requirements for nominating petitions for alderman. While that amendment was enacted on January 12, 2015, it does not take effect until June 1, 2015, and accordingly it does not have any effect on Rose's claims here. 2014 Ill. Legis. Serv. 98–1171.

In summary, the Court does not find any of Rose's arguments persuasive. The doctrine of claim preclusion bars all six of Rose's claims. For this reason, the Court grants Defendants' motions to dismiss. In addition, even if Plaintiff could survive the motions to dismiss, he cannot show a likelihood of success on the merits of his preliminary injunction motion.[11]

## II. Balance of Harms

As a final matter with respect to Rose's preliminary injunction motion, the Court also finds that even if Rose could overcome Defendants' claim preclusion challenge and then otherwise show a likelihood of success on the merits, the balance of harms weighs strongly against the grant of a preliminary injunction. In *Nader v. Keith,* for example, the Seventh Circuit affirmed the denial of a preliminary injunction in part because the plaintiff "created a situation in which any remedial order

would throw the state's preparations for the election into turmoil," and voters would be harmed "if a last-minute injunction disrupt[ed]" the election. *Nader v. Keith,* 385 F.3d 729, 736–37 (7th Cir.2004); *see also Fulani v. Hogsett,* 917 F.2d 1028, 1031 (7th Cir.1990) (barring plaintiff's claim on laches grounds where during plaintiff's delay in filing suit "the state proceeded with its election preparations, printed ballots, and commenced absentee balloting ... Three weeks before the election it would have been extremely difficult, if not impossible, for [the state] to provide another set of ballots. Moreover, the confusion that would have attended such a last-minute change would have posed a risk of interference with the rights of other ... citizens.")

As the Board of Election Commissioners notes in its response brief:

> Plaintiff waited until February 25, 2015 to file an amended complaint and until March 9, 2015 to serve his motion for preliminary injunction.

> In the meantime, the Board conducted the February 24, 2015 Municipal General Election, and, because no candidate receive[d] a majority of votes cast, will conduct a runoff election on April 7, 2015—three weeks away—in the 7th ward between the two candidates who received the highest and second-highest number of votes at the February election. Importantly, the printing of substantially all ballots in the 7th ward of [the] City of Chicago has been completed. The Board began mailing absentee ballots on Friday, March 13, 2015. Grace Period voting officially began on March 11, 2015. Early Voting is scheduled to begin on March 23, 2015. To prepare for these events, sufficient quantities of touchscreen voting devices must be programmed and tested before they can be deployed for use in Grace Period and Early Voting. Such testing has already begun.

> In short, the Board's election preparations have been in full swing while Plaintiff stood on the sidelines. In addition to the costs involved in the rebooting of the election, any material delay occasioned by the reprinting and reprogramming of election equipment and the re-testing of the equipment places the integrity of the election itself in jeopardy. Absentee ballots already issued prior to entry of an injunction would have to be re-issued and older ballots replaced. Any attendant delay in the issuance of corrected absentee ballots or in the commencement of Grace Period and Early Voting may possibly disenfranchise

Case: 2:23-cv-01643-LA   Filed 04/01/24   Page 153 of 192   Document 13

voters who do not receive or cannot access a ballot in sufficient time to cast a ballot.

 **\*10**  (R. 16, Opp. Memo., at 13–14) (citation omitted). Rose does not dispute these facts, and the Court finds them significant. Granting Rose's preliminary injunction would indisputably cause significant disruption to the April 2015 Election.

Finally, granting Rose's injunction would allow him to bypass the February 2015 Election and proceed straight to the April 2015 run-off election, which would effectively reward him for his delay in moving for injunctive relief. Despite originally filing this lawsuit on January 15, 2015, well before the February 24, 2015 election, Rose waited until March 9, 2015 to file his motion for a preliminary injunction. Rose gives no explanation for this delay. Even if Rose were likely to succeed on the merits of his claim, the Court cannot allow him to skip directly to the run-off election where he could have

moved for relief much earlier. There were eight candidates on the February 2015 Election ballot for Alderman of the Seventh Ward[12]—granting his preliminary injunction would allow Rose, without receiving a single vote, to jump ahead of the six candidates who did not receive enough votes to qualify for the April 2015 Election. Such a result would harm the integrity of the process and the election.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions to dismiss with prejudice and denies Plaintiff's motion for a preliminary injunction.

## All Citations

Not Reported in Fed. Supp., 2015 WL 1509812

### Footnotes

1    Nominations for alderman in Chicago are by petition. 65 ILCS 20/21–28(a). In the first election following a redistricting of wards (which is the case in the 2015 election), the number of required signatures on a nominating petition is calculated by taking four percent (4%) of the total number of votes cast for city mayor at the last mayoral election, and dividing that number by 50 (the number of wards in Chicago). *Id.* For the 2015 election, that yields a requirement of 473 signatures for a nominating petition of an aldermanic candidate. (R. 5, Am. Compl., at 6–7.)

2    The Court may properly take judicial notice of matters of public record when ruling on a motion to dismiss. *See Ennenga v. Starns,* 677 F.3d 766, 773–74 (7th Cir.2012) (approving of the district court taking judicial notice of "facts readily ascertainable from the public court record and not subject to reasonable dispute" when ruling on a motion to dismiss.)

3    Defendant State of Illinois also moves to dismiss the Amended Complaint on the grounds that the State of Illinois is not a proper defendant, Rose lacks standing to bring his claims under the Voting Rights Act, and the four percent signature requirement is constitutional.

4    Defendants' replies in support of their motions to dismiss are currently due April 2, 2015. (R. 18.) The Court finds that it does not need this additional briefing in order to rule on Defendants' motions.

5    Because the Court grants Defendants' motions on this basis, it does not address the other arguments raised by the State of Illinois in its motion to dismiss.

6    Rose brought the Cook County Action against each of the Defendants here in addition to Michael Anderson and William Taylor, who were the two objectors to Rose's nominating petitions.

7    The Cook County Opinion ultimately ordered as follows: "The Petitions for Judicial Review are Denied and the Decisions of the Electoral Board dated January 15, 2015 are affirmed. The name of Vincent Rose shall not be printed on the February 24, 2015 ballot as a candidate for the office of Seventh Ward Alderman of the City of Chicago." (R. 14–2, Cook County Opinion, at 6.)

8    Rose makes numerous arguments that are undeveloped and not supported by relevant authority. To the extent the Court does not address an argument made by Rose, it finds it to be waived. *See Judge v. Quinn,* 612 F.3d 537, 557 (7th Cir.2010) (quoting *United States v. Holm,* 326 F.3d 872, 877 (7th Cir.2003)) ("it is not the obligation of this court to research

and construct legal arguments open to parties, especially when they are represented by counsel," and "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.")

9    Rose also argues that the Cook County Circuit Court's denial of his petition for judicial review was not a ruling on the merits because the petition was not granted and heard and then either affirmed or reversed. This argument fails for the same reason: the Cook County Circuit Court specifically addressed Rose's claims on their merits. Further, Rose did not appeal the decision so the appellate court had no opportunity to affirm or reverse the judgment of the Cook County Circuit Court.

10   Rule 20 of the Chicago Board of Elections Rules of Procedure states: "Any party disagreeing with the recommended findings and proposed decision of a hearing officer may move to have the Electoral Board review the hearing officer's recommendations and hear additional argument from the parties." *See* Chicago Board of Elections, Rules of Procedure, available at: http://app.chicagoelections.com/documents/M2015–RulesOfProcedure.pdf.

11   Accordingly, the Court does not address Rose's other arguments in his preliminary injunction motion that he would be likely to succeed on the merits.

12   *See* Chicago Board of Election Commissioners, Statement of the Returns and Proclamation of the Results, available at: http://www.chicagoelections.com/dm/general/SummaryReport.pdf.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

592 Fed.Appx. 516
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S.Ct. of App. 7th Cir. Rule 32.1.
United States Court of Appeals, Seventh Circuit.

Michael A. SANDERS, Plaintiff–Appellant,

v.

ILLINOIS DEPARTMENT OF
HEALTHCARE AND FAMILY
SERVICES, Defendant–Appellee.

No. 14–1606
|
Submitted Nov. 12, 2014.[*]
|
Decided Nov. 18, 2014.
|
Rehearing and Rehearing En Banc Denied Dec. 30, 2014.

**Synopsis**

**Background:** Former employee brought action against
Illinois Department of Healthcare and Family Services,
alleging violations of Americans with Disabilities Act (ADA)
in relation to his termination. The United States District Court
for the Central District of Illinois, Richard Mills, J., 2014
WL 476346, dismissed suit on claim preclusion grounds.
Employee appealed.

**Holdings:** The Court of Appeals held that:

[1] claim preclusion barred employee's ADA claims, and

[2] prior court decision refusing to apply issue preclusion to
ADA claims was consistent with present ruling.

Affirmed.

**West Headnotes (2)**

[1]    **Judgment** 🔑 Identity of Cause of Action or
Relief Sought

       **Judgment** 🔑 Matters which might have been
determined

       Claim preclusion barred employee's federal-
court claims of disability discrimination
and retaliation under ADA, arising from
his termination from position with Illinois
Department of Healthcare and Family Services,
where these claims arose from same nucleus of
operative facts litigated in state administrative
and court proceedings, i.e., his violations of
Department's call-in policy with respect to
absences, and, though employee did not assert
these ADA claims in state proceedings court
and his current legal theory that enforcing
policy violated ADA was not addressed therein,
he could have raised ADA claims in those
proceedings. Americans with Disabilities Act of
1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

       1 Case that cites this headnote

[2]    **Federal Courts** 🔑 Effect of Decision in
Lower Court

       District court's determination that an employee's
ADA claim was barred by the doctrine of
claim preclusion was consistent with the Court
of Appeals' prior determination that issue
preclusion did not apply to bar the employer's
defense that the employee had refused to take a
job-related medical evaluation. Americans with
Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A.
§ 12101 et seq.

       1 Case that cites this headnote

**\*517** Appeal from the United States District Court for
the Central District of Illinois. No. 11–3445, Richard Mills,
Judge.

**Attorneys and Law Firms**

Michael A. Sanders, New Orleans, LA, pro se.

Mary Ellen Welsh, Office of the Attorney General, Chicago, IL, for Defendant–Appellee.

## ORDER

Michael Sanders is suing his former employer, the Illinois Department of Healthcare and Family Services, alleging that it violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 to 12213. He accuses the Department of firing him on account of his disability (alcoholism and a sleep disorder) and in order to retaliate against him for an earlier discrimination lawsuit. Sanders unsuccessfully protested his discharge administratively and then in Illinois state court before turning to federal court. The district court dismissed the action as precluded by the state-court litigation. Because claim preclusion bars Sanders's current suit, we affirm.

The Department fired Sanders from his job as a data-processing technician after he regularly violated its attendance policy. The policy requires employees to notify the Department of their unauthorized absence no later than an hour after their start time; those who report after the first hour of work incur two unauthorized absences. The Department progressively disciplines violations with warnings, suspensions, and eventually a discharge after the twelfth infraction. Sanders repeatedly called the Department about his unauthorized absences after the first hour of work and thus moved through the progressive discipline stages quickly. He responded by offering the Department two reasons to reverse the early stages of his discipline. First he argued that the Department was incorrectly interpreting the call-in policy and should not doubly penalize him for his tardy call-ins, but the Department stuck with its own understanding of its rule. Second Sanders said that he was taking Ambien, which caused him to oversleep, and so he asked the Department to accommodate him. But his requested accommodation was odd: he wanted the Department to prohibit a specific human-resources employee from disciplining him. The Department refused to do so on the ground that this measure was unrelated to his sleep disorder. Sanders continued to report his absences after the one-hour grace period, and he predictably received further warnings and suspensions. The Department discharged him after his

twelfth infraction, which was the result of seven absences and late call-ins on six of those absences.

Sanders contested his discharge before the Illinois Civil Service Commission and in state court. An administrative law judge determined that because Sanders violated the Department's call-in policy, his discharge was justified. Sanders appealed to the full Commission, which affirmed the ALJ's findings. He then sought judicial review in the Illinois Circuit Court and the Illinois Appellate Court, both of which affirmed the Commission's decision. The Supreme Court of Illinois denied Sanders leave to appeal.

Sanders has now turned to federal court, raising two claims. He first contends that the Department deliberately misinterpreted **\*518** the call-in policy as a pretext to fire him for his disability in violation of the ADA. He also maintains that the Department fired him to retaliate against him for his participation in an earlier ADA suit against his former employer, the Illinois Department of Central Management Services. (He notes that the day before his discharge he had participated in a status conference in that suit.) The Department successfully moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6) based on its defense that the state-court litigation precludes this suit. Because claim preclusion is an affirmative defense, the Department should have raised this defense in its answer and moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). But its procedural misstep is of no consequence: the district court had all the information that it needed to rule on the defense; Sanders does not complain about the misstep; and it does not affect our standard of review. See *Walczak v. Chicago Bd. of Educ.,* 739 F.3d 1013, 1016 n. 2 (7th Cir.2014). The district court concluded that claim preclusion applies because the suit in state court and this suit involve the same claim and Sanders could have raised his ADA theory in the state-court proceedings. We review that decision *de novo. Id.* at 1016.

**[1]** On appeal Sanders urges that it was error to apply claim preclusion here. He contends the state litigation and this case involve different claims because his state case focused on the meaning of the Department's call-in policy and this suit addresses whether the enforcement of that policy constitutes disability discrimination and retaliation. But the district court correctly concluded that his claims of disability discrimination and retaliation arise from the same nucleus of operative facts litigated in state court: his violations of the Department's call-in policy. It does not matter that Sanders

did not assert in state court, and that court did not address, his current legal theory that enforcing the policy violated the ADA. The federal claim is precluded because Sanders *could* have raised the ADA claims in the state-court proceedings. See *Dookeran v. County of Cook, Ill.,* 719 F.3d 570, 575 (7th Cir.2013); *Garcia v. Vill. of Mount Prospect,* 360 F.3d 630, 637–39, 644 (7th Cir.2004).

Sanders responds that claim preclusion does not apply because he did not have a full and fair opportunity to litigate his discrimination charges in state court. He observes that the Commission's decision "contains no conclusion that cause for discharge existed." He then points out that he cited cases to the state court in support of his contention that the Department's interpretation of the call-in policy was "fraudulent." He concludes that these cases, coupled with the supposed absence of cause for his discharge, permit him now to litigate his claim that the Department violated the ADA. The first assertion is incorrect. The Commission did rule (and the state courts affirmed) that Sanders's attendance violations justified the discharge. Sanders may not now relitigate that ruling. *Abner v. Ill. Dep't of Transp.,* 674 F.3d 716, 721–22 (7th Cir.2012). His second assertion contests only the correctness of the state courts' rulings, not their willingness to hear his claims. Because nothing prevented him from raising his claims in state court, claim preclusion applies. See *Dookeran,* 719 F.3d at 576–78; *Abner,* 674 F.3d at 722. And because employment-discrimination claims in particular can be adjudicated in state court, Sanders is not entitled to split his claims into two suits. See *Walczak,* 739 F.3d at 1017; *Dookeran,* 719 F.3d at 577.

**[2]**   Sanders's last argument is that the district court's decision contradicts our **\*519** earlier ruling refusing to apply issue preclusion to an ADA suit Sanders filed against his former employer. In that case his employer sought to defend against his ADA claim by arguing that a medical evaluation, which Sanders had refused to take, was job-related. Sanders responded that the Commission already had ruled that his employer could not discharge him for refusing the evaluation, and so issue preclusion should bar the job-relatedness defense. See *Sanders v. Ill. Dep't of Cent. Mgmt. Serv.,* 530 Fed.Appx. 593, 595 (7th Cir.2013). We explained why issue preclusion did not apply: The Commission resolved only Sanders's claim that his refusal to submit to the evaluation was not, under the Illinois Administrative Code, "good cause" for his discharge; his federal claim raised a new question-whether the medical evaluation was job-related. *Id.* The rulings in these two cases are consistent because they involve different doctrines. One of the requirements for issue preclusion is that the issue was actually litigated and decided in the earlier case; claim preclusion, the doctrine relevant here, prevents litigation of any issue that could have been pursued earlier. See *Migra v. Warren City Sch. Dist. Bd. of Educ. et al.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Adams v. City of Indianapolis,* 742 F.3d 720, 735–36 (7th Cir.2014). It therefore bars this suit.

Affirmed

**All Citations**

592 Fed.Appx. 516, 30 A.D. Cases 1673

Footnotes

\*     After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. See Fed. R.App. P. 34(a)(2).

---

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Schaetz v. Paper Converting Machine Company Inc, Not Reported in Fed. Supp. (2017)

2017 WL 2275005

2017 WL 2275005
Only the Westlaw citation is currently available.
United States District Court, E.D. Wisconsin.

Adam SCHAETZ, Plaintiff,

v.

PAPER CONVERTING MACHINE
COMPANY INC, Defendant.

Case No. 17–C–272
|
Signed 05/24/2017

**Attorneys and Law Firms**

Adam J. Schaetz, De Pere, WI, pro se.

Anne M. Carroll, Michael Best & Friedrich LLP, Milwaukee, WI, Brian P. Paul, Michael Best & Friedrich LLP, Chicago, IL, for Defendant.

**ORDER GRANTING MOTION TO DISMISS**

William C. Griesbach, Chief Judge United States District Court

**\*1** Plaintiff Adam Schaetz, proceeding pro se, filed this action against Paper Converting Machine Company Inc. ("PCMC"). Although not entirely clear, the complaint appears to assert claims of employment discrimination, retaliation, and constructive discharge under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"). On April 21, 2017, PCMC moved to dismiss Schaetz's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion to dismiss will be granted.

**ALLEGATIONS OF COMPLAINT**

The following factual allegations are largely taken directly from Schaetz's complaint and are accepted true for the purpose of the motion to dismiss. Ameritech Corp. v. McCann, 297 F.3d 582, 585 (7th Cir. 2002). Schaetz, a former employee at PCMC, asserts he was subjected to an overwhelming amount of discrimination and harassment beginning on March 6, 2015. On that day, Jason Messamore, a team leader at PCMC, conducted Schaetz's annual performance review and moved Schaetz from his skilled painter position to an entry level position. Schaetz believes the move was in retaliation for Schaetz checking the box which indicated that he had concerns with his review. (ECF No. 1–2 at 1.)

Schaetz alleges he was subjected to unwelcome conduct on a daily basis while at PCMC, including Messamore calling him and other co-workers "homos" and other derogatory terms. He expressed his concerns about Messamore and the possible retaliation to human resources on March 24, but Schaetz claims this only resulted in more ridiculing and retaliation. Schaetz asserts he was given three write-ups within a span of 21 days despite never being written-up before, that supervisors harassed him at his son's doctor appointment, and that supervisors called and emailed his wife to threaten his employment. Schaetz includes in his complaint a right to sue letter from the United States Equal Employment Opportunity Commission ("EEOC") dated December 1, 2016, but does not include the original charge of discrimination or the bases upon which he filed his claim with the EEOC. (ECF No. 1–1.)

Schaetz claims he was constructively discharged on January 4, 2017 because "[a]fter more threats to be fired, more discrimination, and more intense harassment, creating such a hostile work environment[,] I felt I could no longer work there for the well being of my family and I." [sic] (ECF No. 1 at 3.) He then filed this action on February 27, 2017.

**ANALYSIS**

PCMC moved to dismiss Schaetz's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Fed R. Civ. P. 12(b)(6). Rule 8(a)(2) mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that a complaint must contain factual allegations that "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, he or she must plead "more than labels and conclusions." Id. A simple, "formulaic recitation of the elements of a cause of action will not do." Id. In evaluating a motion to dismiss, the court must view the plaintiff's factual allegations and any inferences reasonably drawn from them in a light most favorable to the plaintiff. Yasak v. Retirement

Schaetz v. Paper Converting Machine Company Inc, Not Reported in Fed. Supp. (2017)

2017 WL 2275005

*Bd. of the Policemen's Annuity & Benefit Fund of Chi.*, 357 F.3d 677, 678 (7th Cir. 2004). In addition, the court construes *pro se* complaints liberally. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

## A. Discrimination and Retaliation Claims

**\*2** Although the complaint alleges a history of harassment and despicable conduct by supervisory personnel at PCMC, a crucial element to a claim under Title VII is missing. There is no allegation that the harassment and intimidating behavior was on account of Schaetz' sex, race, ethnic origin, religion, or the other categories protected by Title VII. Nor is there any allegation that Schaetz suffered retaliation for opposing any policy or practice prohibited by Title VII. These omissions are fatal. Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Retaliation under Title VII occurs when a plaintiff suffers an adverse employment action "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To demonstrate a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action: and (3) there is a casual link between the protected activity and the adverse action. *See Sweeney v. West*, 149 F.3d 550, 555 (7th Cir. 1998) (citing *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996)).

Schaetz's complaint asserts he experienced numerous instances of harassment and discrimination while he was employed at PCMC. The complaint also alleges that he experienced several adverse employment actions, such as losing his skilled painter position and being excluded from overtime opportunities. However, his complaint simply fails to allege that he suffered any adverse action on account of his membership in a protected class or that he experienced retaliation in response to opposing discrimination on the basis of a protected class. The complaint utterly fails to provide the defendant with the kind of notice Rule 8(a)(2) requires. Schaetz therefore fails to plausibly assert a discrimination, harassment, or retaliation claim under Title VII.

## B. Constructive Discharge Claim

The complaint suffers an additional problem with respect to the constructive discharge claim. It appears clear that Schaetz failed to exhaust his administrative remedies as to such a claim before filing his lawsuit. Before a plaintiff can challenge an unlawful employment practice under Title VII, the employee must first exhaust his administrative remedies. *Chaudhry v. Nucor Steel–Indiana*, 546 F.3d 832, 836 (7th Cir. 2008); *see also* 42 U.S.C. §§ 2000e–5(e)(1), 2000e–(f)(1). Exhaustion of administrative remedies occurs when the employee files a timely charge of discrimination with the EEOC and then secures a right to sue letter from the EEOC with respect to the timely charge. *Id.* "[C]laims brought in judicial proceedings must be within the scope of the charge filed with the EEOC; '[a]n aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination.' " *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (quoting *Rush v. McDonald's Corp*, 966 F.2d 1104, 1110 (7th Cir. 1992)); *see also Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303, n. 2 (7th Cir. 2004) ("Herron's EEOC charges in February and April 2000 described racial discrimination, retaliation, and harassment, not constructive discharge. As the district court found, the four-month delay between his February EEOC complaint and his decision to leave was inconsistent with notice of constructive discharge. Since the charges contained in the EEOC complaint were not 'like or reasonably related to' his EEOC allegations, Herron cannot proceed under Title VII on a constructive discharge claim.").

There is nothing in the complaint that indicates whether Schaetz has exhausted his administrative remedies on the constructive discharge claim. In support of its motion to dismiss, however, PCMC filed Schaetz's EEOC Charge dated January 26, 2016.[1] (ECF No. 12–1.) Schaetz raised claims of sex-based discrimination and retaliation in violation of Title VII with the EEOC, but did not claim constructive discharge. He did not claim that the alleged discrimination and harassment was continuing and instead noted that it only occurred from March 26, 2015 until November 10, 2015. Additionally, Schaetz received his right to sue letter from the EEOC on December 1, 2016—more than a month before he claims he was constructively discharged. Schaetz does not dispute that he has not filed any additional complaints with the EEOC since he left PCMC in January 2017. In short, it is clear that Schaetz has not attempted to exhaust his administrative remedies on his constructive discharge claim. The constructive discharge claim will be dismissed.

**Schaetz v. Paper Converting Machine Company Inc, Not Reported in Fed. Supp. (2017)**

2017 WL 2275005

**CONCLUSION**

 **\*3**  For the reasons given above, PCMC's motion to dismiss (ECF No. 10) is **GRANTED** and the complaint is dismissed. I cannot say the plaintiff is unable to state a Title VII claim, however, so the dismissal is without prejudice. The Clerk is directed to enter judgment in the event an amended complaint curing the defects noted above is not filed within 30 days.

**SO ORDERED** this 24th day of May, 2017.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2275005

Footnotes

1    A court may take judicial notice of an EEOC charge as a matter of public record when addressing a motion to dismiss without converting the motion to a motion for summary judgment. *See Faibisch v. University of Minnesota*, 304 F.3d 797, 802–03 (8th Cir. 2002).

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.    3

274 F.Supp.2d 1041
United States District Court,
E.D. Wisconsin.

Peggy A. SCHWARTZ, Plaintiff,

v.

BAY INDUSTRIES, INC., and
Daniel Schmidt, Defendants.

No. 02–C–832.
|
July 21, 2003.

**Synopsis**

Former employee brought action against her former employer and former supervisor, alleging sexual harassment and retaliation under Title VII, and state law claims for intentional infliction of emotional distress (IIED) and negligent hiring, training, and supervision. Defendants moved to dismiss employee's retaliation and IIED claims. The District Court, Adelman, J., held that: (1) employee could assert retaliation claim against defendants, based on allegation that employer fired her because she filed an Equal Employment Opportunity Commission (EEOC) charge, although EEOC charge did not allege protected activity or retaliation, and (2) employee's complaint sufficiently stated claim for IIED under Wisconsin law.

Motion denied.

West Headnotes (15)

**[1]**  **Civil Rights**  Scope of administrative proceedings; like or related claims

Former employee could assert retaliation claim in Title VII action against her former employer, based on allegation that employer fired her because she filed an Equal Employment Opportunity Commission (EEOC) charge, although EEOC charge did not allege protected activity or retaliation, where retaliation claim grew out of EEOC charge, which alleged sexual harassment. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

2 Cases that cite this headnote

**[2]**  **Civil Rights**  Scope of administrative proceedings; like or related claims

As a general rule, a Title VII plaintiff may not bring claims in court that were not included in an Equal Employment Opportunity Commission (EEOC) charge. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[3]**  **Civil Rights**  Exhaustion of Administrative Remedies Before Resort to Courts

Although the requirement that a Title VII plaintiff file an Equal Employment Opportunity Commission (EEOC) charge is not jurisdictional, it is a condition precedent to bringing a Title VII action. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[4]**  **Civil Rights**  Scope of administrative proceedings; like or related claims

All Title VII claims set forth in a complaint are cognizable that are like or reasonably related to the allegations of an Equal Employment Opportunity Commission (EEOC) charge and growing out of such allegations; the test is satisfied if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[5]**  **Civil Rights**  Practices prohibited or required in general; elements

**Civil Rights**  Activities protected

In order to establish a Title VII retaliation claim, the plaintiff must show that she engaged in statutorily protected activity and that as a result the employer retaliated against her; "statutorily protected activity" includes the filing or participation in the filing of a charge or

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   1

opposition to discrimination. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

1 Case that cites this headnote

**[6]** **Civil Rights** Quid pro quo

**Civil Rights** Hostile environment; severity, pervasiveness, and frequency

Generally speaking, there are two types of sexual harassment under Title VII: quid pro quo and hostile environment. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[7]** **Civil Rights** Quid pro quo

"Quid pro quo sexual harassment" exists under Title VII when the employer links an employee's conditions of employment to submission to sexual advances. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[8]** **Civil Rights** Hostile environment; severity, pervasiveness, and frequency

"Hostile environment sexual harassment" exists under Title VII when severe and pervasive conduct of a sexual nature creates a hostile or offensive working environment, regardless of whether any tangible or economic employment action is taken again the employee. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[9]** **Civil Rights** Scope of administrative proceedings; like or related claims

It is unnecessary for a Title VII plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier Equal Employment Opportunity Commission (EEOC) charge. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[10]** **Civil Rights** Scope of administrative proceedings; like or related claims

The test for determining whether newly added claims are sufficiently similar to those asserted in an Equal Employment Opportunity Commission (EEOC) charge to permit them to be asserted for the first time in a Title VII action typically focuses on: (1) whether the new claims arise from the same factual basis as the claims in the charge, meaning whether they involve the same individuals and the same basic conduct, and (2) whether the new claims were or would have been uncovered in a reasonable EEOC investigation. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[11]** **Damages** Sex and gender

Former employee's complaint against her former employer and former supervisor sufficiently stated claim for intentional infliction of emotional distress (IIED) under Wisconsin law; employee's complaint alleged that supervisor's conduct of propositioning her, repeatedly trying to look down her shirt and rub up against her, transferring her when she refused his advances, treating her with hostility, and threatening that if she left the company she would never find work in the industry again, was intended to and in fact caused severe and disabling emotional distress.

**[12]** **Damages** Elements in general

To establish an intentional infliction of emotional distress (IIED) claim under Wisconsin law, the plaintiff must show that the conduct complained of was (1) intended to cause emotional distress; (2) extreme and outrageous; (3) the cause of the plaintiff's emotional distress; and (4) the resultant distress was severe and disabling.

**[13]** **Federal Civil Procedure** Claim for relief in general

Federal notice pleading requires the plaintiff to set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim. Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works. 2

**[14]** **Federal Civil Procedure** 🔑 Claim for relief in general

A complaint need not spell out every element of a legal theory to provide notice; it need only contain enough to allow the defendants to understand the gravamen of the plaintiff's complaint. Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

**[15]** **Federal Civil Procedure** 🔑 Insufficiency in general

District courts must not dismiss for failure to state a claim upon which relief can be granted just because the claim could have been stated with more particularity or because the judge believes the plaintiff unlikely to prevail. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**Attorneys and Law Firms**

**\*1043** Andrew P. Campbell, Cinda R. York, Birmingham, AL, Rebecca L. Salawdeh, Milwaukee, WI, for Plaintiff.

Cari Lynn Westerhof, Wausau, WI, for Defendants.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Peggy Schwartz brings this action against her former employer, Bay Industries, Inc. ("Bay"), and its employee, Daniel Schmidt ("Schmidt"), alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and retaliation for filing a discrimination charge with the EEOC in violation of 42 U.S.C. § 2000e–3. She also brings state law claims of intentional infliction **\*1044** of emotional distress ("IIED") and negligent hiring, training and supervision. Pursuant to Fed.R.Civ.P. 12(b)(6), defendants now move to dismiss plaintiff's retaliation claim because it was not included in an EEOC charge, and her IIED claim because it is untimely and inadequately pled.[1]

## I. MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. A complaint, or portion thereof, may be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff cannot adduce any set of facts in support of her claims that would entitle her to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *GE Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir.1997). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even accepting all of her alleged facts, she has no legal claim. *Payton v. Rush–Presbyterian St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir.1999). In reviewing a complaint under this standard, the court must accept as true the plaintiff's allegations, *Hosp. Bldg. Co. v. Rex Hosp. Tr.,* 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), and construe the complaint in the light most favorable to the plaintiff, resolving all doubts in her favor, *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that in 1990 Bay hired her as a full-time employee in its Green Bay office. Schmidt was Bay's corporate vice president and plaintiff's direct supervisor. Between six months and one year after she was hired, Schmidt grabbed, fondled and kissed plaintiff after a chance encounter at a restaurant. Plaintiff rebuffed his advances and left the restaurant through the back door.

Following this incident, Schmidt treated plaintiff coldly at work. Plaintiff decided to avoid company functions because she was afraid Schmidt would harass and humiliate her. However, plaintiff became concerned that her failure to attend such functions would hurt her career, so she resumed attendance.

In 1992, during a company retreat, Schmidt pulled plaintiff into a room and attempted to fondle and kiss her. She resisted, after which Schmidt demeaned and ignored her at work, and subjected her to rude and offensive comments and notes.

In 1998 or 1999, during another company retreat, Schmidt again fondled plaintiff without her permission. Plaintiff again rebuffed him and left the function. In June 1999, Schmidt aggressively and roughly grabbed plaintiff's breasts and crotch without her consent.

 **\*1045**  Throughout her employment at the Green Bay office, Schmidt stared down plaintiff's shirt and rubbed up against her. He also used inappropriate titles such as "sweetheart" to address her.

In June 2000, as a result of her failure to accede to Schmidt's advances, plaintiff was transferred to Birmingham, Alabama. Schmidt threatened that if she left the company she would never find work in the area or the industry again. Plaintiff was one of just two employees in the Birmingham office, was cut off from the company, and found her duties greatly reduced. The other employee was soon terminated, further isolating plaintiff.

Shortly after plaintiff's arrival in Birmingham, Schmidt visited the office and stated that he did not need a hotel room because he would be staying with her. Plaintiff refused, after which her duties were further reduced, and Schmidt told her not to contact anyone at the company without his approval.

During a November 2000 company retreat, Schmidt again told plaintiff he would be spending the night with her, and she again rejected this suggestion.

On August 15, 2001, plaintiff was terminated.

### III. PROCEDURAL HISTORY

On April 6, 2001, plaintiff filed a charge of discrimination against defendants with the EEOC. In the section of the form relating to the nature of the charge, plaintiff checked the boxes for "sex" and "retaliation." In the charge, plaintiff alleged that Schmidt had sexually harassed her and that she had been transferred and given reduced responsibilities because she had rebuffed him.

After being terminated, plaintiff did not file a new EEOC charge or amend her previously-filed charge to include the fact of her termination.

Plaintiff obtained a "right to sue letter" from the EEOC and, on December 5, 2001,[2] filed the present action in the

District Court for the Northern District of Alabama alleging (1) sexual harassment, (2) assault and battery, (3) invasion of privacy, (4) outrage, and (5) negligence/wantonness. Pursuant to defendants' motion, venue was subsequently transferred to this district.

Plaintiff then moved for and was granted permission to amend her complaint. On December 19, 2002, plaintiff filed her second amended complaint alleging the claims set forth above.

### IV. DISCUSSION

#### A. Retaliation Claim

 **[1]**    **[2]**    **[3]**    As a general rule, a Title VII plaintiff may not bring claims in court that were not included in an EEOC charge. *Cheek v. W. & So. Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994). Although the requirement that a plaintiff file an EEOC charge is not jurisdictional, it is a condition precedent to bringing a Title VII action. *Id.* The requirement is said to serve two purposes—it affords the EEOC and the parties a chance to settle the dispute, and it gives to the employer notice of the offending conduct. *Id.*

 **[4]**    Recognizing that most EEOC charges are drafted by non-lawyers, courts do not require the plaintiff to allege in an EEOC charge all of the facts involved in her claims.

> The test for determining whether an EEOC charge encompasses the claims in a complaint therefore grants the Title VII plaintiff significant leeway: all Title VII claims set forth in a complaint are **\*1046** cognizable that are like or reasonably related to the allegations of the charge and growing out of such allegations. Thus the test ... is satisfied if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.

*Id.* (internal citations and quote marks omitted).

Plaintiff's retaliation claim is based on the allegation that defendants fired her because she filed an EEOC charge. Defendants argue that this claim must be dismissed because plaintiff's termination was not mentioned in an EEOC charge. Plaintiff indicates that she did allege retaliation in her charge related to the events that occurred prior to its filing—her transfer to Birmingham and Schmidt's conduct after she

refused his advances. She also notes that she checked the "retaliation" box on the charge form.

**[5]** However, plaintiff's EEOC charge did not actually allege a retaliation claim. In order to establish a Title VII retaliation claim, the plaintiff must show that she engaged in statutorily protected activity and that as a result the employer retaliated against her. *Johnson v. Milwaukee Sch. of Eng'g,* 258 F.Supp.2d 896, 905 (E.D.Wis.2003). "Statutorily protected activity" includes the filing or participation in the filing of a charge ("participation conduct") or opposition to discrimination ("opposition conduct"). *See, e.g., Speedy v. Rexnord Corp.,* 243 F.3d 397, 404 n. 4 (7th Cir.2001).

**[6]** **[7]** **[8]** Plaintiff's EEOC charge does not allege either form of protected activity. The allegations that she was transferred to Alabama and that Schmidt treated her coldly after she rebuffed his advances seem to state a claim of quid pro quo sexual harassment rather than retaliation. *See Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 753, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (stating that quid pro quo harassment occurs when a tangible employment action resulted from the refusal to submit to sexual demands).[3] Plaintiff nowhere alleges that these (or any other actions) were taken against her because she complained of or opposed discrimination, formally or informally. Therefore, the EEOC charge did not allege retaliation relating to events occurring prior to plaintiff's termination. Further, even if she had alleged protected activity in the charge, she did not mention her termination, which is the basis for her present retaliation claim.

**[9]** Nevertheless, plaintiff's retaliatory discharge claim is properly before me despite its omission from an EEOC charge. This is so because it is " 'unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge.' " *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 482 (7th Cir.1996) (quoting *Gupta v. East Texas State Univ.,* 654 F.2d 411, 414 (5th Cir.1981)); *see also Clockedile v. New Hampshire Dep't of Corr.,* 245 F.3d 1, 4 (1st Cir.2001) (noting that most circuits **\*1047** have permitted retaliation claims where only the discrimination charge was made to the agency, and collecting cases from every Circuit but the D.C.); Kelly Koenig Levi, *Post Charge Title VII Claims: A Proposal Allowing Courts to Take "Charge" When Evaluating Whether to Proceed or to Require a Second Filing,* 18 Ga. St. U.L.Rev. 749, 768–69 (2002) (noting that most courts have allowed claims of

retaliation based on the act of filing the original charge despite the failure to include the retaliation claim in a charge).

In *Gupta,* the court explained that

> [t]here are strong practical reasons and policy justifications for this conclusion. It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII. We are reluctant to erect a needless procedural barrier to the private claimant under Title VII, especially since the EEOC relies largely upon the private lawsuit to obtain the goals of Title VII. Intertwined with this practical reason for our holding is a strong policy justification. Eliminating this needless procedural barrier will deter employers from attempting to discourage employees from exercising their rights under Title VII.

654 F.2d at 414 (citations omitted).

In adopting this rule, the Seventh Circuit stated that

> there is a practical reason for treating retaliation in this way: having once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation. That is not a consideration in this case, where the alleged act of retaliation consisted of firing [the plaintiff]; there was nothing more that [the defendant] could do to him if he filed another administrative charge. But it is best to have a general rule, and we join the other circuits that have spoken to the question in adopting the rule that a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge.

*Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir.1989), *superseded on other grounds by statute as stated in Rush v. McDonald's Corp.,* 966 F.2d 1104, 1119–20 (7th Cir.1992).[4]

It is not immediately apparent why a Title VII plaintiff should not be required to file or amend a previously filed EEOC charge to include a claim of retaliatory discharge. As noted in *Malhotra,* there is little more an employer can do to the now-discharged employee.[5] However, as suggested in *Gupta,* there are practical and policy reasons for the rule.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    5

If, prior to being terminated, a plaintiff has already commenced a lawsuit based on the original charge, it would serve no useful purpose to require her to go back to the EEOC to file a retaliation charge, exhaust administrative remedies and then amend her complaint. The settlement function **\*1048** of the administrative process would not be served because the parties would already be in court. Neither would the notice function be served because the defendant would already know that it had fired the plaintiff. The likely effect of imposing a new filing requirement would be to delay the lawsuit while the plaintiff went through the motions of exhausting.

If a plaintiff is terminated after receiving a ninety-day right to sue letter but before commencing suit, it would also be pointless to require her to file a new EEOC charge. The ninety-day limitation period would likely expire before the agency processed the new charge. Thus, the plaintiff would have to sue based on the original charge, exhaust administrative remedies on the retaliation charge, and then amend her complaint or file a new lawsuit to allege retaliation. No purpose would be served "except to create additional procedural technicalities." *McKenzie,* 92 F.3d at 482.

Finally, if the plaintiff is terminated while her discrimination charge is pending before the EEOC,[6] it is reasonable to assume that the agency will become aware of the termination in the course of its investigation.[7] The parties could then avail themselves of the EEOC's processes concerning both the discrimination and retaliation claims.[8]

Thus, in all cases involving retaliatory discharge claims, single filing "promotes judicial economy, protects the intended recipient of the statute, and simultaneously ensures that the defendant is able to defend the claim of retaliation." Levi, *supra,* at 771 (footnotes omitted). Therefore, plaintiff's retaliation claim may proceed.

Defendants argue that plaintiff may not avail herself of the *McKenzie* rule because in that case "the allegations of harassment and discrimination were reasonably related to each other [whereas here] they are not." (R. 33 at 3.) Defendants misread *McKenzie.* In *McKenzie,* the plaintiff filed a sexual harassment charge, which she later amended to add additional allegations of discrimination. 92 F.3d at 478. She then **\*1049** brought an action in court, alleging retaliation based on the filing of the charges. *Id.* Notwithstanding her failure to mention retaliation in her

EEOC charge, the court permitted her retaliation claim to go forward.

 **[10]**    The court stated that " 'a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge.' " *Id.* at 483 (quoting *Malhotra,* 885 F.2d at 1312). This is so, the court said, because claims of retaliation for filing a charge are considered to be "reasonably related" to that filing. *Id.* (citing *Bouman v. Block,* 940 F.2d 1211, 1229 (9th Cir.1991)) (finding that retaliation claim was "reasonably related" to prior sex discrimination claim); *Brown v. Hartshorne Public Sch. Dist. No. 1,* 864 F.2d 680, 682 (10th Cir.1988) (stating that "an act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint"); *see also Portlock v. Painewebber, Inc.,* No. 85–C–6247, 1987 WL 6293, at \*1 (N.D.Ill. Feb. 4, 1987) ("It is difficult to imagine a claim more related to a charge and growing out of it than a claim that one was fired for filing that charge.").[9]

The *McKenzie* court then noted that the rule is limited to retaliatory acts that occurred after the filing of the charge, *id.* at 482–83, and held:

> In this case, Ms. McKenzie alleges several retaliatory acts, and two of those acts occurred prior to her filing of her original EEOC charge. Yet Ms. McKenzie did not mention her claims of retaliation in either her original charge against IDOT or her amended charge filed several months later. Because each of those incidents of retaliation could have been—and should have been—included in her administrative charges, they cannot now serve as the basis of the retaliation claim alleged in her complaint. [H]owever, the remaining incidents (i.e., those occurring after the filing of the February 1991 amended charge) may be considered as evidence **\*1050** of Ms. McKenzie's retaliation claim, despite the fact that "retaliation" was not alleged in her administrative filings.

*Id.* Therefore, contrary to defendants' contention, the only relationship between an EEOC charge and a retaliation claim *McKenzie* requires is that the charge be the motive for the retaliation. *See also Clockedile,* 245 F.3d at 4 ("[R]etaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency—e.g., the retaliation is for filing the agency complaint itself.").

Defendants also rely on *Jansen v. Packaging Corp. of America,* 123 F.3d 490, 493 (7th Cir.1997), *aff'd,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), where the court affirmed the dismissal of retaliation claims because "[s]ome of the alleged acts of retaliation [were] outside the scope of Jansen's EEOC charge and [were] therefore waived." However, *Jansen* did not even discuss the *Gupta/ Malhotra/McKenzie* rule, much less re-impose an exhaustion requirement on claims of retaliation. Rather, it appears that in *Jansen* the plaintiff filed an administrative charge of retaliation then sought to include additional instances of retaliation in her federal complaint that fell outside the charge's scope.

Finally, defendants note that plaintiff did not bring a retaliation claim in her original federal complaint and argue that she should not be permitted to do so now. However, I previously allowed plaintiff to amend; defendants do not ask me to revisit that decision; nor do they claim that the amendment is improper under Fed R. Civ. P. 15 or 18.

Therefore, for the reasons stated, defendants' motion to dismiss plaintiff's retaliation claim will be denied.

### B. Intentional Infliction of Emotional Distress Claim

**[11]** **[12]** Defendants argue that I should dismiss plaintiff's IIED claim because it is untimely and because plaintiff has failed to plead sufficient facts to support it. To establish an IIED claim, the plaintiff must show that the conduct complained of was (1) intended to cause emotional distress, (2) extreme and outrageous, (3) the cause of the plaintiff's emotional distress, and (4) the resultant distress was severe and disabling. Wis. JI–Civil 2725; *see also Rabideau v. City of Racine,* 243 Wis.2d 486, 501, 627 N.W.2d 795 (2001); *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 694–95, 271 N.W.2d 368 (1978); *Alsteen v. Gehl,* 21 Wis.2d 349, 359–60, 124 N.W.2d 312 (1963). The statute of limitations for an IIED claim is two years. Wis. Stat. § 893.57.

**[13]** **[14]** Defendants argue that plaintiff has failed to plead sufficient facts within the relevant two year period to support an IIED claim. Under the liberal pleading standards of the Federal Rules of Civil Procedure, defendants ask too much. "Federal notice pleading requires the plaintiff to set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago,* 195 F.3d 950, 951 (7th Cir.1999). A complaint need not spell out every element of a legal theory to provide notice; it need only contain enough to allow

the defendants to understand the gravamen of the plaintiff's complaint. *Id.* at 951–52; *cf. Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (holding that an employment discrimination plaintiff need not plead a prima facie case to survive a motion to dismiss). In fact, Fed.R.Civ.P. 8(a) does not require a plaintiff to plead a legal theory at all. *B. Sanfield,* **\*1051** *Inc. v. Finlay Fine Jewelry Corp.,* 168 F.3d 967, 973 (7th Cir.1999).

Neither must the plaintiff plead facts. "It is enough to specify the wrong done and leave details to later steps, such as motions for more definite statement, Fed.R.Civ.P. 12(e), and affidavits concerning summary judgment." *Palmer v. Bd. of Educ.,* 46 F.3d 682, 688 (7th Cir.1995); *see also Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.,* 132 F.3d 526, 529 (9th Cir.1997) (stating that plaintiff is "not required to allege in its complaint the evidentiary facts in support of its theory of recovery").

**[15]** The Seventh Circuit has repeatedly emphasized that aside from those few claims specified in Fed.R.Civ.P. 9(b), there are no heightened rules of federal pleading. *Tierney v. Vahle,* 304 F.3d 734, 742 (7th Cir.2002). No more is required than Rule 8's notice pleading minimum. *Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir.2001). Thus, district courts must not dismiss a claim under Rule 12(b)(6) just because it could have been stated with more particularity or because the judge believes the plaintiff unlikely to prevail. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Courts should also be hesitant to dismiss a claim on technical grounds in view of the policy of the federal rules to determine actions based on the merits. Finally, early dismissals may, in the long run, result in a waste of judicial time if on appeal the dismissal is reversed and remanded. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 at 324 (1990).

Based on the foregoing principles, plaintiff's complaint is sufficient. Plaintiff alleges that Schmidt's conduct was intended to and in fact caused severe and disabling emotional distress. She alleges that in the two years before she filed suit Schmidt propositioned her at least twice, repeatedly tried to look down her shirt and rub up against her, transferred her when she refused his advances, treated her with hostility, threatened that if she left the company she would never work in the industry again, instructed her not to contact anyone at the company without his permission, and then terminated

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.

her. Thus, her complaint states an IIED claim, even limited to post-December 5, 2001 allegations.[10]

Finally, defendants argue that plaintiff's complaint fails because if she had in fact sustained severe and disabling emotional distress, she would not have continued to work for Bay. However, this type of argument is appropriately addressed after the facts are more fully developed, i.e., on summary judgment or at trial.

Thus, defendants' motion to dismiss plaintiff's IIED claim will be denied.

## V. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendants' motion to dismiss is **DENIED**.

### All Citations

274 F.Supp.2d 1041

## Footnotes

1   Defendants originally moved to dismiss plaintiff's Title VII and negligent hiring and supervision claims against Schmidt because such claims do not lie against individual supervisors. *See Williams v. Banning,* 72 F.3d 552, 555 (7th Cir.1995) (holding that supervisors are not "employers" covered by Title VII); *Miller v. Wal–Mart Stores, Inc.,* 219 Wis.2d 250, 260–63, 580 N.W.2d 233 (1998) (stating that claim of negligent training and supervision is brought against employer for breaching its duty to properly train and supervise employees). Plaintiff responded that these claims were not brought against Schmidt individually. Therefore, I need not address the issue. Defendants also argued that plaintiff's state law claims were preempted by Title VII but subsequently withdrew the argument.

2   In their briefs, the parties incorrectly state that the filing date was December 1, 2001.

3   Although not controlling for purposes of employer liability, *id.* at 754, generally speaking, there are two types of sexual harassment—quid pro quo and hostile environment. As noted, the former exists when the employer links an employee's conditions of employment to submission to sexual advances. The latter exists when severe and pervasive conduct of a sexual nature creates a hostile or offensive working environment, regardless of whether any tangible or economic employment action is taken again the employee. *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Plaintiff seems to allege both types.

4   The Seventh Circuit has limited the rule to claims based on retaliatory acts committed after the filing of the EEOC charge. *McKenzie,* 92 F.3d at 482–83.

5   It is inaccurate to say that there is *nothing* more the employer can do; it can provide negative employment references or otherwise impede the plaintiff's ability to get another job. This can itself constitute actionable retaliation. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

6   This is apparently what happened in the present case.

7   Appearing as amicus curiae in *Clockedile,* the EEOC advised the court that "it is 'likely' that the alleged retaliation against Clockedile for filing her charge would 'have been uncovered in a reasonable EEOC investigation' of the charge." 245 F.3d at 4. Nevertheless, the better practice is to amend the charge to include the retaliation claim for it enables plaintiffs to avoid the kind of issue raised in the present motion.

8   Professor Levi states that "[e]ven without requiring the complainant to file a charge of retaliation, it is evident the defendant has notice of the act in which it engaged as a direct result of the filing.... As a result, the defendant's ability to defend the claim and initiate voluntary settlement or conciliation attempts with the EEOC prior to the start of litigation is in no way prohibited or impeded by the absence of a second filing. Even if the EEOC does not investigate, the defendant has notice and can initiate discussions directly with the plaintiff." Levi, *supra,* at 770–71. This is surely correct when the retaliation takes the form of a discharge. However, where the retaliatory act is less blatant or where it is carried out by a mid or lower-level employee, a defendant might not have notice of it. In that situation, requiring the employee to file a second charge

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    8

could serve the purposes of administrative exhaustion, i.e., to provide notice to the defendant and allow the parties to avail themselves of the EEOC's conciliation procedures. However, the Seventh Circuit has not limited the rule to retaliatory discharges; so long as the retaliation occurs after the filing of the charge, a new charge need not be filed. Such a broad rule still makes sense, though, because it brings clarity to an uncertain area of the law and, as noted in *Malhotra*, plaintiffs still on the job who suffer from retaliation may well be "gun shy about inviting further retaliation by filing a second charge." 885 F.2d at 1312. Thus, the rule serves the primary purpose of Title VII—protection of equal employment opportunity.

9  With respect, courts holding that claims of retaliation for the filing of a charge are reasonably related to or grow out of that charge appear to confuse those concepts with the causation element of a retaliation charge. The "reasonably related to/arising out of" rule was designed to protect employees uneducated in the law. As the court stated in *Sanchez v. Standard Brands, Inc.,* one of the first cases to address the issue: "It is more important that pleading rules be relaxed in the decidedly informal atmosphere of Title VII. Since the Act involves a lay initiated proceeding, it would be out of keeping with the Act to import common-law pleading niceties to [the charge of discrimination] or in turn to hog-tie the subsequent lawsuit to any such concepts. This Act was designed to protect a worker from becoming an industrial pariah, and his lack of literary acumen should not stymie his quest for equal employment opportunity." 431 F.2d 455, 465 (5th Cir.1970) (internal citations and quote marks omitted, alteration in original). Thus, the employee may raise in court—where she presumably will be represented by counsel—claims and allegations sufficiently similar to those raised in her charge. The test for determining whether the newly added claims are sufficiently similar typically focuses on (1) whether the new claims arise from the same factual basis as the claims in the charge, i.e. whether they involve the same individuals and the same basic conduct, *see Cheek,* 31 F.3d at 501; Levi, *supra,* at 765; and (2) whether the new claims were or would have been uncovered in a reasonable EEOC investigation, Levi, *supra,* at 761–62. Claims of retaliatory discharge would seem to fail this test—clearly they allege different conduct from that raised in the charge. Retaliation is not *related* to conduct described in a charge just because it was *motivated* by the filing of the charge. The better rationale for allowing retaliation claims to be raised without a second agency charge is that outlined above—judicial economy and the protective purposes of Title VII are advanced with little or no harm to the purposes of administrative exhaustion.

10 Plaintiff argues that I may consider conduct that occurred prior to December 5, 1999 under a "continuing violation" theory. The continuing violation theory originated in Title VII harassment claims and may not apply to state law claims. However, I need not resolve the issue to decide the motion.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2002 WL 31375499
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Beverly SPENCER, Plaintiff,

v.

Cheryl T. THOMAS, Chair, U.S.
Railroad Retirement Board, Defendant.

No. 01 C 7783.
|
Oct. 21, 2002.

**Synopsis**

Former employee of federal agency brought pro se action against former employer, alleging racial discrimination, retaliation, conspiracy to deprive her of her civil rights, and obstruction of justice. Employer moved to dismiss. The District Court, Nordberg, J., held that: (1) discrimination and retaliation claims were barred by res judicata, and (2) conspiracy claim was not cognizable against federal government employer.

Motion granted.

West Headnotes (3)

**[1]** **Res Judicata** 🔑 Discrimination

Former employee's action against employer for racial discrimination and retaliation, arising out of her discharge, was barred, under doctrine of res judicata, by employee's prior action against employer for racial discrimination and retaliation not connected to discharge; even though employee had not received right to sue letter from the Equal Employment Opportunity Commission (EEOC) for charges related to the discharge when she filed initial lawsuit, employee could have sought to expedite administrative process or sought stay in initial lawsuit, both actions derived from same core of operative facts, and all conduct that employee complained of, including her discharge, occurred prior to filing of initial action, so that employee

could have challenged discharge in prior lawsuit. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

1 Case that cites this headnote

**[2]** **Conspiracy** 🔑 Labor and employment

Former employee's claim that employer conspired to deprive her of her civil rights was not cognizable against federal government employer.

**[3]** **Federal Civil Procedure** 🔑 Alternate, Hypothetical and Inconsistent Claims

Former employee's claim against federal agency employer, alleging that employer lied to the Department of Labor and the Office of Personnel Management to prevent employee from receiving benefits, was not separate claim for obstruction of justice, but merely part of allegations that demonstrated employer's racial and retaliatory animus towards employer, and thus was required to be dismissed as duplicative of employee's racial discrimination and retaliation claims.

1 Case that cites this headnote

*MEMORANDUM OPINION AND ORDER*[1]

NORDBERG, Senior J.

**\*1** Plaintiff Beverly Spencer, proceeding pro se, filed this action against her former employer, Defendant U.S. Railroad Retirement Board. Plaintiff maintains that Defendant discriminated against her on account of her race, retaliated against her, conspired to deprive her of her civil rights, and obstructed justice. Before the court is the Defendant's Motion to Dismiss.

BACKGROUND

Plaintiff worked for the Defendant from 1989 until her termination in December 1999. Her final two years of employment were tempestuous, and resulted in the filing of three EEO charges. The first was filed in June 1998, in which she asserted that Defendant discriminated against her based upon her race and disability. The second was filed in May 1999, alleging that her supervisor had retaliated against her based upon her earlier EEO charge and discriminated against her based on her race and sex. The third was filed in December 1999, and contested Plaintiff's termination as retaliatory and discriminatory. The right to sue letters for these respective charges were issued on November 18, 1999, December 8, 1999, and August 30, 2001.[2]

On February 18, 2000, Plaintiff filed an action against Defendant before Judge Kennelly (case no. 00 cv 1020). In this action, Spencer maintained that Defendant had discriminated against her based upon her race and retaliated against her, by suspending her, failing to accommodate her health problems, and various other hostile actions by her supervisors. Judge Kennelly granted summary judgement to the Defendant. *See Spencer v. Thomas,* No. 00 cv 1020, 2001 WL 893846 (N.D.Ill. Aug.2, 2001). In his opinion, Judge Kennelly noted that Spencer had been terminated, but that Spencer was not challenging her termination in this lawsuit. *Id.* at *1, *3. The Seventh Circuit affirmed Judge Kennelly in an unpublished decision. *See Spencer v. Thomas,* No. 01–3112, 2002 WL 378179 (7th Cir. March 7, 2002). The Seventh Circuit also noted that Spencer was not challenging her termination. *Id.* at *2.

On October 9, 2001, Plaintiff filed the instant action in this court. Her amended complaint raises five claims: (1) conspiracy to deprive her of her civil rights; (2) retaliation; (3) racial discrimination; (4) obstruction of justice; and (5) misleading the court. Count IV is based on Defendant making allegedly false statements to the Department of Labor and the Office of Personnel Management to prevent Plaintiff from receiving benefits. Count V is based upon Defendant's position that this action is barred by res judicata. Her amended complaint recounts a litany of allegedly discriminatory and retaliatory conduct that took place between January 1998 and her eventual termination.

Defendant maintains that most of the claims are barred by res judicata and the remainder are not cognizable. Plaintiff maintains that her current action is based on her termination, the subject of her third EEOC charge, and that the prior action was based on her first two EEOC charges, which did not

include her termination. Plaintiff argues that she could not have challenged her termination in the prior case because she had not yet received a right to sue letter.

## LEGAL STANDARDS

### *Motion to Dismiss*

**\*2** Evaluating the legal sufficiency of a plaintiff's factual allegations requires the courts to adhere to a strict standard. A court may grant a motion to dismiss only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cushing v. City of Chicago,* 3 F.3d 1156, 1159 (7th Cir.1993)(quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). When considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the complaint and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High School District No. 230,* 991 F.2d 1316, 1324 (7th Cir.1993). However, the court need not accept as true conclusory legal allegations. *Baxter v. Vigo County School Corp.,* 26 F.3d 728, 730 (7th Cir.1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test." *Pickrel v. City of Springfield,* 45 F.3d 1115, 1118 (7th Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). All that F.R.C.P. Rule 8 requires to state a claim in federal court "is a short statement, in plain (that is, ordinary, nonlegalistic) English, of the legal claim." *Kirksey v. R.J. Reynolds Tobacco Company,* 168 F.3d 1039, 1041 (7th Cir.1999) "Complaints need not plead law or match facts to every element of a legal theory...." *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998). Moreover, more can be less under the Federal Rules of Civil Procedure; a litigant that includes details in his complaint well-beyond the limited requirements of Rule 8 may plead himself out of court. *Holman v. State of Indiana,* 211 F.3d 399, 406 (7th Cir.2000), *cert. denied,* 531 U.S. 880, 121 S.Ct. 191, 148 L.Ed.2d 132(2000).

### *Res Judicata*

Res judicata, or claim preclusion, bars litigation of matters decided in a prior lawsuit and any matters that could have been raised in the prior lawsuit. *Golden v. Baronberg,* 53 F.3d

866, 869–70 (7th Cir.1995). For res judicata to apply, three factors must be present: (1) an identity of the causes of action; (2) an identity of parties; and (3) a final judgment on the merits. *Kratville v. Runyon,* 90 F.3d 195, 197 (7th Cir.1996). "A claim has 'identity' with a previously litigated matter if it emerges from the same 'core of operative facts' as that earlier action." *Brzostowski v. Laidlaw Waste Systems, Inc.,* 49 F.3d 337, 338–9 (7th Cir.1995)(internal cite omitted). "Two claims are one for the purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Id.* at 339.

Plaintiffs in discrimination actions have no immunity from res judicata. *Herrmann v. Cencom Cable Associates, Inc.,* 999 F.2d 223, 225 (7th Cir.1993). Time delays inherent in the EEOC administrative process do not warrant splitting causes of action into multiple lawsuits. *Id.* A litigant can seek to have the administrative process accelerated, reach an accord with the defendant to proceed in two suits, or file the lawsuit and ask the district court to stay the action until the completion of the administrative process. *Id; Bethea v. Illinois State Police,* No. 01 cv 9518, 2002 WL 1592774, at * 3–4 (N.D.Ill. July 19, 2002). *See also Brzostowski,* 49 F.3d at 339.

## DISCUSSION

**\*3** This case is unusual. All the alleged discriminatory and retaliatory acts that Plaintiff complains of, including her termination, occurred before Plaintiff filed her first lawsuit before Judge Kennelly. The analysis boils down to the degree of factual similarity between the claims in the two cases.

### Discrimination & Retaliation Claims

**[1]** Defendant maintains that Plaintiff's instant claims are barred by res judicata, as they derive from the same core of operative facts as the action before Judge Kennelly and could have been raised in that first action. Plaintiff argues that she could not challenge her termination in the prior action without the right-to-sue letter and that this litigation and the prior litigation are based on factually distinct claims. In short, Plaintiff argues that this case focuses on her termination, while the prior case focused on everything but her termination. Neither party disputes that there are identical parties in both actions or that the prior action yielded a final decision. Thus we focus on whether there is an identity of causes of action between this case and its predecessor and whether this claim could have been brought in the prior case.

We are persuaded that the two cases have sufficient factual overlap that it can be fairly said that they emerge from the same core of operative facts. We note at the outset that Plaintiff's position has significant superficial appeal. Her termination was a different event than the other acts she complained of in the prior action. Moreover, that an employer prevails over an employee in one discrimination lawsuit does not immunize future discriminatory acts by the employer from challenge in a court of law. However, Plaintiff, like any other plaintiff in these circumstances, would not just be presenting the fact she was terminated. Obviously that fact alone does not prove her case. Instead, she must present every fact from her employment history that she believes shows the termination was wrongful. Therein lies the problem. All this evidence was available in her first case, as she was terminated before that case was filed. This appears to demonstrate that the cases have a more than sufficient factual overlap for res judicata to apply. *See generally Brzostowski,* 49 F.3d 337, 338–9. Judicial economy is not served by allowing multiple lawsuits presenting essentially the same evidence to prove closely related claims. In addition to inefficiency, allowing Plaintiff to proceed in a new action after all her evidence had been heard in a prior case raises another difficulty. Collateral estoppel would bar the relitigation of any issues decided in the prior action.

Further, her termination could have been challenged in the previous lawsuit. Plaintiff could have sought to expedite the administrative process or sought a stay from Judge Kennelly until the right to sue letter for her final claim was received to allow all her claims to go forward in one action. *See generally Herrmann,* 999 F.2d at 225; *Bethea,* 2002 WL 1592774, at * 3–4. *See also Brzostowski,* 49 F.3d at 339. Plaintiff appears to concede that Judge Kennelly could have stayed the action pending the MSPB decision. *See* Plaintiff's Surreply at 6.

**\*4** In addition, Plaintiff also alleges that Defendant denied her benefits under the Family and Medical Leave Act. It is not entirely clear from Plaintiff's pro se complaint whether she is presenting this allegation as an example of the discriminatory treatment that she received or seeking a recovery based on this provision. To the extent Plaintiff seeks to raise claims for denial of benefits under the Family and Medical Leave Act, her claims are foreclosed by res judicata because they could have been raised in the prior action.

### Other Claims

Case 2:23-cv-01643-LA Filed 04/01/24 Page 173 of 192 Document 13

**[2]** Plaintiff's other claims can be dispensed with in short order. As to Count I, Plaintiff maintains that Defendant conspired to deprive her of her civil rights. Such a conspiracy claim is not cognizable against the federal government. *See, e.g., Davis v. U.S. Department of Justice,* 204 F.3d 723 (7 th Cir.1999); *Benson v. United States,* 969 F.Supp. 1129 (N.D.Ill.1997).

**[3]** As to Count IV, Plaintiff claims that Defendant "obstructed justice" in making false statements to the Department of Labor and the Office of Personnel Management to prevent Plaintiff from receiving benefits. Count IV is duplicative of Counts II and III. This is not a separate claim – it is simply a collection of allegations purporting to demonstrate Defendant's racial/retaliatory animus towards Plaintiff. Further, as noted by Defendant, exclusive jurisdiction for making such benefits determinations lies with the Department of Labor rather than the courts. *See generally Ezekiel v. Michel,* 66 F.3d 894 (7th Cir.1995).

As to Count V, "misleading the court," Plaintiff appears to be trying to create a cause of action against the Defendant based upon the Defendant's intention to file a motion to dismiss. Such a claim is frivolous. Federal Rule of Civil Procedure 12 specifically provides that a defendant can challenge a plaintiff's pleading. There is nothing wrongful about a litigant availing themselves of the Federal Rules of Civil Procedure. Further, if, in a particular case, a defendant files a frivolous motion to dismiss, a plaintiff's recourse is F.R.C.P. Rule 11. In this case, there is obviously nothing improper about Defendant's well-grounded motion to dismiss.

CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 31375499

Footnotes

1  This Memorandum Opinion and Order supercedes the Memorandum Opinion and Order entered on September 17, 2002. That earlier opinion was formally withdrawn by the court to accommodate the pro se Plaintiff's request for additional briefing. (*See* Docket Entry of 9/20/02.)

2  The time lag for resolving the third charge was due to review of the termination before the U.S. Merit Systems Protection Board.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Stevenson v. General Mills Inc., Not Reported in Fed. Supp. (2023)

2023 WL 2142215

2023 WL 2142215
Only the Westlaw citation is currently available.
United States District Court, E.D. Wisconsin.

Melvin STEVENSON, Plaintiff,

v.

GENERAL MILLS INC., Defendant.

Case No. 21-cv-1052-bhl

|

Signed February 21, 2023

**Attorneys and Law Firms**

Melvin Stevenson, Jr., Milwaukee, WI, Pro Se.

Michael S. Yellin, Jennifer L. Ciralsky, Littler Mendelson PC, Milwaukee, WI, for Defendant.

## ORDER GRANTING JUDGMENT ON THE PLEADINGS

BRETT H. LUDWIG, United States District Judge

**\*1** Under the doctrines of collateral estoppel and res judicata, a party that loses an issue or claim in one lawsuit cannot relitigate that issue or claim in a second case. Nor can a plaintiff split related claims between two lawsuits to maximize his chances of success. These principles spell doom for Plaintiff Melvin Stevenson Jr. He already brought and lost this case once in *Stevenson v. Elite Staffing, Inc.*, No. 21-CV-1072-JPS, 2022 WL 4366686 (E.D. Wis. Sept. 21, 2022). Now he wants a second crack, swapping in General Mills, Inc. for Elite Staffing without altering any of the operative facts. General Mills has moved for judgment on the pleadings under Fed. R. Civ. P. 12(c), citing issue and claim preclusion. (ECF No. 50.) Both doctrines prohibit this kind of "do-over" litigation. Accordingly, the Court will grant the motion and dismiss the case.

## FACTUAL BACKGROUND

As the Court has previously noted, "[t]he operative facts [in this case] are both sparse and difficult to discern." (ECF No. 20 at 1.) But a few fundamental details bear mention. According to the complaint, General Mills hired Stevenson

as "a contractor" and assigned him general labor duties. (ECF No. 1-1 ¶5.) At some point between March 11, 2020 and November 21, 2020, Stevenson's supervisor, Frierson, called him the "N-word" and cursed at him. (*Id.* ¶¶5-6.) Stevenson reported Frierson, but the harassment continued. (*Id.* ¶6.) General Mills then fired Stevenson on February 21, 2021. (*Id.* ¶7.) Two months later, Stevenson filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). (*Id.* at 7.) On August 2, 2021, the EEOC closed its investigation into Stevenson's case and issued him a right to sue letter. (*Id.* at 10.)

Stevenson then simultaneously commenced two actions in Milwaukee County Circuit Court—this one against General Mills and another against Elite Staffing, Inc. (No. 21-1052, ECF No. 1; No. 21-1072, ECF No. 1.) His complaints raised identical claims based on identical facts, the only difference being the name of his alleged employer. (No. 21-1052, ECF No. 1-1 at 3-4 (naming General Mills as employer); No. 21-1072, ECF No. 1-2 at 3-4 (naming Elite Staffing as employer).) General Mills removed the case against it to this Court on September 10, 2021. (No. 21-1052, ECF No. 1.) Elite Staffing followed suit, removing the case against it five days later. (No. 21-1072, ECF No. 1.) On September 21, 2022, the Court granted Elite Staffing's motion for summary judgment and dismissed all of Stevenson's claims. (No. 21-1072, ECF No. 71.)

## LEGAL STANDARD

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is evaluated under same standard as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *See Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Dismissal under Rule 12(c) is, therefore, appropriate if, when viewed in the light most favorable to the non-moving party, the facts in the complaint do not state a plausible claim to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**\*2** Additionally, while courts should not ordinarily dismiss complaints for failing to plead around affirmative defenses, a plaintiff can plead himself out of court when his complaint establishes the insuperability of any such defense. *See Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457-59

Stevenson v. General Mills Inc., Not Reported in Fed. Supp. (2023)

2023 WL 2142215

(7th Cir. 2017). Thus, "when it is 'clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law,' dismissal is appropriate." *Id.* at 457 (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)). And since "[c]ourts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned," *id.* (citation omitted), courts may dismiss claims on res judicata grounds when considering a motion for judgment on the pleadings.

## ANALYSIS

The law requires a plaintiff to bring all of his claims in the same lawsuit. If he tries to relitigate an issue settled in an earlier case, collateral estoppel, also called issue preclusion, bars his claim. If he tries to raise a claim that was or could have been resolved in a prior suit, res judicata, also called claim preclusion, is his undoing. General Mills seeks dismissal under both doctrines. Stevenson has not responded.[1] But the Court need not await whatever untimely response might be forthcoming—whether by issue or claim preclusion, this case fails.

### I. Issue Preclusion Bars Stevenson's Claims.

"The doctrine of issue preclusion [or collateral estoppel] bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Bernstein v. Bankert*, 733 F.3d 190, 225 (7th Cir. 2013) (internal quotations omitted). The idea is that "one fair opportunity to litigate an issue is enough." *Bowen v. United States*, 570 F.2d 1311, 1322 (7th Cir. 1978). To prevail, the party invoking issue preclusion must prove: (1) the issue it seeks to preclude is the same as the issue involved in prior litigation; (2) that issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is sought was fully represented in the prior action. *See Matrix IV, Inc. v. Am. Nat. Bank and Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011). General Mills satisfies all four elements.

### A. The Issues General Mills Seeks to Preclude Are Identical to Those Involved in Prior Litigation.

Because the Court granted General Mills' partial motion to dismiss, ECF No. 20, only Stevenson's Title VII claims for

hostile work environment, retaliation, and race discrimination remain. (ECF No. 1-1 at 3.) These are kindred causes of action whose primary congenital feature is the presence of prejudicial treatment based on protected characteristics. Thus, the issue in this case is whether Stevenson can proffer sufficient evidence of racial discrimination. He has already unsuccessfully "litigated that precise issue in his previous Title VII case. *See White v. Kayla Enters., Inc.*, No. 06-CV-470, 2006 WL 8460229, at *3 (N.D. Ill. Oct. 18, 2006). Indeed, this Court considered and rejected identical claims against Elite Staffing because Stevenson failed to prove any adverse action owing to his membership in a protected class. *See Elite Staffing*, 2022 WL 4366686, at *8-10. The claims against General Mills involve the same issue and are, therefore, subject to preclusion.

### B. Stevenson Actually Litigated the Issues General Mills Seeks to Preclude.

An issue was "actually litigated" in a prior proceeding "if the parties to the original action disputed the issue and the trier of fact resolved it." *Cont'l Can Co., U.S.A. v. Marshall*, 603 F.2d 590, 596 (7th Cir. 1979). There is no dispute that Stevenson actually litigated the issue of discrimination against Elite Staffing, nor is it debatable that Elite prevailed on that issue. It does not matter that Stevenson might offer different arguments this time around, seek to avoid prior self-defeating admissions, or pursue, perhaps, more convincing evidence. *Id.* at n.8. "Actual litigation" is not "perfect litigation." *See id.* at 596 ("The requirement of collateral estoppel that the issue be 'actually litigated' does not require that the issue be thoroughly litigated."). The factual and legal issues General Mills seeks to preclude were disputed and resolved in Stevenson's case against Elite Staffing. *See Elite Staffing*, 2022 WL 4366686, at *8-10. That constitutes "actual litigation."

### C. The Issues General Mills Seeks to Preclude Were Essential to the Final Judgment in Stevenson's Prior Case.

**\*3** An issue is "essential to the judgment" if the Court "could not have granted summary judgment" without deciding it. *Abbott Lab'ys. v. Impax Lab'ys., Inc.*, No. 00 C 5092, 00 C 7865, 01 C 1638, 2003 WL 1563426, at *7 (N.D. Ill. Mar. 26, 2003). And a district court's grant of summary judgment on the merits constitutes a final judgment. *See Czarniecki v. City of Chicago*, 633 F.3d 545, 549 (7th Cir. 2011). In this case, the Court could not have granted Elite Staffing's motion for summary judgment without deciding the legal

Stevenson v. General Mills Inc., Not Reported in Fed. Supp. (2023)

2023 WL 2142215

and factual issues relevant to Stevenson's Title VII claims. After meticulous analysis, the Court held Stevenson's claims defective as a matter of law. *See Elite Staffing*, 2022 WL 4366686, at *8-10. The issues necessitating that conclusion (the same ones General Mills seeks to preclude) were, thus, essential to a final judgment.

**D. Stevenson Was Fully Represented in His Prior Case.**
A litigant was "fully represented" in a prior case if he had "a 'full and fair opportunity' to litigate [the] issue[s] in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95 (1980) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979); *Blonder-Tongue Laby's., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 328-29 (1971)). *Pro se* litigants, like Stevenson, often seize upon this language—as well as the federal judiciary's anxious, deferential disposition toward self-represented parties—to suggest that "full representation" requires assistance of counsel. *See DeGuelle v. Camilli*, 724 F.3d 933, 938 (7th Cir. 2013) (collecting cases). But that is not the law. *See White*, 2006 WL 8460229, at *3. Indeed, if parties could not fully and fairly litigate their issues without an attorney, then the Constitution would mandate appointment of counsel even in civil suits. It does not do so. *See Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). Thus, as the Seventh Circuit has bluntly put it, "the idea that litigating pro se should insulate a litigant from application of the collateral estoppel doctrine ... is absurd." *DeGuelle*, 724 F.3d at 938. What matters, for collateral estoppel purposes, is whether the interests of the person against whom preclusion is asserted were fully represented in the prior action. *See White*, 2006 WL 8460229, at *3. The Court in *Elite Staffing* accepted Stevenson's briefs and considered his arguments. That is enough.

Having satisfied all four elements, General Mills is entitled to judgment on the pleadings based on issue preclusion.

## II. In the Alternative, Claim Preclusion Bars Stevenson's Claims.

"The doctrine of [claim preclusion, or] 'res judicata bars not only those issues actually decided in the prior suit, but all other issues which could have been brought.' " *Matrix IV*, 649 F.3d at 547 (quoting *Aaron v. Mahl*, 550 F.3d 659, 664 (7th Cir. 2008)). It applies "to bar a second suit in federal court when there exists: (1) an identity of the causes of actions; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Bernstein*, 733 F.3d at 226 (quoting

*Kratville v. Runyon*, 90 F.3d 195, 197 (7th Cir. 1996)). Again, General Mills satisfies each element.

**A. There is an Identity of the Causes of Action Between Stevenson's Two Suits.**
"A claim is deemed to have 'identity' with a previously litigated matter if it is based on the same, or nearly the same, factual allegations arising from the same transaction or occurrence." *Kratville*, 90 F.3d at 198 (citations omitted). Stevenson's case against General Mills is predicated on the exact same facts as his failed case against Elite Staffing. In fact, the two complaints are virtually indistinguishable. Under these circumstances, there is an identity of the causes of action.

**B. There is an Identity of the Parties.**
 **\*4** An identity of parties exists when there is "the kind of link between the earlier and later [parties] that justifies" considering "earlier parties ... proper agents for the later parties." *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 971 (7th Cir. 1998). The Seventh Circuit holds this element satisfied when the parties have a " 'sufficiently close identity of interests' so that they are indeed in privity." *Tartt v. Nw. Cmty. Hosp.*, 453 F.3d 817, 823 (7th Cir. 2006). Stevenson generally alleges that both General Mills and Elite Staffing co-employed him and bore joint responsibility for the training and conduct of his supervisor. (ECF No. 28 at 2.) In other words, his "whole theory is that" General Mills and Elite Staffing were privies —"that [one or the other] was indeed pulling the strings." *Supporters to Oppose Pollution, Inc. v. Heritage Grp.*, 973 F.2d 1320, 1325 (7th Cir. 1992). That establishes privity for purposes of res judicata. *See Lampley v. Mitcheff*, No. 3:08-CV-282 PS, 2009 WL 5322951, at *7 (N.D. Ind. Dec. 28, 2009) (privity exists between two parties allegedly liable to the plaintiff for the same harm based on the same facts).

**C. There is a Final Judgment on the Merits.**
"[A] judgment on the merits is one [that] 'is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction, or form.' " *Harper Plastics, Inc. v. Amoco Chems. Corp.*, 657 F.2d 939, 943 (7th Cir. 1981) (quoting *Fairmont Aluminum Co. v. C.I.R.*, 222 F.2d 622, 625 (4th Cir. 1955)). This Court's grant of summary judgment to Elite Staffing is a quintessential ruling on the merits. The Court considered Stevenson's claims on the merits and dismissed them with prejudice. Even dismissal *without* prejudice does not preclude finality. *See Czarniecki*, 633 F.3d

**Stevenson v. General Mills Inc., Not Reported in Fed. Supp. (2023)**

2023 WL 2142215

at 549. But when dismissal prevents the plaintiff from simply refiling his case, there is no doubt that "the district court 'has finished with the case.' " *Id.* (quoting *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1097 (7th Cir. 2008)). Here, the Court dismissed Stevenson's case on the merits, with prejudice. This is definitively a final judgment on the merits.

As with issue preclusion, General Mills satisfies every element of claim preclusion. It is, thus, also entitled to judgment on the pleadings based on Stevenson's failure to raise his Title VII claims in the prior proceeding against Elite Staffing.

**CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that General Mills' Motion for Judgment on the Pleadings, ECF No. 50, under Fed. R. Civ. P. 12(c) is **GRANTED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2142215

Footnotes

1    Instead, he filed his own, untimely motion for summary judgment. (ECF No. 52.)

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    4

**Stevenson v. General Mills, Inc., Not Reported in Fed. Rptr. (2023)**

2023 WL 5992763

2023 WL 5992763
Only the Westlaw citation is currently available.
United States Court of Appeals, Seventh Circuit.

Melvin STEVENSON, Jr., Plaintiff - Appellant

v.

GENERAL MILLS, INC.,

Defendant - Appellee

No. 23-1510
|
Filed: July 7, 2023

District Court No: 2:21-cv-01052-BHL, Eastern District of
Wisconsin, District Judge Brett H. Ludwig

**Attorneys and Law Firms**

Melvin Stevenson, Jr., Milwaukee, WI, Pro Se.

Jennifer L. Ciralsky, Mike S. Yellin, Attorneys, Littler
Mendelson, P.C., Milwaukee, WI, for Defendant - Appellee.

**Opinion**

**\*1** This cause, docketed on March 17, 2023, is **DISMISSED**
for failure to timely pay the required docketing fee, pursuant
to Circuit Rule 3(b).

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 5992763

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S.
Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   1

**Taylor-Reeves v. Marketstaff, Inc., Not Reported in Fed. Supp. (2019)**

2019 WL 3716919

2019 WL 3716919
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Renee TAYLOR-REEVES, Plaintiff,

v.

MARKETSTAFF, INC., Defendant.

Case No. 17-cv-05416
|
Signed 08/07/2019

**Attorneys and Law Firms**

Renee Christine Fell, Uche O. Asonye, Asonye & Associates,
Dennis J. Kellogg, Chicago, IL, for Plaintiff.

Renee Taylor-Reeves, Homewood, IL, pro se.

Mary A. Smigielski, Alexander M. Misakian, Michael James
Roman, Lauren Lee Bever, Lewis Brisbois Bisgaard & Smith
LLP, Chicago, IL, for Defendant.

**MEMORANDUM OPINION AND ORDER**

John Robert Blakey, United States District Judge

 *1 Plaintiff Renee Taylor-Reeves, proceeding *pro se*, sues
Defendant Marketstaff, Inc. for retaliation under Title VII, 42
U.S.C. § 2000e, *et seq.* (Count I). [63]. Defendant moves to
dismiss Plaintiff's Amended Complaint, pursuant to Federal
Rule of Civil Procedure 12(b)(6). [65]. For the reasons
explained below, this Court grants Defendant's motion.

**I. Background**[1]

 **A. The Complaint's Allegations**
Defendant operates a human resource staffing business in
Illinois. [63] ¶¶ 8, 17. Plaintiff—an African-American female
—began working for Bright Start Child Care & Preschool,
Inc. (Bright Start) on August 20, 2013 as an instructor. *Id.* ¶¶
11, 19, (Ex. 4). According to Plaintiff, Defendant hired her
for this position. *Id.* ¶ 19.

On April 29, 2015, Plaintiff contacted an unnamed "agent" of
Defendant to report that she felt ill and may have contacted
strep throat, and thus would not be able to work the next day

because she had scheduled a doctor's appointment. *Id.* ¶¶ 35,
37. At this time, two non-African-American teachers "were
already out" due to strep throat. *Id.* ¶ 36. Defendant's agent
requested that Plaintiff come in to work the next day and told
Plaintiff that she could go to her doctor's appointment later in
the day. *Id.* ¶ 38.

Plaintiff reported to work the next day, April 30, 2015, and
became increasingly ill while in the classroom. *Id.* ¶¶ 37,
39. Therefore, she sent Defendant's agent a note requesting
permission to leave work early so that she could see a
doctor immediately. *Id.* ¶ 39. According to Plaintiff, the agent
responded with a written message on the back of the note:
"do what you need to do." *Id.* ¶ 40. Plaintiff subsequently left
work to go see a doctor. [63] (Ex. 6).

Plaintiff's complaint states that, on April 30, at approximately
11:40 a.m., Plaintiff received an email from Defendant
informing her that it considered Plaintiff "resigned" because
she left the workplace without permission. *Id.* ¶¶ 21, 41.[2]
Plaintiff alleges that Defendant did not terminate the two
other non-African-American teachers absent from work due
to strep throat. *Id.* ¶ 42.

 **B. Procedural History**
In 2016, Plaintiff sued Bright Start in Cook County Circuit
Court alleging sexual harassment, racial discrimination, and
retaliation in violation of the Illinois Human Rights Act. [10]
¶ 4; [10-2]. In July 2017, Plaintiff filed her initial complaint
against both Defendant Marketstaff and Bright Start in this
case. [1]. On October 10, 2017, this Court granted Plaintiff's
motion to stay this case in light of the state court proceedings.
[23]. Following a jury trial in state court, the jury reached a
verdict in favor of Bright Start in January 2019. [66-2].[3]

 *2 On March 6, 2019, Plaintiff voluntarily dismissed Bright
Start from this case. [59]. On April 4, 2019, this Court
granted Plaintiff leave to file an amended complaint, but
only if Plaintiff's counsel could do so consistent with his
Rule 11 obligations. [60]. Plaintiff's counsel filed a motion
to withdraw on April 17, 2019, [61], and Plaintiff filed the
amended complaint now at issue on April 26, 2019. [63]. This
Court granted the motion to withdraw on May 8, 2019, [64],
and Defendant filed the present motion to dismiss, [65], on
May 17, 2019.

**II. Legal Standard**

Taylor-Reeves v. Marketstaff, Inc., Not Reported in Fed. Supp. (2019)

2019 WL 3716919

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Thus, "threadbare recitals of the elements of a cause of action" and mere conclusory statements "do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### III. Analysis

Plaintiff alleges that Defendant retaliated against her when it terminated her for leaving the workplace without permission. [63] ¶ 41. Defendant argues that Plaintiff fails to state a claim because: (1) the Amended Complaint fails to plead that Plaintiff engaged in protected activity; (2) Plaintiff did not exhaust her administrative remedies; and (3) the state court fully litigated her claims at issue in this case to judgment, and thus res judicata bars this action. This Court agrees with Defendant and finds that Plaintiff's retaliation claim fails to allege that she engaged in any protected activity. In the alternative, this Court also finds that res judicata bars the present action. As such, this Court need not consider Defendant's exhaustion argument.

### A. Plaintiff Failed to Allege Any Protected Activity

To sufficiently plead a retaliation claim under Title VII, a plaintiff must allege that she "engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). Under Title VII, protected activity includes "participating in a Title VII proceeding or opposing a practice made unlawful by Title VII." *O'Neal v. City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009) (citing 42 U.S.C. § 2000e-3(a)). Participating in a Title VII proceeding can include making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). The Amended Complaint does not allege that Plaintiff participated in any sort of Title VII proceeding. *See generally* [63]. Accordingly, this Court proceeds to consider whether Plaintiff opposed a practice made unlawful by Title VII.

**\*3** When a plaintiff alleges that he or she opposed an unlawful practice, Title VII requires that the plaintiff "complained about an act that she 'reasonably believed in good faith ... violated Title VII.' " *Firestone v. Parkview Health Sys.*, 388 F.3d 229, 234 (quoting *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002) (internal quotations omitted)). In construing what constitutes a reasonable belief, "[o]nly a groundless claim 'resting on facts that no reasonable person possibly could have construed as a case of discrimination' " will not suffice. *Firestone*, 388 F.3d at 234 (quoting *Fine*, 305 F.3d at 752).

Here, this Court finds Plaintiff's retaliation claim sufficiently "groundless." Plaintiff alleges only that Defendant terminated her for leaving the workplace without permission, even though she requested leave to see a doctor for strep throat. [63] ¶¶ 35, 39. Simply put, no reasonable person could have considered requesting leave for strep throat to constitute opposing a discriminatory practice under Title VII, which prohibits discrimination based upon race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-2; *Hobbs v. Potter*, 08 C 3713, 2009 WL 2746824, at \*7 (N.D. Ill. Aug. 27, 2009) ("Opposing or complaining about discrimination through actions such as filing a grievance with an employer or a complaint with the EEOC may constitute statutorily protected activity under Title VII but only if it indicates that the discrimination occurred because of membership in some sort of protected class.") (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)).

Plaintiff attempts to insert a race-based element to her retaliation claim by alleging that Defendant allowed two non-African-American employees to take leave for strep throat without terminating them. [63] ¶¶ 36, 42. But this allegation still fails to set forth or otherwise explain any protected activity in which Plaintiff engaged. Instead, drawing all inferences in her favor, Plaintiff appears to allege that Defendant discriminated against her in how it applied its

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2

Taylor-Reeves v. Marketstaff, Inc., Not Reported in Fed. Supp. (2019)

2019 WL 3716919

sick leave policies to different employees, based upon race. But such a claim is not before this Court; in fact, Plaintiff's Amended Complaint removed this exact race-based discrimination claim, which she pled in her original complaint. *See* [1] ¶¶ 96−129. Absent any allegation of protected activity in which Plaintiff engaged, Plaintiff's Title VII retaliation claim fails to state a claim. Therefore, this Court dismisses the Amended Complaint.

### B. Res Judicata Bars Plaintiff's Action

In the alternative to the above finding, this Court finds that the doctrine of res judicata, or claim preclusion, bars Plaintiff's retaliation claim. Illinois claim-preclusion law, which applies to this analysis, [28 U.S.C. § 1738](), has three basic requirements: "(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of parties or their privies." *Dookeran v. County of Cook*, 719 F.3d 570, 575 (7th Cir. 2013) (citing *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001)). Here, the state court's judgment against Plaintiff on January 9, 2019, following a jury trial, satisfies this first requirement. [66-3].

As to the second element—the identity of the cause of action —Illinois uses the "transactional analysis." *Dookeran*, 719 F.3d at 575. This approach looks to whether the claims "arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011) (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (1998)). The transactional analysis "permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." *Id.* Here, a transactional analysis demonstrates that Plaintiff's state court complaint, [66-1], and Amended Complaint, [63], arise from a single group of operative—and essentially identical—facts.

**\*4** For example, the state court complaint alleges as follows: On April 29, 2015, Plaintiff told Bright Start's Assistant Director to inform her that she had strep throat and could not report to work the next day. *Id.* ¶ 35. At this time, two other teachers "were already out" due to strep throat. *Id.* ¶ 36. The Assistant Director ultimately requested that Plaintiff come in to work and told Plaintiff she could go to her doctor's appointment later that day. *Id.* ¶ 37. The next day, April 30, 2015, Plaintiff began feeling increasingly ill, and alleged that the Assistant Director responded "do what you need to do." *Id.* ¶ 39. Later, on April 30 at approximately 11:40

a.m., Plaintiff received an email from MarketStaff informing her that "she would be considered resigned" for leaving the workplace without permission." *Id.* ¶ 41.

In short, the two complaints appear to contain copy and pasted allegations arising out of the same request to attend a doctor's appointment for strep throat on August 30, 2015. *Compare* [63] ¶¶ 35−41 *with* [66-1] ¶¶ 35−41. In fact, Plaintiff appears to have simply substituted "agent of Defendant" for Bright Start's Assistant Director. *Id.* And although Plaintiff's state court complaint brought these allegations under a race-based discrimination and general "retaliation" theory, rather than a specific Title VII retaliation theory, [66-1] ¶¶ 63−85, Seventh Circuit law instructs that such a distinction remains irrelevant provided that the allegations arise from a single group of operative facts. *Arlin-Golf*, 631 F.3d at 821; *see also, e.g.*, *Dookeran*, 719 F.3d at 575−76 (finding plaintiff's Title VII claims arose from the same basic transaction as the relevant state court proceedings: the denial of his application for reappointment with his employer).

With respect to the third element—the parties' identity or their privities—this Court finds that privity exists between Defendant and Bright Start. Privity exists when "there is a commonality of interest between the two entities" and when they "sufficiently represent" each other's interests." *Studio Art Theatre v. City of Evansville*, 76 F.3d 128, 131 (7th Cir. 1996). The Seventh Circuit has explained that determining privity "is a functional inquiry in which the formalities of legal relationships provide clues but not solutions." *Bernstein v. Bankert*, 733 F.3d 190, 226 (7th Cir. 2012) (quoting *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 971 (7th Cir. 1998)).

Here, Plaintiff herself alleges that Defendant and Bright Start worked closely together such that Defendant had the authority to hire, discipline and evaluate employees at Bright Start, essentially serving as Bright Start's human resource department. [63] ¶¶ 24−25, 30; *see also* [63] (Ex. 3) (e-mail from Defendant's Director of Human Resources directing Plaintiff to contact her, rather than Defendant's employees, regarding issues related to her employment); [63] (Ex. 5) (Bright Start employee handbook issued by Defendant). Given this close relationship, the identical facts at issue in the prior litigation, and the fact that all of Plaintiff's claims against Defendant arise out of her time at Bright Start, this Court finds that Bright Start and Defendant sufficiently represent each other's interests such that privity exists between them. *See, e.g.*, *Tartt v. Northwest Cmty. Hosp.*, 453 F.3d 817, 823 (7th Cir. 2006) (finding privity between hospital and

Taylor-Reeves v. Marketstaff, Inc., Not Reported in Fed. Supp. (2019)

2019 WL 3716919

anesthesiologist group where group served as exclusive provider of anesthesiology services at the hospital and "[a]ll of the claims [plaintiff] alleged against the Hospital arose from his employment with [the group]"); *see also Studio Art Theatre*, 76 F.3d at 131 (finding privity in part due to "close relationship" between company and its president and the "clear congruence of legal issues").

**\*5** Because this Court finds claim preclusion's three requirements satisfied, collateral estoppel bars Plaintiff's present action. *Dookeran*, 719 F.3d at 575.

**IV. Leave to Replead**

Although, in general, Rule 15(a) states that trial courts "should freely give leave [to amend] when justice so requires," that command can be outweighed by factors such as "undue delay, bad faith, and futility." *Fish v. Greatbanc Trust Co.*, 749 F.3d 671, 689 (7th Cir. 2014). Here, Plaintiff's allegations do not warrant giving her leave to replead, as: (1)

this Court reminded Plaintiff both in open court and on the record that her amended complaint, [63], would constitute her last amendment; (2) this Court granted Plaintiff's former counsel's motion to withdraw following its admonishment to assess the good-faith basis for the matter under Rule 11, [60]; and (3) any amendment would be futile given that res judicata bars relitigating the state court case. As such, this Court dismisses Plaintiff's Amended Complaint with prejudice.

**V. Conclusion**

For the reasons explained above, this Court grants Defendant's motion to dismiss Plaintiff's Amended Complaint, [65], with prejudice. All dates and deadlines are stricken. Civil case terminated.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3716919

---

**Footnotes**

1   This Court takes the following facts from Plaintiff's Amended Complaint, [63], documents attached to the Amended Complaint, and documents central to the Amended Complaint and to which the Amended Complaint refers. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

2   Plaintiff's Amended Complaint fails to specify whether Defendant considered her "resigned" on April 30, 2015 or 2016. *See, e.g.*, ¶¶ 37, 41. Because Plaintiff's retaliation claim fails to allege any protected activity in which she engaged, as discussed below, this Court finds the exact date of her termination immaterial to its analysis.

3   This Court takes judicial notice of Plaintiff's proceedings in state court. *See GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) ("The most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records.").

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

803 Fed.Appx. 29 (Mem)
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S.Ct. of App. 7th Cir. Rule 32.1.
United States Court of Appeals, Seventh Circuit.

Renee TAYLOR-REEVES, Plaintiff-Appellant,

v.

MARKETSTAFF, INC., Defendant-Appellee.

No. 19-2620
|
Submitted April 29, 2020[*]
|
Decided April 29, 2020

Appeal from the United States District Court for the Northern
District of Illinois, Eastern Division. No. 17 CV 5416, John
Robert Blakey, *Judge.*

**Attorneys and Law Firms**

John Foster Appelquist, Springfield, MO, Kevin L. Schriener,
Law & Schriener, Saint Louis, MO, for Plaintiff - Appellant

Keith Kellner, Pro Se

Caroline Marie Coulter, Governor's Office, Jefferson City,
MO, Gregory Michael Goodwin, Assistant Attorney General,
Stephen David Hawke, Assistant Attorney General, Attorney
General's Office, Jefferson City, MO, for Defendant -
Appellee

Before ILANA DIAMOND ROVNER, Circuit Judge, AMY
C. BARRETT, Circuit Judge, AMY J. ST. EVE, Circuit Judge

**ORDER**

After she was fired for leaving work early for a medical
appointment, Renee Taylor-Reeves sued for violations of her
rights under Title VII of the Civil Rights **\*30** Act of 1964
and 42 U.S.C. § 1981. The district court dismissed the action,
and we affirm.

Taylor-Reeves, a black woman, worked as an instructor at
Bright Start Child Care & Preschool between 2013 and 2015.

In April 2015, she contacted a supervisor to report that
she felt ill and may have contracted strep throat. Taylor-
Reeves explained that she had a doctor's appointment the
next day and would not be able to teach. The supervisor
asked her to report to work anyway and told her that she
still could go to her appointment later in the day. Once at
work, however, Taylor-Reeves felt increasingly ill, so she
sent her supervisor a note asking for permission to go to the
doctor immediately. The supervisor responded, "do what you
need to do." Taylor-Reeves left work early. Later that day,
she received an email from Marketstaff—the school's third-
party provider of human resources support—stating that she
was "considered 'resigned' for leaving the workplace without
permission."

Five weeks later, Taylor-Reeves filed a charge of
discrimination against Bright Start with the Illinois
Department of Human Rights. She alleged that her supervisor
had sexually harassed her and then discharged her for going
to the doctor, despite not firing similarly situated "non-black"
teachers for staying home sick. After receiving a notice of
right to sue, Taylor-Reeves, represented by counsel, filed two
lawsuits. First, she sued Bright Start in state court, alleging
sexual harassment, race discrimination, and retaliation, in
violation of the Illinois Human Rights Act. Then, she filed
this federal action against both Bright Start and Marketstaff,
bringing similar claims under Title VII of the Civil Rights Act
of 1964, 42 U.S.C. § 2000e–3(a), and 42 U.S.C. § 1981.

After a jury returned a verdict for Bright Start in state
court, the federal litigation, which had been stayed, resumed.
Taylor-Reeves's attorneys withdrew, and through new
counsel, she moved to dismiss Bright Start from this action.
The district court granted the motion and instructed Taylor-
Reeves's attorney to "advise the [c]ourt if there is a good
faith basis to proceed with this case against ... Marketstaff."
Counsel withdrew a few weeks later. Taylor-Reeves then
filed a pro se amended complaint, proceeding only with what
she a labeled a "retaliation" claim, alleging that Marketstaff
was her employer and fired her for leaving work for health
reasons. Taylor-Reeves also alleged, without elaboration,
that her supervisor at the preschool had subjected her to
"offensive and unwelcome sexual harassment" throughout
her employment.

The district court dismissed the amended complaint with
prejudice on Marketstaff's motion. The court ruled that the
complaint failed to state a claim for retaliation, see Fed. R.
Civ. P. 12(b)(6), because Taylor-Reeves "alleges only that

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   1

Defendant terminated her for leaving the workplace without permission." And "requesting leave for strep throat" is not a statutorily protected activity. *See* 42 U.S.C. § 2000e–3(a). Alternatively, the district court ruled that *res judicata* bars Taylor-Reeves's claim in light of the state-court judgment in favor of Bright Start.

Taylor-Reeves's brief on appeal is only minimally developed, but if we read it generously, we can discern two basic arguments: (1) dismissal of the suit was improper because, in leaving work when sick, Taylor-Reeves "followed appropriate procedures set forth" by Illinois law; and (2) *res judicata* does not apply because the state and federal suits "are not parallel."

The first issue is dispositive (so we decline to address the second). Even if we assume that Taylor-Reeves followed all applicable **\*31** state policies when leaving work sick (and that Marketstaff was her "employer," which is disputed), her termination for that departure still is not actionable under Title VII or § 1981. "Title VII's anti-retaliation provision provides that it is unlawful for an employer to discriminate against its employee because the employee filed a complaint or participated in an investigation of an unlawful employment practice." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020) (citing 42 U.S.C § 2000e–3(a)); *see also Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (noting we "generally use the same standard to review discrimination and retaliation claims under § 1981 and Title VII"). But in her amended complaint, Taylor-Reeves specifically attributes the allegedly retaliatory discharge to the fact that she left work for medical reasons. As the district court noted, this is not a protected activity under 42 U.S.C § 2000e–3(a). *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013) (holding Title VII retaliation claims require a "but-for" causal connection between plaintiff's participation in a statutorily protected activity and employer's adverse action). So dismissal of her suit was proper.

AFFIRMED

**All Citations**

803 Fed.Appx. 29 (Mem)

Footnotes

\*      The appellee notified the court that it will not be participating in the appeal. We have agreed to decide this case without oral argument because the appellant's brief and the record adequately present the facts and legal arguments. Fed. R. App. P. 34(a)(2)(C).

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Webb v. AFSCME Council 31, Not Reported in Fed. Supp. (2020)

2020 WL 919260

KeyCite Yellow Flag - Negative Treatment

Distinguished by Guzman v. XTC U.S. Xpress Inc. U.S. Inc., S.D.Ind.,
February 20, 2024

2020 WL 919260

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

Derek WEBB, Plaintiff,

v.

AFSCME COUNCIL 31, et al., Defendants.

Case No. 19-cv-4192

|

Signed 02/26/2020

**Attorneys and Law Firms**

Derek Webb, Chicago, IL, pro se.

Robert A. Seltzer, Michael Shea Young, Cornfield and
Feldman LLP, Chicago, IL, for Defendants.

**MEMORANDUM OPINION AND ORDER**

SHARON JOHNSON COLEMAN, United States District
Judge

*\*1* In his first amended complaint, pro se plaintiff Derek
Webb brings race discrimination and retaliation claim
against defendants AFSCME Council 31/AFSCME Local
654 ("Union"), and certain Union officials and employees.
Before the Court is defendants' motion to dismiss under
Federal Rule of Civil Procedure 12(b)(6). For the following
reasons, the Court grants defendants' motion; dismisses
Webb's Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983
claims without prejudice; and dismisses Webb's Title VI
claim, claims under the Illinois Constitution, and unfair
representation claims with prejudice. The Court grants Webb
leave to file a second amended complaint as to his Title VII,
§ 1981, and § 1983 claims in accordance with this ruling.

**Background**

The Court takes the following facts from the first amended
complaint and construes them liberally in Webb's favor
because he is proceeding pro se. Greyer v. IDOC, 933 F.3d
871, 878 (7th Cir. 2019). Webb, who is a civilian employee
of the Chicago Police Department, alleges that in contradiction

of the 2018 collective bargaining agreement ("CBA") that his
Union entered into with the City of Chicago, the Union has
engaged in racial discrimination and retaliation by refusing
to process grievances that were filed from January 2018 to
the present, respond to the status of grievances, enforce the
terms of the CBA, and that the Union failed to provide fair
representation.

Webb filed an EEOC Charge alleging race discrimination
and retaliation under Title VII in March 2019. In his EEOC
Charge, Webb stated that the Union failed to process his
grievances involving overtime assignments. After he received
his right to sue letter, Webb filed the present lawsuit alleging
race discrimination and retaliation claims under Title VI, Title
VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and claims under
the Illinois Constitution. Webb also brings a First Amendment
claim pursuant to § 1983.

On February 24, 2020, the Court presided over the parties'
oral arguments on the Union's motion to dismiss. At that time,
Webb gave additional details about his claims, including that
the Union failed to provide fair representation because his
grievances did not go to arbitration under the CBA's grievance
procedures. Webb also presented numerous documents to the
Court and opposing counsel in relation to certain grievances.
As the Court explained to Webb, at this juncture, the Court
must examine the allegations in his first amended complaint
and not his explanation of the documents he brought to court.
Further, the Court discussed the possibility of Webb having
the opportunity to re-allege certain allegations to flesh out his
claims with more details. When asked, Webb clarified that he
was bringing this lawsuit on his own behalf.

**Legal Standard**

When considering dismissal of a complaint under Rule 12(b)
(6), the Court accepts all well pleaded factual allegations
as true and draws all reasonable inferences in favor of the
plaintiff. Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197,
167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to
dismiss, plaintiff must "state a claim for relief that is plausible
on its face." Bell Atlantic Corp. v. Twombly, 550 U.S.
544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A
complaint is facially plausible when plaintiff alleges "factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."
Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173
L.Ed.2d 868 (2009).

Webb v. AFSCME Council 31, Not Reported in Fed. Supp. (2020)

2020 WL 919260

## Discussion

### Unfair Representation Claim

**\*2** Although Webb does not bring a separate count in his first amended complaint alleging that the Union breached its duty of fair representation, he mentions this breach in his allegations, and at oral argument, he explained that the Union breached its duty because it did not follow the CBA's grievance procedure as to his grievances. As an Illinois public employee, Webb's claims against the Union for a breach of the duty of fair representation are governed by the Illinois Public Labor Relations Act ("Act"), 5 ILCS 315/1 *et seq.*, and the Illinois Administrative Code, 80 Ill. Adm. Code § 1200, *et seq.* Under the Act, the Illinois Labor Relations Board ("Board") has exclusive jurisdiction to determine if a union has breached its duty of fair representation. *Knox v. CTA*, 105 N.E.3d 810, 817, 423 Ill.Dec. 402, 409, 2018 IL App 162265 (1st Dist. 2018); *see also Carver v. Nall*, 172 F.3d 513, 516 (7th Cir. 1999) (Board "has exclusive jurisdiction to hear unfair labor practice grievances of Illinois state employees.").

In his response to defendants' motion, Webb acknowledges that he has submitted breach of fair representation claims to the Board and that the Board has exclusive jurisdiction over these claims. Nonetheless, Webb asserts that the Court will have jurisdiction once he exhausts his administrative remedies. Webb's argument is unavailing because unfair representation claims under the Act are subject to a comprehensive and exclusive scheme of remedies and administrative procedures and judicial review of the Board's final administrative decisions are only heard by the Illinois Appellate Court on administrative review. *Knox*, 105 N.E.3d at 817-18; *see also Cook County v. ILRB*, 70 N.E.3d 795, 809, 410 Ill.Dec. 668, 2017 IL App 153015 (1st Dist. 2017) ("Judicial review of a decision of the Labor Relations Board is governed by the Administrative Review Law[,] 735 ILCS 5/3-101 *et seq.*"). As such, Webb's argument that his unfair representation claim can be brought in federal court after he exhausts his claims is misplaced. The Court grants the Union's motion to dismiss in this respect.

### Title VII and § 1981 Claims

Both Title VII and 42 U.S.C. § 1981 prohibit labor organizations from discriminating against their members on the basis of race. *See* 42 U.S.C. § 2000e-2(c)(1); 42 U.S.C. § 1981(b). Federal courts apply the same standard when assessing Title VII and § 1981 discrimination and retaliation claims, although under § 1981, a plaintiff may also sue individuals and not just his union or employer. *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017); *Smith v. Bray*, 681 F.3d 888, 907 n.2. (7th Cir. 2012), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). To establish a race discrimination against defendants, Webb must eventually show that the Union refused to process his grievances because of his race or his earlier complaints about race. *Green v. AFT/IFT Local 604*, 740 F.3d 1104, 1107 (7th Cir. 2014).

Construing his pro se allegations liberally, Webb has not alleged sufficient factual details that raise his race discrimination and retaliation claims above a speculative level. *Taha v. International Bhd. of Teamsters, Local 781*, 947 F.3d 464, 471 (7th Cir. 2020). Webb fails to give context to what grievances he made and how the Union reacted to them except that the Union "refused to respond to his inquiries." As to the individual defendants, Webb does not identify what roles they played in the grievance process or any details outside of his cursory statement that they refused to respond to his grievances. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The Court therefore grants defendants' motion to dismiss Webb's Title VII and § 1981 claims without prejudice and grants Webb leave to file a second amended complaint. In amending these allegations, Webb must set forth facts – not just conjecture – describing how defendants engaged in racial discrimination and retaliation.

### Title VI Claim

**\*3** Webb also brings his race discrimination and retaliation claims under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, which bars discrimination "under any program or activity receiving Federal financial assistance." Title VI, however, is not intended to reach discrimination in employment practices. *Johnson v. Transportation Agency, Santa Clara Cty., Cal.*, 480 U.S. 616, 628 n.6, 107 S.Ct. 1442, 94 L.Ed. 2d 615 (1987); *Ahern v. Board of Educ. of City of Chicago*, 133 F.3d 975, 977 (7th Cir. 1998); 42 U.S.C. § 2000d-3. Simply put, § 2000d-3, which controls Title VI claims against employers or unions "bars plaintiffs from pursuing employment discrimination claims against organizations that otherwise would be subject to liability under Title VII." *Outley v. City of Chicago*, 407 F.Supp.3d 752, 767 (N.D. Ill. 2019) (Feinerman, J.).

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   2

Webb v. AFSCME Council 31, Not Reported in Fed. Supp. (2020)

2020 WL 919260

Webb's race and retaliation claims against his Union fall well within the rubric of Title VII, *see* 42 U.S.C. § 2000e-2(c)(1), and his claims against the individual defendants are appropriate pursuant to § 1981. Therefore, Title VI is not the proper statutory authority for these claims. The Court dismisses Webb's Title VI claim with prejudice.

*Claims Under § 1983*

Next, defendants move to dismiss Webb's claims based on 42 U.S.C. § 1983, including his First and Fourteenth Amendment claims, because defendants are private – not state – actors. Section 1983 provides a cause of action for constitutional deprivations that occur under the color of state law, which means that § 1983 does not allow lawsuits based on private conduct. *Spiegel v. McClintic,* 916 F.3d 611, 616 (7th Cir. 2019). Nonetheless, although unions are not state actors, if a private actor, such as the Union, conspires or acts jointly with a state actor to deprive an individual's constitutional rights, the private actor may be subject to § 1983 liability under Seventh Circuit precedent. *Alarm Detection Sys., Inc. v. Village of Schaumburg,* 930 F.3d 812, 825 (7th Cir. 2019).

Viewing the allegations in his pro se first amended complaint liberally, Webb has not set forth any allegations that the Union or the individual defendants acted jointly or conspired with a state actor to deprive him of his rights under the United States Constitution. The Court thus dismisses Webb's § 1983 claims without prejudice. If Webb wishes to amend

his § 1983 allegations, he must keep in mind his Rule 11(b) obligations, namely, that to the best of his knowledge, his factual contentions have evidentiary support.

*Due Process and Equal Protection Claims*

Last, Webb brings claims under Article I, Section 2 of the Illinois Constitution based on due process and equal protection deprivations. The Illinois Constitution does not protect its citizens from actions by private entities or individuals, such as defendants. *Hill v. PS Ill. Trust,* 856 N.E.2d 560, 564, 305 Ill.Dec. 755, 368 Ill.App.3d 310 (1st Dist. 2006); *Methodist Med. Ctr. of Illinois v. Taylor,* 489 N.E.2d 351, 354, 95 Ill.Dec. 130, 140 Ill.App.3d 713 (3d. Dist. 1986). The Court dismisses this last claim with prejudice.

**Conclusion**

For the foregoing reasons, the Court grants defendants' motion to dismiss in part without prejudice and in part with prejudice [36]. The Court grants plaintiff leave to file a second amended complaint in accordance with this ruling by no later than April 7, 2020.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 919260

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 261312
Only the Westlaw citation is currently available.
United States Court of Appeals, Seventh Circuit.

Chad WILLIAMS, Plaintiff-Appellant,

v.

MULTI-COLOR CORPORATION,

INC., Defendant-Appellee.

No. 23-2457
|
Submitted January 23, 2024[*]
|
Decided January 24, 2024

Appeal from the United States District Court for the Eastern District of Wisconsin. No. 19-C-0847, Lynn Adelman, *Judge.*

**Attorneys and Law Firms**

Chad Williams, Milwaukee, WI, Pro Se.

Steven L. Brenneman, Kelly Smith-Haley, Esq., Attorneys, Fox, Swibel, Levin & Carroll, LLP, Chicago, IL, for Defendant-Appellee.

Before MICHAEL Y. SCUDDER, Circuit Judge, THOMAS L. KIRSCH II, Circuit Judge, JOHN Z. LEE, Circuit Judge

**ORDER**

 **\*1** After Chad Williams was passed over for two promotions with Multi-Color Corporation, he sued the company for racial discrimination in violation of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e-2. The district court ultimately entered summary judgment for the company because Williams did not provide evidence of a discriminatory motive, let alone evidence that the company's proffered reasons for its decisions were pretext for discrimination.

On appeal, Williams generally challenges the court's ruling but does not address its reasoning or provide any meaningful basis for disturbing the judgment. *See* Fed. R. App. P. 28(a) (8) (brief must contain the appellant's "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). Although we are mindful that Williams is representing himself on appeal, it is not our role to craft parties' arguments for them, and even self-represented parties must comply with Rule 28(a). *See Atkins v. Gilbert*, 52 F.4th 359, 361 (7th Cir. 2022).

DISMISSED

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 261312

Footnotes

\*       We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. Fed. R. App. P. 34(a)(2)(C).

**End of Document**       © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Murray v. Bush, Not Reported in Fed. Supp. (2007)

2007 WL 9752056

2007 WL 9752056
Only the Westlaw citation is currently available.
United States District Court, E.D. Wisconsin.

Sandra K. MURRAY, Plaintiff,

v.

George BUSH, Supervisor
Maysteel, Defendant.

Case No. 06-C-0781
|
Signed 11/26/2007

**Attorneys and Law Firms**

Sandra K. Murray, Milwaukee, WI, pro se.

Michael Mishlove, Michael Mishlove Law Offices, Milwaukee, WI, for Defendant.

**DECISION AND ORDER**

Rudolph T. Randa, Chief Judge

 *1 On July 30, 2007, this Court issued a Decision and Order granting the motion of Defendant George Bush ("Bush"), a supervisor at Maysteel L.L.C. ("Maysteel"), to dismiss the complaint of *pro se* Plaintiff Sandra Murray ("Murray") claiming discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") in violation of 42 U.S.C. § 12112(a) and § 12203(a). The Court held that Bush met his burden of demonstrating that this action is barred by the prior judgment in entered Murray's prior federal action against Maysteel – *Murray v. Maysteel*, No. 03-C-1042 (E.D. Wis. 2004). Alternatively, the Court held that the action was subject to dismissal because Bush is not a proper defendant given that the ADA does not provide for individual liability – liability is limited to employers. The Clerk of Court entered judgment dismissing the action on July 30, 2007.

On September 28, 2007, Murray filed a motion to reopen. (Docket No. 28). Bush filed no response to the motion.

Because Murray's motion was filed more than ten days after the entry of judgment, it is construed as a motion under Rule 60(b) of the Federal Rules of Civil Procedure. *See Easley v. Kirmsee*, 382 F.3d 693, 696 n.2 (7th Cir. 2004) (motions

to reconsider filed more than ten days after the ruling are properly treated as Rule 60(b) motions). Rule 60(b) allows for relief from judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or was based on an earlier judgment that has been reversed or vacated; or that applying the judgment prospectively is no longer equitable; or (6) any other reason justifying relief from the operation of the judgment. "Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 837 (7th Cir. 2005) (citation omitted).

Murray's motion, which is liberally construed, states that because she is on medication to control her seizures her action has nothing to do with the ADA. Rather, Murray claims that she was discriminated against by Bush based on her sex. Murray states that her replacement, a male, was treated differently than her. She also maintains that Bush retaliated against her for complaining of the discrimination. In addition, Murray states that she was discriminated against because she received an entry-level pay raise of .22 every six months and co-workers received an annual raise of .50. Murray also requests appointment of counsel.

As a preliminary matter, Murray's assertion of a pay disparity between her and her co-workers does not appear in her complaint or any of her prior submissions in this action. While Murray does not state the gender of her better paid co-workers, she may be attempting to assert a claim under the Equal Pay Act which requires an employer to pay his male and female employees at the same rate "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *See Sims-Fingers v. City of Indianapolis*, 493 F.3d 768, 770 (7th Cir. 2007) (quoting 29 U.S.C. § 206(d)(1)). Either a two-year or three-year statute of limitations applies to claims brought pursuant to 29 U.S.C. § 255(a). A two-year statute of limitations applies to "non-willful" violations and a three year limitations period for "willful" violations. *Id.* Equitable tolling may excuse a delay in filing within the statute of limitations, but that doctrine deals with situations in which timely filing is not possible

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.  1

Murray v. Bush, Not Reported in Fed. Supp. (2007)

2007 WL 9752056

despite diligent conduct. *See, e.g., Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990).[1]

**\*2** The court of appeals for this circuit has held that a complaint may not be amended unless relief has been granted setting aside a judgment. *See Vicom v. Harbridge Merchant Servs.*, 20 F.3d 771, 784-85 & n.12-13 (7th Cir. 1994). However, the court of appeals has also held that in determining whether a motion to amend should be considered upon a Rule 60(b) motion a plaintiff's *pro se* status is a factor to be considered. *See Donald v. Cook County Sheriff's Dep't.*, 95 F.3d 548, 554 & n.1 (7th Cir. 1996).

Since Murray proceeds *pro se*, the Court considers Murray's motion as implicitly seeking leave to amend her complaint. A motion to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure which states that leave to file an amended complaint "shall be freely given when justice so requires." The Supreme Court has explained the meaning of "freely given" as used in Rule 15(a) by stating:

> In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - the leave sought should, as the rules require be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). "Although this is a liberal standard, under which 'leave to amend shall be freely granted when justice so requires,' 'justice may require something less in post-judgment situations than in pre-judgment situations.' " *Doe v. Howe Military Sch.*, 227 F.3d 981, 989 (7th Cir. 2000) (citations omitted).

Murray was last employed by Maysteel in March 1999. Given the interval of more than eight years between the end of Murray's employment at Maysteel and her proposed amendment of her complaint, Murray's Equal Pay Act claim would be time barred under both the two- or three-year statute of limitations for Equal Pay Act claims. There is no indication of a basis for equitable tolling. It would be futile to allow Murray leave to amend her complaint. *See id*. Therefore, Murray's implied motion to amend her complaint is denied.

Murray asserts that she is making a claim of employment discrimination due to her sex and retaliation against her for making those claims, and she does not claim disability discrimination or retaliation under the ADA. Claims of gender discrimination and retaliation fall under the scope of Title VII, which prohibits an employer from discriminating against an employee because of her gender and from punishing an employee for complaining about discrimination. 42 U.S.C. §§ 2000e-2 and 2000e-3(a). Title VII like the ADA does not provide a basis for liability for a supervisor in his individual capacity. *See Silk v. City of Chi.*, 194 F.3d 788, 797 n.5 (7th Cir. 1999) ("Our case law is clear that a supervisor cannot be held liable in his individual capacity under the ADA or under Title VII.") Thus, Bush is not a proper defendant in Murray's Title VII action.

Moreover, the only element of *res judicata* requiring re-examination based on Murray's assertion that her claim arises under Title VII is whether there is an identity of the cause of action in both the earlier and later suit. *See Smith v. City of Chi.*, 820 F.2d 916, 919 (7th Cir. 1987) (For *res judicata* to apply, three elements must be met: "(1) like a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suit; and, (3) an identity of parties or privies in the two suits.") As this Court stated in its prior decision:

> **\*3** A claim is deemed to have "identity with a previously litigated matter if it is based on the same, or nearly the same, factual allegations arising from the same transaction or occurrence." *Kratville v. Runyon*, 90 F. 3d 195, 198 (7th Cir. 1996) (quoting *Brzostowski*, 49 F.3d at 338-39). The same transaction or

occurrence means events with a "common core of operative facts." *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986). *See also, Perkins v. Bd. of Trs. of Univ. of Ill.*, 116 F.3d 235, 236-37 (7th Cir. 1997). Even though a set of allegations "may give rise to different claims of relief upon different theories of recovery, there remains a single cause of action." *Smith*, 820 F.2d at 918.

(Decision and Order at 6 (E.D. Wis. July 30, 2007).) *Res judicata* not only bars relitigation of claims already decided, but also claims that could have been raised in the prior action. *Humphrey v. Tharaldson Enters.*, 95 F.3d 624, 626 (7th Cir. 1996) (citing *Brzostowski v. Laidlaw Waste Sys. Inc.*, 49 F.3d 337, 338 (7th Cir. 1995)).

*Brzostowski v. Laidlaw Waste Systems, Inc.*, 49 F.3d 337, 338 (7th Cir. 1995), addressed whether Brzostowski's lawsuit commenced in Illinois state court and removed to federal court, alleging that his employer discharged him in violation of his employment contract, barred his subsequent action for age discrimination. The first action was dismissed with

Murray v. Bush, Not Reported in Fed. Supp. (2007)

2007 WL 9752056

prejudice by the federal court. Subsequently, after filing an age discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"), which issued him a "right to sue" letter, Brzostowski filed a complaint under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* alleging that his employer terminated his employment on the basis of his age. The court of appeals upheld the district court's decision granting the employer's Rule 12(b)(6) motion to dismiss on the grounds that *res judicata* precluded the second suit. The court of appeals held that "while the legal elements of each claim may be different, the central factual issues are identical: Laidlow's employment actions and Brzostowski's termination." *Id.* at 339. The appellate court stated, "the firing of Brzostowski by Laidlaw constitutes the nucleus of factual allegations giving rise to both suits, because the resolution of both complaints revolves around the issue of whether Laidlaw complied with its legal obligations – arising from either a contract or a federal statute – when it discharged Brzostowski." *Id.*

Like Brzostowski's second action, Murray's Title VII claims arise out of the same core of operative facts as her ADA claims. In her first action brought under the ADA, Murray alleged that Maysteel discriminated against her, forged disciplinary documents to cover-up its discrimination, and

retaliated against her for filing charges with the EEOC and ERD. In her second action, brought under Title VII, Murray makes the same factual allegations; the difference is the reason for the alleged workplace discrimination against Murray. In her first federal action, Murray could have brought her Title VII claim of employment discrimination due to her sex. Therefore, these are identical claims for purposes of *res judicata. See id.* Consequently, Murray's reliance on Title VII as the legal basis for her discrimination and retaliation claims does not change the Court's prior conclusion that Murray's claims are barred by *res judicata* Based on the foregoing, Murray has not established a basis for relief from judgment and her Rule 60(b) motion, styled as a motion to reopen, is denied. Given this determination, Murray's request for appointment of counsel is denied.

**\*4  NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Murray's Rule 60(b) motion to reopen judgment (Docket No. 28) is **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2007 WL 9752056

---

Footnotes

1    The Court's research does not disclose any decision of the court of appeals for this circuit addressing whether the limitations period for Equal Pay Act claims may be equitably tolled. However, two circuit courts of appeals have applied the doctrine to Equal Pay Act claims. *See O'Donnell v. Vencor, Inc.,* 466 F.3d 1105, 1113 (9th Cir. 2006); *Nealon v. Stone,* 958 F.2d 584, 593 (4th Cir. 1992).

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.                    3